1
2
3
4
5
6
7       UNITED STATES DISTRICT COURT
8       NORTHERN DISTRICT OF CALIFORNIA
9

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br>         Plaintiff,<br><br>   v.<br><br>NATIONWIDE BIWEEKLY ADMINISTRATION, INC., et al.,<br><br>         Defendants. | Case No. 15-cv-02106-RS<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR TRANSFER** |

## I. INTRODUCTION

Plaintiff Consumer Financial Protection Bureau ("CFPB") brings this action against defendants Nationwide Biweekly Administration, Inc., Loan Payment Administration LLC ("LPA"), and Daniel S. Lipsky for allegedly deceiving consumers about Nationwide's "Interest Minimizer" ("IM") program. Under the IM program, customers send their mortgage payments in installments to Nationwide, which holds the funds and then forwards payments to the mortgage lender in advance of the monthly due date. Plaintiff avers that defendants made knowing misrepresentations to consumers about the timing and the amount of savings that typical enrollees would gain through the program.

Defendants move to transfer the matter to the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a). They contend that transfer is warranted because plaintiff's choice of forum deserves only minimal consideration in this instance, and that the Southern District of Ohio is far

more convenient for the parties and potential witnesses than the Northern District of California. Plaintiff, in turn, claims that its choice of forum deserves especially strong deference and that the subject matter of this case has substantial connections to this District.  Because defendants fail to make a sufficiently strong showing of inconvenience to upset plaintiff's choice of forum, and do not establish that the other § 1404(a) factors significantly weigh in their favor, the motion to transfer venue will be denied.

## II.   BACKGROUND

CFPB is an independent agency of the United States charged with regulating the offering and provision of consumer financial products and services under federal consumer financial law. Defendant Nationwide is an Ohio corporation based in Xenia, Ohio.  Nationwide acts as a custodian of consumer funds and transmits funds from consumers to their mortgage lenders or servicers.  That activity constitutes a consumer financial product or service covered by the Consumer Financial and Protection Act ("CFPA").  Defendant LPA is a wholly-owned subsidiary of Nationwide and an Ohio LLC and resident involved in marketing and supporting Nationwide's services.  Defendant Lipsky is the founder, president, sole officer, and sole owner of Nationwide and is a resident of the Southern District of Ohio.  He has managerial responsibility for Nationwide and LPA, and he is alleged to have formulated, directed, controlled, or participated in the acts and practices of Nationwide and LPA at issue in this action.

CFPB's complaint asserts claims under the CFPA, 12 U.S.C. §§ 5531(a), 5536(a), 5564(a), 5565, and the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6105(d), and its implementing regulation, the Telemarketing Sales Rule, 16 C.F.R. §§ 310.1-9 (2010). CFPB avers defendants knew that during the first few years of enrollment in the IM program, most customers would pay more in fees to Nationwide than they would save.  It alleges that defendants knew a substantial percentage of customers would leave the IM program before saving any money.  CFPB claims that despite this knowledge, defendants led customers to believe that they would save a substantial amount upon enrollment in the program.

Defendants argue that the balance of factors under 28 U.S.C. § 1404(a), particularly the convenience of the witnesses and local interest in the controversy, warrants transfer to the Southern District of Ohio, and that plaintiff's choice of forum should be accorded little weight. In opposition, plaintiff contends defendants have not met their burden to show that the interests of justice demand transfer. Plaintiff further avers that its choice of forum deserves substantial deference due to a special venue provision in the CFPA that allows it to bring suit in this District. CFPB additionally claims that this District has significant connections to this case[1] and that pending litigation in California state court weighs against transfer.[2]

### III.   LEGAL STANDARD

Neither party disputes that venue in either district would be proper. Rather, defendants request transfer to the Southern District of Ohio upon application of the Section 1404(a) factors. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of the section is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation marks omitted). The district court has broad discretion when weighing a motion for transfer, and must always make an individualized determination. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted).

---

[1] Nationwide sends more mailers to consumers in California than any other state, maintains a substantial amount of funds in a bank account dedicated to California consumers, and has a specially-designated "Vice President California Operations."

[2] In the fall of 2014, defendants brought two federal lawsuits against state regulatory authorities, seeking to have their conduct declared legal. *See Loan Payment Administration LLC, et al. v. Hubanks, et al.*, No. 14-cv-4420-LHK and *Nationwide Biweekly Administration, Inc. v. Owen*, No. 14-cv-05166-LHK. Those actions were dismissed pursuant to *Younger* abstention in favor of a state court proceeding brought against defendants regarding the same matters. The state action in Alameda County includes allegations of false advertising in connection with Nationwide's IM program and is currently pending. *People v. Nationwide Biweekly Admin., Inc.*, No. RG15770490 (Super. Ct. of Alameda Cty., Cal. May 15, 2015).

