ANTHONY ALEXIS (DC Bar #384545)
DEBORAH MORRIS (Admitted to the NY Bar)
MICHAEL G. SALEMI (IL Bar #6279741)
MELANIE HIRSCH (DC Bar #989310)
EDWARD KEEFE (DC Bar #490713)
PATRICK GUSHUE (PA Bar #306966)
Melanie.Hirsch@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-7944
Fax: 202-435-7080

Attorneys for Plaintiff
Consumer Financial Protection Bureau

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

v.

NATIONWIDE BIWEEKLY ADMINISTRATION, INC., LOAN PAYMENT ADMINISTRATION LLC, AND DANIEL S. LIPSKY,

Defendants.

--------------------------------------------

NATIONWIDE BIWEEKLY ADMINISTRATION, INC.,

Counter-claimant,

v.

CONSUMER FINANCIAL PROTECTION BUREAU,

Counter-defendant.

Case No. 3:15-cv-02106-RS

**NOTICE OF MOTION AND MOTION TO DISMISS OR STRIKE COUNTERCLAIMS**

| | |
|---|---|
| Hearing Date: | May 12, 2016<br>1:30 p.m. |
| Judge: | Hon. Richard Seeborg |
| Courtroom: | Courtroom 3, 17th Floor<br>450 Golden Gate Ave.<br>San Francisco, CA 94102 |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..... ii

NOTICE OF MOTION TO DISMISS OR STRIKE COUNTERCLAIMS ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

STATEMENT OF ISSUES TO BE DECIDED ..... 1

INTRODUCTION ..... 1

BACKGROUND ..... 3

A. The Bureau's Complaint Against Defendants ..... 3

B. Subsequent Proceedings ..... 4

C. Nationwide's Counterclaims ..... 5

STANDARD OF REVIEW ..... 6

ARGUMENT ..... 7

I. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE COUNTERCLAIMS. ..... 7

A. Nationwide Does Not Have Standing To Bring Counterclaims Against the Bureau, Because an Independent Third Party Caused Its Injury and the Requested Relief Will Not Remedy the Injury. ..... 7

B. The Administrative Procedure Act's Waiver of Sovereign Immunity Does Not Permit the Counterclaims. ..... 9

II. NATIONWIDE'S COUNTERCLAIMS DO NOT STATE CLAIMS FOR WHICH RELIEF CAN BE GRANTED. ..... 11

A. Nationwide's Allegations Concerning the Bureau's Communications with Nationwide's Banks Lack Sufficient Facts To State a Plausible Claim. ..... 11

1. Nationwide does not provide specific allegations about actions taken by the Bureau. ..... 11

2. Nationwide's only allegations concerning the Bureau are speculations made on "information and belief." ..... 13

B. Nationwide's Constitutional Counterclaims Fail to Allege Protected Rights or Bureau Infringement of Those Rights. ..... 15

1. Nationwide does not allege that the Bureau infringed upon speech protected by the First Amendment. ..... 15

2. Nationwide does not identify a constitutionally protected property interest that it has been deprived of by the Bureau. ..... 17

III. THE COUNTERCLAIMS SHOULD BE STRUCK FOR FAILURE TO COMPLY WITH FED. R. CIV. P. RULE 15(a)(2). ..... 18

CONCLUSION ..... 20

## TABLE OF AUTHORITIES

**Cases**

*Ajetunmobi v. Clarion Mortg. Capital, Inc.*, 595 F. App'x 680 (9th Cir. 2014) .......................... 11
*Allen v. Wright*, 468 U.S. 737 (1984)............................................................................. 8
*Andrew W. v. Menlo Park City Sch. Dist.*, No. C–10–0292 MMC, 2010 WL 3001216 (N.D. Cal. July 29, 2010) ................................................................................... 20
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)............................................................. passim
*Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972)....................................... 17
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)............................................. 6, 13
*Better Markets, Inc. v. U.S. Dep't of Justice*, 83 F. Supp. 3d 250 (D.D.C. 2015) ..................... 10
*Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60 (1983) ........................................... 15
*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist*, 149 F.3d 971 (9th Cir. 1998)............... 17
*Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466 (9th Cir. 1987)................................................................................................ 19
*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980) ........... 3, 15
*Cevallos v. City of Los Angeles*, 914 F. Supp. 379 (C.D. Cal. 1996) ................................. 18
*City of Oakland v. Lynch*, 798 F.3d 1159 (9th Cir. 2015)............................................ 10
*Clapper v. Amnesty Int'l USA*, --- U.S. ----, 133 S. Ct. 1138 (2013) .................................. 7
*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. FDIC*, --- F. Supp. 3d ---, No. 14-cv-953 (GK), 2015 WL 5675813 (D.D.C. Sept. 25, 2016)............................................................ 12
*Daily v. Fed. Ins. Co.*, No. C 04-3791 PJH, 2005 WL 14734 (N.D. Cal. Jan. 3, 2005) ............... 16
*Delphix Corp. v. Actifo, Inc.*, No. C 13-4613 RS, 2014 WL 4628490 (N.D. Cal. Mar. 19, 2014). ........................................................................................................ 14
*Dunn & Black, P.S. v. United States*, 492 F.3d 1084 (9th Cir. 2007) ................................ 6
*E.J. Friedman Co. v. United States*, 6 F.3d 1355 (9th Cir. 1993).................................... 9
*Goldberg v. Kelly*, 397 U.S. 254 (1970) ............................................................. 17
*Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584 (S.D.N.Y. 2013) ................................ 20
*Groten v. Cal.*, 251 F.3d 844 (9th Cir. 2001) ...................................................... 17

