SEAN E. PONIST (CA SBN 204712)
sponist@ponistlaw.com
GEORGIA Z. SCHNEIDER (CA SBN 251358)
gschneider@ponistlaw.com
**LAW OFFICES OF SEAN PONIST, P.C.**
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 798-2222
Fax: (888) 350-5442
*Attorneys for Defendants and Counter-Claimants Nationwide Biweekly Administration, Inc., Loan Payment Administration, LLC, and Daniel S. Lipsky*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONWIDE BIWEEKLY ADMINISTRATION, INC., LOAN PAYMENT ADMINISTRATION LLC, and DANIEL S. LIPSKY,<br><br>Defendants. | Case No. 3:15-cv-02106-RS<br><br>**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS OR STRIKE COUNTERCLAIMS**<br><br>Hearing Date: May 12, 2016, 1:30 p.m.<br>Judge: Hon. Richard Seeborg<br><br>Courtroom: Courtroom 3, 17th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102 |
| NATIONWIDE BIWEEKLY ADMINISTRATION, INC.,<br><br>Counter-Claimant,<br><br>vs.<br><br>CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Counter-Defendant. | |

## TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES. . . . 4

STATEMENT OF ISSUES TO BE DECIDED. . . . 1

STATEMENT OF THE RELEVANT FACTS. . . . 2

I. Facts Relevant To Motions To Dismiss. . . . 2

II. Facts Relevant To Motion To Strike. . . . 5

A. Procedural History. . . . 5

B. The Termination of Nationwide's Banking Relationships. . . . 5

ARGUMENT

I. THE COURT HAS SUBJECT-MATTER JURISDICTION OVER NATIONWIDE'S COUNTERCLAIMS. . . . 6

A. Nationwide Has Met Its Burden To Allege Standing. . . . 6

B. There Exists No Law Committing The CFPB's Wrongful Acts To Its Discretion, Such That 5 U.S.C. § 701 Would Remove Nationwide's Counterclaims From The APA's Broad Waiver Of Sovereign Immunity. . . . 9

II. NATIONWIDE'S COUNTERCLAIMS STATE CLAIMS FOR WHICH RELIEF MAY BE GRANTED. . . . 10

A. Nationwide's Allegations Concerning CFPB's Communications With The Banks State A Claim That Is Plausible On Its Face. . . . 11

1. Nationwide's Allegations Concerning Actions Taken by CFPB Are Sufficiently Specific to Withstand a Motion to Dismiss. . . . 11

2. Nationwide's Allegations, Including Those Made "Upon Information and Belief," Are Entitled to a Presumption of Truth on a Motion to Dismiss. . . . 12

B. Nationwide's Constitutional Counterclaims Properly Allege Both Protected Rights And Infringement Of Those Rights By CFPB. . . . 13

**TABLE OF CONTENTS (CONT'D)**

**Page**


1. Nationwide Has Properly Alleged That CFPB Infringed on Speech Protected by the First Amendment. . . . . 13

2. Nationwide's Right to Conduct Its Business Is a Constitutionally Protected Property Right, and Nationwide Has Properly Alleged That CFPB Deprived It of That Right Without Due Process of Law. . . . . 16

III. NO BASIS EXISTS TO STRIKE THE COUNTERCLAIMS UNDER RULE 12(f). . . . . 19

CONCLUSION. . . . . 20

CERTIFICATE OF SERVICE. . . . . 20

## TABLE OF AUTHORITIES

**Cases** **Page**

*Angelopoulos v. Bottorff*, 76 Cal. App. 621, 245 P. 447 (1926). . . . . . . . . . 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). . . . . . . . . . 11, 13

*Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015).. . . . . . . . . . 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). . . . . . . . . . 11, 13

*Cervantez v. Sullivan*, 719 F. Supp. 899 (E.D. Cal. 1989), *rev'd on other grounds*, 963 F.2d 229 (9th Cir. 1992). . . . . . . . . . 2, 6

*Cevallos v. City of Los Angeles*, 914 F. Supp. 379 (C.D. Cal. 1996). . . . . . . . . . 17

*Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115 (9th Cir. 2010). . . . . . . . . . 7

*City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986). . . . . . . . . . 15

*Cmty. Fin. Servs. Ass'n of Am. v. FDIC*, No. 14-CV-953 (GK), 2015 WL 5675813 (D.D.C. Sept. 25, 2015). . . . . . . . . . 8, 11

*County of Esmeralda v. United States*, 925 F.2d 1216 (9th Cir. 1991). . . . . . . . . . 9

*Daily v. Fed. Ins. Co.*, No. C 04-3791 PJH, 2005 WL 14734 (N.D. Cal. Jan. 3, 2005).. . . . . . . . . . 16

*Delphix Corp. v. Actifo, Inc.*, No. C 13-4613 RS, 2014 WL 4628490 (N.D. Cal. Mar. 19, 2014). . . . . . . . . . 12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167 (2000). . . . . . . . . . 7

*G&G Fire Sprinklers, Inc. v. Bradshaw*, 156 F.3d 893 (9th Cir. 1998), *vacated on other grounds*, 526 U.S. 1061 (1999), *and opinion reinstated*, 204 F.3d 941 (9th Cir. 2000). . . . . . . . . . 17

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997). . . . . . . . . . 11

*Hardisty v. Moore*, No. 11CV1591 AJB BLM, 2012 WL 4845548 (S.D. Cal. Oct. 9, 2012).. . . . . . . . . . 19

