ANTHONY ALEXIS (DC Bar #384545)
DEBORAH MORRIS (Admitted to the NY Bar)
MICHAEL G. SALEMI (IL Bar #6279741)
MELANIE HIRSCH (DC Bar #989310)
EDWARD KEEFE (DC Bar #490713)
PATRICK GUSHUE (PA Bar #306966)
JONATHAN URBAN (CO Bar #44190)
Melanie.Hirsch@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-7944
Fax: 202-435-7080

Attorneys for Plaintiff
Consumer Financial Protection Bureau

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

v.

NATIONWIDE BIWEEKLY ADMINISTRATION, INC., LOAN PAYMENT ADMINISTRATION LLC, AND DANIEL S. LIPSKY,

Defendants.

---------------------------------------------

NATIONWIDE BIWEEKLY ADMINISTRATION, INC.,

Counter-claimant,

v.

CONSUMER FINANCIAL PROTECTION BUREAU,

Counter-defendant.

Case No. 3:15-cv-02106-RS

**REPLY IN SUPPORT OF MOTION TO DISMISS OR STRIKE COUNTERCLAIMS**

Hearing Date: May 12, 2016
1:30 p.m.
Judge: Hon. Richard Seeborg
Courtroom: Courtroom 3, 17th Floor
450 Golden Gate Ave.
San Francisco, CA 94102

## STATEMENT OF ISSUES TO BE DECIDED

Does the Court have jurisdiction over Defendant Nationwide Biweekly Administration, Inc.'s ("Nationwide") counterclaims where the alleged harm was caused by independent third parties and cannot be remedied by the requested relief, and where the agency activities are committed to agency discretion by law?

Has Nationwide failed to state a claim when it fails to allege sufficient factual matter to make its conclusory allegations plausible, and the allegations, even if plausible, fail to state a cognizable claim that Plaintiff Consumer Financial Protection Bureau ("Bureau") infringed Nationwide's constitutionally protected rights?

Should the Court strike counterclaims that were filed in violation of Fed. R. Civ. P. 15(a)(2)?

## SUMMARY OF ARGUMENT

Just one month after the Bureau sued Nationwide, banks where Nationwide held funds for customers began to notify Nationwide that they intended to close its accounts. Nationwide could therefore no longer offer its primary product. Eight months later, on its third attempt at an answer, Nationwide for the first time brought counterclaims – foreclosed by its own pleadings – alleging that the Bureau coerced the banks to close Nationwide's accounts.

Nationwide's counterclaims are subject to dismissal under three separate provisions of Rule 12. First, Nationwide has not met its burden of demonstrating the Court's subject matter jurisdiction. Nationwide fails to address that standing is more difficult to establish when the government action at issue involved an independent third party, and it quibbles with the Bureau's decision to bring this lawsuit without acknowledging that Congress, by granting the Bureau discretion to make that decision, has not waived the Bureau's sovereign immunity.

Nor do Nationwide's counterclaims state a claim for which relief can be granted. Its central allegation, which restyles as fact an element critical to each of Nationwide's claims, is a legal conclusion not entitled to the presumption of truth. But even crediting this allegation, Nationwide does not allege facts about the Bureau's actions that are sufficient to state a plausible claim. Furthermore, Nationwide fails to identify Bureau infringement of *any*

constitutional rights; Nationwide has alleged only harm to its business, not its separate ability to advertise, and due process does not protect the supposed "right to conduct one's business."

Finally, Nationwide contends that it filed its counterclaims in compliance with Fed. R. Civ. P. 15(a)(2) without citing a single case supporting its novel reading of that rule. Instead, because improperly filed amendments are a nullity, the counterclaims are subject to strike.

For all of these reasons, Nationwide's counterclaims should be dismissed or struck in their entirety, under Fed. R. Civ. P. 12(b)(1), 12(b)(6), or 12(f).

## ARGUMENT

### I. NATIONWIDE DOES NOT MEET ITS BURDEN TO PROVE THAT THIS COURT HAS SUBJECT MATTER JURISDICTION.

Nationwide does not meet its burden, under Fed. R. Civ. P. 12(b)(1), of proving that this Court has subject matter jurisdiction over its counterclaims. Instead, Nationwide's pleadings fail to allege standing or demonstrate unequivocal waiver of the Bureau's sovereign immunity.

