UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>  Plaintiff,<br><br>  v.<br><br>NATIONWIDE BIWEEKLY ADMINISTRATION, INC., et al.,<br><br>  Defendants. | Case No. 15-cv-02106-RS<br><br>**ORDER RE MOTION TO DISMISS COUNTERCLAIM AND MOTION TO STRIKE AFFIRMATIVE DEFENSES** |

## I. INTRODUCTION

This is a civil enforcement action, brought by the Consumer Financial Protection Bureau, a federal agency, alleging that defendants have violated the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a), 5536(a), 5564(a), 5565, and the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6105(d) and implementing regulations, in connection with a service or product they sold known as the "Interest Minimizer." In response to the complaint, defendants have advanced a counterclaim and certain affirmative defenses that plaintiff contends are not legally viable. Because plaintiff's position largely has merit, its motion to dismiss the counterclaim and to strike the specified affirmative defenses will be granted in part and denied in part, as set out below.

## II.  BACKGROUND

Defendants Nationwide Biweekly Administration, Inc., Loan Payment Administration LLC, and Daniel S. Lipsky (collectively "Nationwide") marketed the Interest Minimizer product by representing that homeowners could save money on their mortgage payments through enrolling in the program.  In one typical form, the program allegedly worked as follows: The homeowner's ordinary monthly payment amount would be divided in half, and that amount would then be automatically deducted from the homeowner's bank account on a bi-weekly basis.  As a result, over the course of one year, the homeowner would make the equivalent of almost one extra monthly payment.  The extra payments would reduce the principal more quickly, thereby resulting in interest savings over the life of the loan.

Some of the additional amount paid, however, would go to Nationwide as a fee for the service.  Plaintiff alleges that Nationwide's various representations regarding the savings a homeowner could realize were misleading or false, particularly because if a homeowner quits participating in the program before several years elapse, the fees paid to Nationwide allegedly will exceed the interest savings.[1]

To operate the Interest Minimizer program, Nationwide contracted with various banks who would make the automatic debits from customers' accounts and hold the funds until they were forwarded to the respective lenders.  Nationwide contends that in conjunction with this lawsuit, plaintiff engaged in "back-room pressure tactics" to persuade banks with whom it did business to terminate those relationships, and that as a result, it has effectively been put out of business with respect to the Interest Minimizer program.

Nationwide's allegations regarding supposed "back-room pressure tactics" appear to be drawn from a case in the District of Columbia specifically mentioned in its counterclaim, *LTD. v.*

---

[1] Presumably, of course, a homeowner could achieve even more interest savings, with no fees paid to Nationwide, merely by setting aside one-half the monthly payment every two weeks, and forwarding the total to the lender each month.  The service provided by Nationwide appears to lie in removing the element of self-discipline that might require.

*Federal Deposit Insurance Corporation*, Case No. 14-CV-953 (GK).  Nationwide contends there the plaintiff alleged certain federal agencies "participated and continue to participate in a campaign initiated by the United States Department of Justice ("DOJ"), known as "Operation Choke Point," to force banks to terminate their business relationships with *payday lenders*." (emphasis added).  Nationwide asserts in its counterclaim, and argues in its briefing, that plaintiff here similarly participated in "Operation Choke Point" to cajole its banking partners to cut it off, even though it is not in the payday lending business.  Nationwide points to reports that Operation Chokehold was intended to target "companies the Administration considers a 'high risk' or otherwise objectionable, despite the fact that they are legal businesses."

Although Nationwide contends its banking partners ceased doing business with it as a result of plaintiff's supposed "back-room pressure tactics," it also suggests that the banks terminated the relationships in direct response to having been named in a document filed in this action in conjunction with a motion to transfer.  Nationwide alleges that it has been unable to reestablish any banking relationships and that, as a result, it has effectively lost the ability to provide Interest Minimizer services to approximately 130,000 customers.

