ANTHONY ALEXIS (DC Bar #384545)
DEBORAH MORRIS (Admitted to the NY Bar)
MICHAEL G. SALEMI (IL Bar #6279741)
MELANIE HIRSCH (DC Bar #989310)
EDWARD KEEFE (DC Bar #490713)
PATRICK GUSHUE (PA Bar #306966)
JONATHAN URBAN (CO Bar #44190)
Melanie.Hirsch@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-7944
Fax: 202-435-7080

Attorneys for Plaintiff
Consumer Financial Protection Bureau

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

v.

NATIONWIDE BIWEEKLY ADMINISTRATION, INC., LOAN PAYMENT ADMINISTRATION LLC, AND DANIEL S. LIPSKY,

Defendants.

---------------------------------------------

NATIONWIDE BIWEEKLY ADMINISTRATION, INC.,

Counter-claimant,

v.

CONSUMER FINANCIAL PROTECTION BUREAU,

Counter-defendant.

Case No. 3:15-cv-02106-RS

**REPLY IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS AND TO STRIKE PORTIONS OF THIRD AMENDED ANSWER**

| | |
|---|---|
| Hearing Date: | August 11, 2016<br>1:30 p.m. |
| Judge: | Hon. Richard Seeborg |
| Courtroom: | Courtroom 3, 17th Floor<br>450 Golden Gate Ave.<br>San Francisco, CA 94102 |

## STATEMENT OF ISSUES TO BE DECIDED

Has Defendant Nationwide Biweekly Administration ("Nationwide") failed to state a claim when, despite instruction from the Court, it fails to allege sufficient factual matter to state a plausible claim, and the allegations, even if plausible, fail to state a cognizable claim that the Consumer Financial Protection Bureau ("Bureau") infringed Nationwide's constitutionally protected rights or violated the Administrative Procedure Act?

Does the Court have jurisdiction over Nationwide's counterclaims where the alleged harm was caused by independent third parties and cannot be remedied by the requested relief, and where the Bureau's sovereign immunity has not been waived?

To streamline resolution of this action and avoid unnecessary and costly discovery, should the Court strike an affirmative defense that remains legally insufficient, immaterial, or impertinent, and a paragraph filed in violation of the scope of the leave to amend granted to Defendants Nationwide, Loan Payment Administration LLC, and Daniel S. Lipsky (collectively, "Defendants")?

## SUMMARY OF ARGUMENT

This Court has already explained that, to be plausible, Nationwide's counterclaims against the Bureau must allege a "factual nexus" between actions the Bureau took and the decisions of Nationwide's banks to close its accounts. Despite this specific instruction, the addition of 74 new paragraphs to its counterclaims, and its having taken discovery from the Bureau about the Bureau's communications with Nationwide's banks about Defendants, Nationwide has wholly failed to plead such a factual nexus. As a result, Nationwide has not stated a plausible claim for relief, and Nationwide's admittedly circumstantial pleadings fail to either state a claim for which relief can be granted or demonstrate this Court's subject-matter jurisdiction to hear the counterclaims. Furthermore, because Nationwide's purportedly new evidence – which is not actually new – provides no support for the requisite factual nexus, it would be futile to grant further leave to amend. Finally, the Court should strike Defense Nine as insufficient, immaterial, and impertinent; Defendants' alleged prior history of compliance with state regulators has no bearing whatsoever on the issues in this case, nor does the Due

Process Clause require the Bureau to give advance notice of a lawsuit. Discovery into this legally insufficient defense would also be prejudicial to the Bureau.

## ARGUMENT

### I. NATIONWIDE DOES NOT PLEAD A SINGLE FACT ABOUT THE BUREAU'S ACTIONS WITH RESPECT TO ITS BANKS, AND IT THEREFORE CANNOT STATE A CLAIM OR DEMONSTRATE SUBJECT-MATTER JURISDICTION.

#### A. Nationwide Has Failed to Heed This Court's Instruction That It Plead a "Factual Nexus" for its Allegations that the Bureau Coerced Nationwide's Banks.

