SEAN E. PONIST (SBN 204712)
sponist@ponistlaw.com
GEORGIA Z. SCHNEIDER (SBN 251358)
gschneider@ponistlaw.com
**LAW OFFICES OF SEAN PONIST, P.C.**
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 798-2222
Fax: (888) 350-5442

JOHN D. SMITH (admitted *pro hac vice*)
**JOHN D. SMITH CO., LPA**
jsmith@johndsmith.com
140 N. Main Street, Suite B
Springboro, Ohio 45066
Telephone: (937) 748-2522
Fax: (937) 748-2712

***Attorneys for Defendants and Counter-Claimants Nationwide Biweekly Administration, Inc., Loan Payment Administration, LLC, and Daniel S. Lipsky***

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

vs.

NATIONWIDE BIWEEKLY ADMINISTRATION, INC., LOAN PAYMENT ADMINISTRATION LLC, and DANIEL S. LIPSKY,

Defendants.

_

NATIONWIDE BIWEEKLY ADMINISTRATION, INC.,

Counter-claimant,

vs.

CONSUMER FINANCIAL PROTECTION BUREAU,

Counter-defendant.

Case No. 3:15-cv-02106-RS

**NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS DEFENSE**

Date: February 9, 2017
Time: 1:30 P.M.
Courtroom: Courtroom 3, 17th floor
Judge: Honorable Richard Seeborg

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on February 9, 2017 at 1:30 p.m. or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Richard Seeborg, United States District Court, 450 Golden Gate Avenue, San Francisco, CA 94102, Nationwide Biweekly Administration, Inc., Loan Payment Administration, Inc, and Daniel S. Lipksy (collectively, "NBA" or "Defendants") hereby will and do move the Court for summary judgment on Nationwide's seventh affirmative defense asserting Consumer Financial Protection Bureau's ("CFPB" or "Plaintiff") claim is barred under the applicable statute of limitations. This motion is based on the Notice of motion and Motion, the supporting Memorandum of Points and Authorities, the Declaration of Sherry Ann Scott filed in support thereof, all pleadings on file in this action, and any other matter that may be submitted at the hearing.

Dated: December 8, 1016

**JOHN D. SMITH CO., LPA**

/s/ John Smith_
John D. Smith

*Attorney for Defendants and Counter-Claimants Nationwide Biweekly Administration, Inc., Loan Payment Administration, LLC, and Daniel S. Lipsky*

TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................1
II. STATEMENT OF UNDISPUTED MATERIAL FACT ..........................................1
III. ARGUMENT ......................................................................................1
A. SUMMARY JUDGMENT STANDARD ...........................................................1
B. THIS ACTION IS BARRED BY THE STATUTE OF LIMITATIONS, 12 U.S.C. §5564 ..........................................................................2
1. THE TERM "DISCOVERY," AS FOUND IN § 5564(g)(1), MEANS NOT ONLY THOSE FACTS THE PLAINTIFF ACTUALLY KNEW, BUT ALSO THOSE FACTS A REASONBLY DILIGENT PLANTIFF WOULD HAVE KNOWN ........................................2
2. CFPB WOULD HAVE KNOWN OF THE FACTS THAT PROVIDE THE BASIS OF THIS ACTION PRIOR TO MAY 11, 2012, HAD IT ACTED WITH REASONABLE DILIGENCE ......4
3. CFPB EMPLOYEES ACTING WITH REASONABLE DILIGENCE WOULD HAVE READ THE CONSUMER COMPLAINT SUBMITTED THROUGH CFPB'S CONSUMER PORTAL ON MARCH 3, 2012, AND "DISCOVERED" THE BASIS OF THIS ACTION ..........................9
IV. CONCLUSION ....................................................................................10
V. CERTIFICATE OF SERVICE ....................................................................11

# TABLE OF AUTHORITIES

**Cases**


*3M Co. v. Browner,* 17 F.3d 1453, 1461 (C.A.D.C. 1994) ............................................10

*Amy v. Watertown (No. 2),* 130 U.S. 320, 323-324 (1889) ............................................8

*Andrus v. Glover Constr. Co.,* 446 U.S. 608, 616-617 (1980) ..........................................8