1    The analysis considers both public factors which speak to the interests of justice, and
2    private factors, which bear on the relative convenience of each forum to the parties and witnesses.
3    *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  To support their motion for
4    transfer, the defendants must demonstrate: (1) that the venue is proper in the transferor district; (2)
5    that the transferee district is one where the action might have been brought; and (3) that the
6    transfer will serve the convenience of the parties and witnesses, and will promote the interests of
7    justice.  *See Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506
8    (C.D. Cal. 1992).

9    If venue is proper in either district, a district court evaluates several further (private and
10   public) factors: (1) plaintiff's choice of forum; (2) convenience to the parties; (3) convenience to
11   witnesses; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law;
12   (6) feasibility of consolidation with other claims; (7) any local interest in the controversy; and (8)
13   the relative court congestion and time of trial in each forum.  *See Williams v. Bowman*, 157 F.
14   Supp. 2d 1103, 1106 (N.D. Cal. 2001).  The burden of demonstrating that transfer is appropriate
15   rests on the moving party.  *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 279
16   (9th Cir.1979).  As neither party disputes that venue would be proper either here or in the Southern
17   District of Ohio, the outcome of this motion hinges on defendants' showing that these further
18   factors weigh in favor of transfer.

## IV.   DISCUSSION

### A.   Plaintiff's Choice of Forum

The amount of deference that should be accorded to plaintiff's choice of forum is a main point of contention between the parties.  Ordinarily, a court treats a plaintiff's choice of forum with significant deference.  *Decker Coal Co v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.").

Defendants argue that because CFPB is a federal governmental agency and the federal government "is omnipresent and can litigate in multiple fora," CFPB's choice of forum is entitled to less deference than that of a private plaintiff. All of the cases that defendants rely upon, however, are distinguishable from the current case and fail to support this argument. Some of the cases listed by defendants involve the United States government as a plaintiff, as opposed to a federal governmental agency. *See United States v. Nature's Farm Products*, 2004 U.S. Dist. LEXIS 8485 (S.D.N.Y. May 13, 2004); *United States ex rel. Adrian v. Regents of the University of California*, U.S. Dist. LEXIS 3321 (N.D. Cal. Feb. 26, 2002). Although the courts in other decisions advanced by defendants give less deference to plaintiff's choice of forum, they do so based on other factors, not due to the mere fact that the plaintiff was a governmental agency.[3] Moreover, other courts in this District have noted that governmental agencies are "entitled to just as much deference in its choice of forum as any other litigant." *See SEC v. Rose Fund, LLC*, 2004 U.S. Dist. LEXIS 22491, *6 (N.D. Cal. Jan. 9, 2004) (rejecting defendant's argument that the SEC, as a federal agency, would "rarely, if ever, be seriously inconvenienced" by pointing out that the SEC "does not have personnel or facilities in every federal district").

Defendants' arguments that plaintiff's choice of forum deserves little weight because the operative events in this case occurred in the Southern District of Ohio, not in the Northern District of California, are also unavailing. As the Ninth Circuit has observed, "if the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [plaintiff's] choice is entitled to only minimal consideration." *Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir.1987) (emphasis added). Defendants contend that in false advertising cases, district

---

[3] *See United States v. Nature's Farm Products*, 2004 U.S. Dist. LEXIS 8485, *19 (explaining that the government's choice of forum should be accorded significant weight, but should not be given as much weight as a plaintiff bringing an action in its home district); *FTC v. Wyndham Worldwide Corporation*, 2013 U.S. Dist. LEXIS 41494, (D. Ariz. March 25, 2013) (giving "limited deference" to the FTC's choice of venue because the FTC was not considered a resident there and the operative events did not occur there); *EEOC v. United Airlines, Inc.*, 2009 U.S. Dist. LEXIS 130565 (N.D. Cal. Dec. 3, 2009) (according less deference to plaintiff's choice of forum because of the location of the operative events and the plaintiff's position as one of multiple claimants in a nationwide class action suit).