*Hardisty v. Moore*, No. 11CV1591 AJB BLM, 2012 WL 4845548 (S.D. Cal. Oct. 9, 2012)......... 19
*Heckler v. Chaney*, 470 U.S. 821 (1985)............................................................ 2, 9, 10
*In re R. M. J.*, 455 U.S. 191 (1982) ....................................................................15
*Jachetta v. United States*, 653 F.3d 898 (9th Cir. 2011).................................................. 9
*Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116 (9th Cir. 2008)................................. 6
*Kennedy v. Full Tilt Poker*, No. CV 09-07964 MMM (AGRx), 2010 WL 3984749 (C.D. Cal. Oct. 12, 2010)........................................................................ 19
*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005).........................................................13
*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).......................................... 2, 7, 8, 9
*Magnesystems, Inc. v. Nikken, Inc.*, 933 F. Supp. 944 (C.D. Cal. 1996) .............................. 19
*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) ..................................................... 7
*Moore v. Johnson*, 582 F.2d 1228 (9th Cir. 1978)...........................................................17
*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ............................................................ 6
*O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773 (1980) ......................................... 3, 18
*Odessky v. F.T.C.*, 471 F. Supp. 1267 (D.D.C. 1979) ..................................................... 18
*Outdoor Media Grp., Inc. v. City of Beaumont*, 702 F. Supp. 2d 1147 (C.D. Cal. 2010).............17
*People of State of Cal. ex rel. Younger v. Andrus*, 608 F.2d 1247 (9th Cir. 1979) ...................... 6
*Portman v. Cnty. of Santa Clara*, 995 F.2d 898 (9th Cir. 1993.............................................17
*Raditch v. United States*, 929 F.2d 478 (9th Cir. 1991) .....................................................17
*Rizzo v. Dawson*, 778 F.2d 527 (9th Cir. 1985) ..............................................................15
*Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952 (N.D. Cal. 2010)....................11
*Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378 (9th Cir. 1984) ............................................ 8
*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) ................................................. 9
*Stickrath v. Globalstar, Inc.*, No. C07-1941 TEH, 2008 WL 2050990 (N.D. Cal. May 13, 2008)...................................................................................... 16
*Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221 (9th Cir. 1989) .............................................................................................. 6
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)........................................ 12

*United States v. Agnew*, 423 F.2d 513 (9th Cir. 1970) .......... 10

*United States v. Mitchell*, 463 U.S. 206 (1983) .......... 9

*United States v. Philip Morris Inc.*, 304 F. Supp. 2d 60 (D.D.C. 2004) .......... 16

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976) .......... 15

**Statutes**

5 U.S.C. § 701(a) .......... 9

5 U.S.C. § 701(a)(2) .......... 2

5 U.S.C. § 702 .......... 9

12 U.S.C. § 1831p-1 .......... 8

12 U.S.C. § 5515(b)(1) .......... 8

12 U.S.C. § 5531 .......... 3

12 U.S.C. § 5536 .......... 3

12 U.S.C. § 5564(a) .......... 10

**Other Authorities**

S. Rep. No. 94-996, 94th Cong., 2d Sess. .......... 9

**Rules**

Civ. L. R. 7-2 .......... 1

Fed. R. Civ. P. 5.2(a)(4) .......... 5

Fed. R. Civ. P. 11(b) .......... 14

Fed. R. Civ. P. 12(b)(1) .......... 1, 6

Fed. R. Civ. P. 12(b)(6) .......... 1, 6, 11

Fed. R. Civ. P. 12(f) .......... 1

Fed. R. Civ. P. 13 .......... 10, 19

Fed. R. Civ. P. 13(d) .......... 10

Fed. R. Civ. P. 15(a)(2). .......... 1, 2, 19

**Regulations**

12 C.F.R. § 1070.45(a)(4) .......... 5

16 C.F.R. part 310 .......... 3

**Constitutional Provisions**

U.S. Const. amend. I .......... passim

U.S. Const. amend. V .......... passim

U.S. Const. art. III .......... 7

## NOTICE OF MOTION TO DISMISS OR STRIKE COUNTERCLAIMS

Please take notice that on May 12, 2016, at 1:30 p.m., or as soon thereafter as counsel may be heard, Plaintiff Consumer Financial Protection Bureau ("Bureau") will move this Court, pursuant to Civ. L. R. 7-2 and Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(f), to dismiss or strike the counterclaims of Defendant Nationwide Biweekly Administration, Inc. ("Nationwide").

The Court should dismiss the counterclaims asserted in the Second Amended Answer to Complaint and Counterclaim, Dkt. No. 67, for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. The Court should also strike the counterclaims for having been filed in violation of Fed. R. Civ. P. 15(a)(2).

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF ISSUES TO BE DECIDED

Does the Court have jurisdiction over Defendant Nationwide's counterclaims where the alleged harm was caused by independent third parties and cannot be remedied by the requested relief, and where the agency activities are committed to agency discretion by law?

Has Nationwide failed to state a claim when it fails to allege sufficient factual matter to make its conclusory allegations plausible, and the allegations, even if plausible, fail to state a cognizable claim that the Bureau infringed Nationwide's constitutionally protected rights?

Should the Court strike counterclaims that were filed in violation of Fed. R. Civ. P. 15(a)(2)?

### INTRODUCTION

The Bureau sued Defendants Nationwide, Loan Payment Administration LLC, and Daniel S. Lipsky (collectively, "Defendants") for engaging in abusive and deceptive acts and practices related to their marketing and administration of a program that purported to guarantee that consumers would save money on their mortgages. In opposing Defendants' motion to transfer venue, the Bureau properly filed a redacted document identifying banks that held funds on behalf of Nationwide's customers. Nationwide's own allegations describe what happened next: the banks terminated their relationships with Nationwide, advising it that they would consider resuming their relationships only "if Nationwide were able to resolve CFPB's

claims against it." Counterclaim ("CC") ¶ 29, Dkt. No. 67.[1] According to Nationwide, "[o]ther than CFPB's filing of the instant lawsuit against Nationwide and the CFPB's publication of Nationwide's banking partners' names, no other event transpired that would cause Nationwide's long-term banking partners to terminate their relationships with Nationwide and, in fact, the banks cited no other event in their termination." *Id.*

Without seeking leave, as required by Fed. R. Civ. P. 15(a)(2), Nationwide now brings counterclaims against the Bureau for alleged violations of its First and Fifth Amendment rights. The basis of these counterclaims is its allegation, on information and belief, that – contrary to its own explanation for the banks' decisions to terminate their relationships with Nationwide – those decisions were actually the result of "back-room pressure tactics" employed by the Bureau to convince the banks to close Nationwide's accounts. Nationwide seeks injunctive relief and declarations that the Bureau's actions violated the First and Fifth Amendments. The Court should reject the counterclaims for several reasons.