*Heckler v. Chaney*, 470 U.S. 821 (1985). . . . . . . . . . 9

*In re R.M.J.*, 455 U.S. 191 (1982). . . . . . . . . . 14

*Johnson v. City of Shelby*, 135 S. Ct. 346 (2014). . . . . . . . . . 13

*Kennedy v. Full Tilt Poker*, No. CV 09-07964 MMM (AGRx), 2010 WL 3984749 (C.D. Cal. Oct. 12, 2010). . . . . . . . . . 19

## TABLE OF AUTHORITIES (CONT'D)

**Cases** **Page**

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014). . . . 7

*Love v. United States*, 915 F.2d 1242 (9th Cir. 1989). . . . 6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). . . . 7, 8

*Merced Dredging Co. v. Merced County*, 67 F. Supp. 598 (S.D. Cal. 1946) . . . . 16

*O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773 (1980). . . . 17, 18

*Pack Shack, Inc. v. Howard County*, 377 Md. 55, 832 A.2d 170 (2003). . . . 14

*Paramount Contractors & Dev'rs, Inc. v. City of Los Angeles*, 805 F. Supp. 2d 977 (C.D. Cal. 2011), *aff'd*, 516 F. App'x 614 (9th Cir. 2013). . . . 14

*Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888 (N.D. Cal. 2015). . . . 7, 8

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004), *cert. denied*, 544 U.S. 1018 (2005). . . . 6

*Scheuer v. Rhodes*, 416 U.S. 232 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). . . . 11

*Stickrath v. Globalstar, Inc.*, No. C07-1941 THE, 2008 WL 2050990 (N.D. Cal. May 13, 2008) . . . . 16

*Thompson v. McCombe*, 99 F.3d 352 (9th Cir. 1996). . . . 6

*Truax v. Corrigan*, 257 U.S. 312 (1921). . . . 16

*United States v. Howell*, 318 F.2d 162 (9th Cir. 1963). . . . 11

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir. 1987). . . . 12, 14

*Walnut Props., Inc. v. City of Whittier*, 861 F.2d 1102 (9th Cir. 1988). . . . 14

*Warner Cable Commc'ns v. City of Niceville*, 911 F.2d 634 (11th Cir. 1990). . . . 14

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000). . . . 6

*Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004). . . . 6

*Wyler Summit P'ship v. Turner Broad. Sys.*, 135 F.3d 658 (9th Cir. 1998). . . . 2, 10

## TABLE OF AUTHORITIES (CONT'D)

**Statutes** **Page**

5 U.S.C. §§ 701–706. . . . . 9
5 U.S.C. § 701. . . . . 9, 10
5 U.S.C. § 702. . . . . 9
5 U.S.C. § 704. . . . . 9
12 U.S.C. § 5564. . . . . 9, 10
Fed. R. Civ. P. 11. . . . . 12
Fed. R. Civ. P. 12. . . . . 2, 6, 18, 19
Fed. R. Civ. P. 13. . . . . 18
Fed. R. Civ. P. 15. . . . . 5, 18, 19
U.S. Const. amend. I. . . . . 14, 15
U.S. Const. amend. V. . . . . 17

**STATEMENT OF ISSUES TO BE DECIDED**

1. Has Nationwide Biweekly Administration, Inc. ("Nationwide"), met its burden to support its claim of Article III standing with general factual allegations of injury resulting from the Consumer Financial Protection Bureau's ("CFPB") conduct, where the Counterclaim contains specific allegations that Nationwide suffered financial injuries and depravation of its constitutional rights as a direct result of actions by CFPB, and seeks monetary damages and injunctive relief to redress those injuries?

2. Do Nationwide's claims fall within the Administrative Procedure Act's ("APA") broad waiver of sovereign immunity for claims by persons harmed by a final administrative agency action for which there is no other adequate remedy in a court, where there exists no statute committing CFPB's relevant acts to the agency's discretion?

3. Has Nationwide stated a claim sufficient to withstand a motion to dismiss, where its counterclaim alleges plausible facts supporting all required elements of its claims, which are entitled to a presumption of truth under the appropriate standard of decision?

4. Has Nationwide adequately stated a claim for violation of its First Amendment rights, where it has alleged that its marketing materials consisted of accurate information, and CFPB's actions intentionally and effectively denied it the opportunity to operate and advertise its business?

5. Has Nationwide adequately stated a claim for violation of its Fifth Amendment due process rights, where it has alleged that CFPB effectively denied Nationwide the right to conduct its business, without notice or opportunity to be heard?

6. Has CFPB stated an adequate basis for a Rule 12(f) motion to strike Nationwide's counterclaims, where CFPB has not asserted that any of the counterclaims are redundant, immaterial, impertinent, or scandalous, and CFPB gave Nationwide written consent to file an amended pleading without specifying any limitations as to the contents of the pleading?

/////

## STATEMENT OF THE RELEVANT FACTS

### I. Facts Relevant To Motions To Dismiss

Upon either a facial challenge to jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) or a motion to dismiss pursuant to Rule 12(b)(6), the court must presume the truth of the allegations in the nonmovant's claims. *See Cervantez v. Sullivan*, 719 F. Supp. 899, 903 (E.D. Cal. 1989), *rev'd on other grounds*, 963 F.2d 229 (9th Cir. 1992); *Wyler Summit P'ship v. Turner Broad. Sys.*, 135 F.3d 658, 661 (9th Cir. 1998). Thus, the facts relevant to the instant motion to dismiss are those set forth in the Second Amended Answer ("Answer") to Complaint and Counterclaim ("CC")[1] (ECF No. 67) filed by Counterclaimant Nationwide against the CFPB. Those facts are as follows:

Nationwide is an Ohio corporation based in Xenia, Ohio. CC ¶ 1, ECF No. 67. CFPB is an independent agency of the United States charged with regulating the offering and provision of consumer financial products and services under federal consumer financial law. CC ¶ 2.