With respect to standing, the actions of independent third parties – Nationwide's banks – break any causal chain. Nationwide ignores the Supreme Court's statement in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), that standing is "substantially more difficult to establish" when a party "is not himself the object of the government action or inaction he challenges"; in that circumstance, "[t]he existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or predict." *Id.* at 562 (internal quotation marks omitted). But *Defenders of Wildlife* perfectly describes the situation here, and as a result, "much more is needed," *id.*, even at the pleading stage. *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 938 (D.C. Cir. 2004). Nationwide, however, offers nothing more than bare conclusions, *see infra* Part II.A, to allege that the Bureau, and not the banks, caused its harm.

Nationwide's argument about redressability is even less supportable, because it identifies the source of its First and Fifth Amendment injuries as the loss of its banking relationships, CC ¶¶ 34, 41, which an order from this Court cannot remedy. Even Nationwide itself states that the accounts will be reinstated only upon resolution of the Bureau's lawsuit,

CC ¶ 29, and it thus pleads itself out of its desired relief. *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) ("a plaintiff may plead herself out of court" by pleading facts establishing she cannot prevail). It also fails to make any specific or plausible factual allegations about actions taken by the Bureau whose retraction will remedy its injury. In contrast, the plaintiffs in *Community Financial Services Association of America, Ltd. v. FDIC* identified specific agency documents that caused their harm and sought rescission of those documents, *see* Compl. ¶¶ 43-47, *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. FDIC*, No. 14-cv-953 (GK) (D.D.C. June 5, 2014) ("CFSA Complaint"), which the court held constituted "specific" or "plausible" facts sufficient to allege redressability. --- F. Supp. 3d ----, No. 14-cv-953 (GK), 2015 WL 5675813, at *5-7 (D.D.C. Sept. 25, 2016). Nationwide has therefore not met its burden of alleging a "substantial likelihood that the injury will be redressed by a favorable judicial decision." *Wash. Env. Council v. Bellon*, 732 F.3d 1131, 1146 (9th Cir. 2013).

Nationwide also fails to meet its burden of demonstrating unequivocal waiver of the Bureau's sovereign immunity. Numerous decisions, including *Heckler v. Chaney*, 470 U.S. 821 (1985), on which Nationwide relies, hold that an agency's determinations about enforcement actions are committed to agency discretion and not reviewable. *See id.* at 831 (decision not to enforce is "generally committed to an agency's absolute discretion"); *City of Oakland v. Lynch*, 798 F.3d 1159, 1165 (9th Cir. 2015) (decision to file action "is committed to agency discretion"). The Administrative Procedure Act does not waive sovereign immunity for such discretionary actions. *See Heckler*, 470 U.S. at 828; *E.J. Friedman Co. v. United States*, 6 F.3d 1355, 1359-60 (9th Cir. 1993). Instead of addressing this settled law or the relevant statutory language granting the Bureau discretion, 12 U.S.C. § 5564(a), Nationwide contends that the Bureau lacked discretion to bring this suit because Nationwide did not violate the law. But Nationwide's disagreement with the Bureau's decision has no bearing on the Bureau's discretion to decide.[1]

[1] Furthermore, as explained *infra* Part II.A, Nationwide's allegations about the Bureau's supposed coercion of Nationwide's banks are not entitled to a presumption of truth.

## II. NATIONWIDE'S ALLEGATIONS DO NOT STATE A CLAIM THAT THE BUREAU VIOLATED ANY OF ITS CONSTITUTIONAL RIGHTS.

Even if this Court had subject matter jurisdiction over Nationwide's counterclaims, they should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted. First, Nationwide's central allegation is a legal conclusion not entitled to the presumption of truth, and Nationwide does not plead facts plausibly suggesting entitlement to relief. Second, Nationwide fails to show either that the Constitution protects the sole right it contends has been violated or that the Bureau violated it.

### A. Nationwide's Allegations About the Bureau Do Not Plausibly Suggest Entitlement to Relief.

The Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), require courts assessing whether pleadings state a claim to conduct a two-part test. Courts must first "discount[]conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). "Conclusory statements" are defined as "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of the claim. *Iqbal*, 556 U.S. at 681 (citing *Twombly*, 550 U.S. at 555). While courts must consider well-pleaded *facts* as true, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see also Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) ("[W]e do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations.") (citation omitted). As a result, in both *Twombly* and *Iqbal*, the Court deemed conclusory allegations that might, at first glance, have seemed factual but upon examination merely restated elements of the plaintiff's claims. *See Iqbal*, 556 U.S. at 676, 681 (plaintiff claiming invidious discrimination must plead that the defendant acted with discriminatory purpose, and plaintiffs alleged exactly that with no supporting facts); *Twombly*, 550 U.S. at 557 (allegation that defendants "ha[d] entered into a contract, combination or conspiracy to prevent competitive entry . . . and ha[d] agreed not to compete with one another" conclusorily restated element of antitrust claim). After discounting conclusory statements, courts then consider, using their judicial experience

and common sense, whether the well-pleaded factual allegations "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