### III. LEGAL STANDARDS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id*.  The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id*. at 679.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); see also *Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

Federal Rule of Civil Procedure 12(f) provides that "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" may be stricken either *sua sponte* or by a party's motion. The function of a 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal citation and quotations omitted). Such motions are "generally disfavored," however, "because [they] may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes v. AT & T Pension Benefit Plan–Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010).

IV. DISCUSSION

A. Motion to dismiss or strike[2] counterclaim

Nationwide's counterclaim seeks "preliminary and permanent injunctive relief to prevent [plaintiff] from abusing its regulatory authority over financial institutions to improperly interfere with [Nationwide's] banking relationships."[3] The gravamen of Nationwide's claimed injury is its contention that plaintiff's "use and/or threatened use of these 'Operation Choke Point' tactics" (1) deprives Nationwide of its "right to conduct its business and advertise its business in violation of the Free Speech Protections of the First Amendment of the Constitution," because it is an "extralegal and unconstitutional prior restraint of speech," and/or; (2) deprives Nationwide of its "right to conduct its business without a hearing in violation of Nationwide's Fifth Amendment Due Process Rights."

1. Standing

Plaintiff first argues that Nationwide cannot establish standing under Article III of the Constitution both because its pleading shows that its alleged injuries were caused by the banks' "independent, discretionary actions" in terminating the relationships, and because any ruling in this action would not restore those relationships. Thus, plaintiff contends, Nationwide cannot

---

[2] To the extent that plaintiff's challenge to the counterclaim(s) is based on procedural questions as to its filing, plaintiff has appropriately labeled its motion as one to strike, in the alternative. Furthermore, plaintiff likely is correct that the stipulated order filed on January 9, 2016 did not contemplate the counterclaim Nationwide subsequently filed. Without condoning Nationwide's filing of a counterclaim without an appropriate stipulation or court order, it would not serve judicial efficiency to strike it on procedural grounds at this juncture. Accordingly, this order will instead address the substance of the motion to dismiss the counterclaim.

[3] Nationwide captions its pleading as a "counterclaim" and goes on to assert three "counts"—one alleging violation of its free speech rights, one alleging a due process violation, and a third for "Declaratory Relief and Preliminary/Permanent Injunctions." The first two counts include references to "damages," although it is not entirely clear whether Nationwide in fact contends it may recover damages absent an appropriate waiver of sovereign immunity. In light of the multiple counts, plaintiff refers to "counterclaims" in the plural, and this order will do likewise.

show either the causation or redressibility elements of standing. *See generally*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (stating that the "irreducible constitutional minimum of standing" contains three elements:   (1) the plaintiff must have suffered an "injury in fact," (2) the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court," and (3)  it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision.")

Plaintiff's causation argument turns on its characterization that the banks' termination of their relationships with Nationwide was "independent" and "discretionary."  Plaintiff's briefing effectively concedes, however, that *if* Nationwide has adequately alleged facts supporting its claim of "back-room pressure tactics" or similar conduct, then the causation element of standing would be satisfied. Nationwide stakes its claim on those allegations of direct pressure exerted against the banks, whether by the "back room" or by the existence of this action, or both.  Either way, it would be premature to conclude at this juncture that Nationwide's factual allegations, if proven, would not show causation.  Whether the present allegations are sufficient to state a claim is a separate issue, discussed below.

As to redressability, plaintiff may be correct that because Nationwide's banking partners are not parties to this litigation, no ruling here *necessarily* will lead to restoration of those relationships.  Nationwide has alleged, however, that the banks are looking for a resolution of this litigation in Nationwide's favor as a condition to resuming the business relationship.  Accordingly, dismissal of the counterclaim for lack of standing is not warranted.

### 2. Sovereign immunity

As plaintiff points out, the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The government's waiver of sovereign immunity cannot be implied, but "must be unequivocally expressed in statutory text." *Jachetta v. United States*, 653 F.3d 898, 903 (9th Cir.

2011) (citing *Lane v. Pena*, 518 U.S. 187, 192 (1996)).  There is no dispute that these principles apply to Nationwide's counterclaims, notwithstanding the fact that the government initiated this suit.