At oral argument on the Bureau's first motion to dismiss Nationwide's counterclaims, this Court specifically instructed Nationwide that the plausibility of its claims – asserting that the Bureau purportedly used "Operation Choke Point" "back-room pressure" tactics to coerce Nationwide's banks to close its accounts – depended on its ability to provide a "factual nexus to this notion that the [O]peration [C]hoke [P]oint is somehow implicated here." Tr. of May 12, 2016, Hearing ("Tr."), Dkt. No. 83, at 3. In other words, without facts as to actions the Bureau took with respect to Nationwide's banks, "where is the nexus between [Operation Choke Point] and this case?" *See id.* at 5. This Court was clear that the mere filing of the Bureau's lawsuit and the Bureau's concomitant press release constituted "a very plausible event you can point to" for the banks' decisions to close Nationwide's accounts. *Id.* at 8; *cf.* Counterclaim, Dkt. No. 82, ¶ 65 (within hours of the Bureau's announcement of its lawsuit, Nationwide's banks contacted it with concerns about continuing their banking relationships). Accordingly, the Court rejected Nationwide's contention that "[t]he nexus is circumstantial" based on the timeline of events following the Bureau's lawsuit. *See* Tr. at 5-6. In closing, this Court indicated that it would grant Nationwide leave to amend its counterclaims, but "only take me up on that option if you actually can in good faith advance some facts that connect it up." *Id.* at 9; *see also* Order, Dkt. No. 80, at 10-11 (should Defendants wish to amend to add further factual allegations, they should "consider carefully whether [they] ha[ve] a good faith basis to advance any further factual allegations in support of the counterclaims or the affirmative defense. That leave to amend has been granted does not mean it necessarily should be exercised").

Despite this instruction, Nationwide has utterly failed to plead facts demonstrating a factual nexus between "Operation Choke Point," the Bureau, and the loss of its banking relationships. Not once – in either its amended counterclaims or in the purportedly new facts improperly asserted in its opposition, *see* Opp. Br., Dkt. No. 93, at 10-12[1] – does Nationwide mention a single action that the Bureau took with respect to its banks. It does not allege, for example, that Bureau personnel called Nationwide's banks about it, had meetings with the banks about it, sent letters or emails to the banks about it, or issued formal or informal guidance documents directing the banks to cease doing business with it. Instead, Nationwide's only allegations about the Bureau's actions with respect to it are that the Bureau sued it, issued a press release, and filed a document containing information obtained during the Bureau's investigation. The counterclaims' 121 paragraphs offer irrelevant facts about other agencies and other Bureau activities, in an apparent effort to describe a regulatory environment in which financial institutions are risk-averse. They fail, however, to explain how such a regulatory environment is legally actionable, and they include no facts whatsoever supporting Nationwide's conclusory contention that the Bureau supposedly caused Nationwide's banks to terminate its accounts. In contrast, in the cases on which Nationwide relies, the complaint included the requisite factual nexus between the government's action and the plaintiff's harm. The complaint in *Community Financial Services Association of America, Ltd. v. FDIC*, 132 F. Supp. 3d 98, 111 (D.D.C. 2015), identified specific agency documents concerning banks' relationships with the payday loan industry, and the plaintiff in *Backpage.com, LLC v. Dart*, 807 F.3d 229, 232 (7th Cir. 2016), alleged that a sheriff sent a letter to credit card companies requesting that they cease allowing their cards to be used to place ads with Backpage.com.