*Avila v. Willits Environmental Remediation Trust*, 633 F.3d 828, 841 (9th Cir. 2011)...............2

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) ..................................................1, 2

*Gabelli v. S.E.C.,* 133 S.Ct. 1216, 1224 (2013) ..................................................8, 9, 10

*Mathews v. Kidder*, *Peabody & Co.*, 260 F.3d 239, 251 (3rd Cir. 2001)..............................2

*McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991)...........................................2

*Merck & Co. v. Reynolds,* 559 U.S. 633, 648 (2010) ..................................................2, 3, 4

*PHH Corp. v. Consumer Fin. Prot. Bureau,* 839 F.3d 1, 15, 36 (D.C. Cir. 2016).......................5, 6

*Phillips Petroleum Co. v. Lujan,* 4 F.3d 858, 863 (10th Cir. 1993) .....................................8

*Rotella, supra,* at 559, 120 S.Ct. 1075 ...........................................................10

*United States v. Gavilan Joint Cmty. Coll. Dist.,* 849 F.2d 1246, 1250 (9th Cir. 1988) ...............8, 9

*United States v. Kass*, 740 F.2d 1493, 1497 (11th Cir. 1984) .........................................8, 9


**Statutes**


12 U.S.C. §5481(14) ..........................................................................6

12 U.S.C. §5562 ..............................................................................6

12 U.S.C. §5562(c) ...........................................................................6

12 U.S.C. §5563 ..............................................................................6

12 U.S.C. §5564 ..............................................................................3, 5, 6

12 U.S.C. §5564(g)(1) ........................................................................2, 4, 5, 8, 10, 11

12 U.S.C. §5565(a)(2) ........................................................................6

12 U.S.C. §5581(a)(1)(A) .....................................................................6

12 U.S.C. §5581(b) ........6
28 U.S.C. §1658 ........3
28 U.S.C. §1658(b)(1) ........3
28 U.S.C. §2415 ........5
28 U.S.C. §2416(c) ........5

**Other Authorities**

*Consumer Response Annual Report,* CFPB (March 2014) ........9
*Consumer Sentinel Network Data Contributors,* CONSUMER SENTINEL NETWORK ........7
*Federal Trade Commission, Consumer Financial Protection Bureau Pledge to Work Together to Protect Consumers*, FEDERAL TRADE COMMISSION (Jan. 23, 2012) ........6
Memorandum of Understanding Between the Consumer Fin. Protection Bureau and the Fed. Trade Commission 10 (Jan. 20, 2012) ........6

**Rules**

Fed. R. Civ. P. 56(a) ........1
Fed. R. Civ. P. 56(c) ........2

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff filed suit against Defendants on May 11, 2015. Dkt. No. 1. The Complaint, however, alleges facts that occurred more than three years prior to its filing. *See* Dkt. No. 1 at ¶20; *see also* Dkt. No. 1 at ¶23. As such, the Complaint impermissibly relies on facts whose introduction is barred under the requisite three-year statute of limitations. For this reason, Defendants move this Court to dismiss this matter. Alternatively, in the event a liability finding is made, Defendants assert the Court may not consider any actions that occurred beyond the three period statute of limitations period in a damage calculation.

## II. STATEMENT OF UNDISPUTED MATERIAL FACT

Nationwide Biweekly Administration, Inc. (NBA) was formed as an Ohio corporation in June, 2002. The facts that are the basis of this action, filed May 11, 2015, involve business practices that have been the cornerstone of the Nationwide's business for virtually the entirety of its existence as a company since 2002. The CFPB was officially created on July 21, 2011. Thereafter, on March 3, 2012, CFPB received a complaint through its consumer complaint web portal. *See* Request for Judicial Notice Dkt. No. 126; Scott Decl. at ¶5. Among other things, the complainant alleged that she was confused about the terms and details of the Interest Minimizer program; that Nationwide had "misrepresented itself" and "was deceptive in its business practice"; and that Nationwide had caused her to "[b]eliev[e] that Nationwide was affiliated with [her] mortgage company" when it is not. (Ex. A.) The plaintiff also referenced phone calls and other correspondence with Nationwide. (Ex. A.) The facts stated in this complaint about Nationwide's use of certain lender names, the deferred fee, and about the mechanics of the Interest Minimizer Program, among other things, are the same facts that provide the basis for this action.