courts in the Ninth Circuit have held that the operative events took place where the decisions to implement the allegedly false advertising occurred. The cases that defendants rely upon, however, fail to support this proposition. In *FTC v. Wright*, the court discussed defendants' "business hub," but only in the context of comparing the degree of contacts that the defendants had with each forum. *See* 2014 U.S. Dist. LEXIS 49788, *15 (D. Ariz. April 9, 2014) (internal quotations omitted). The court only mentioned "operative facts" when discussing that the events giving rise to plaintiff's claims "did not occur solely in [plaintiff's choice of forum]." *Id.* at *6 (emphasis added). Nothing in the decision suggests that in a false advertising suit, the location of operative events must always lie within the forum where decisions to implement the false advertising occurred. None of the other cases that defendants invoke have this type of broad holding, and all are distinguishable from the current case based on the alleged conduct of the defendants, violations of law, or type of case brought.[4]

Even if key events here took place in the Southern District of Ohio, that does not detract from plaintiff's arguments that operative events have occurred in this forum, or that this District has a clear interest in the parties or subject matter of this case. Although defendants' generation of allegedly deceptive marketing content occurred in Ohio, consumers' receipt of that content, reliance on that content, and the resulting harms occurred in the states in which the consumers reside. Since there are likely more consumers of defendants' product in California than any other state, events that gave rise to the operative facts have occurred within the Northern District of California, and at the very least, this District has a clear interest in the parties and subject matter of

---

[4] *See FTC Wyndham Worldwide Corp.*, 2013 U.S. Dist. LEXIS 41494, *7 (describing the conduct at issue as including data security practices implemented in defendant's preferred forum); *Jovel v. I-Health, Inc.*, 2012 U.S. Dist. LEXIS 161281, *16 (C.D. Cal. Nov. 8, 2012) (arguing that plaintiff's chosen forum did not have a stronger interest in the dispute than defendant's preferred forum because plaintiff's complaint alleged violations of state laws of both forums); *Rikos v. P&G*, 2011 U.S. Dist. LEXIS 40374, *4 (S.D. Cal. Apr. 13, 2011) (pointing out that plaintiff sought to bring class action); *Burns v. Gerber Prods. Co.*, 922 F. Supp. 2d 1168, 1169–70 (E.D. Wash. 2013) (acknowledging that defendant's motion was not "the typical binary 'either-or' transfer motion" because the issue was whether the case should be consolidated with another pending consolidated class action suit "asserting near-identical claims" in defendant's preferred forum).

the case. *See Rafton v. Rydex Series Funds*, 2010 U.S. Dist. LEXIS 75411, *8-9 (N.D. Cal. June 29, 2010) (explaining that not all of the operative events in the case took place where defendants' alleged misrepresentations and omissions were made because plaintiff's reliance on misrepresentations, and the resulting harm, occurred elsewhere).

Additionally, by choosing to market and sell its IM program nationwide, defendants opened themselves up to the risk of litigation in multiple states, particularly ones in which they conduct a substantial amount of business activity. *See id*. ("The interests of justice do not favor allowing Defendants, the alleged malfeasors, to evade the consequences of their decision [to market nationwide] and, in so doing, to receive the benefit of their preferred forum."). In light of the foregoing, defendants' arguments for according little weight to plaintiff's choice of forum are not persuasive.

On the other side, CFPB asserts that the CFPA's special venue provision entitles their choice of forum to especially strong deference. In *Ellis v. Costco Wholesale Corporation*, a putative class action under Title VII, the court held that while a special venue provision "[did] not prohibit transfers away from a plaintiff's chosen forum," it should "influence the contours of the 1404(a) analysis." 372 F. Supp. 2d 530, 537 (N.D. Cal. 2005), *aff'd in part, rev'd in part on other grounds*, 657 F.3d 970 (9th Cir. 2011). *Ellis* found "similar Congressional intent" in the special venue provisions of Title VII and the Securities Exchange Act to "grant potential plaintiffs liberal choice in their selection of a forum." *Id.*[5]

While the mere existence of a special venue provision may not automatically require strong deference to CFPB's choice of forum, factors that are "expressly identified as a basis for venue" in CFPA should be "key factors in analyzing the 'interests of justice' prong of the section

---

[5] *Ellis* cites *Sec. Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985), in which the SEC was accorded "liberal choice in [its] selection of forums" under venue provisions in Section 27 of the Securities Exchange Act ("[U]nless the balance of factors is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed."). While the issue in *Vigman* was whether venue was proper and not transfer of venue under 1404(a), consideration of the Congressional intent underlying special venue statutes is clearly applicable in the context of transfer of venue analysis under 1404(a).