First, this Court lacks subject matter jurisdiction over Nationwide's counterclaims. Nationwide does not have standing to sue the Bureau for an injury that was caused by independent third parties and that Nationwide's requested relief will not remedy. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Furthermore, the waiver of sovereign immunity generally provided by the Administrative Procedure Act ("APA") does not grant courts power to review agency activities, like those alleged here, that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *Heckler v. Chaney*, 470 U.S. 821, 828 (1985).

Second, even assuming this Court could reach the merits of Nationwide's counterclaims, they fail to state a claim for relief. Nationwide's allegations, on information and belief, that the banks terminated their relationships with Nationwide because of the Bureau's "back-room pressure tactics" are not plausible. These allegations are not only contrary to other allegations in the counterclaims that set forth a plausible explanation for the banks' decisions, but they also appear to have been cut and pasted from another complaint, filed by different plaintiffs

[1] "CC" refers to the separately numbered allegations in Nationwide's counterclaims, which begin on page 14 of the Second Amended Answer to Complaint and Counterclaim.

against other federal agencies. Indeed, while the allegations discuss numerous specific actions allegedly taken by these other agencies, Nationwide fails to identify a single specific action taken by the Bureau. Instead, Nationwide merely speculates that the Bureau employed the same tactics alleged to have been employed by these other agencies. These "bare assertions" amount to nothing more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that do not contain facts sufficient to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Third, even if the Court were to credit these implausible allegations, they would not give rise to a cognizable claim under the First or Fifth Amendments. The First Amendment does not protect deceptive commercial speech, *see Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980), and Nationwide does not allege that the Bureau has imposed any restrictions whatsoever on its ability to advertise. Similarly, the only Fifth Amendment right Nationwide asserts is a supposed "right to conduct business," which is not a constitutionally protected property right. In any event, Nationwide does not allege that the Bureau itself deprived it of that right, and "the due process provision of the Fifth Amendment does not apply to the indirect adverse effects of governmental action." *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 789 (1980).

For these reasons, Nationwide's counterclaims should be dismissed in their entirety.

## BACKGROUND

### A. The Bureau's Complaint Against Defendants

The Bureau brought this lawsuit, alleging deceptive and abusive acts and practices in violation of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531, 5536, and the Telemarketing Sales Rule, 16 C.F.R. part 310, on May 11, 2015. The Complaint seeks, *inter alia*, permanent injunctive relief, restitution for consumers, and civil money penalties.

Nationwide offered an "Interest Minimizer" program through which homeowners usually made biweekly, rather than monthly, payments on their mortgage loans. Complaint ("Compl.") ¶ 9, Dkt. No. 1. Consumers who enrolled in the biweekly program divided their monthly mortgage payment in half and remitted that payment to Nationwide every two weeks.

*Id.* Nationwide held consumers' funds in trust accounts with banks before forwarding payments to consumers' mortgage servicers each month. *See id.* Because there are 52 weeks in a year, Nationwide's consumers remitted 26 biweekly payments – the equivalent of 13 monthly payments – to Nationwide each year. *Id.* ¶ 10. Nationwide generally directed that extra monthly payment, comprising two extra biweekly payments, toward the loan principal, with one exception: in the first year of the consumer's enrollment, Nationwide kept the first extra biweekly payment, up to $995, as a setup fee. *Id.* ¶¶ 12-13.

The Bureau's complaint alleges that Nationwide's advertising and telemarketing sales scripts included numerous material misrepresentations and omissions. For example, Nationwide concealed the amount and existence of the program's substantial setup fee. *Id.* ¶¶ 47-51. Nationwide further guaranteed that consumers would save money, *id.* ¶ 29, even though it knew that for the first several years consumers were enrolled in the program, they would pay more to Nationwide in fees than they realized in interest savings. *Id.* ¶ 33. Additionally, Nationwide falsely represented that the only way consumers could achieve this kind of interest savings was through Nationwide's program. *Id.* ¶¶ 41-46. Finally, Nationwide expressly or impliedly misrepresented that it had an affiliation with consumers' mortgage lenders or servicers. *Id.* ¶¶ 52-56.

### B. Subsequent Proceedings

Defendants first filed an answer, raising thirty affirmative defenses, on July 13, 2015. Dkt. No. 34. After Bureau counsel requested that Defendants amend their answer to withdraw several of these defenses, Defendants filed a First Amended Answer that included twenty-four affirmative defenses, Dkt. No. 43, many of which Bureau counsel had asked Defendants to withdraw. Decl. of Melanie Hirsch in Supp. of Mot. to Strike Affirmative Defenses and Mot. to Dismiss or Strike Countercls. ("Hirsch Decl.") ¶¶ 3-4, Dkt. No. 72. The Bureau then filed a motion to strike many of the affirmative defenses in the First Amended Answer. Dkt. Nos. 48, 57.

On January 15, 2016, Defendants' counsel sought the Bureau's consent to Defendants' filing a second amended answer that would, he represented, resolve many of the objections in

the pending motion to strike. Hirsch Decl. ¶ 7. Based on these representations, the Bureau stipulated to Defendants' filing a second amended answer because it "would streamline and clarify the defenses and issues before the Court, thereby serving the interests of efficiency and judicial economy." Dkt. No. 65 ¶ 2, Hirsch Decl. ¶ 8. The Bureau did not stipulate to Defendants' filing counterclaims. Hirsch Decl. ¶ 8. Nevertheless, Defendants' Second Amended Answer to Complaint and Counterclaim, filed on February 2, 2016, Dkt. No. 67, for the first time asserted counterclaims brought by Nationwide, as well as new affirmative defenses.[2]

### C. Nationwide's Counterclaims

Nationwide's counterclaims arise from the fact that the banks where Nationwide held consumer trust accounts – without which Nationwide cannot operate its biweekly program – terminated their relationships with Nationwide in the fall of 2015. *See* CC ¶¶ 24-26. Nationwide has been unable to initiate relationships with new banks. *Id.* ¶¶ 26, 29. As a result, Nationwide had to suspend its biweekly program. *Id.* ¶ 26.