Nationwide was once one of the country's largest and most recognized administrators for biweekly interest savings programs. CC ¶ 6. Nationwide's customers were able to achieve interest savings and reduce their debt much faster by allowing Nationwide to debit smaller amounts biweekly, which were then remitted monthly, as required by their lenders, toward their mortgages. CC ¶ 7. In order to provide this service for consumers, Nationwide partnered with banks that held the customer's funds in trust prior to Nationwide remitting those funds to the customer's lenders once per month as required by the lender. CC ¶ 9.

Although Nationwide provided a lawful and legitimate service that helped thousands of consumers achieve interest savings and reduce their debt much faster, CFPB engaged in a campaign to drive Nationwide out of business by exerting backroom pressure on banks and other regulated financial institutions in order to force them to terminate their relationships with Nationwide. CC ¶ 10.

---

[1]"Answer" and "CC" refer to the separately numbered allegations in Nationwide's counterclaims. The CC begins on page 14 of the Second Amended Answer to Complaint and Counterclaim.

"Operation Choke Point" is an initiative of the U.S. Department of Justice that was announced in 2013, which is investigating banks in the United States and the business they do with payment processors, payday lenders, and other companies believed to be at higher risk for fraud and money-laundering. CC ¶ 11. It is well documented that Operation Choke Point has resulted in many small businesses losing banking relationships. CC ¶ 11. CFPB and other federal agencies, under the guise of protecting the safety and soundness of banks, have waged a covert war against certain legitimate businesses that rely on banking services to function. CC ¶ 12. Operation Choke Point seeks to eliminate certain lawful businesses disfavored by CFPB and other federal agencies, by using the agencies' regulatory and enforcement power to quietly coerce banks to terminate their relationships with the disfavored businesses. CC ¶ 12.

In one of the federal agency's guidance documents, banks are warned against doing business with merchant customers that use more than one financial institution to process payments. CC ¶ 13 (citing FDIC, Fin. Inst. Ltr.: Revised Guidance on Payment Processor Relationships, FIL-3-2012 (Jan. 31, 2012)). Pursuant to such documents, responsible businesses, like Nationwide, seeking to ensure continuity of service for their customers by maintaining relationships with multiple financial institutions, are lumped in together with other disfavored businesses that purportedly use such relationships to obscure fraudulent activities. CC ¶ 13.

CFPB has communicated privately to banks that they will face adverse regulatory action, such as harsh and prolonged examinations and reduced examination ratings, if they continue to do business with financial businesses disfavored by them. CC ¶ 16. The key to Operation Choke Point is that the government forces the termination of banking relationships without any legal process and without any judicial review. CC ¶ 20. Businesses unfortunate enough to be on the receiving end of the CFPB's wrath are effectively "denied their day in court." CC ¶ 20. CFPB uses Operation Choke Point, without any process, to achieve its goals by cutting off the target company from essential banking services, and thereby putting the company out of business without trial or even a hearing. CC ¶ 20.

On or about May 11, 2015, the CFPB filed this suit against Defendants. CC ¶ 21. The

Complaint was filed without following CFPB's Opportunity to Respond and Advise process, and without providing Nationwide with an opportunity to respond to the allegations in advance of the lawsuit. CC ¶ 22. On or about June 2, 2015, in a publicly filed court document, CFPB identified Nationwide's four banking partners (the "Banks"), which were providing critical services to Nationwide's customers, including the amounts of customer funds held by each bank. CC ¶ 23. This information was not part of the public record, and the CFPB did not request to file this information under seal. CC ¶ 23. All of the Banks were regulated by the CFPB. CC ¶ 24. Thereafter, all of the Banks, between June and July 2015, issued letters of termination of Nationwide's accounts. CC ¶ 24. One bank terminated all critical services in September 2015; the other three banks terminated all critical services in November 2015. CC ¶ 24.

The Banks terminated their relationships with Nationwide as a result of the CFPB's employment of or threat to employ a variety of Operation Choke Point backroom pressure tactics, effectively depriving Nationwide of the ability to conduct its business. CC ¶ 28. CFPB's acts were undertaken in order to deprive Nationwide of its right to conduct its business without a hearing, in violation of Nationwide's Fifth Amendment due process rights, and thereby to effectively, preemptively shut down Nationwide's speech in the form of its marketing materials. CC ¶¶ 34, 41-43.

Despite substantial efforts, Nationwide has been unable either to convince the Banks to reconsider their decision to terminate their banking relationship with Nationwide or to forge new banking relationships with other banks. CC ¶ 25. Without the ability to hold money in trust for its customers, Nationwide lost its ability to withdraw money from customers' accounts and remit payments to customers' lenders. CC ¶ 26. As a result, Nationwide had to suspend and/or terminate its services for its customers and has been effectively deprived of its right to conduct business without due process. CC ¶ 26.

The injuries sustained by Nationwide, including damages for lost revenue, harm to its business and goodwill, and infringement and deprivation of its constitutional rights, are the direct result of CFPB's actions. CC ¶¶ 34, 38, 40, 43.

## II. Facts Relevant To Motion To Strike

### A. Procedural History

The Defendants in this action, including Nationwide, filed an Answer on July 13, 2015 and thereafter, on August 10, 2015, filed a First Amended Answer (ECF Nos. 34 & 43). CFPB filed a motion to strike a number of the affirmative defenses asserted in the First Amended Answer (ECF Nos. 48 & 53).