Nationwide fundamentally misunderstands the difference between well-pleaded facts and legal conclusions couched as factual allegations. Nearly every argument in Nationwide's brief depends upon the bare allegation, made upon information and belief, that the Bureau "employ[ed] a variety of 'Operation Choke Point' back-room pressure tactics to persuade the banks to terminate Nationwide's critical services . . . effectively 'scaring off' its banking partners, and depriving Nationwide of the ability to conduct its business." Counterclaim ("CC") ¶ 28, Dkt. No. 67.[2] This allegation simply rephrases, without any specific facts, an essential element of each of Nationwide's claims and arguments: that the Bureau directly targeted Nationwide via its banks. Without this assertion, Nationwide cannot contend that the Bureau, as opposed to the banks, caused its harm; that its desired redress will remedy its injury; that Bureau action is not committed to agency discretion by law; that the Bureau infringed upon its speech; or that the Bureau deprived it of a protected property right. The allegation is therefore nothing more that "a formulaic recitation of [an] element[] of a cause of action," without "further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).[3] It is not entitled to a presumption of truth.

Additional allegations are also not entitled to the presumption of truth. Nationwide repeatedly refers to actions taken by "CFPB and other federal agencies" that cite only documents issued by other federal agencies, as identified in a different lawsuit filed against

[2] This Court's statements in *Delphix Corp. v. Actifo, Inc.*, No. C 13-4613 RS, 2014 WL 4628490, at *1-2 (N.D. Cal. Mar. 19, 2014), concerning scrutiny to be applied to information-and-belief pleadings, comport with other post-*Iqbal/Twombly* decisions. *See, e.g.*, *Clifton v. Houghton Mifflin Harcourt Publ'g Co.*, --- F. Supp. 3d ----, No. 3:15-CV-03985-LB, 2015 WL 9319402, at *3 (N.D. Cal. Dec. 23, 2015) (two-part test for allowing information-and-belief pleading).

[3] "Further factual enhancement" might have included, for example, who communicated with the banks, when the communication occurred, or the means of the communication. *Cf. Erickson v. Boston Scientific Corp.*, 846 F. Supp. 2d 1085, 1092-93 (C.D. Cal. 2011) (deeming conclusory allegations unsupported by facts about "how Defendants deviated from any specific . . . requirements, or how those violations affect the [devices] at issue"); *Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1155 (E.D. Cal. 2010) (conclusory allegation "simply tracks the general elements of strict products liability and contains no pertinent factual allegations," such as what aspects of the product made its design or manufacture defective).

those agencies. *Compare* CFSA Complaint ¶¶ 52, 55, 60-61 *with* CC ¶¶ 12-14, 16. These documents demonstrate that other agencies, not the CFPB, may have engaged in the actions alleged, and the Court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001). Furthermore, Nationwide pleads itself out of court by alleging, CC ¶ 29, that its banks terminated its accounts for other reasons entirely. *See Weisbuch*, 119 F.3d at 783 n.1 (9th Cir. 1997).

After excising allegations not entitled to the presumption of truth from Nationwide's counterclaims, nothing about the Bureau remains. But even if the Court were to give Nationwide's copied-and-pasted allegations the presumption of truth, they would not plausibly suggest entitlement to relief given the "obvious alternative explanation" Nationwide itself provides for the banks' closure of Nationwide's accounts. *See Iqbal*, 556 U.S. at 682. At most, Nationwide's pleadings "permit the court to infer" the "mere possibility of misconduct." *Id.* at 679. That mere possibility is not enough to survive a motion to dismiss.

### B. Nationwide Fails To Allege Violation of Any Constitutional Right.

Neither of Nationwide's constitutional counterclaims includes foundational components of such claims: the violation of a constitutionally protected right by the government. Nationwide does not allege any Bureau impairment of its ability to advertise, which is not protected if advertising is deceptive or misleading, or its supposed "right to conduct business," which is not a constitutionally protected property right.