Plaintiff undoubtedly is correct that if, and to the extent, that Nationwide's claims are based merely on plaintiff's decision to file and prosecute this action, sovereign immunity and other bars to the claims would apply. Nationwide relies on the waiver of sovereign immunity in the Administrative Procedures Act.  ("APA") *See* 5 U.S.C. § 702.4.  As plaintiff points out, however, before a party may seek review of federal agency activity under the APA, he or she must first clear the hurdle of Section 701(a), which provides that APA's waiver of sovereign immunity does not apply "to the extent that agency action is committed to agency discretion by law." *See also Heckler v. Chaney*, 470 U.S. 821, 828 (1985) (citing 5 U.S.C. § 701(a)); *E.J. Friedman Co. v. United States,* 6 F.3d 1355, 1359-60 (9th Cir. 1993) (holding that the APA does not serve as a valid waiver of sovereign immunity to challenge actions committed to agency discretion by law). Nationwide could not plausibly argue that plaintiff lacked discretion to file this action.[4]

Again, however, Nationwide's claim is grounded in its allegations that plaintiff engaged in extrajudicial "back-room" conduct, not merely on the filing of this action.  While the sufficiency of those allegations to state a claim is another question, plaintiff has not shown that dismissal on ground of sovereign immunity is warranted.[5]

---

[4]  Nationwide does argue vehemently that plaintiff should not have filed this action without first engaging in the so-called Notice and Opportunity to Respond and Advise process. That issue is discussed further below in connection with the motion to dismiss affirmative defenses.

[5]  Plaintiff reluctantly acknowledges it is "impossible to separately examine" whether Nationwide's allegations regarding coercion of the banks describes conduct that is "also subject to agency discretion," given the conclusory nature of the present counterclaim.  Thus, while dismissal for failure to allege sufficient facts may be warranted, it would be premature to conclude that the claims necessarily are barred by sovereign immunity.  This ruling, of course, will not preclude plaintiff from again raising sovereign immunity if there is still an argument to be made after any amended counterclaim is filed.

### 3. Substance and plausibility

Although plaintiff's arguments for dismissal based on standing or immunity are unpersuasive, its contention that Nationwide has not alleged sufficient facts to state a plausible claim has merit. That said, plaintiff goes too far in accusing Nationwide of failing to observe the distinction between allegations of fact and legal conclusions. Nationwide's counterclaim does allege, as a matter of *fact*, that the DOJ initiated a campaign known as "Operation Choke Point," and that plaintiff participated in that campaign, and persuaded Nationwide's bankers to cease doing business with it, through extra-judicial means. The deficiency in the pleading is not that these are legal conclusions, but that they are conclusory factual allegations without an adequate basis to support plausibility.

The face of the pleading gives rise to an inference that the banks ended their relationships with Nationwide not as the result of any extra-judicial conduct under "Operation Choke Point," but in light of this action. Indeed, Nationwide expressly alleges that a filing in this action led to the banks terminating the contracts. Nationwide's attempt to argue it is plausible that plaintiff also engaged in wrongful extra-judicial conduct is undermined by the fact that the allegations of the counterclaim appear to be derived from another complaint about actions taken against other parties by different government agencies. Additionally, the fact that Nationwide has hedged its allegations regarding plaintiff's supposed participation in Operation Choke Point with the phrase "on information and belief" suggests a possibility of an undue degree of speculation on its part. *See Delphix Corp. v. Actifo, Inc.,* No. C 13-4613 RS, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19, 2014).[6]

Accordingly, Nationwide has failed to allege sufficient plausible facts to support an inference that plaintiff in fact engaged in wrongful conduct that would support a claim not barred by sovereign immunity and/or limitations on standing. The motion to dismiss is therefore granted,

---

[6] Nationwide urges that "this Court should decline to follow the nonbinding and incorrect formulation set forth in *Delphix*." Although *Delphix* is not binding, the Court finds its conclusions persuasive, for the reasons set forth therein.