Not only did Nationwide fail to plead the required factual nexus in its counterclaims, but Nationwide's purportedly "recently discovered," Opp. Br. at 2, June 15, 2015 phone call with

[1] A court may not "look beyond the complaint and consider new facts alleged in [an] opposition" to a motion to dismiss, unless it converts the motion to dismiss into a motion for summary judgment. *Monzon v. S. Wine & Spirits of Cal.*, 834 F. Supp. 2d 934, 941 (N.D. Cal. 2011) (citing *Broam v. Bogan*, 320 F.3d 1023, 1026 (9th Cir. 2003)). Nor did the Bureau direct Nationwide to include additional facts in its brief. Decl. of Patrick Gushue, ¶ 6. If the Court considers Nationwide's additional facts, it should construe them as a motion for leave to amend the counterclaims. As explained *infra* Part II, that motion should be denied.

personnel of U.S. Bank provides no such nexus. The call does not mention any communication, instruction, or guidance from the Bureau, let alone coercive "back room pressure" to terminate Nationwide's account. *See* Dkt. No. 93-1, Ex. 1. Instead, the U.S. Bank employees refer to an independent decision made by "our credit and portfolio management folks" to close Nationwide's account. *Id.* at 4. Similarly, Nationwide's other "additional facts" state that Defendant Daniel S. Lipsky ("Lipsky"), who is not a counterclaim plaintiff, has had issues with his personal accounts or the accounts of his businesses. Nationwide again fails to allege any nexus between these allegations and its contention that the Bureau somehow coerced Nationwide's banks.

Quite simply, Nationwide does not plead the requisite factual nexus between "Operation Choke Point," the Bureau, and the loss of its banking relationships because it cannot: it propounded discovery on the Bureau concerning any communications between it and Nationwide's banks regarding Defendants, and the Bureau informed Nationwide on June 15 and 27, 2016, that, after conducting a reasonable search, it located no responsive documents. Decl. of Patrick Gushue ("Gushue Decl."), ¶¶ 2-3. Nationwide has thus had its chance to seek the facts this Court required. It nevertheless has not alleged the requisite factual nexus or offered any indication that it may be able to do so in future pleadings, and it therefore fails to state a plausible claim.

### B. "Circumstantial" Facts Do Not Render Nationwide's Counterclaims Plausible.

Instead of pleading the required factual nexus, Nationwide concedes that its counterclaims are no more than "[c]ircumstantial." Opp. Br. at 4. While circumstantial facts might suffice in some situations, they cannot do so here, for four reasons.

First, as noted above, this Court required that, to allege a plausible claim, Nationwide plead a non-circumstantial factual nexus between its allegations involving Operation Choke Point, the Bureau, and the banks' decisions to terminate their relationships with Nationwide, *see generally* Tr. at 3-9, as exemplified by the following exchange:

> THE COURT: But where is the nexus to this chokepoint thing?

> MR. PONIST: *The nexus is circumstantial based on the following*. If we look at the timeline of events, my clients have had relationships with these banks for a long time, one of them back – dating back to 2004. Then everything is fine. Nobody has ever attempted to try to terminate the relationship with any one of my clients before and all of a sudden this comes up in 2015. What happened –
>
> THE COURT: But after this case is already filed.
>
> MR. PONIST: Right. After this case is already filed, but my client has been sued before. People get sued all the time. Banks have relationships with customers who have been sued before. And they don't say: Hey, look, you have been sued. We can't do business with you any more.
>
> THE COURT: But we know one specific thing has happened. This lawsuit has happened.

*Id*. at 5-6 (emphasis added).

Second, circumstantial pleading is insufficient to demonstrate that this Court has subject-matter jurisdiction over Nationwide's counterclaims. It cannot suffice to plead the causation or redressability prongs of the standing inquiry when "as in this case, a [party's] asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) (emphasis in original). In such a case, "much more is needed" to establish standing, *id.*, even at the pleading stage. *See Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 938 (D.C. Cir. 2004). Nationwide ignores this case law, instead noting, irrelevantly, that "proximate cause" is not required to demonstrate standing. Opp. Br. at 13 (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1391 n.6 (2014)).[2] But Nationwide has failed to plead *any* Bureau actions that caused *any* action by the banks. Furthermore, Nationwide's circumstantial allegations do not identify Bureau actions that were not "committed to agency discretion by law" or that constituted a "final agency action" such that the Bureau's sovereign immunity has been unequivocally waived. *See* 5 U.S.C. §§ 701(a)(2), 704.