## III. ARGUMENT

### A. SUMMARY JUDGMENT STANDARD

The Court has authority to grant summary judgment where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Rule 56(c), "summary judgment is proper 'if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp., supra*, 477 U.S. at 323 citing FRCP 56(c). Thus, summary judgment "is mandated where the facts and the law will reasonably support only one conclusion." *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991).

"If the relevant facts are undisputed, the statute of limitations is a question of law appropriate for summary judgment. *Avila v. Willits Environmental Remediation Trust*, 633 F.3d 828, 841 (9th Cir. 2011). Where, as here, it is undisputed that the plaintiff discovered or should have discovered the basis for its claims outside the limitations period, summary judgment is proper. *See Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 251 (3rd Cir. 2001) (holding that plaintiff had "inquiry notice" of RICO claim "where circumstances exist that would lead a reasonable investor of ordinary intelligence, through the exercise of reasonable due diligence, to discovery his or her injury.")

**B. <u>THIS ACTION IS BARRED BY THE STATUTE OF LIMITATIONS, 12 U.S.C. § 5564.</u>**

The claims CFPB has brought in this case are barred by the statute of limitations. *See* 12 U.S.C. § 5564(g)(1). Specifically, the CFPB was required to bring all of its claims in this case within "3 years after the date of **<u>discovery</u>** of the violation to which [this] action relates." *Id.* (emphasis added). Given that CFPB filed this action on May 11, 2015, this action must be dismissed on statute of limitations grounds if CFPB "discover[ed]" the alleged violations to which this action relates prior to May 11, 2012.

**1. THE TERM "DISCOVERY," AS FOUND IN § 5564(g)(1), MEANS NOT ONLY THOSE FACTS THE PLAINTIFF ACTUALLY KNEW, BUT ALSO THOSE FACTS A REASONABLY DILIGENT PLAINTIFF WOULD HAVE KNOWN.**

The term "discovery" in 12 U.S.C. § 5564(g)(1) means "not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have known." *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010). This is because the term "discovery" has a generally accepted meaning in the statute of limitations context. *Id.* For statute of limitations purposes, the term "discovery" "encompasses not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would

have known." *Id.* This conclusion is articulated in detail in *Merck*, where the Supreme Court interpreted the statute of limitations found in 28 U.S.C. § 1658, which is virtually identical to the applicable statute of limitations in this case, 12 U.S.C. § 5564. *See id.* at 638.

In *Merck*, the court analyzed a phrase found in §1658(b)(1), which states that the action described therein must be brought within "2 years after the **discovery of the facts constituting the violation**." *Id.* at 638 (emphasis added). When interpreting what the word "discovery" means under § 1658, the court analyzed the "the history and precedent surrounding the use of the word 'discovery' in the limitations context generally." *Id.* at 644–648. Ultimately, the court concluded that the history and precedent surround the use of the word "discovery" in the limitations context generally supported the conclusion that the term "discovery" "refers not only to a plaintiff's *actual* discovery of certain facts, but also to the facts that a reasonably diligent plaintiff would have discovered." *Id.* at 644–648 (emphasis in original).

Interestingly, in *Merck*, all of the parties in the case, as well as the Solicitor General of the United States, agreed with the conclusion that the term "discovery" in the statute of limitations "refers not only to a plaintiff's *actual* discovery of certain facts, but also to the facts that a reasonably diligent plaintiff would have discovered." *Id.* at 644. Nevertheless, the court felt the need to elaborate on this conclusion because "the statute's language does not make this interpretation obvious." *Id.* The court candidly explained:

> We recognize that one might read the statutory words 'after the discovery of the facts constituting the violation' as referring to the time a plaintiff *actually* discovered the relevant facts. But in the statute of limitations context, the word 'discovery' is often used as a term of art in connection with the 'discovery rule,' a doctrine that delays accrual of a cause of action until the plaintiff has 'discovered' it. The rule arose in fraud cases as an exception to the general limitations rule that a cause of action accrues once a plaintiff has a 'complete and present cause of action.'