ORDER DENYING DEFENDANTS' MOTION FOR TRANSFER
CASE NO. 15-cv-02106-RS
7

1404(a) analysis." *Id.*[6] Section 1054(f) of the CFPA states that a civil action brought under the Act may be brought in a forum "in which the defendant is located or resides or is doing business." Defendants clearly conduct business in California: they advertise to California consumers through direct mailers, hold funds in a bank account dedicated to their numerous California customers, and have designated a Vice President for their California operations. CFPB's choice of forum in the Northern District of California is thus properly given substantial deference.

B. <u>Convenience to Parties</u>

Defendants argue that since Nationwide's headquarters and employees are located in the Southern District of Ohio, it would be more convenient for defendants to litigate this case there. They are, however, involved in pending litigation in California state court, which, like this matter, includes allegations of false advertising in connection with its IM program. By proceeding with this case in the Northern District of California, defendants could potentially benefit from coordination of discovery and other court proceedings with the state action in Alameda County. Furthermore, any depositions of defendants' potential witnesses would still be conducted in the Southern District of Ohio, which significantly minimizes any inconvenience defendants would experience. Though CFPB has its headquarters in Washington, D.C., the agency has an office in San Francisco, providing resources that make litigating in this District more convenient for CFPB than in the Southern District of Ohio. Thus, convenience of the parties weighs against transfer.

C. <u>Convenience to Witnesses</u>

In assessing the convenience to potential witnesses, courts consider the convenience of non-party witnesses to be more important than the convenience of party witnesses. *Hendricks v. StarKist Co.*, 2014 WL 1245880, at *3 (N.D. Cal. Mar. 25, 2014). Plaintiff has not named any specific individuals in this District who may serve as witnesses in this case, but argues that

---

[6]To argue that the special venue provision is of little import, defendants point to *In re Yahoo! Inc.*, 2008 U.S. Dist. LEXIS 20605, *19-22 (C.D. Cal. Mar. 10, 2008) ("None of the cases relied upon by plaintiffs, including *Vigman*, holds that in a securities class action, the usual deference to the plaintiff's choice of forum applies <u>by virtue of</u> the securities acts' special venue provisions.") (emphasis added). *In re Yahoo!* does not, however, undermine the principle that the contours of the 1404(a) analysis can and should take a special venue provision into account.

ORDER DENYING DEFENDANTS' MOTION FOR TRANSFER
C<span style="font-variant:small-caps">ase</span> N<span style="font-variant:small-caps">o.</span> 15-cv-02106-RS
8

potential non-party witnesses may reside in this District or in California because of the large number of defendants' customers located in this state. Defendants have identified a number of Nationwide's current and former employees who reside in the Southern District of Ohio as potential witnesses. While convenience of the witnesses is a central factor in the 1404(a) analysis, the burden remains on defendants to make a strong showing of inconvenience in favor of transfer. As previously discussed, any inconvenience that would be experienced by potential non-party witnesses, such as former employees of Nationwide who reside in Ohio, is significantly reduced by the fact that depositions of these witnesses would still be conducted in Ohio if this case were to proceed in this District. Any inconvenience remaining weighs slightly in favor of transfer, but fails to surpass the threshold required to upset plaintiff's choice of forum.

D. Ease of Access to the Evidence

Given "the reality of electronic communication and transmission," ease of access to the evidence is a neutral factor. *See Holliday*, 2010 WL 3910143, at *8; *Lax v. Toyota Motor Corp.*, 2014 WL 3973482, at *5 (N.D. Cal. Aug. 14, 2014).

E. Familiarity of Each Forum with the Applicable Law

Both districts are equally familiar with the applicable federal law. Thus, familiarity of each forum with the applicable law is also a neutral factor.

F. Feasibility of Consolidation with Other Claims

None of the parties suggest that consolidation is at issue (only potential "coordination" with a pending state action as discussed in connection with convenience to parties). Thus, consolidation with other claims is a neutral factor.

G. Any Local Interest in the Controversy

Both the Southern District of Ohio and the Northern District of California have equal local interests in the matter, given the residence and place of business of the defendants in Ohio and the large number of Nationwide's customers in California. Local interest in the controversy is a neutral factor.

H. <u>Relative Court Congestion and Time of Trial in Each Forum</u>

The differences in relative court congestion and the time to trial in each forum are too small to be significant. Thus, relative court congestion and time to trial also are neutral factors.

### V.   CONCLUSION

Based on the multifactor analysis above, deference to plaintiff's choice of forum serves the interests of justice in this matter. Defendants have failed to make a sufficiently strong showing of inconvenience to upset plaintiff's choice of the Northern District of California. Defendants' motion to transfer this action to the Southern District of Ohio is therefore denied.

**IT IS SO ORDERED**.

Dated: July 21, 2015

_____
RICHARD SEEBORG
United States District Judge