Nationwide alleges that its banks made this decision because of this litigation and would consider reopening Nationwide's accounts upon resolution of the Bureau's suit. *Id.* ¶ 29.[3] Nevertheless, without providing any facts to support the allegation, Nationwide's counterclaims further contend that the Bureau engaged in "back-room pressure tactics to persuade the banks to terminate Nationwide's critical services." *Id.* ¶ 28.

Nationwide asserts that the loss of its banking relationships resulted in two forms of constitutional harm. First, Nationwide asserts that it has been deprived of "its right to conduct its business and advertise its business in violation of the Free Speech Protections of the First Amendment of the Constitution." *Id.* ¶ 35. Second, Nationwide argues that it has been deprived

[2] Contemporaneously with this motion to dismiss or strike Nationwide's counterclaims, the Bureau is filing a separate motion to strike several of Defendants' affirmative defenses. Dkt. No. 70.

[3] As part of this allegation, Nationwide intimates that the Bureau behaved improperly in publicly filing a document identifying Nationwide's banks. CC ¶ 23. But Nationwide does not allege that, when it produced the document to the Bureau, the document was designated a trade secret or privileged or confidential commercial or financial information, and the Bureau may include in public filings information not so designated. 12 C.F.R. § 1070.45(a)(4). The Bureau also properly redacted account numbers pursuant to Fed. R. Civ. P. 5.2(a)(4).

of its "important property right" to "conduct its business" without notice or a hearing, in violation of its Fifth Amendment right to due process. *Id.* ¶¶ 41-42.

**STANDARD OF REVIEW**

On a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the plaintiff (or here, the counter-claimant) must prove that the court has jurisdiction. *See Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Federal courts have limited jurisdiction, resulting in the presumption that they are "without jurisdiction unless the contrary affirmatively appears." *People of State of Cal. ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979) (per curiam) (citation omitted). Dismissal for lack of subject matter jurisdiction is appropriate if a party fails to demonstrate standing, *id.*, or, with respect to an action against a United States agency, if it fails to "establish[] that its action falls within an unequivocally expressed waiver of sovereign immunity by Congress." *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007).

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on the "absence of sufficient facts alleged under a cognizable legal theory" or on the "lack of a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). As stated by the Supreme Court in *Ashcroft v. Iqbal*, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To state a plausible claim, a party must plead more "than a sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 556-57). A complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'naked assertions' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Even if a claim includes sufficient facts, however, it must still be dismissed if it fails to plead a cognizable legal claim. Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

### I. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE COUNTERCLAIMS.

This Court lacks subject matter jurisdiction to hear Nationwide's counterclaims for two reasons. First, Nationwide cannot meet the threshold jurisdictional requirement of establishing standing under Article III of the United States Constitution. Second, the Court has no power to hear these counterclaims under the APA's waiver of sovereign immunity, because the alleged agency activities at issue are committed to agency discretion by law.

#### A. Nationwide Does Not Have Standing To Bring Counterclaims Against the Bureau, Because an Independent Third Party Caused Its Injury and the Requested Relief Will Not Remedy the Injury.

Before a court can consider the merits of an action, it must consider the "threshold question" of whether the party asserting the claim has standing. *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). To establish standing sufficient for the "case" or "controversy" requirement of Article III of the U.S. Constitution, a party must allege (1) that it has suffered an injury in fact; (2) a "causal connection between the injury and the conduct complained of," such that the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) that it is "likely," not "merely speculative," that a favorable decision will redress the injury. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) (citations and internal quotation marks omitted). Furthermore, standing to sue the government is "substantially more difficult to establish" when a party "is not himself the object of the government action or inaction he challenges." *Id.* at 562. Put another way, when the asserted injury "arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed," because in that circumstance "[t]he existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or predict." *Id.* (emphasis in original) (internal quotation marks omitted); *see also Clapper v. Amnesty Int'l USA*, --- U.S. ----, 133 S. Ct. 1138, 1150 (2013) (Supreme Court is "reluctant to endorse standing theories that require guesswork as to how independent

decisionmakers will exercise their judgment”). The requirements for standing apply with equal force to counterclaim plaintiffs. *See Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1384 (9th Cir. 1984) (affirming dismissal of counterclaim for lack of standing).

Here, Nationwide fails the causation and redressability prongs of the standing inquiry. With respect to causation, Nationwide itself states that its harm was caused by the banks' decisions to close its accounts. *See* CC ¶¶ 24-26, 29. Nationwide's claimed injury was thus caused by the independent, discretionary actions of third parties; the banks exercised their independent judgment and decided to sever their relationships with Nationwide. Nor is it plausible to allege that the Bureau caused the injury by coercing the banks into closing Nationwide's accounts “under the guise of protecting the safety and soundness of [the] banks.” *See id.* ¶ 12. Unlike the Federal banking agencies, the Bureau does not have authority to regulate bank safety and soundness and, accordingly, to induce changes in bank behavior related to practices that could prove risky to safety and soundness. *Compare* 12 U.S.C. § 5515(b)(1) (Bureau supervisory authority limited to consumer financial protection) *with id.* § 1831p-1 (giving Federal banking agencies authority to prescribe safety and soundness standards).

Nationwide's pleadings further demonstrate that the requested declaratory and injunctive relief would not redress their injury. Reinstatement of the bank accounts requires action by independent actors – the banks – who are not parties to this litigation. *Defenders of Wildlife*, 504 U.S. at 571 (environmental groups lacked standing to challenge regulation where “redress of the only injury in fact respondents complain of requires action” by entities not party to the suit). Nationwide itself states that the banks would resume their relationships with Nationwide only upon the resolution of the Bureau's lawsuit. CC ¶ 29. Granting Nationwide's requested relief would not resolve the Bureau's lawsuit, and it is therefore highly unlikely that granting the requested relief would cause the banks to resume their business with Nationwide. *See Allen v. Wright*, 468 U.S. 737, 758 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, --- U.S. ----, 134 S. Ct. 1377 (2014) (parents lacked standing to challenge IRS tax exemption policy on racially discriminatory private schools

because it was "entirely speculative" that modifying tax exemption would cause schools to change their behavior); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 45 (1976) (plaintiffs lacked standing to challenge IRS ruling encouraging hospitals to provide fewer services to indigent persons because alleged injury was caused by hospitals; it was "just as plausible that the hospitals . . . would elect to forego favorable tax treatment to avoid the undetermined financial drain of an increase in the level of uncompensated services").