On January 11, 2016, the Court issued an Order granting the unopposed motion of Glenn V. Whitaker, Eric W. Richardson, and Nathan L. Colvin of Vorys Sater, Seymore and Pease, LLP, to withdraw as counsel for Defendants (ECF No. 64). As a result of this transition, new lead counsel for Defendants sought, and obtained, CFPB's consent to amend their pleading pursuant to Rule 15 of the Federal Rules of Civil Procedure. ECF No. 65. Defendants sought to file a second amended answer to address many of CFPB's concerns with the first amended answer, and to streamline and clarify the defenses and issues before the Court. Georgia Z. Schneider Decl. ("Schneider Decl.") ¶ 5. Relying on such consent, the Defendants filed the Second Amended Answer to Complaint and Counterclaim that is the subject of the instant motion on February 2, 2016 (ECF No. 67).

### B. The Termination of Nationwide's Banking Relationships

Nationwide's business requires banking relationships. Sherry Ann Scott Decl. ("Scott Decl.") ¶ 2. Without the ability of a bank to withdraw funds from customers' accounts through the Automated Clearing House and make remittances on behalf of customers, Nationwide cannot conduct its operations. Scott Decl. ¶ 2. As of November 23, 2015, all four of Nationwide's Banks terminated their relationship with Nationwide, resulting in all of Nationwide's 135,000 customers throughout the country having their biweekly interest savings program suspended. Scott Decl. ¶¶ 3-4. Accordingly, the facts giving rise to Nationwide's Counterclaim did not become known until after Defendants' filed their First Amended Answer. Schneider Decl. ¶ 7.

/////

## ARGUMENT

### I. THE COURT HAS SUBJECT-MATTER JURISDICTION OVER NATIONWIDE'S COUNTERCLAIMS

Faced with a motion to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the nonmovant bears the burden of proving the existence of the court's subject-matter jurisdiction. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). A movant's challenge to subject-matter jurisdiction may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). As explained in *Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004), *cert. denied*, 544 U.S. 1018 (2005):

> In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.

*Id.* at 1038.

Here, the CFPB has brought a facial challenge to the court's subject-matter jurisdiction, asserting that this Court lacks jurisdiction because Nationwide has purportedly failed to allege sufficient facts to establish (1) Article III standing, and (2) a waiver of the CFPB's sovereign immunity. Mot. to Dismiss or Strike Counterclaims ("Mot. to Dismiss") 7-11, ECF No. 71.

If, as in the instant case, the movant's challenge to jurisdiction is a facial attack, the nonmovant "is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made." *Cervantez*, 719 F. Supp. at 903. The factual allegations of the complaint are presumed to be true, and the motion is granted only if the nonmovant fails to allege an element necessary for subject-matter jurisdiction. *Id.* The allegations of the complaint must be construed in the light most favorable to the nonmovant. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). Moreover, the nonmovant "is not required to provide evidence outside the pleadings in response to a motion to dismiss." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

#### A. Nationwide Has Met Its Burden To Allege Standing

On a Rule 12(b) motion to dismiss, the party asserting jurisdiction bears the burden of

proving the existence of Article III standing. *Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888, 891 (N.D. Cal. 2015) (citing *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121-22 (9th Cir. 2010)). However, at this early stage in the case, Nationwide's burden to demonstrate the existence of the elements of standing is a relatively light one. The Supreme Court has described it as follows:

> Since [the standing elements] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations and internal quotations marks omitted).

It is true, as noted by the CFPB, that to satisfy Article III's standing requirements, a claimant must demonstrate, inter alia, that the injury it sustained is "fairly traceable to the challenged action of the defendant," and that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Reniger*, 122 F. Supp. 3d at 891 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000)). Nationwide has unmistakably met its burden to support these causation and redressability prongs of the standing inquiry with "general factual allegations of injury resulting from the defendant's conduct." *Lujan*, 504 U.S. at 561. However, the CFPB seeks to hold Nationwide to a much higher burden with regard to these elements than is appropriate on a motion to dismiss.

With respect to the causation prong, Nationwide's Counterclaim alleges that the injuries it sustained, including "damages for lost revenue, harm to its business and goodwill, and infringement and deprivation of its constitutional rights" were the "direct result" of CFPB's actions in applying "'Operation Choke Point' back-room pressure tactics to persuade banks to terminate their relationships with Nationwide," which tactics included "communicat[ing] privately to banks that they will face adverse regulatory action, such as harsh and prolonged examinations and reduced examination ratings, if they continue to do business with financial businesses disfavored by [CFPB

and other federal agencies]." CC ¶¶ 16, 34, 38, 40, 43. CFPB asserts that these allegations are insufficient because Nationwide's injuries were "caused by the banks' decisions to close its accounts." Mot. to Dismiss 8. However, Nationwide is not required to allege that its injuries were exclusively caused by CFPB's actions, without the involvement of any third parties or intervening events in any chain of causation. "Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1391 n.6 (2014). Nationwide's allegations are sufficient to establish that its injuries are "fairly traceable" to CFPB's conduct.

With regard to the redressability prong, it is self-evident that Nationwide's request for injunctive relief will provide redress by halting further violations of Nationwide's constitutional rights by CFPB. CC ¶¶ 38, 43, 46-47. CFPB attempts to obfuscate the issue with an argument that injunctive relief will not immediately cause the Banks to resume their relationships with Nationwide. Again, CFPB seeks to hold Nationwide to an improperly narrow standard. Injunctive relief was but one of the remedies requested in the counterclaims, and the closing of Nationwide's accounts at the Banks was but one of the injuries alleged. Nationwide is not required to allege that each form of requested relief will immediately redress every one of its injuries, it is merely required to make "general factual allegations," *Lujan*, 504 U.S. at 561, demonstrating that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision," *Reniger*, 122 F. Supp. 3d at 891.