#### 1. Nationwide's pleadings do not allege any Bureau infringement of constitutionally protected speech.

Nationwide's First Amendment arguments are founded on two errors. First, Nationwide persists in conflating *advertising* for a business – which is speech entitled to some protection if it is truthful – with *conducting* a business, which is not speech at all. It does not allege that it can no longer advertise because, for example, the Bureau shut down its websites or confiscated its direct mailers, and *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230 (7th Cir. 2015), is therefore inapposite. In that case, the operator of a classified advertising website alleged that a

county sheriff demanded that credit card companies prohibit the use of their cards to purchase advertisements on the website. *Id.* The court held that the complaint properly alleged First Amendment violations because the sheriff "threaten[ed] legal sanctions . . . for *facilitating future speech*," *id.* at 231 (emphasis added); in other words, the government action at issue directly restricted speech itself. Here, Nationwide alleges only that the Bureau harmed its business, not that the Bureau took any action targeting its advertising. Nor does *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986), support Nationwide's contention that restrictions on operating a business equate to restrictions on speech. In *City of Renton*, the Court upheld a zoning ordinance limiting locations for adult movie theaters, *id.* at 43, for which the showing of adult films constituted both the business and the relevant speech. Even though the ordinance substantially curtailed where such theaters could be located, the Court found no violation because some locations remained available for the theaters to engage in speech. *Id.* at 54. Here, there is no such equivalency between Nationwide's business and its speech advertising that business. Until this Court adjudicates the Bureau's claims and determines whether injunctive relief is appropriate, Nationwide may advertise however it chooses.

Second, even if Nationwide's deceptive speech is ultimately enjoined, that would be proper, because deceptive commercial speech is not entitled to First Amendment protection. *See, e.g.*, *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980). Nationwide insists that its speech is truthful and not misleading and that the court must accept that contention as true. It fails, however, to cite any allegation in its counterclaim averring that Nationwide's advertisements are truthful. Regardless, such an allegation would constitute no more than a disagreement with the Bureau's complaint that cannot be assessed in isolation. As explained by the Seventh Circuit, when a counterclaim is founded on a disagreement – such as when, in a contract dispute, one party seeks a declaration about the contract's meaning and the other counterclaims to enforce the contract – the complaint and counterclaim are intertwined; "[t]he original complaint brought the dispute into court, and the parties to that complaint are parties to each aspect of the imbroglio." *Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1379 (7th Cir. 1985).

**2. Nationwide's counterclaims do not plead that the Bureau deprived it of a constitutionally protected property right.**

Nationwide does not have a property right, let alone a property right protected by the Fifth Amendment, in a perpetual "right to do business." In arguing otherwise, Nationwide ignores *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 (1972), which makes clear that a protected property interest arises only when a person has "a legitimate claim of entitlement to it," not merely a "unilateral expectation of it." *Id.* at 577. Neither *Truax v. Corrigan*, 257 U.S. 312 (1921), nor any of the other pre-*Roth* cases Nationwide cites, engage in the now-requisite analysis of whether the plaintiff had a legitimate entitlement to continued operation of its business. Indeed, modern due process cases have concluded that "business in the sense of *the activity of doing business*, or the activity *of making a profit* is not property in the ordinary sense." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) (emphasis in original); *see also W. Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1432 (9th Cir. 1985) (rejecting that "the right to continue the operation of a business is a cognizable property interest"). This supposed "right" is not protected for good reason; it boils down to nothing more than "a unilateral expectation of receiving an economic benefit." *See Cevallos v. City of Los Angeles*, 914 F. Supp. 379, 383 (C.D. Cal. 1996). Accordingly, even if Nationwide's conclusory allegations are presumed true, Nationwide has not alleged the deprivation of anything other than an economic benefit to which it has no constitutional entitlement.

Nationwide's pleadings further fail to allege that the Bureau, rather than independent third parties, deprived it of any right, and the law is clear that "the due process provision of the Fifth Amendment does not apply to the indirect adverse effects of governmental action." *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 789 (1980). Nationwide hinges its argument on a footnote hypothesizing that an exemption to the general rule could "[c]onceivably" arise if the government "were acting against one person for the purpose of punishing or restraining another," *id.* at 789-90 n.22, as it posits in its conclusory allegations. But a footnote, of course, is mere dicta, and the Supreme Court has reversed *G & G Fire*

*Sprinklers, Inc. v. Bradshaw*, 156 F.3d 893, 903 (9th Cir. 1998), the only case Nationwide cites for this argument. *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 194-95 (2001).

## III. NATIONWIDE FAILS TO DEMONSTRATE THAT ITS COUNTERCLAIMS SHOULD NOT BE STRUCK, WITHOUT LEAVE TO AMEND, FOR FAILURE TO COMPLY WITH FED. R. CIV. P. 15(a)(2).