with leave to amend.[7]

### B. Motion to strike affirmative defenses

Nationwide argues that motions to strike affirmative defenses generally are disfavored. To the extent that a ruling on such a motion will not significantly affect the scope of the litigation, including discovery, that undeniably is correct. *See Facebook, Inc. v. ConnectU LLC*, No. C 07-01389 RS, 2007 WL 2349324, at *2 (N.D. Cal. Aug. 14, 2007) ("Although the pleading of affirmative defenses in overly-conclusory fashion should be avoided for the reasons stated above, the countervailing interest in conserving resources of the parties and the Court warrants denying this motion.") Here, however, plaintiff's motion to strike raises at least some issues that are appropriately addressed at the pleading stage.

#### 1. Tenth affirmative defense

Nationwide's tenth affirmative defense is premised on its claim that plaintiff failed to provide it an opportunity to respond to allegations in advance of this suit because plaintiff did not use its discretionary Notice and Opportunity to Respond and Advise (NORA) process before commencing this action. Plaintiff argues the defense is legally unavailing, for a number of reasons, including that use of the NORA process is discretionary. At the hearing, Nationwide suggested that it (1) intended the defense to rest on more facts than simply the lack of a NORA, and (2) that the reference to "unclean hands" did not belong in the defense. Accordingly, the motion to strike the Tenth affirmative defense will be granted, with leave to amend. Nationwide is advised that leave is granted only to add additional factual underpinnings to support the legal theory currently set out in the defense, and to remove the reference to unclean hands, not to add

---

[7] At oral argument, plaintiff strongly urged that leave to amend be denied. Particularly because Nationwide represents that it is in possession of additional facts that could be pleaded, it not only is within the Court's discretion to grant leave, it likely would be an abuse of discretion not to do so. Whatever short term advantage plaintiff might derive from terminating the counterclaims at this juncture could then disappear, were Nationwide to pursue a successful appeal.

other or different defenses.

### 2. Seventh and Eighth affirmative defenses

The Seventh[8] and Eighth purported affirmative defenses are labeled as "Laches, Estoppel, Waiver" and "Affirmation/Consent/Ratification," respectively. Both are based on allegations that the then-Ohio attorney general settled a lawsuit against Nationwide involving the marketing practices at issue in this action. The Ohio attorney general at the time, Richard Cordray, is now the Director of plaintiff. Nationwide's arguments that equitable defenses may be available against a governmental plaintiff in some circumstances are beside the point. Nationwide has proffered no factual or legal basis on which a federal agency may be equitably precluded from pursuing these claims based on any prior litigation by a state, regardless of whether a former state official now holds federal office. The defenses are stricken, without leave to amend.

### 3. First, Ninth, and Eleventh defenses

The purported defenses of "failure to state a claim," "unauthorized relief" and "public policy" all represent the sort of formulaic pleading that likely fails to state actual affirmative defenses, but which would not warrant a motion to strike in the absence of more substantive disputes. Accordingly, the motion to strike will be denied as to these defenses, with the understanding that they do not expand the scope of the litigation to any degree.

## V.  CONCLUSION

The motion to dismiss the counterclaim is dismissed, with leave to amend. The motion to strike affirmative defenses is granted in part, and denied in part as set forth above. Leave to amend is granted as to the Tenth defense only, and as limited above. Nationwide is advised to

---

[8] The parties agree the answer contains two affirmative defenses labeled as "Seventh," but that only the one entitled as "Laches, Estoppel, Waiver" is at issue in this motion.

1  consider carefully whether it has a good faith basis to advance any further factual allegations in
2  support of the counterclaims or the affirmative defense.  That leave to amend has been granted
3  does not mean it necessarily should be exercised. Any amended answer and counterclaim, or a
4  statement that Nationwide elects not to amend, shall be filed within 20 days of the date of this
5  order.

**IT IS SO ORDERED**.

Dated: May 23, 2016

_____
RICHARD SEEBORG
United States District Judge