Third, without allegations about actions the Bureau took with respect to Nationwide's banks, Nationwide fails to plead how the Bureau violated the APA or that the Bureau violated

[2] The Court in *Lexmark* also reiterated that, where causation is an element of a cause of action, it "must be adequately alleged at the pleading stage in order for the case to proceed." *Id.*

Nationwide's First or Fifth Amendment rights.[3] A claim under the APA must allege sufficient facts about what the agency actually did. *See Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 721 (9th Cir. 2011) (complaint alleges sufficient facts for APA claim by alleging how agency's practice diverged from required standard and that agency failed to provide data supporting specific decision); *Cota v. United States*, No. C 13-00576 JSW, 2013 WL 6234574, at *6 (N.D. Cal. Dec. 2, 2013) (plaintiff failed to state APA claim when, after opportunity to plead additional facts, he failed "to state what specific regulations and policies were violated and how such procedural deviations violated the APA"). With respect to the First Amendment, unlike in *Backpage.com, LLC v. Dart*, 807 F. 3d 229 at 231, where the plaintiff alleged direct government threats to its advertising service provider, Nationwide has not alleged that the Bureau took any actions that limited its ability to advertise. Similarly, "the due process provision of the Fifth Amendment does not apply to the indirect adverse effects of governmental action," *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 789 (1980), which is all that Nationwide alleges. Nationwide hinges its argument that it need not plead direct facts on a footnote hypothesizing that an exception to this general rule could "[c]onceivably" arise if the government "were acting against one person for the purpose of punishing or restraining another." *Id.* at 789-90 n.22. It has not, however, pleaded any facts about how the

[3] For the reasons explained in more detail in the Bureau's opening brief, Dkt. No. 86, at 16-20, Nationwide also has not pleaded protected constitutional rights at all. First, Nationwide does not allege any way in which the Bureau has infringed upon its ability to engage in protected speech, as opposed to its ability to conduct business; unlike in *Walnut Properties, Inc. v. City of Whittier*, 861 F.2d 1102 (9th Cir. 1988), where a zoning ordinance prohibited an adult theater from showing films and therefore engaging in speech, Nationwide may continue to advertise, and thus speak, however it likes. Second, Nationwide has not alleged the violation of a due process right. Nationwide cites no authority supporting that it has a "legitimate claim of entitlement," *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972), to the right to hold a bank account. Nor does the Ninth Circuit recognize the violation of a liberty right to engage in a chosen trade unless there has been "a *complete prohibition* on the right to engage in a calling, and not a sort of brief interruption," *Guzman v. Shewry*, 552 F.3d 941, 954 (9th Cir. 2008) (emphasis in original) (citing *Conn v. Gabbert*, 526 U.S. 286, 292 (1999)), even if the government denies a necessary permit or license that results in financial loss. *Hickman v. Block*, 81 F.3d 168, 1996 WL 164304, at *3 (9th Cir. Apr. 5, 1996) ("It insufficient for due process purposes that [plaintiff] has been foreclosed from working in one narrow area of employment, or that he has been prevented from practicing in his chosen field in a particular way. Likewise, due process is not offended by the fact that . . . [plaintiff] may miss lucrative business opportunities.") (citing cases)). No such prohibition has been alleged here.

Bureau supposedly so acted. Furthermore, the footnote is dicta, and the Supreme Court has reversed *G & G Fire Sprinklers, Inc. v. Bradshaw*, 156 F.3d 893, 903 (9th Cir. 1998), the only case Nationwide cites for this argument. *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 194-95 (2001).

Finally, Nationwide is incorrect to contend that circumstantial allegations suffice here because "the actual facts are largely in the hands of CFPB." Opp. Br. at 4. To the contrary, Nationwide has already received responses to its discovery requests seeking information about the Bureau's communications with Nationwide's banks regarding Defendants. Gushue Decl. ¶¶ 2-3.