*Id.* (citations omitted). In order to avoid a situation "where a defendant's deceptive conduct may prevent a plaintiff from even *knowing* that he or she has been defrauded," courts applied a rule that "where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is *discovered*." *Id.* at 644–45

(emphasis in original) (citations omitted). And, for more than a century, courts have understood that fraud is deemed to be discovered when it is actually discovered or "when, in the exercise of reasonable diligence, it could have been *discovered*." *Id.* at 645 (emphasis in original) (citation omitted).

Over time, however, the discovery rule evolved. First, "both state and federal courts have applied forms of the 'discovery rule' **to claims other than fraud**." *Id.* (emphasis added) (citation omitted). Second, legislatures have codified the discovery rule into various laws, writing the word "discovery" directly into statutes. *Id.* (citation omitted). Accordingly, **when interpreting statutes of limitations that speak of "discovery,"** "state and federal courts have typically interpreted the word ["discovery"] to refer not only to actual discovery, but also to the hypothetical discovery of facts a reasonably diligent plaintiff would know." *Id.* at 645 (emphasis added) (citations omitted). This understanding has been affirmed in numerous legal treatises, where "treatise writers now describe 'the discovery rule' as allowing a claim 'to accrue when the litigant first knows *or with due diligence should know* facts that will form the basis for an action.'" *Id.* at 646 (emphasis in original) (citation omitted).

Accordingly, given "the history and precedent surrounding the use of the word 'discovery' in the limitations context generally," and because courts "normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent," the *Merck* court held that the term "'discovery' as used in [the] statute encompasses not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have known." *Id.*[1]

Thus, under *Merck*, the CFPB can be said to have "discover[ed] the violation to which [this] action relates" pursuant to § 5564(g)(1) when it knew of a violation or when it would have known of a

[1] The court also secondarily discussed certain legislative history that is not relevant to this argument.

violation, had it acted with reasonable diligence.[2]

**2. CFPB WOULD HAVE KNOWN OF THE FACTS THAT PROVIDE THE BASIS OF THIS ACTION PRIOR TO MAY 11, 2012, HAD IT ACTED WITH REASONABLE DILIGENCE**

Had CFPB acted with reasonable diligence prior May 11, 2012, CFPB would have discovered the facts that provide the basis of this action. However, it is important to first establish who must be the "discoverer" for statute of limitations purposes. When reading § 5564(g)(1), it is clear that no CFPB employee in particular is mentioned as needing to be the "discoverer" for statute of limitations purposes. *Contra* 28 U.S.C. § 2416(c) ("For the purpose of computing the limitations periods established in section 2415, there shall be excluded all periods during which . . . facts material to the right of action are not known and reasonably could not be known **by an official of the United States charged with the responsibility to act in the circumstances**.") (emphasis added). In fact, throughout § 5564, CFPB and its employees are only referred to as "the Bureau." It would, therefore, stand to reason that § 5564(g)(1) does not require any particular CFPB employee to be the "discoverer" for statute of limitations purposes. Accordingly, § 5564(g)(1) is satisfied whenever any CFPB employee would have known of the facts that provide the basis for this action, had he or she acted with reasonable diligence.

There are a number of reasons why CFPB employees would have known of the facts that provide the basis for this action prior to May 11, 2012, had they acted with reasonable diligence. CFPB is an immensely powerful federal agency, with "broad authority to enforce U.S. consumer protection laws." *PHH Corp. v. Consumer Fin. Prot. Bureau*, 839 F.3d 1, 15, 36 (D.C. Cir. 2016) (holding that the "CFPB is unconstitutionally structured"). Before finding the structure of CFPB unconstitutional, the *PHH* court explained the massive power CFPB has:

[2] Nationwide denies the claims made by CFPB in this case and uses the term "knew of a violation" only to reference the facts CFPB has put forth as the basis of this action. That is, CFPB's "knowledge" of a violation for statute of limitations purposes is determined by looking at the facts cited in the Complaint and asking when CFPB "discovered" those facts, or when it would have discovered those facts, had it acted with reasonable diligence.