Because both causation and redressability hinge on "the unfettered choices made by independent actors not before the courts," *see Defenders of Wildlife*, 504 U.S. at 562, Nationwide does not have standing to bring its counterclaims.

### B. The Administrative Procedure Act's Waiver of Sovereign Immunity Does Not Permit the Counterclaims.

It is a foundational legal principle that "the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The government's waiver of sovereign immunity cannot be implied, but "must be unequivocally expressed in statutory text." *Jachetta v. United States*, 653 F.3d 898, 903 (9th Cir. 2011) (citing *Lane v. Pena*, 518 U.S. 187, 192 (1996)).

Here, Nationwide appears to invoke the APA's waiver of sovereign immunity as grounds for the Court's jurisdiction over the counterclaims. *See* CC ¶ 4; 5 U.S.C. § 702.[4] But before a party may seek review of federal agency activity under the APA, "a party must first clear the hurdle of [Section] 701(a)," which provides that the APA's chapter on judicial review – including the provision waiving sovereign immunity – applies "except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." *Heckler v. Chaney*, 470 U.S. 821, 828 (1985) (citing 5 U.S.C. § 701(a)); *E.J. Friedman Co. v. United States*, 6 F.3d 1355, 1359-60 (9th Cir. 1993) (holding that the APA does not serve as a valid waiver of sovereign immunity to challenge actions committed to agency discretion by law); *see also* S. Rep. No. 94-996, 94th Cong., 2d Sess., at 2 (observing that waiver of sovereign

[4] Even if the counterclaims were otherwise reviewable, Section 702 limits its waiver of sovereign immunity to actions "seeking relief other than money damages." Section 702 thus bars Nationwide's requests for damages in Paragraphs 38 and 43 of the counterclaims.

immunity in the 1976 amendments to § 702 "would not affect other limitations on judicial review – such as . . . that the action is committed to unreviewable agency discretion").[5]

Judicial review under the APA is not available here because Nationwide challenges the Bureau's decision to commence this action and enforce Federal consumer financial laws, *see* CC ¶ 29; Prayer for Relief ¶¶ 1-2, and that decision is committed to agency discretion. To determine whether an agency activity is "committed to agency discretion," courts look to whether "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830. Without such a standard, a statute "can be taken to have committed the decisionmaking to the agency's judgment absolutely." *Id.* The CFPA provides that if "any person violates a Federal consumer financial law, the Bureau *may* . . . commence a civil action against such person," 12 U.S.C. § 5564(a) (emphasis added), with no further guidance on how to exercise that discretion. The exercise of such enforcement discretion is the quintessential example of action committed to agency discretion. *Heckler*, 470 U.S. at 831 ("an agency's decision not to . . . enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion"); *City of Oakland v. Lynch*, 798 F.3d 1159, 1165 (9th Cir. 2015) (holding that the "Government's decision to file [a] forfeiture action is committed to agency discretion"); *Better Markets, Inc. v. U.S. Dep't of Justice*, 83 F. Supp. 3d 250, 256 (D.D.C. 2015) ("Choosing whether and how to enforce a statute is the quintessential type of action committed to an agency's absolute discretion. Such decisions are presumptively unreviewable.") (citations and internal quotation marks omitted).[6] Accordingly, the Court lacks jurisdiction to consider

---

[5] Fed. R. Civ. P. 13 also does not waive the Bureau's immunity. Fed. R. Civ. P. 13(d) (rule "do[es] not expand the right to assert a counterclaim . . . against the United States or a United States officer or agency"); *United States v. Agnew*, 423 F.2d 513, 514 (9th Cir. 1970) (per curiam) ("[t]he filing of a suit in the name of the United States does not amount to a waiver of sovereign immunity subjecting the United States" to a counterclaim).

[6] Because the allegations that the Bureau coerced Nationwide's banks are vague and conclusory (and therefore not well-pleaded allegations entitled to a presumption of truth, *see infra* Part II.A), it is impossible to separately examine whether this alleged conduct is also subject to agency discretion.

Nationwide's claims for the additional reason that the APA does not waive the Bureau's sovereign immunity.

## II. NATIONWIDE'S COUNTERCLAIMS DO NOT STATE CLAIMS FOR WHICH RELIEF CAN BE GRANTED.

Even if the Court had jurisdiction to consider the counterclaims, they should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. As an initial matter, Nationwide does not allege any factual matter making plausible its claim that Nationwide lost its banking relationships because of Bureau pressure. In addition to this insurmountable obstacle, Nationwide also does not – and cannot – allege the necessary elements of claims under the First and Fifth Amendments.[7]

### A. Nationwide's Allegations Concerning the Bureau's Communications with Nationwide's Banks Lack Sufficient Facts To State a Plausible Claim.

Nationwide's counterclaims are primarily predicated on the Bureau's purported use of "back-room pressure tactics" to persuade Nationwide's banks to terminate Nationwide's accounts. *See* CC ¶¶ 10, 12, 16, 20, 28, 34-35, 40-41. These allegations, however, do not provide sufficient factual matter about actions taken by the Bureau to be plausible.[8]

#### 1. Nationwide does not provide specific allegations about actions taken by the Bureau.

Because Nationwide's counterclaims fail to cite a single concrete action allegedly taken *by the Bureau*, they do not meet the standard enunciated in *Iqbal*. Instead, they make vague, conclusory allegations about actions taken by "CFPB and other federal agencies." *See* CC ¶¶ 12, 15, 16, 20. This fatal omission is likely attributable to the fact that Nationwide's allegations about the Bureau's supposed campaign against it, including the very phrase "back-room pressure tactics," appear to have been almost entirely copied and pasted from a complaint filed

---

[7] Nationwide is therefore not entitled to any relief, and Count III of Nationwide's counterclaims, titled "Declaratory Relief and Preliminary/Permanent Injunctions," cannot pass muster as a standalone claim; "[d]eclaratory and injunctive relief are remedies, not causes of action." *Ajetunmobi v. Clarion Mortg. Capital, Inc.*, 595 F. App'x 680, 684 (9th Cir. 2014); *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010) (same).