The U.S. District Court for the District of Columbia recently addressed a very similar argument in *Community Financial Services Ass'n of America v. FDIC*, No. 14-CV-953 (GK), 2015 WL 5675813 (D.D.C. Sept. 25, 2015). In that case, the plaintiff claimed that the FDIC, like the CFPB in the instant case, had engaged in "backroom pressure tactics" as part of "Operation Choke Point" to force banks to terminate their relationships with the plaintiff. The FDIC claimed, in a motion to dismiss, that the plaintiff had failed to establish the redressability prong of Article III standing, as there was no guarantee that the banks would restore their relationships with the plaintiff if the requested relief was granted. The court, however, held that "[i]f Plaintiffs are able to prove

that injunctive relief would result in a substantial likelihood that banks will restore relationships or not terminate relationships in the future, they have sufficiently established [redressability]." *Id.* at *9. The court further noted that assuming the truth of the plaintiffs' allegations that the defendants' actions had pressured banks into terminating their relationships with the plaintiff, "it is reasonable to conclude that a Court order . . . enjoining Defendants would redress Plaintiffs' injuries," as "in the absence of such pressure, some banks may well choose to reestablish relationships with Plaintiffs," and "the absence of such pressure is also likely to prevent additional banks from terminating relationships with Plaintiffs in the future." *Id.* at *10. Similarly, in the instant case, if the Court assumes the truth of the allegations in Nationwide's Complaint (as it must on a motion to dismiss), that backroom pressure tactics by the CFPB caused banks to terminate their relationships with Nationwide, it is "reasonable to conclude" that a court order enjoining the CFPB from further such actions would redress Nationwide's injuries.

### B. There Exists No Law Committing The CFPB's Wrongful Acts To Its Discretion, Such That 5 U.S.C. § 701 Would Remove Nationwide's Counterclaims From The APA's Broad Waiver Of Sovereign Immunity

The APA, 5 U.S.C. §§ 701–706, contains comprehensive provisions for judicial review of "agency actions." Any person "adversely affected or aggrieved" by agency action; *see id.* § 702, including a "failure to act," is entitled to "judicial review thereof," as long as the action is a "final agency action for which there is no other adequate remedy in a court," *see id.* § 704. However, the waiver does not apply where "agency action is committed to agency discretion by law." *Id.* § 701.

CFPB asserts that Nationwide's claims are barred by the doctrine of sovereign immunity because, it claims, its "agency actions" challenged in this proceeding were "committed to agency discretion by law" as that phrase is used in § 701(a), and are therefore not subject to the APA's waiver of sovereign immunity. Mot. to Dismiss 10. However, § 701(a) creates "a very narrow exception . . . applicable in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (internal quotation marks omitted). In *Heckler*, the Supreme Court interpreted § 701(a) to mean that review

cannot be had under the APA if a statute commits agency action to agency discretion, and if "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Id.*; *see also* 5 U.S.C. § 701(a)(2); *County of Esmeralda v. United States*, 925 F.2d 1216, 1218 (9th Cir. 1991).

The CFPB points to only one statute purportedly committing any of its actions to its discretion—12 U.S.C. § 5564(a)—which provides that "if any person violates a Federal consumer financial law, [CFPB] may . . . commence a civil action against such person." *Id.* § 5564(a). As an initial matter, the only thing committed to the CFPB's discretion in § 5564(a) is the decision whether to "commence a civil action" against a person who has "violate[d] a Federal consumer financial law." Therefore, Nationwide vehemently disputes the applicability of this statute to any of CFPB's acts, as Nationwide did not violate any federal consumer financial law, and in fact provided a lawful and legitimate service to its customers.

However, even assuming, arguendo, that the statute applies to CFPB's decision to commence the instant lawsuit against Nationwide, it has no bearing on the wrongful actions undertaken by the CFPB that took place outside of this suit and gave rise to Nationwide's Counterclaim. No plausible interpretation of § 5564(a) gives the CFPB unfettered discretion to "communicate[] privately to banks that they will face adverse regulatory action, such as harsh and prolonged examinations and reduced examination ratings, if they continue to do business with" a legitimate and lawful business such as Nationwide, CC ¶ 16, to preemptively restrain Nationwide's use of accurate information in its marketing materials, CC ¶¶ 33-35, and to effectively shut down Nationwide's business without a hearing, trial, or other process, CC ¶¶ 40-42. As a result, nothing in either 12 U.S.C. § 5564(a) or 5 U.S.C. § 701(a)(2) removes Nationwide's counterclaims from the broad waiver of sovereign immunity granted by the APA.

## II. NATIONWIDE'S COUNTERCLAIMS STATE CLAIMS FOR WHICH RELIEF MAY BE GRANTED

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In considering a Rule 12(b)(6) motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler*, 135 F.3d at 661 (citation omitted). There is a strong presumption against dismissing an action for failure to state a claim. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). "The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence in support of the claims." *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)).

Further, a claim is sufficient if it shows that the plaintiff is entitled to any relief that the court can grant, even if the complaint asserts the wrong legal theory or asks for improper relief. *See United States v. Howell*, 318 F.2d 162, 166 (9th Cir. 1963).

### A. Nationwide's Allegations Concerning CFPB's Communications With The Banks State A Claim That Is Plausible On Its Face

#### 1. Nationwide's Allegations Concerning Actions Taken by CFPB Are Sufficiently Specific to Withstand a Motion to Dismiss

CFPB's sole argument that Nationwide's counterclaim fails to provide "specific" allegations rests on the fact that Nationwide's claims are similar to the claims asserted in the complaint filed in *Community Financial Services Ass'n*. As indicated above, that case concerns facts analogous to those of the instant case, and specifically concerns improper acts on the part of a number of other federal agencies participating in Operation Choke Point. CFPB's criticism is neither reasonable nor a proper basis for dismissal. The borrowing of phrases from similar documents filed in cases involving similar facts and claims is a widespread, accepted, ancient, and foundational practice of the legal profession. If every complaint that used language similar to a previously filed complaint

were subject to dismissal, the court's docket would be light indeed.