Nationwide contends that it filed its counterclaims in compliance with Fed. R. Civ. P. 15(a)(2), even though it lacked either of the rule's prerequisites: the Bureau's consent or the Court's leave. Tellingly, Nationwide does not cite a single case in support of any of its justifications, nor does it bother to address the standard for granting a motion for leave to amend.

First, the parties' stipulation forecloses any argument that the Bureau consented to counterclaims. The Bureau did not consent to amendment without caveat. Instead, it stipulated – and the Court granted the stipulation – to amendment only to the extent that it "would streamline and clarify the defenses and issues before the Court, thereby serving the interests of efficiency and judicial economy." Dkt. No. 65 ¶ 2; Dkt. No. 66. The scope of Nationwide's leave to amend thus excludes new counterclaims, which necessarily complicate and expand the issues before the court. The counterclaims are therefore subject to strike. *Benton v. Baker Hughes*, No. CV 12-07735 MMM MRWX, 2013 WL 3353636, at *3 (C.D. Cal. June 30, 2013), *aff'd sub nom*, *Benton v. Hughes*, 623 F. App'x 888 (9th Cir. 2015) (striking new claims where leave to amend was limited to addressing deficiencies identified in court order).

Second, Nationwide incorrectly posits that Fed. R. Civ. P. 15(a)(2) exempts counterclaims that could not have been brought previously and are compulsory. But Nationwide's own pleadings demonstrate that its counterclaims were mature at the time of the original answer on July 13, 2015, Dkt. No. 34, and First Amended Answer on August 10, 2015, Dkt. No. 43: Nationwide's banks made clear "between June and July 2015" that they intended to terminate Nationwide's accounts. CC ¶ 24. A party need not "await the consummation of threatened injury to obtain preventive relief" if the injury is "impending," *Neal v. Shimoda*, 131 F.3d 818, 825 (9th Cir. 1997) (citation omitted), which was the case in July and August 2015. Furthermore, late-maturing counterclaims are not considered compulsory and may be added

only pursuant to Rule 15. *Kuschner v. Nationwide Credit, Inc.*, 256 F.R.D. 684, 689 (E.D. Cal. 2009).

Third, Nationwide wrongly contends that the Court may not strike a pleading for failure to comply with Fed. R. Civ. P. 15(a). To the contrary, courts routinely do so, because "if an amendment that cannot be made as of right is served without obtaining the court's leave or the opposing party's consent, it is without legal effect." 6 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1484 (3d ed.). Such pleadings are therefore impertinent and immaterial under Fed. R. Civ. P. 12(f). *Larry O. Crother, Inc. v. Lexington Ins. Co.*, No. 2:11-CV-00138-MCE, 2011 WL 1084201, at *1-2 (E.D. Cal. Mar. 21, 2011).

Fourth, Nationwide fails to respond to the Bureau's argument that the Court should neither construe the counterclaims as a motion for leave to amend nor grant that motion. Contrary to Nationwide's assumption, "leave to amend is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). Instead, courts consider whether justice requires leave to amend, which includes (1) undue delay, (2) bad faith, (3) prejudice, and (4) futility. *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987). Here, amendment would be futile. In assessing futility, courts use the test for sufficiency of a claim under Fed. Riv. P. 12(b)(6), *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), and Nationwide's counterclaims cannot survive this test. Courts have also found futility where, as here, "virtually every factual allegation . . . has been lifted from another complaint and edited for relevance." *See Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 597, 600 (S.D.N.Y. 2013).[4]

## CONCLUSION

For the foregoing reasons, the Bureau respectfully requests that the Court dismiss or strike Nationwide's counterclaims and grant any additional relief the Court deems just and proper.

[4] Additionally, leave to amend should be denied because the counterclaims are unduly delayed. Nationwide could have asserted its counterclaims in its original answer, and "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986).

Dated: April 15, 2016

Respectfully submitted,

MARY MCLEOD
General Counsel

TO-QUYEN TRUONG
Deputy General Counsel

JOHN R. COLEMAN
Assistant General Counsel

ANTHONY ALEXIS
Enforcement Director

DEBORAH MORRIS
Deputy Enforcement Director

MICHAEL G. SALEMI
Assistant Litigation Deputy

/s/ Melanie Hirsch
Melanie Hirsch
melanie.hirsch@cfpb.gov
202-435-7944
Edward Keefe
edward.keefe@cfpb.gov
202-435-9198
Patrick Gushue
patrick.gushue@cfpb.gov
202-435-9671
Jonathan Urban
jonathan.urban@cfpb.gov
202-435-7371
*Enforcement Attorneys*

Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552