## II. THE COURT SHOULD DENY NATIONWIDE'S REQUEST FOR LEAVE TO AMEND ITS COUNTERCLAIMS A SECOND TIME.

To the extent that this Court considers the additional facts Nationwide details in its opposition, *see* Opp. Br. at 10-12, it should construe those facts as constituting a motion seeking further leave to amend the counterclaims and then deny that motion. The Ninth Circuit has observed that "leave to amend is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). Instead, courts consider whether justice requires leave to amend, which includes considering "undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alterations omitted). Here, amendment would be futile, Nationwide has failed to cure deficiencies, and the proposed amendment is unduly delayed.

In assessing futility, courts use the test for sufficiency of a claim under Fed. R. Civ. P. 12(b)(6), *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), and Nationwide's counterclaims cannot survive this test. As explained *supra* Part I, neither Nationwide's amended counterclaims nor the additional facts set forth in its opposition allege a single action taken by the Bureau with respect to Nationwide's banks about Defendants. This omission is particularly notable because not only did the Court specifically instruct Nationwide how to cure

the counterclaims' deficiencies, but Nationwide took discovery on the Bureau's communications with its banks about Defendants and learned that no such communications occurred. Gushue Decl. ¶¶ 2-3. Nationwide's proposed amendments are therefore futile, because the counterclaims would remain subject to dismissal for failure to state a claim or show subject-matter jurisdiction.

Additionally, all but one of Nationwide's "new" facts could have been alleged in its prior counterclaims, and leave to amend should therefore be denied on the grounds of undue delay. *See AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) ("[I]n evaluating undue delay, we also inquire 'whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading.'") (quoting *Jackson*, 902 F.2d at 1388). Nationwide asserts that it only "recently" learned of a conversation between one of its employees and U.S. Bank employees that took place on June 15, 2015, Opp. Br. at 11, but it does not explain why it could not have included this 13-month-old conversation in earlier iterations of its counterclaims. Similarly, Nationwide describes four unpleaded instances where Lipsky or a non-party business he owned had difficulty with a bank, *id*. at 11, but three of those instances occurred prior to the filing of Nationwide's amended counterclaims.

## III. THE COURT SHOULD STRIKE DEFENSE NINE AND PARAGRAPH 36 OF THE THIRD AMENDED ANSWER.

Defendants assert that Defense Nine of their Third Amended Answer ("TAA"), Dkt. No. 82, should not be struck because the Bureau did not provide them with pre-suit notice of their violations and they were not on notice of what conduct complies with the law. *See* Opp. Br. at 22-25. Defendants also argue that keeping Defense Nine in the TAA is appropriate at this juncture and would not prejudice the Bureau. *Id*. The Court should reject both arguments because Defense Nine does not provide a defense to the Bureau's claims and does not state a claim for a due process violation.

Defendants argue that they lacked notice as to the "regulations promulgated under the Consumer Fraud Protection Act [sic]" and had been in compliance with other unidentified consumer protection laws enforced by state regulators for over a decade, laws that they

describe as "substantially similar as [sic] state and federal consumer protection laws already in effect." *Id.* at 23. Defendants contend that they were unable to "comply with the new regulatory approach" and were "blindsided" by this action. *Id.* at 23-24. Therefore, Defendants conclude, the Bureau violated due process by filing the complaint without providing advance warning to Defendants. This argument fails, however, because the Due Process Clause does not require the government to inform subjects of violations of law prior to filing suit.[4] Defendants ignore all of the cases in the Bureau's opening brief establishing this principle and instead cite *United States v. AMC Entertainment, Inc.*, 549 F.3d 760, 768 (9th Cir. 2008). That case, however, is inapposite and applied due process to bar a government agency from applying a substantive change in position retroactively with respect to a government regulation, which is not at issue in this case.