> Under the Dodd–Frank Act, the CFPB possesses the power to "prescribe rules or issue orders or guidelines pursuant to" 19 distinct consumer protection laws. 12 U.S.C. § 5581(a)(1)(A); *see also id.* § 5481(14). That power was previously exercised by seven different government agencies. *See id.* § 5581(b) (transferring to the CFPB "[a]ll consumer financial protection functions" previously exercised by the Board of Governors of the Federal Reserve, the *16 Comptroller of the Currency, the Office of Thrift Supervision, the Federal Deposit Insurance Corporation, the National Credit Union Administration, and select functions of the Department of Housing and Urban Development and the Federal Trade Commission). The CFPB may pursue actions to enforce the consumer protection laws in federal court, as well as in administrative actions before administrative law judges, and may issue subpoenas requesting documents or testimony in connection with those enforcement actions. *See id.* §§ 5562–5564. The CFPB has the power to impose a wide range of legal and equitable relief, including restitution, disgorgement, money damages, injunctions, and civil monetary penalties. *Id.* § 5565(a)(2).

*PHH Corp*, 839 F.3d at 15–16. In addition to these powers, CFPB has the power to issue Civil Investigative Demands ("CID"), wherein the CFPB can require virtually anyone to produce documents, submit tangible things, file written reports, answers questions, and give oral testimony providing "any information" CFPB believes is "relevant to a violation." 12 U.S.C. § 5562(c). In sum, Congress has given CFPB extremely powerful tools to obtain information quickly. Accordingly, if CFPB acted with reasonable diligence prior May 11, 2012, CFPB would have used these tools to obtain the facts that provide the basis for this action in numerous ways.

Moreover, between July 21, 2011, when CFPB began operations and May 11, 2012, if CFPB were acting with reasonable diligence, CFPB would have discovered the facts that provide the basis for this action in complaints found in the Consumer Sentinel Network database—"a secure, online database available to more than 2,000 civil and criminal law enforcement agencies in the U.S. and abroad"—which CFPB had access to since at least January of 2012.[3] In fact, on January 20, 2012, the FTC agreed in writing to "make all consumer complaints it receives available to the CFPB through the Consumer Sentinel Network."[4] The complaints found in the Consumer Sentinel Network database are "contributed" by many entities, including the Federal Trade Commission, Better Business Bureau, numerous state

---

[3] *Federal Trade Commission, Consumer Financial Protection Bureau Pledge to Work Together to Protect Consumers*, FEDERAL TRADE COMMISSION (Jan. 23, 2012), https://www.ftc.gov/news-events/press-releases/2012/01/federal-trade-commission-consumer-financial-protection-bureau.

[4] Memorandum of Understanding Between the Consumer Fin. Protection Bureau and the Fed. Trade Comm'n 10 (Jan. 20 , 2012); *see also id.*

attorney generals' offices, and numerous state consumer affairs agencies, among others.[5] During the approximately 13 years that Nationwide was in business prior to the filing of this action, a handful of Nationwide's customers filed complaints with these entities, which were uploaded to the Consumer Sentinel Network database, going back to at least 2009. These complaints detail the same facts that provide the basis for this action. Accordingly, had CFPB acted with reasonable diligence prior to May 11, 2012, it would have discovered facts that provide the basis of this action.

Furthermore, if CFPB had acted with reasonable diligence in investigating a complaint submitted to its own consumer portal in March of 2012, it would have discovered the facts that provide the basis of this action. On March 3, 2012, CFPB received a complaint submitted directly to CFPB's consumer complaint portal from a customer in Nationwide's Interest Minimizer program. (Ex. A.) Among other things, the complainant alleged that she was confused about the terms and details of the Interest Minimizer program; that Nationwide had "misrepresented itself" and "was deceptive in its business practice"; and that Nationwide had caused her to "[b]eliev[e] that Nationwide was affiliated with [her] mortgage company" when it is not. (Ex. A.) The plaintiff also referenced phone calls and other correspondence with Nationwide. (Ex. A.) CFPB could have issued CID's or subpoenas to Nationwide during the more than **two months** between time it received this complaint and May 11, 2012, in order to inquire about this matter. In fact, that is what CFPB ultimately did, albeit many months later. But if CFPB was acting with reasonable diligence in investigating this particular complaint, it would have discovered the facts the provide the basis of this action before May 11, 2012.[6]

CFPB may argue that "discovery of the violation to which [this] action relates" could not be completed before May 11, 2012 due to some inconvenience, and hardship. But the immense power CFPB maintains should belie the notion that the CFPB could not have accomplished this task prior to May 11,

---

[5] *See Consumer Sentinel Network Data Contributors*, CONSUMER SENTINEL NETWORK, https://www.ftc.gov/enforcement/consumer-sentinel-network/data-contributors.