[8] While these allegations are also flatly false, they are accepted as true for the purpose of this motion.

by the Community Financial Services Association of America, Ltd. and a payday lender against the Federal Deposit Insurance Corporation ("FDIC"), the Office of the Comptroller of the Currency ("OCC"), and the Board of Governors of the Federal Reserve System ("Board").[9] *Compare* Compl. ¶¶ 52, 55, 60-62, *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. FDIC*, No. 14-cv-953 (GK) (D.D.C. June 5, 2014) ("CFSA Complaint") *with* CC ¶¶ 12-16. Nationwide's allegations in paragraphs twelve through sixteen make only slight modifications to the corresponding allegations in the CFSA Complaint, such as (1) using the term "CFPB and other federal agencies," while the CFSA Complaint uses the term "Defendant agencies"; and (2) deleting the CFSA Complaint's references to payday lenders.[10]

Nationwide cites specific agency actions, but not actions committed by the Bureau. Instead, Nationwide cites the same documents cited in the CFSA Complaint that concern actions taken by other Federal agencies: an FDIC guidance document, CC ¶ 13, CFSA Complaint ¶ 60; a report issued by the House Committee on Oversight and Government Reform, which discusses the FDIC's actions, CC ¶ 12, CFSA Complaint ¶ 52; a letter sent by the chair of the House Committee on Financial Services addressing the use of "reputational risk" by the FDIC, OCC, and Board, CC ¶ 14, CFSA Complaint ¶ 61; and a letter from several members of Congress to the Attorney General and the chair of the FDIC, CC ¶ 16, CFSA

---

[9] This complaint is attached as Exhibit C to the Bureau's Request for Judicial Notice, filed contemporaneously with this motion. Dkt. No. 73. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (courts may consider "matters of which a court may take judicial notice" in ruling on motion to dismiss).

[10] The district court denied the agencies' motion to dismiss for lack of standing, and its reasons for doing so are instructive here. *See Cmty. Fin. Servs. Ass'n of Am., Ltd. v. FDIC*, --- F. Supp. 3d ----, No. 14-cv-953 (GK), 2015 WL 5675813 (D.D.C. Sept. 25, 2016). First, the court held that the CFSA adequately alleged causation by citing to numerous documents, including agency guidance documents and documents discussing the agencies' concern about banks' relationships with payday lenders, that constituted "specific" and "plausible" facts about actions taken by the agencies. *Id.* at *5-6. Here, Nationwide alleges no specific or plausible facts about actions taken by the Bureau. Second, the court found that the CFSA sufficiently pleaded redressability by alleging that the agencies pressured banks through issuing specific guidance documents, such that "a Court order invalidating the guidance documents and enjoining Defendants" would remedy the harm. *Id.* at *10. Not only does Nationwide not cite to any such documents issued by the Bureau, but it also explicitly alleges that only resolution of the Bureau's lawsuit will remedy its injury. CC ¶ 29.

Complaint ¶ 55.[11] The only document Nationwide cites that mentions the Bureau at all – a letter from the chairs of several House committees to the Bureau's director, CC ¶¶ 17-18 – contains no reference to any actions the Bureau itself has taken. It discusses only actions taken by the FDIC.

### 2. Nationwide's only allegations concerning the Bureau are speculations made on "information and belief."

Nationwide's sole allegations involving any action actually taken by the Bureau are vague speculations, made "on information and belief," that "banks terminated their relationship with Nationwide as a result of the CFPB employing a variety of 'Operation Choke Point' back-room pressure tactics to persuade the banks to terminate Nationwide's critical services . . . and/or CFPB's prior use and/or threatened use of 'Operation Choke Point' tactics against banks." CC ¶¶ 28, 35, 40. These assertions are wholly unsupported by "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).

Nationwide's allegations thus resemble the assertions of the plaintiffs in *Iqbal*, who pleaded that government officials served as a discriminatory policy's "principal architect" or were "instrumental" in executing it. 556 U.S. at 681-82. The Court described these allegations as "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements" of the plaintiffs' claim, and it concluded that the allegations were therefore "conclusory and not entitled to be assumed true." *Id.* at 681. The Court reached this conclusion even though the plaintiffs' complaint contained factual allegations about specific activities – such as arresting thousands of Arab Muslim men and keeping them in restrictive conditions of confinement – that the defendants oversaw or approved. *Id.* While those allegations were "consistent" with the plaintiffs' claims of discriminatory intent, the Court held that it was "more likely" that the arrests were "lawful and justified by [a defendant's] nondiscriminatory

[11] Reference to documents named in Defendants' pleading is appropriate under the doctrine of "incorporation by reference," which allows a court to consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [party's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

intent to detain aliens who were illegally present in the United States and who had potential connections to those who committed terrorist acts." *Id.* at 681-82. Here, Nationwide offers no specific factual allegations at all. Furthermore, the "obvious alternative explanation," *id.* at 682, that the banks closed Nationwide's accounts in response to the Bureau's lawsuit, is far more likely. *See* CC ¶ 29.

Nationwide's reliance on speculative "information and belief" pleading further undermines the plausibility of its counterclaims. While the Ninth Circuit has not yet considered the viability of "information and belief" pleading in the wake of *Iqbal*, courts have observed that use of this pleading device must be limited. For example, as this Court has noted, not only is "information and belief" not a "recognized pleading device" in the federal rules, but this phrase is "at best" surplusage; under Fed. R. Civ. P. 11(b), signatories always certify that their factual contentions have evidentiary support. *Delphix Corp. v. Actifo, Inc.*, No. C 13-4613 RS, 2014 WL 4628490, at *1-2 (N.D. Cal. Mar. 19, 2014). As a result, when a pleading employs "information and belief" for some allegations and not others, a court may infer

> that it is intended as caveat, to provide additional protection should plaintiff be unable to prove any of the factual allegations. It thus creates a further inference that plaintiff likely lacks knowledge of underlying facts to support the assertion, and is instead engaging in speculation to an undue degree.