CFPB's argument that Nationwide's Counterclaim fails to cite specific actions committed by CFPB is flatly false. As stated above, the Counterclaim specifically asserts that CFPB applied "'Operation Choke Point' back-room pressure tactics to persuade banks to terminate their relationships with Nationwide," CC ¶¶ 34, 40, which tactics included "communicat[ing] privately to banks that they will face adverse regulatory action, such as harsh and prolonged examinations and reduced examination ratings, if they continue to do business with financial businesses disfavored by [CFPB and other federal agencies]," CC ¶ 16. This is unmistakably "a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

**2. Nationwide's Allegations, Including Those Made "Upon Information and Belief," Are Entitled to a Presumption of Truth on a Motion to Dismiss**

CFPB argues that as a result of Nationwide's use of the phrase "upon information and belief" for some of the allegations in its Counterclaim, "the Court may . . . infer that Nationwide lacks knowledge of the underlying facts that support these assertions." Mot. to Dismiss 14. In support of this assertion, CFPB cites only the unreported case of *Delphix Corp. v. Actifo, Inc.*, No. C 13-4613 RS, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19, 2014). However, the statement in *Delphix* as to what the court may "infer" flatly contradicts the established rule of decision: "On a motion to dismiss for failure to state a claim, the court must presume all factual allegations of the complaint to be true *and draw all reasonable inferences in favor of the nonmoving party*." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) (emphasis added). Pursuant to Federal Rule of Civil Procedure 11(b), by submitting any pleading to the court, the signatory certifies that

> to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b). There is no basis for any inference to the contrary, and this Court should decline to follow the nonbinding and incorrect formulation set forth in *Delphix*.

CFPB further claims that Nationwide's allegations are analogous to the complaint underlying *Iqbal*, 556 U.S. at 678, in which the Court found that the plaintiff had failed to allege sufficient facts (as opposed to legal conclusions and a "formulaic recitation of the elements" of his claim) to survive a motion to dismiss. In *Iqbal*, the Court found that the claimant's assertions of discriminatory intent on the part of various agents "amount[ed] to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim, namely, that petitioners adopted a policy "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group," and that "[a]s such, the allegations [were] conclusory and not entitled to be assumed true." *Id.* at 680-81.

Unlike the complaint underlying *Iqbal*, Nationwide's Counterclaim contains a clear recitation of specific factual events entitling Nationwide to relief, including the allegation that CFPB's improper threats to the Banks caused the Banks to terminate Nationwide's accounts. CC ¶¶ 16, 34, 38, 40, 43. An allegation is sufficient under *Iqbal* (and its predecessor, *Twombly*, 550 U.S. 544), where the claimants "stated simply, concisely, and directly events that, they alleged, entitled them to damages from the [defendant]." *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014).

Although, in *Iqbal*, the Court did conclude that it was "far more likely" that the arrests complained of by the claimant had been lawful and justified by nondiscriminatory intent, that conclusion was made only after its ruling that the plaintiff's allegations of discriminatory intent were not entitled to a presumption of truth. 556 U.S. at 681-82. Nationwide's claims as to the cause of its injuries are entitled to a presumption of truth at this stage in the proceedings, and therefore it would be improper for the Court to dismiss the claims because of some alternate cause proffered by CFPB as more "plausible."

### B. Nationwide's Constitutional Counterclaims Properly Allege Both Protected Rights And Infringement Of Those Rights By CFPB

#### 1. Nationwide Has Properly Alleged That CFPB Infringed on Speech Protected by the First Amendment

CFPB argues that Nationwide's allegations that its marketing consisted of accurate information and constituted protected First Amendment speech, CC ¶¶ 33-35, is insufficient because

"[CFPB] has alleged that this speech is false, deceptive, and misleading . . . which renders it not entitled to constitutional protection," Mot. to Dismiss 21-22. Stated alternately, CFPB argues that Nationwide's allegations are insufficient because CFPB says so. Needless to say, this is not the proper standard under which to evaluate a claim under a motion to dismiss. Once again, "[o]n a motion to dismiss for failure to state a claim, the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher*, 828 F.2d at 561. As such, for purposes of the instant motion, the court must presume that Nationwide's marketing materials constituted "[t]ruthful advertising related to lawful activities," and that Nationwide is, as such, "entitled to the protection of the First Amendment." *In re R.M.J.*, 455 U.S. 191, 203 (1982); *see also* U.S. Const. amend. I.

Moreover, Nationwide has properly alleged an impermissible infringement on its right to disseminate its truthful advertising materials, stating that

> CFPB has employed and continues to employ a variety of 'Operation Choke Point' back-room pressure tactics to persuade banks to terminate their relationships with Nationwide as a backdoor means of restraining Nationwide's marketing practices and free speech—i.e., by shutting down Nationwide's ability to do business, CFPB has effectively, preemptively shut down Nationwide's speech.

CC ¶ 34.