Here, the Bureau does not seek to retroactively expand or change the prohibition against deceptive acts or practices that has existed in federal law for decades. *See Consumer Fin. Prot. Bureau v. Siringoringo*, No. SACV 14–01155 JVS, 2016 WL 102435, at *4 (C.D. Cal. Jan. 7, 2016) ("[T]he standard for a CFPA deception claim is the same as the standard under section 5(a) of the Federal Trade Commission Act."). In other words, the Bureau does not dispute that, for the purposes of this action, the CFPA's prohibition against deceptive acts or practices (enacted in 2010) is coextensive with the FTC Act's prohibition against deceptive acts or practices (enacted decades ago). Thus, even assuming a "change in the application of the law" or "new regulatory approach" implicates due process concerns, that concern is not present here.

Similarly, the TSR has existed in some form for over two decades. The TSR prohibits telemarketers from, example, failing to disclose truthfully and in a clear and conspicuous manner the total cost to purchase before a consumer consents to pay, or misrepresenting the

---

[4] As explained in the Bureau's opening brief, the Bureau's decision not to engage in its discretionary, precomplaint NORA process does not constitute a deprivation of due process or a violation of the APA. Dkt. No. 86, at 23-24. Defendants have not responded to the Bureau's arguments on this critical point and appear to have changed their position by arguing that due process requires advance notice – more generally – before the government may file an enforcement action.

total cost to purchase the services. *See* 16 C.F.R. §§ 310.3(a)(1)(i), 310.3(a)(2)(i). Defendants cannot credibly claim – and do not allege – that they needed more notice of these rules before the Bureau could enforce them.

Finally, with respect to the Bureau's claims that Defendants engaged in abusive conduct in violation of the CFPA (Count I), the Bureau does not dispute that the CFPA's prohibition against abusive acts or practices was new with that Act's 2010 enactment. But the Bureau is not seeking to hold defendants liable for its abusive acts or practices occurring before the CFPA's passage. Moreover, the CFPA's prohibition on abusive acts or practices is sufficiently clear to put Defendants on notice of what conduct will violate that prohibition. *See* 12 U.S.C. § 5531(d) (describing standard for abusive acts or practices); *see also Consumer Fin. Prot. Bureau v. ITT Educ. Servs., Inc.*, No. No. 1:14-CV-00292-SEB, 2015 WL 1013508, at *20 (S.D. Ind. Mar. 6, 2015) (CFPA's prohibition on "abusive" practices provides the minimal level of clarity that due process clause demands of non-criminal economic regulation and thus is not unconstitutional). The Court should therefore strike Defense Nine as legally insufficient, immaterial, and impertinent. For the same reasons and those in the Bureau's opening brief (to which Defendants failed to respond), striking Defense Nine is also appropriate at this juncture because discovery into this legally insufficient defense would be prejudicial. *See* Dkt. No. 86, at 24-25.

Finally, the Court should strike Paragraph 36 from the TAA for the reasons stated in the Bureau's opening brief. *Id.* at 25. Regardless of Defendants' characterization of the textual change as a "semantical clarification," the amendment was made without leave of Court and is a nullity without legal effect. Therefore, it should be struck.

**CONCLUSION**

For the foregoing reasons, the Bureau respectfully requests that the Court dismiss Nationwide's counterclaims, strike Defense Nine and Paragraph 36 of the TAA, and grant any additional relief the Court deems just and proper.

Dated: August 2, 2016 Respectfully submitted,

MARY MCLEOD ANTHONY ALEXIS

General Counsel

JOHN R. COLEMAN
Assistant General Counsel

Enforcement Director

DEBORAH MORRIS
Deputy Enforcement Director

MICHAEL G. SALEMI
Assistant Litigation Deputy

/s/ Melanie Hirsch
Melanie Hirsch
melanie.hirsch@cfpb.gov
202-435-7944
Edward Keefe
edward.keefe@cfpb.gov
202-435-9198
Patrick Gushue
patrick.gushue@cfpb.gov
202-435-9671
Jonathan Urban
jonathan.urban@cfpb.gov
202-435-7371
*Enforcement Attorneys*

Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552