[6] The complaint itself also provided CFPB with the facts that form the basis of this action. *See infra* Part III.C.

2012. Moreover, "courts should not view a failure to exercise reasonable diligence, inconvenience, and even some hardship on the part of government as grounds for tolling the limitations period." *Phillips Petroleum Co. v. Lujan*, 4 F.3d 858, 863 (10th Cir. 1993) (describing what a district court should consider when determining, for statute of limitation purposes, the government should "reasonably" have known of facts material to a right of action).

Additionally, CFPB may attempt to argue that "discovery" did not occur until it received responses to CID's from Nationwide, which were issued to Nationwide beginning in 2014. Such an argument, however, ignores the point that, for statute of limitations purposes, "it is not necessary that relevant officials have all details of a claim before the statutory period begins to run." *United States v. Gavilan Joint Cmty. Coll. Dist.*, 849 F.2d 1246, 1250 (9th Cir. 1988) (citing *United States v. Kass,* 740 F.2d 1493, 1497 (11th Cir.1984)).

Lastly, CFPB may argue that Nationwide was engaged in a "continuing violation," thereby extending the statute of limitations. But § 5564(g)(1) does not create an exception for so-called "continuing violations," and in the absence of such an exception, one cannot be written into the statute. *Andrus v. Glover Constr. Co.,* 446 U.S. 608, 616–617 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent."); *see also Gabelli v. S.E.C.*, 133 S. Ct. 1216, 1224 (2013) (refusing to create an exception to the statue of limitations in a civil enforcement proceeding without a "mandate from Congress" in the text of the statute); *Amy v. Watertown (No. 2),* 130 U.S. 320, 323–324 (1889) ("[T]he cases in which [the statute of limitations may be suspended by causes not mentioned in the statute itself] are very limited in character, and are to be admitted with great caution; otherwise the court would make the law instead of administering it").

For all these reasons, had CFPB acted with reasonable diligence prior May 11, 2012, CFPB would have discovered the facts that provide the basis for this action.

### 3. <u>CFPB EMPLOYEES ACTING WITH REASONABLE DILIGENCE WOULD HAVE READ THE CONSUMER COMPLAINT SUBMITTED THROUGH CFPB'S CONSUMER PORTAL ON MARCH 3, 2012 AND "DISCOVERED" THE BASIS OF THIS ACTION</u>

Had CFPB employees been acting with reasonable diligence, they would have read the consumer complaint submitted through CFPB's consumer portal on March 3, 2012, which was of sufficient detail for CFPB to "discover" the basis of this action. First, as a matter of fact, CFPB has stated that "[w]hen the Bureau opened its doors on July 21, 2011, it began consumer response operations on the same day."[7] CFPB has further stated that the "consumer response operation" makes a decision about "whether the complaint falls within the CFPB's primary enforcement authority."[8] Thus, the Bureau's own statements tell us that the consumer complaint submitted on March 3, 2012 was received by the "consumer response operation," where it was determined "whether the complaint falls within the CFPB's primary enforcement authority."[9] As is clear from this case, CFPB ultimately decided to pursue this action against Nationwide. Thus, it is entirely straightforward to say that, based on the March 2012 consumer complaint, a CFPB employee acting with reasonable diligence would have "discovered" the facts that provide the basis for this action prior to May 11, 2012. Again, "it is not necessary that relevant officials have all details of a claim before the statutory period begins to run." *Gavilan Joint Cmty. Coll. Dist.*, 849 F.2d at 1250 (citing *Kass,* 740 F.2d at 1497). Thus, the complaint submitted on March 3, 2012, provided sufficient detail for the CFPB to "discover" the facts that provide the basis of this action.