*Id.* at *2. Here, as in *Delphix*, Nationwide uses the phrase only for some allegations: the ones referring to alleged Bureau "back-room" pressure. *See* CC ¶¶ 10, 18, 28, 34-35, 40-42. The Court may therefore infer that Nationwide lacks knowledge of underlying facts that support these assertions. *See id.*

In sum, Nationwide's allegations about the Bureau's actions with respect to Nationwide's banks amount to nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. at 678. They do not constitute well-pleaded allegations entitled to a presumption of truth.

### B. Nationwide's Constitutional Counterclaims Fail to Allege Protected Rights or Bureau Infringement of Those Rights.

Nationwide contends that the Bureau's actions – its lawsuit against Defendants and its purported communications with banks – resulted in violations of its First and Fifth Amendment rights. CC ¶¶ 31-43. But Nationwide has not, and cannot, allege either the existence of protected rights or that the Bureau's actions infringed on those rights.

#### 1. Nationwide does not allege that the Bureau infringed upon speech protected by the First Amendment.

To state a claim under the First Amendment, a party must allege both that it engaged in activity protected by the First Amendment and that the government impermissibly infringed on its right to engage in that activity. *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985). Nationwide does not plausibly allege either of these elements.

First, the Supreme Court has reiterated that "there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980). Governments may regulate commercial speech even where it "is not provably false, or even wholly false, but only deceptive and misleading." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771-72 (1976). As a result, "[m]isleading advertising may be prohibited entirely." *In re R. M. J.*, 455 U.S. 191, 203 (1982). When determining whether speech is commercial, courts consider whether the speech is an advertisement, the speech refers to a specific product, and the speaker has an economic motivation. *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983); *see also Cent. Hudson*, 447 U.S. at 561 ("The Commission's order restricts only commercial speech, that is, expression related solely to the economic interests of the speaker and its audience."); *Va. State Bd. of Pharmacy*, 425 U.S. at 762 (considering speech that does "no more than propose a commercial transaction") (citation omitted).

Here, Nationwide identifies its purportedly protected speech as its marketing, CC ¶¶ 33-35, which is indisputably commercial speech. The Bureau has alleged that this speech is false, deceptive, and misleading, Compl. ¶¶ 64-75, which renders it not entitled to constitutional

protection. Nationwide's contention that its speech is protected thus amounts to nothing more than a disagreement with the Bureau's characterization of its advertising, and that dispute is properly evaluated via the adjudication of the Bureau's lawsuit and Defendants' affirmative defenses, not as a counterclaim. *See* Second Amended Answer ¶ 82, Dkt. No. 67 (affirmative defense based on the First Amendment). That Nationwide has styled its First Amendment argument as a counterclaim is without legal significance, because "[t]he label 'counterclaim' has no magic. What is really an answer or defense to a suit does not become an independent piece of litigation because of its label." *Stickrath v. Globalstar, Inc.*, No. C07-1941 TEH, 2008 WL 2050990, at *3 (N.D. Cal. May 13, 2008) (quoting *Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1379 (7th Cir. 1985)); *see also Daily v. Fed. Ins. Co.*, No. C 04-3791 PJH, 2005 WL 14734, at *6 (N.D. Cal. Jan. 3, 2005) (counterclaims dismissed as redundant where resolution of plaintiff's claims and defendants' affirmative defenses would resolve issues raised by counterclaims) (citing Wright, Miller & Kane, *Federal Practice and Procedure*, Civil 2d § 1406). In short, Nationwide's disagreement with the Bureau's characterization of its advertising as deceptive does not suffice to state a claim that its speech is entitled to constitutional protection.

Second, even if Nationwide could allege that its advertising is entitled to constitutional protection, it fails to state a claim for a First Amendment violation because it does not plead any government restriction on its speech. The only Bureau actions at issue in this counterclaim are the Bureau's request for an injunction in its prayer for relief and the Bureau's alleged communications with Nationwide's banks. *Id.* ¶¶ 33-34. But Nationwide fails to identify any way in which either action has actually restrained its ability to speak. The Bureau has not obtained any injunctive relief prohibiting Nationwide from advertising, and even if it had, injunctive relief is an appropriate remedy for speech held to be misleading. *See United States v. Philip Morris Inc.*, 304 F. Supp. 2d 60, 71 (D.D.C. 2004) ("If the Government successfully establishes that the Defendants disseminated their advertising in furtherance of an overall scheme to defraud, the First Amendment will not present an obstacle to appropriate injunctive and equitable relief to remedy the fraud."). Furthermore, Nationwide alleges only the loss of its

"ability to do business," CC ¶ 34, not its ability to speak. It therefore alleges harm that is "purely economic, rather than constitutional," and "a plaintiff must demonstrate more than economic loss in order to prevail on a First Amendment claim of constitutional harm." *Outdoor Media Grp., Inc. v. City of Beaumont*, 702 F. Supp. 2d 1147, 1162 (C.D. Cal. 2010), *aff'd*, 464 F. App'x 611 (9th Cir. 2011) (citing cases).

### 2. Nationwide does not identify a constitutionally protected property interest that it has been deprived of by the Bureau.

Nationwide's Fifth Amendment counterclaim is also meritless. To state a claim for a violation of procedural due process, a party must allege "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). Resolution of the Bureau's lawsuit will provide all the necessary process, and Nationwide fails to identify either a constitutionally protected interest or any deprivation by the government.