CFPB argues that its actions caused only an economic loss. It is true that courts have distinguished "economic losses" from "First Amendment injuries." *Warner Cable Commc'ns v. City of Niceville*, 911 F.2d 634, 638 (11th Cir. 1990), *cited in Paramount Contractors & Dev'rs, Inc. v. City of Los Angeles*, 805 F. Supp. 2d 977, 990 (C.D. Cal. 2011), *aff'd*, 516 F. App'x 614 (9th Cir. 2013). However, where a regulation imposes excessive burdens on free speech beyond those necessary to further its stated purpose, and those burdens do not leave open alternative avenues for communication, it is a violation of the First Amendment. *See Pack Shack, Inc. v. Howard County*, 377 Md. 55, 64, 832 A.2d 170, 176 (2003). In *Walnut Properties, Inc. v. City of Whittier*, 861 F.2d 1102 (9th Cir. 1988), the court held that a zoning ordinance that would force the county's only existing adult theater "to close at its present location with no definite prospect of a place to relocate," *id.* at 1110, was an impermissible violation of the theater's free speech rights, as the ordinance "left

open insufficient alternative avenues of communication," *id.* at 1112.

A recent decision by Judge Posner of the Seventh Circuit highlights the impropriety of a government actor using threats against a third-party service provider to stifle commercial speech. In *Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015), the plaintiff was a company providing an online forum for classified ads, including ads for "adult" services. The defendant, the sheriff of Cook County, "embarked upon a campaign to crush Backpage's adult section—crush Backpage period, it seems—by demanding that firms such as Visa and MasterCard prohibit the use of their credit cards to purchase any ads on Backpage." *Id.* at 230. The court held that the sheriff's actions violated the First Amendment, stating:

> [T]he sheriff decided to proceed against Backpage not by litigation but instead by suffocation, depriving the company of ad revenues by scaring off its payments-service providers. The analogy is to killing a person by cutting off his oxygen supply rather than by shooting him. . . . [H]e is using the power of his office to threaten legal sanctions against the credit-card companies for facilitating future speech, and by doing so he is violating the First Amendment unless there is no constitutionally protected speech in the ads on Backpage's website—and no one is claiming that. The First Amendment forbids a public official to attempt to suppress the protected speech of private persons by threatening that legal sanctions will at his urging be imposed unless there is compliance with his demands.

*Id.* at 231 (citations omitted).

Moreover, the Supreme Court has distinguished between regulations that merely place an economic burden on a business's ability to exercise free speech and regulations that effectively deny the business a reasonable opportunity to operate at all. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986). In *Renton*, the Court held that despite the fact that "the inquiry for First Amendment purposes is not concerned with economic impact," *id.* at 54, the First Amendment nonetheless required that the government refrain from effectively denying the respondents a reasonable opportunity to open and operate their business within the City.

CFPB's actions directed at Nationwide have imposed burdens far exceeding those necessary to achieve any legitimate purpose, and have not only left Nationwide with insufficient alternative avenues for communication, but have effectively denied the company the ability to operate in any way. Therefore, Nationwide has properly stated a claim for infringement of its First Amendment

rights.

Finally, the fact that the question of the truth or falsehood of the claims made in Nationwide's marketing materials is also at issue in CFPB's affirmative claims does not preclude Nationwide from asserting a counterclaim requiring resolution of that factual dispute or render Nationwide's counterclaim a de facto affirmative defense. In the unpublished cases cited by CFPB, the purported counterclaims were completely redundant of either the plaintiff's claims or the defendant's affirmative defenses and did not state legally cognizable independent claims for relief. *See Stickrath v. Globalstar, Inc.*, No. C07-1941 THE, 2008 WL 2050990, at *2 (N.D. Cal. May 13, 2008) (defendant asserted purported counterclaims that were the "mirror image" of the relief sought by the plaintiff and another that was redundant of its affirmative defenses); *Daily v. Fed. Ins. Co.*, No. C 04-3791 PJH, 2005 WL 14734, at *5 (N.D. Cal. Jan. 3, 2005) (purported counterclaim was redundant of affirmative defense). By contrast, Nationwide's First Amendment counterclaim is not fully redundant with its affirmative defense, as each requires proof of elements that the other does not. Nationwide's affirmative defense asserts that CFPB's Complaint seeks relief that infringes on Nationwide's First Amendment rights, Answer ¶ 82, whereas Nationwide's First Amendment counterclaim asserts, inter alia, that CFPB's extrajudicial actions have infringed on Nationwide's free speech, CC ¶ 34. Moreover, the counterclaim seeks "declaratory and injunctive relief, damages and attorneys' fees and costs," CC ¶ 38, which are neither sought in, nor available for, the affirmative defense.

### 2. Nationwide's Right to Conduct Its Business Is a Constitutionally Protected Property Right, and Nationwide Has Properly Alleged That CFPB Deprived It of That Right Without Due Process of Law

CFPB asserts, in contradiction of decades, if not centuries, of case law, that Nationwide's right to conduct its business is not a constitutionally protected property right. This claim is flatly incorrect. *See Truax v. Corrigan*, 257 U.S. 312, 327 (1921) ("Plaintiffs' business is a property right."); *Merced Dredging Co. v. Merced County*, 67 F. Supp. 598, 604 (S.D. Cal. 1946) ("[P]laintiff's business is a property right, and as such is entitled to protection against the exercise

of state power in contravention of the Federal Constitution."); *Angelopoulos v. Bottorff*, 76 Cal. App. 621, 626, 245 P. 447, 449 (1926) ("We do not think it necessary to cite authorities that the right to conduct a restaurant business is a property right . . . and that the deprivation or interference or prevention of one's engaging in the business of conducting a restaurant is a deprivation of a property right, and that all the cases of this state holding that such property rights cannot be taken away except by due process of law are applicable.").

The case of *Cevallos v. City of Los Angeles*, 914 F. Supp. 379 (C.D. Cal. 1996), cited by CFPB in support of its spurious position, involved a frivolous claim by a sporting goods salesman who sued the City of Los Angeles for canceling a festival, which, he asserted, prevented him from selling sporting goods and violated his (nonexistent) "Fourteenth Amendment right 'to make a profit.'" *Id.* at 382. *Cevallos* plainly has no bearing whatsoever on the case at hand, and CFPB's citation of it is disingenuous at best.