Moreover, this conclusion is also a sustainable way of addressing the "challenging" task of applying the discovery rule to the government. *Gabelli*, 133 S. Ct. at 1224 (refusing to apply the "challenging" discovery rule to the government in the absence of a "mandate from Congress to undertake that challenge"). In *Gabelli*, the court openly discussed the difficulty in "[d]etermining when the

---

[7] *Consumer Response Annual Report*, CFPB 5 (March 2014), http://files.consumerfinance.gov/f/201403_cfpb_consumer-response-annual-report-complaints.pdf

[8] *Id.* at 10.

[9] *Id.* at 5, 10.

Government, as opposed to an individual, knew or reasonably should have known [something] presents particular challenges for the courts." *Id.* at 1223. That task is difficult, of course, because "[a]gencies often have hundreds of employees, dozens of offices, and several levels of leadership. In such a case, when does 'the Government' know of a violation? Who is the relevant actor? Different agencies often have overlapping responsibilities; is the knowledge of one attributed to all?" *Id.* The *Gabelli* court pointed out a number of additional challenges with applying the discovery rule to the government:

> It is unclear whether and how courts should consider agency priorities and resource constraints in applying that test to Government enforcement actions. See *3M Co. v. Browner,* 17 F.3d 1453, 1461 (C.A.D.C.1994) ("An agency may experience problems in detecting statutory violations because its enforcement effort is not sufficiently funded; or because the agency has not devoted an adequate number of trained personnel to the task; or because the agency's enforcement program is ill-designed or inefficient; or because the nature of the statute makes it difficult to uncover violations; or because of some combination of these factors and others"). And in the midst of any inquiry as to what it knew when, the Government can be expected to assert various privileges, such as law enforcement, attorney-client, work product, or deliberative process, further complicating judicial attempts to apply the discovery rule. See, *e.g.,* App. in No. 10–3581 (CA2), p. 147 (Government invoking such privileges in this case, in response to a request for documents relating to the SEC's investigation of Headstart); see also *Rotella, supra,* at 559, 120 S.Ct. 1075 (rejecting a rule in part due to "the controversy inherent in divining when a plaintiff should have discovered" a wrong).

*Id.* at 1223. Accordingly, for these reasons, the court refused to create an exception to the statue of limitations in a civil enforcement proceeding without a "mandate from Congress" in the text of the statute. *Id.* at 1224.

Nevertheless, though applying the discovery rule to the government may be a "challenging" task, it is a task that § 5564(g)(1) directs must be done in this case. *See id.* at 1224. And, in this case, in addition to all of the other ways the CFPB could have "discovered" the basis of this action if acting with reasonable diligence, a CFPB employee acting with reasonable diligence would have on March 3, 2012 read the consumer complaint submitted through CFPB's consumer portal and "discovered" the basis of this action.

## IV. <u>CONCLUSION</u>

Accordingly, CFPB either knew of the basis of this action prior to May 11, 2012, or it would have

known of the basis of this action prior to May 11, 2012, had it acted with reasonable diligence. In either case, CFPB violated 12 U.S.C. § 5564(g)(1) in bringing this action because it was not filed within "3 years after the date of discovery of the violation to which [this] action relates." 12 U.S.C. § 5564(g)(1). Accordingly, this action must be dismissed. And in the event of a finding against Defendants, this Court must not consider facts that occurred past the three year statute of limitations in a damage calculation.

Dated: December 8, 2016

**JOHN D. SMITH CO., LPA**

/s/ John Smith_
John D. Smith

*Attorney for Defendants and Counter-Claimants*
*Nationwide Biweekly Administration, Inc., Loan*
*Payment Administration, LLC, and*
*Daniel S. Lipsky*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on December 8, 2016, via ECF upon counsel of record in this action:

Stephen Jacques
Thomas Mccray-Worrall
Patrick Gushue
Patrick.Gushue@cfpb.gov
202-425-9671
*Enforcement Attorney*
Jonathan Urban
jonathan.urban@cfpb.gov
202-435-7371
*Enforcement Attorney*

Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 2055i

**JOHN D. SMITH CO., LPA**

*/s/ John Smith*

John D. Smith

***Attorney for Defendants Nationwide Biweekly Administration, Inc., Loan Payment Administration, LLC, and Daniel S. Lip***sky