The Fifth Amendment prohibits government deprivation of "life, liberty, or property, without due process of law," U.S. Const. amend. V, but "the range of interests protected by procedural due process is not infinite." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570 (1972).[12] As the Supreme Court has explained, a constitutionally protected property interest arises when a person has "more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577. That entitlement must be based on "the acts of the sovereign, state or federal, manifested in legislation, rules, or customs." *Moore v. Johnson*, 582 F.2d 1228, 1233 (9th Cir. 1978). Courts have identified constitutionally protected property interests in, for example, continuing to receive government benefits, *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970), obtaining a government license where the criteria for the license are non-discretionary, *Groten v. Cal.*, 251 F.3d 844, 850 (9th Cir. 2001), and receiving a salary guaranteed by law or contract. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist*, 149 F.3d 971, 982 (9th Cir. 1998). In

[12] While *Roth* concerned the Fourteenth Amendment, the same principles apply under the Fifth Amendment. *Raditch v. United States*, 929 F.2d 478, 481 (9th Cir. 1991).

contrast, "[n]umerous cases hold that a unilateral expectation of receiving an economic benefit fails to constitute a protected property interest." *Cevallos v. City of Los Angeles*, 914 F. Supp. 379, 383 (C.D. Cal. 1996) (citing cases).

Here, Nationwide has not identified any constitutionally protected property interest. The only interest mentioned at all is Nationwide's asserted "property right" to "conduct its business," CC ¶¶ 41-42, but this purely economic interest is not a constitutionally protected property right. *See Cevallos*, 914 F. Supp. at 384 (retailer's unilateral expectation of profit at city-sponsored festival did not constitute protected property interest).

Even if Nationwide had alleged the existence of a constitutionally protected right, its due process claim would still fail because it does not plead that the Bureau, as opposed to independent third parties, deprived it of that right. The law is clear that "the due process provision of the Fifth Amendment does not apply to the indirect adverse effects of governmental action." *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 789 (1980) (citing cases). The *O'Bannon* Court rejected the contention of nursing home residents that they should have been provided a hearing before the government decertified their nursing home. *Id.* at 785. Notwithstanding that the residents may have suffered "severe hardship" from the decertification, the fact that governmental action leads to substantial harm "does not turn the [action] into a governmental decision to impose that harm." *Id.* at 789; *see also Odessky v. F.T.C.*, 471 F. Supp. 1267, 1272 (D.D.C. 1979) ("The Supreme Court has emphasized that loss of employment or other economic injuries that result only indirectly from government actions, including government investigations, do not provide a cause of action under the due process clause of the [F]ifth [A]mendment."). Nationwide alleges no more than an indirect adverse effect of governmental action, which does not suffice to state a due process claim. *See* CC ¶ 29.

## III. THE COUNTERCLAIMS SHOULD BE STRUCK FOR FAILURE TO COMPLY WITH FED. R. CIV. P. RULE 15(a)(2).

As explained above, Nationwide's counterclaims should be dismissed for lack of subject matter jurisdiction or failure to state a claim. But the Court need not even address those issues

because the counterclaims should be stricken for Nationwide's failure to seek leave to file them, in violation of Fed. R. Civ. P. 15(a)(2).

Under Fed. R. Civ. P. 15(a)(2), a party that may no longer amend its pleading as a matter of course may amend only with the opposing party's written consent or with the court's leave. This rule applies to parties asserting counterclaims under Fed. R. Civ. P. 13, including counterclaims that may have matured after a party's initial pleading. *Magnesystems, Inc. v. Nikken, Inc.*, 933 F. Supp. 944, 947-48 (C.D. Cal. 1996) (citing Fed. R. Civ. P. 13(e)).

Here, the Court granted the parties' stipulation to Defendants' filing a second amended answer on the grounds that amendment "would streamline and clarify the defenses and issues before [the] Court, thereby serving the interests of efficiency and judicial economy." Dkt. No. 66 ¶ 2. The Bureau did not, however, stipulate to Nationwide's filing new claims against the Bureau, which necessarily complicate, rather than streamline, the issues before the Court.[13] The counterclaims thus exceed Defendants' authorization to amend, and the Court should strike them. *See Hardisty v. Moore*, No. 11CV1591 AJB BLM, 2012 WL 4845548, at *4 (S.D. Cal. Oct. 9, 2012) (striking additional claims exceeding scope of court order granting limited leave to amend); *see also Kennedy v. Full Tilt Poker*, No. CV 09-07964 MMM (AGRx), 2010 WL 3984749, at *1 (C.D. Cal. Oct. 12, 2010) (court previously struck amended complaint for failure to seek leave to add new claims or defendants).

Additionally, even if the Court construed Nationwide's newly added counterclaims as a belated motion for leave to amend, the Court should deny that motion as futile. In determining whether to grant leave to amend, courts generally consider four factors: (1) undue delay, (2) bad faith, (3) prejudice, and (4) futility. *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987). Nationwide's counterclaims are futile because, as discussed *supra* Parts I and II, the Court lacks jurisdiction to consider the claims and, in any event, Nationwide does not state claims under the First and Fifth Amendments for which relief can be granted. *See Andrew W. v. Menlo Park City Sch. Dist.*, No. C-10-0292

[13] Had the Bureau known that Nationwide intended to file counterclaims, the Bureau would not have given its consent for Defendants to amend their pleading. *See* Hirsch Decl. ¶ 10.

MMC, 2010 WL 3001216, at *2-3 (N.D. Cal. July 29, 2010) (construing new claims filed without leave to amend as belated motion for leave to amend; denying leave because each new claim would be subject to dismissal). That Nationwide apparently cut-and-pasted its allegations from another complaint further demonstrates the futility of any attempt at amendment. *See Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 597, 600 (S.D.N.Y. 2013) (denying, as futile, leave to amend complaint where "virtually every factual allegation . . . has been lifted from another complaint and edited for relevance").

**CONCLUSION**

For the foregoing reasons, the Bureau respectfully requests that the Court dismiss or strike Nationwide's counterclaims and grant any additional relief the Court deems just and proper.

Dated: March 18, 2016

Respectfully submitted,

MARY MCLEOD
General Counsel

TO-QUYEN TRUONG
Deputy General Counsel

JOHN R. COLEMAN
Assistant General Counsel

ANTHONY ALEXIS
Enforcement Director

DEBORAH MORRIS
Deputy Enforcement Director

MICHAEL G. SALEMI
Assistant Litigation Deputy

/s/ Melanie Hirsch
Melanie Hirsch
melanie.hirsch@cfpb.gov
202-435-7944
Edward Keefe
edward.keefe@cfpb.gov
202-435-9198
Patrick Gushue
patrick.gushue@cfpb.gov
202-435-9671
*Enforcement Attorneys*

Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552