CFPB also claims, incorrectly, that Nationwide has failed to allege that "[CFPB], as opposed to independent third parties," deprived Nationwide of its constitutionally protected property right to conduct its legitimate business. The Counterclaim plainly states that "CFPB's use and/or threatened use of . . . 'Operation Choke Point' tactics has persuaded banks to terminate all critical services for Nationwide, effectively depriving Nationwide of its right to conduct its business without a hearing in violation of Nationwide's Fifth Amendment Due Process rights," and that the damages suffered by Nationwide were the "direct result" of CFPB's actions. CC ¶¶ 41-43.

It is true that the "due process provision of the Fifth Amendment does not apply to the indirect adverse effects of governmental action." *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 789 (1980); *see also* U.S. Const. amend. V. However, nothing about the adverse effects on Nationwide in the instant case was "indirect." The Counterclaim alleges that the elimination of Nationwide's ability to do business was not merely a collateral consequence of otherwise legitimate actions by CFPB, but was in fact the intended result of such actions. CC ¶¶ 12, 20. For purposes of a Fifth Amendment due process claim, where the claimant is the "target of the state's action," there is "no 'indirect' governmental action despite the presence of [others] in the chain of causation." *G&G*

*Fire Sprinklers, Inc. v. Bradshaw*, 156 F.3d 893, 903 (9th Cir. 1998), *vacated on other grounds*, 526 U.S. 1061 (1999), *and opinion reinstated*, 204 F.3d 941 (9th Cir. 2000). Moreover, in a footnote to the *O'Bannon* decision, the Supreme Court expressly noted:

> We of course need not and do not hold that a person may never have a right to a hearing before his interests may be indirectly affected by government action. Conceivably, for example, if the Government were acting against one person for the purpose of punishing or restraining another, the indirectly affected individual might have a constitutional right to some sort of hearing.

447 U.S. at 789 n.22.

Thus, even accepting CFPB's contention that its communication of threats to the Banks in order to persuade them to terminate their relationships with Nationwide constituted "indirect action," such action would fall within the category expressly left open by the *O'Bannon* Court—action taken by the Government against one party for the purpose of punishing or restraining another. In either case, Nationwide has properly asserted a claim for deprivation of Fifth Amendment due process against CFPB.

## III. NO BASIS EXISTS TO STRIKE THE COUNTERCLAIMS UNDER RULE 12(f)

CFPB has moved to strike Nationwide's Counterclaims pursuant to Rule 12(f), which provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, the facts alleged by CFPB do not support the remedy requested.

Federal Rule of Civil Procedure 15(a)(2) provides that a party may "amend its pleading . . . with the opposing party's written consent." *Id.* R. 15(a)(2). Rule 15 governs all forms of amended pleadings. The 2009 abrogation of Rule 13(f) "establishe[d] Rule 15 as the sole rule governing amendment of a pleading to add a counterclaim." *Id.* R. 15 advisory committee notes (to 2009 Amendment). As such, the procedure specified under the rules for seeking leave to amend an answer to assert additional defenses and counterclaims is identical to the procedure for seeking leave to amend an answer without asserting additional defenses and counterclaims.

Pursuant to Rule 15, Nationwide requested, and obtained, CFPB's written consent to file an

amended pleading (ECF No. 65). CFPB now asserts that it would not have granted such permission had it been aware that the amended pleading would contain additional affirmative defenses and counterclaims. This is, at worst, the result of a misunderstanding between counsel, and is an insufficient basis upon which to strike Nationwide's counterclaims. Moreover, if counsel for Defendants had specifically sought consent to amend the answer to include a counterclaim (which they were not required to do), and such consent was denied, Defendants' remedy would have been to seek such relief from the Court, which "the court should freely give . . . when justice requires." Fed. R. Civ. P. 15(b)(2). Here, where the events giving rise to Defendants' cross-claims occurred after the filing of the First Amended Answer, and the cross-claims are compulsory and would be otherwise waived if not asserted, justice requires that Defendants be permitted to amend the answer to include such counterclaims. *See* Schneider Decl. ¶ 7.

The unpublished cases cited by CFPB are inapposite. In *Hardisty v. Moore*, No. 11CV1591 AJB BLM, 2012 WL 4845548 (S.D. Cal. Oct. 9, 2012), the court had entered an order explicitly giving limited leave to amend, and the amended pleading exceeded the scope of the leave given. In *Kennedy v. Full Tilt Poker*, No. CV 09-07964 MMM (AGRx), 2010 WL 3984749, at *1 (C.D. Cal. Oct. 12, 2010), the plaintiff had failed to seek any form of leave to amend. "Failure to conform to the expectations of the adverse party" is not among the enumerated bases to strike a pleading pursuant to Rule 12(f), and research has revealed no cases in which a court has granted such a motion.

/////

**CONCLUSION**

For the foregoing reasons, Nationwide respectfully requests that the Court deny CFPB's Motions to Dismiss or Strike, and grant any additional relief that the Court deems just and proper.

Dated: April 8, 2016 Respectfully submitted,

LAW OFFICES OF SEAN PONIST, P.C.

By: s/ Georgia Z. Schneider
Georgia Z. Schneider, Esquire

Attorneys for Defendants Nationwide Biweekly Administration, Inc., Loan Payment Administration, LLC, and Daniel S. Lipsky

**CERTIFICATE OF SERVICE**

On April 8, 2016, I filed the foregoing document with the Court's CM/ECF filing system, which will serve all parties and counsel of record in this case.

s/ Georgia Z. Schneider
Georgia Z. Schneider, Esquire