ANTHONY ALEXIS (DC Bar #384545)
DEBORAH MORRIS (Admitted to the NY Bar)
MICHAEL G. SALEMI (IL Bar # 6279741)
PATRICK GUSHUE (PA Bar #306996)
JONATHAN URBAN (CO Bar #44190)
STEPHEN JACQUES (DC Bar #464413)
THOMAS MCCRAY-WORRALL (Admitted to the MD Bar)
patrick.gushue@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-9671
Fax: 202-435-7329
Attorneys for Plaintiff
Consumer Financial Protection Bureau

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

v.

NATIONWIDE BIWEEKLY ADMINISTRATION, INC., LOAN PAYMENT ADMINISTRATION LLC, AND DANIEL S. LIPSKY,

Defendants.

NATIONWIDE BIWEEKLY ADMINISTRATION, INC.,

Counter-claimant

v.

CONSUMER FINANCIAL PROTECTION BUREAU

Counter-defendant.

Case No. 3:15-cv-02106-RS (EDL)

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| Hearing Date: | February 9, 2017, 1:30 p.m. |
| Judge: | Hon. Richard Seeborg |
| Courtroom: | Courtroom 3, 17th Floor<br>450 Golden Gate Ave.<br>San Francisco, CA 94102 |

**TABLE OF CONTENTS**


STATEMENT OF ISSUES TO BE DECIDED ..... 1

SUMMARY OF ARGUMENT ..... 1

FACTS ..... 2

1. The Bureau's Statement of Relevant Facts ..... 2

a. The Bureau's Pre-Complaint Investigation ..... 2

b. The Bureau's Claims in this Action ..... 3

c. The Bureau's Consumer Response Function ..... 4

2. Defendants' "Statement of Undisputed Material Fact" is Not Supported by Evidence ..... 4

ARGUMENT ..... 6

1. Summary Judgment Standard ..... 6

2. "Discovery" under the CFPA's statute of limitations ..... 7

3. Defendants have not established that the Bureau "discovered" Defendants' violations more than three years prior to filing the complaint ..... 9

4. Defendants have not established that a reasonably diligent plaintiff would have "discovered" Defendants' violations more than three years prior to filing the complaint ..... 11

a. A reasonably diligent plaintiff would not have "discovered" Defendants' violations before May 11, 2012, based on a single consumer complaint. ..... 12

b. The fact that the Bureau had investigatory tools available to it prior to May 11, 2012, does not mean that the Bureau "discovered" the violations here prior to that date. ..... 14

c. The Bureau's ability to access the FTC's Consumer Sentinel complaint database after January 2012 does not mean that the Bureau "discovered" Defendants' violations before May 11, 2012. ..... 16

5. Even if the Bureau discovered violations by May 11, 2012, only those violations that occurred as of that date – those that the Bureau could have discovered – are time-barred. ..... 17

CONCLUSION ..... 18

# TABLE OF AUTHORITIES

**Cases**

*Badaracco v. C.I.R.*,
464 U.S. 386 (1984) ........ 7, 9, 15

*C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*,
213 F.3d 474 (9th Cir. 2000) ........ 6, 17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........ 6

*E.I. Dupont de Nemours & Co. v. Davis*,
264 U.S. 456 (1924) ........ 7

*F.T.C. v. Publ'g Clearing House, Inc.*,
104 F.3d 1168 (9th Cir. 1997) ........ 5

*Gabelli v. S.E.C.*,
133 S.Ct. 1216 (2013) ........ 11, 12

*Masson v. New Yorker Magazine, Inc.*,
501 U.S. 496 (1991) ........ 6

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010) ........ 8, 9

*Phillips Petroleum Co. v. Lujan*,
4 F.3d 858 (10th Cir. 1993) ........ 14

*S.E.C. v. Phan*,
500 F.3d 895 (9th Cir. 2007) ........ 5

*Tysellcrouse, Inc. v. Sway Management, LLC*,
No. 15-cv-03832-RS, 2016 WL 5923423 (N.D. Cal. Oct. 11, 2016) ........ 6

*United States v. Dish Network, L.L.C.*,
75 F. Supp. 3d 942 (C.D. Ill. 2014) ........ 7

*United States v. Dish Network, LLC*
80 F. Supp. 3d 914 (C.D. Ill. 2015) ........ 7

*United States v. Dish Network, LLC*
80 F. Supp. 3d 917 (C.D. Ill. 2015) .......... 7

*United States v. Gavilan Joint Cmty. Coll. Dist.*,
849 F.2d 1246 (9th Cir. 1988) .......... 13, 14

**Statutes**

12 U.S.C. § 5497(a)(2) .......... 15
12 U.S.C. § 5511(c) .......... 10
12 U.S.C. § 5511(c)(2) .......... 4
12 U.S.C. § 5515(a) .......... 10
12 U.S.C. § 5531 .......... 7
12 U.S.C. § 5531(a) .......... 3, 17
12 U.S.C. § 5536 .......... 7
12 U.S.C. § 5536(a) .......... 3
12 U.S.C. § 5561(5) .......... 7, 17
12 U.S.C. § 5562(c). .......... 2
12 U.S.C. § 5564(g)(1) .......... 7, 8, 9
12 U.S.C. §§ 5561-5567 .......... 9
15 U.S.C. § 53(b) .......... 7
15 U.S.C. § 56(a)(1) .......... 7
15 U.S.C. § 78c(a)(47) .......... 8
15 U.S.C. § 6102(c)(2) .......... 7
15 U.S.C. § 6104(a) .......... 7
15 U.S.C. § 6105(d) .......... 7
28 U.S.C. § 1658(b)(1) .......... 8
28 U.S.C. § 2415(a) .......... 14
28 U.S.C. § 2416(c) .......... 14

**Rules**

Fed. R. Civ. P. 56(c)(1)(A). .......... 3
Fed. R. Civ. P. 56(c). .......... 6

**Regulations**

12 C.F.R. §§ 1080.6-1080.10 ........................................................ 2

16 C.F.R. §§ 310.1-9 ........................................................ 3, 7

## STATEMENT OF ISSUES TO BE DECIDED

Have Defendants met their burden of demonstrating that Plaintiff Consumer Financial Protection Bureau's (Bureau) claims under the Consumer Financial Protection Act of 2010 (CFPA) are barred by the applicable statute of limitations given that Defendants Nationwide Biweekly Administration, Inc. (Nationwide), Loan Payment Administration LLC, and Daniel S. Lipsky (collectively, Defendants) have cited no evidence establishing that the Bureau discovered the violations to which this action relates more than three years prior to filing suit?

## SUMMARY OF ARGUMENT

The Court should deny Defendants' motion for summary judgment (Dkt. No. 132) because Defendants have failed to carry their burden of proving that this action is barred by the applicable statute of limitations. There is no support in the record or under applicable law for any of Defendants' three arguments that the Bureau "discovered" the violations more than three years before filing the complaint: (1) that the Bureau should have discovered the violations because it is a "powerful federal agency"; (2) that the Bureau should have discovered the violations because consumer complaints submitted by Nationwide's customers were aggregated in the Federal Trade Commission's (FTC) Consumer Sentinel database; or (3) that the Bureau should have discovered the violations because a single Nationwide customer submitted an online complaint to the Bureau more than three years before this action was filed. Because Defendants have failed to satisfy their burden of proving that the Bureau discovered the violations identified in the complaint more than three years before the complaint was filed, the Court must deny Defendants' motion for summary judgment.

# FACTS

## 1. The Bureau's Statement of Relevant Facts

### a. The Bureau's Pre-Complaint Investigation

The Bureau's pre-complaint investigation of Defendants included serving several civil investigative demands (CID) on Nationwide and Nationwide employees.[1] The Bureau issued four CIDs to Nationwide seeking documents and/or answers to interrogatories on June 13, 2014, October 1, 2014, December 1, 2014, and February 20, 2015. Declaration of Patrick Gushue ¶ 2. In response to these CIDs, Nationwide produced over 45,600 pages of documents and responded to approximately 37 interrogatories (not including subparts) and 28 requests for documents over an 11-month period, with the last production in May 2015. Gushue Decl. ¶ 3.

Nationwide requested, and the Bureau subsequently modified, the response date for the June 13, 2014 CID. Gushue Decl. ¶ 4; *see* Gushue Decl. Ex. A (July 14, 2014 Modification Letter). The CID, as issued, required Nationwide to comply fully by July 14, 2014. Gushue Decl. ¶ 5. At the request of Nationwide, the return date of that CID was modified to permit a staggered production of documents and information, with productions due on July 14, 2014, July 31, 2014, August 29, 2014, and September 30, 2014. *Id.*

The Bureau also served CIDs seeking testimony from Daniel Lipsky, as well as Nationwide employees Sherry Ann Scott and Nathan Bucher. Gushue Decl. ¶ 6. Those investigational hearings were held on January 7, 2015, March 25, 2015, and March 26, 2015, respectively. Gushue Decl. ¶ 7. The CID for Lipsky's investigational hearing was issued on November 14, 2014, and originally required Lipsky to appear and provide testimony on December 9, 2014. Gushue Decl. ¶ 8. Nationwide represented that Lipsky was not available on that date (or the remainder of that month). Gushue Decl. ¶ 9; *see* Gushue Decl. Ex. B (Dec. 1, 2014 Modification Letter). Accordingly, the CID requiring Lipsky's testimony was modified to permit him to testify on January 7, 2015. Gushue Decl. ¶ 9.

---

[1] The CFPA authorizes the Bureau to serve CIDs seeking documents, answers to written requests, written reports, or oral testimony. *See* 12 U.S.C. § 5562(c). The Bureau's Rules Relating to Investigations provide further procedures governing issuing and responding to those CIDs. *See generally* 12 C.F.R. §§ 1080.6 – 1080.10.

**b. The Bureau's Claims in this Action**

The Bureau filed its Complaint on May 11, 2015 (Complaint), alleging that Defendants' advertising of Nationwide's "Interest Minimizer" program violated the CFPA's prohibition against deceptive and abusive acts or practices, 12 U.S.C. §§ 5531(a), 5536(a), as well as the Telemarketing Sales Rule, 16 C.F.R. §§ 310.1-9 (2010). Compl., Dkt. 1. In particular, the Complaint alleges that Nationwide and Lipsky falsely guarantee that consumers will save money if they enroll in the program, when they know that a substantial majority of consumers will exit the program having paid more in fees to Nationwide than they saved. Compl. ¶¶ 58-63. The Complaint also alleges that Defendants made numerous misrepresentations about the program, including how and when consumers will save, that consumers will realize savings without increasing the amount they pay each month, that consumers cannot achieve similar savings without the program, the amount and existence of the program's setup fee, and that Nationwide is affiliated with consumers' mortgage lenders or servicers. Compl. ¶¶ 64-75.

One of the practices the Bureau challenges in this action relates to Nationwide's practice of charging a deferred setup fee, the amount and existence of which the Bureau alleges Defendants hid from the consumer. Compl. ¶¶ 47-51, 59, 61, 65(d), 71(a)-(c). In 2010, Lipsky changed Nationwide's fee structure away from an upfront flat fee of $245 to a "deferred setup fee" that varied depending on the monthly mortgage amount. Plaintiff's Motion for Partial Summary Judgment, Dkt. No. 124, Ex. A (Declaration of Patrick Gushue), Ex. 7, 53:8-54:5; Ex. 12, 340:7-342:13; Ex. 4, 60:4-19.[2] Prior to 2010, Nationwide required its enrollment specialists to disclose the exact amount of the $245 fee over the phone, and consumers had to present a credit or debit card or check by phone to authorize the charge. Ex. 4, 60:20-62:20; Ex. 7, 52:11-19, 54:22-55:2; Ex. 9, 17:18- 18:20; Ex. 41 ¶ 6; Ex. 42 ¶ 3; Ex. 49 ¶ 4. After Lipsky instituted the deferred setup fee model sometime in 2010, instead of the consumer paying a setup fee of $245 over the phone, Defendants began taking one of the consumer's biweekly mortgage payments as a so-called "deferred setup fee," generally equivalent to "one biweekly debit" or half a

[2] All references to exhibit numbers refer to the corresponding exhibit attached to the Declaration of Patrick Gushue, which is attached as Exhibit A to Plaintiff's Motion for Partial Summary Judgment, filed with this Court on December 8, 2016 (Motion at Dkt. No. 124, Gushue Declaration at Dkt. No. 124-1). Such evidence in the record can be considered on a motion for summary judgment under Fed. R. Civ. P. 56(c)(1)(A).

mortgage payment for consumers with a 30-year mortgage. Ex. 4, 57:24-59:8. It is this latter fee structure that the Bureau challenged in its Complaint because Defendants deceptively disclosed the amount or existence of that fee.

**c. The Bureau's Consumer Response Function**

Among the Bureau's primary functions is collecting, investigating, and responding to consumer complaints. 12 U.S.C. § 5511(c)(2). Since opening its doors in July 2011, the Bureau has handled approximately 1,058,100 complaints. Declaration of Darian Dorsey ¶ 3. Consumers can submit complaints on the Bureau's website, by calling the Bureau's toll-free number, or through mail, email, fax, or referral. Dorsey Decl. ¶¶ 4, 5. Teams of employees within the Bureau's Office of Consumer Response (Consumer Response) screen complaints submitted by consumers based on several criteria, including whether the complaint falls within the Bureau's authority and whether the complaint is complete. Dorsey Decl. ¶ 6. Screened complaints are sent via a secure web portal to the appropriate company, which typically reviews the information, communicates with the consumer as needed, and determines what action to take in response. Dorsey Decl. ¶ 7. The company then reports back to the consumer and the Bureau via the secure company portal, and the Bureau invites the consumer to review the response and provide feedback. *Id.* Consumer Response analyzes consumer complaints, including the accuracy, completeness, and timeliness of a company's responses, as well as consumers' feedback about that company's responses, to ensure that consumers receive timely responses to their complaints and that the Bureau and other regulators, consumers, and the marketplace have the complaint information needed to improve the functioning of the consumer financial markets for such products and services. Dorsey Decl. ¶ 8. Consumer Response uses a variety of approaches to analyze consumer complaints including, for example, cohort and text analytics to identify trends and possible consumer harm. Dorsey Decl. ¶ 9. Complaint analysis may prompt investigation of individual complaints or groups of complaints and possible referral to colleagues in the Bureau's Division of Supervision, Enforcement, and Fair Lending & Equal Opportunity for further consideration. Dorsey Decl. ¶ 10.

**2. Defendants' "Statement of Undisputed Material Fact" is Not Supported by Evidence**

The Bureau objects to multiple statements made in the "Statement of Undisputed Material Fact" in Defendants' motion for summary judgment. First, Defendants argue that "the facts that are the basis

of this action . . . involve business practices that have been the cornerstone of the Nationwide's business [sic] for virtually the entirety of its existence as a company since 2002." Defs.' Mot. Summ. J. at 1. Defendants cite no competent evidence supporting the statement. *See* Decl. of Sherry Ann Scott ¶ 3, Defs.' Mot. Summ. J., Ex. 1 (repeating Defendants' argument without further explanation or support); *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (stating that a district court can disregard a self-serving declaration for purposes of summary judgment that states only conclusions and not facts); *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking in detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."). There is no support in the motion for summary judgment, or in the record, for Defendants' argument that the facts upon which the Bureau's complaint is based describe business practices that are unchanged since 2002. In fact, as set forth above, the evidence is to the contrary – in 2010, Lipsky changed Nationwide's fee structure to the "deferred" setup fee that is at the heart of several of the Bureau's claims.

Second, Defendants argue that the facts stated in an online consumer complaint submitted to the Bureau in March 2012 "about Nationwide's use of certain lender names, the deferred fee, and about the mechanics of the Interest Minimizer Program, among other things, are the same facts that provide the basis for [the Bureau's] action." Defs.' Mot. Summ. J. at 1. This is an argument, not a statement of undisputed material fact. Defendants again offer no citation for the statement, and offer no evidence supporting the statement. As explained in Section 3 of the Bureau's Argument, below, there is no support for Defendants' argument that the facts that form the basis of the March 2012 consumer complaint are the same facts upon which the Bureau relies in its Complaint.[3]

[3] In fact, the facts are not the same. The consumer complaint focuses on Nationwide's alleged failure to pay the consumer's mortgage payment and Nationwide seeking a $379.90 fee as a service charge for terminating the program. *See* Defs.' Req. Judicial Notice in Supp. of Defs.' Mot. Summ J., Ex. A (Consumer Compl.). The consumer's allegation is that Nationwide failed to provide any services and then tried to charge an additional fee after the consumer tried to cancel, which is not the conduct or violations underlying the Bureau's claims in this action. The consumer complaint also does not address Lipsky's role in Nationwide or LPA's practices.

## ARGUMENT

### 1. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party shows it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Defendants, as the moving party here, bear the burden of supporting their motion and proving that the Bureau's claims are barred by the applicable statute of limitations. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986) (holding that the "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact") (internal quotation marks omitted); *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) ("When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.") (citation and internal quotation marks omitted). The Court must draw all reasonable inferences in favor of the Bureau, the non-moving party here, including questions of credibility and the weight to be accorded particular evidence. *Tysellcrouse, Inc. v. Sway Management, LLC*, No. 15-cv-03832-RS, 2016 WL 5923423 at *2 (N.D. Cal. Oct. 11, 2016) (citing *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991)).

**2. "Discovery" under the CFPA's statute of limitations**[4]

Under the CFPA, "[e]xcept as otherwise permitted by law or equity, no action may be brought under this title more than 3 years after the date of discovery of the violation to which an action relates." 12 U.S.C. § 5564(g)(1). A "violation" is "any act or omission that, if proved, would constitute a violation of any provision of Federal consumer financial law." 12 U.S.C. § 5561(5). The Court must strictly construe this statute of limitations in favor of the Bureau. *See Badaracco v. C.I.R.*, 464 U.S. 386, 391-392 (1984) (noting that the Supreme Court "long ago pronounced the standard [that] '[s]tatutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the government'") (quoting *E.I. Dupont de Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924)).

Though no court has yet interpreted what constitutes "discovery" of a violation under 12 U.S.C. § 5564(g)(1), the Supreme Court has interpreted at least one other "discovery" statute of limitation, albeit in the context of private litigation. Interpreting a statute of limitations applicable to private plaintiffs pursuing § 10(b) securities violations, the Supreme Court held that "'discovery' . . . encompasses not only those facts the plaintiff actually knew, but also those facts a reasonably diligent

[4] Defendants contend that this "action" is time-barred. Defs.' Mot. Summ. J. at 2. The Bureau has asserted claims against all Defendants under Sections 1031 and 1036 of the CFPA for deceptive or abusive acts or practices, 12 U.S.C. §§ 5531, 5536. Compl., Counts I-II. The Bureau has also asserted claims against Nationwide and Lipsky under the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6105(d), and its implementing regulation, the Telemarketing Sales Rule (TSR), 16 C.F.R. §§ 310.1-9 (2010). Compl., Counts III-IV. The Telemarketing and Consumer Fraud and Abuse Prevention Act does not contain a statute of limitations for actions brought by the Bureau. *See* 15 U.S.C. § 6104(a) (providing a statute of limitations of "3 years after discovery of the violation" for claims brought by private persons); *Cf. also United States v. Dish Network, L.L.C.*, 75 F. Supp. 3d 942, 1004-1005 (C.D. Ill. 2014) (holding that there is no statute of limitations on the United States' claims for equitable relief brought under the TSR when brought under Sections 16(a)(1) and 13(b) of the Federal Trade Commission Act, 15 U.S.C. §§ 56(a)(1), 53(b)), *opinion amended on reconsideration*, 80 F. Supp. 3d 914 (C.D. Ill. 2015), and *opinion vacated in part on reconsideration*, 80 F. Supp. 3d 917 (C.D. Ill. 2015). Though the Court need not decide the issue, there is either no statute of limitations on the Bureau's TSR claims, or those claims are subject to the CFPA's statute of limitations. *See* 15 U.S.C. § 6102(c)(2) (a violation of a rule issued under the Telemarketing and Consumer Fraud and Abuse Prevention Act (like the TSR) committed by a person subject to the CFPA is treated as a violation of a rule under Section 1031 of the CFPA, 12 U.S.C. § 5531, regarding unfair, deceptive, or abusive acts or practices). Accordingly, the Court can analyze the statute of limitations under the CFPA for all the claims in this action, including the Bureau's claims under the TSR.

plaintiff would have known." *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010).[5] In that case, the defendant argued that the applicable statute of limitations should have begun to run when the plaintiffs were put on "inquiry notice." Alternatively, the defendant argued that even if the limitation period began at "discovery," it should begin to run if the plaintiff failed to undertake an investigation once put on "inquiry notice." The Court rejected both of these arguments as inconsistent with the language of the statute of limitations at issue in that case. That statute contained "no indication that the limitations period should occur at some earlier moment before 'discovery,' when a plaintiff would have begun investigating." *Id*. at 651-52. Likewise, the CFPA contains no language allowing for the limitations period to begin at some earlier point in time. Rather, it begins to run "upon the date of discovery of the violation." 12 U.S.C. § 5564(g)(1).

The "reasonably diligent plaintiff" test should not apply to government agencies such as the Bureau. When the Court in *Merck* held that "discovery . . . encompasses not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have known," *Merck*, 559 U.S. at 648, it limited its reading of the word "discovery" to the way in which it was used in the statute of limitations at issue there. *Id.* The statute in *Merck* applied to private, individual plaintiffs alleging that they were victims of securities fraud, not to a government agency tasked with enforcing a multitude of Federal consumer financial laws. The Court in *Merck* found it necessary to distinguish between actual discovery and constructive discovery, but there is no need to make such a distinction when a government agency is involved. There is effectively no difference between when the Bureau actually discovers and constructively discovers a violation. Under the CFPA's statute of limitations, the Bureau conducts an investigation and either discovers a violation or does not discover a violation. This Court, therefore, should recognize that the CFPA's statute of limitations does not draw an artificial, unnecessary distinction between actual and constructive discovery, should adopt a presumption of

[5] The statute of limitations analyzed in *Merck* reads as follows: "[A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of (1) 2 years after the discovery of facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. § 1658(b)(1). Contrary to Defendants' assertions, that language is not "virtually identical" to the language of 12 U.S.C. § 5564(g)(1). Defs.' Mot. Summ. J. at 3.

reasonable diligence on the part of the Bureau when determining whether the Bureau has satisfied the CFPA's statute of limitations, and should leave the burden on Defendants to offer evidence to overcome that presumption. To construe the statute of limitations otherwise would contradict the plain text of the statute, *see* 12 U.S.C. § 5564(g)(1), would ignore the Bureau's investigatory mandate, *see* 12 U.S.C. §§ 5561-5567 (establishing Bureau's investigatory and enforcement powers), and would run afoul of Supreme Court precedent that statutes of limitation must receive strict construction in favor of the government. *See Badaracco*, 464 U.S. at 391-392.

Nevertheless, even if the Court were to export *Merck*'s "reasonable diligent plaintiff" test from the statute at issue there to the CFPA's statute of limitations here, the Court still must find that Defendants have failed to carry their burden of showing that the Bureau discovered or should have discovered Defendants' violations prior to the start of the limitations period. If the court chooses to apply the *Merck* analysis, the relevant inquiry for this Court would be whether the Defendants have established that the Bureau discovered the violations before May 11, 2012, or have established that a reasonably diligent plaintiff would have discovered the violations before May 11, 2012. *See Merck*, 559 U.S. at 654. They have done neither in this case.

**3. Defendants have not established that the Bureau "discovered" Defendants' violations more than three years prior to filing the complaint**

Defendants' primary argument is that the Bureau discovered these violations prior to May 11, 2012, because one consumer submitted a complaint to the Bureau on March 3, 2012. Defs.' Mot. Summ. J. at 9. Based on this complaint, Defendants argue the Bureau "discovered" Defendants' violations on the date of the consumer complaint. *Id.* at 7, 9. This argument fails for a number of reasons. There is no evidence – and it strains credulity to argue – that a single unverified consumer complaint about a single transaction constitutes "discovery" of all the necessary elements of Defendants' violations underlying the claims the Bureau asserted in its complaint.[6] *See Merck*, 559 U.S. at 648-649 (holding that because scienter in a securities fraud action is a fact that constitutes a necessary element of the violation, the

[6] Defendants gloss over the fact that, in order to discover a violation, a plaintiff must discover all the elements of a violation. They have made no attempt to analyze the various claims asserted in the Bureau's complaint, the elements of those violations, or how the single consumer complaint constitutes discovery of each of those elements.

limitations period does not begin to run until plaintiff has discovered facts suggesting that element). This is even more so here where the consumer complaint Defendants point to alleges conduct much different than the conduct the Bureau challenges in this action.

As previously noted, the argument is factually incorrect because the facts in the consumer complaint are not the same facts as those alleged in the Bureau's complaint (*see* note 3, *supra*). But regardless of the contents of that consumer complaint, Defendants have pointed to no authority supporting their position that submission of a single consumer complaint to a government agency constitutes discovery of a violation of law. And this Court should decline to hold that a single consumer complaint triggers the running of relevant limitations period.

In short, a government agency that, among other functions, is charged with collecting, investigating, and responding to consumer complaints should not be deemed to have "discovered" Defendants' violations based on a single complaint and before the Bureau opened an investigation, before the Bureau served any CIDs for documents and information, or before the agency has received, reviewed, and drawn conclusions from the documents, testimony, and other information gleaned from that investigation. To hold otherwise would force government agencies to invest massive resources into investigating every consumer complaint in order to ensure the applicable statute of limitations would not run. And it could force those agencies to race to the courthouse to file actions, even those that may not have been pursued following a complete investigation, as well as matters that could have been settled without filing a lawsuit.

Since opening its doors in July 2011, the Bureau has handled approximately 1,058,100 complaints. Dorsey Decl. ¶ 3. At the same time, handling consumer complaints is just one aspect of the Bureau's statutorily-prescribed functions. The Bureau is also charged with: (1) conducting financial education programs; (2) collecting, researching, monitoring and publishing information relevant to the functioning of markets for consumer financial products or services to identify risks to consumers and the proper functioning of those markets; (3) supervising certain covered persons, including some of the world's largest financial institutions, for compliance with Federal consumer financial law and taking appropriate enforcement action to address violations of those laws; and (4) issuing rules, orders, and guidance implementing Federal consumer financial law. 12 U.S.C. §§ 5511(c), 5515(a).

Adopting Defendants' position would require the Bureau to immediately look at, and begin investigating, each of those complaints in order to avoid running afoul of the statute of limitations. And that would have to happen while the Bureau was simultaneously carrying out all of its other statutorily-mandated activities. In sum, Defendants' argument that this single consumer complaint constituted discovery of the violations not only fails factually and legally, but also raises significant policy concerns.

**4. <u>Defendants have not established that a reasonably diligent plaintiff would have "discovered" Defendants' violations more than three years prior to filing the complaint</u>**

Defendants also argue that the Bureau (through its employees[7]) should have known of the facts that provide the basis for this action prior to May 11, 2012 (three years before the Bureau commenced this action) for three reasons, none of which entitles Defendants to summary judgment. First, Defendants argue that had the Bureau acted with "reasonable diligence" in investigating that consumer complaint, it would have discovered the facts that provide the basis for this action prior to May 11, 2012. Defs.' Mot. Summ. J. at 7, 9. Second, Defendants argue that the Bureau is an "immensely powerful federal agency" with broad authority to investigate and enforce Federal consumer financial law. According to Defendants, Congress gave the Bureau "extremely powerful tools to obtain information quickly," and if the Bureau had acted with reasonable diligence after it began operations in July 2011, it would have obtained the facts that provide the basis for this action by May 2012. *Id*. at 5-6. Finally, Defendants assert that, since at least January 2012, the Bureau has had access to consumer complaints collected in the FTC's Consumer Sentinel Network database. *Id.* at 6. According to Defendants, unidentified complaints in that database "detail the same facts that provide the basis for this action," and thus the Bureau should have discovered Defendants' violations by reviewing these unidentified complaints before May 11, 2012. *Id.* at 6-7.

[7] Defendants assert, without citing to any authority, that the statute of limitations begins to run "whenever any CFPB employee would have known of the facts that provide for the basis of this action, had he or she acted with reasonable diligence." Defs.' Mot. Summ. J. at 5. In fact, the Supreme Court has expressly raised, without deciding, the question of who within a government agency must possess the requisite knowledge in order for a violation to have been "discovered." *Gabelli v. S.E.C.*, 133 S.Ct. 1216, 1223 (2013).

As explained above, the Court should decline to export *Merck*'s "reasonable diligent plaintiff" test from the statute at issue there to the CFPA's statute of limitations here. If it does, though, the Court still must find that Defendants have failed to carry their burden of showing that the Bureau discovered or should have discovered Defendants' violations prior to the start of the limitations period. Defendants have failed to establish, as a matter of law, that the Bureau "discovered" Defendants' violations more than three years before the filing of the Bureau's Complaint on May 11, 2015. Defendants picked one date – May 11, 2012 – and argue that the Bureau should have discovered Defendants' violations by that date. Defendants point to this date not because there is evidence establishing, as a matter of law, that the Bureau discovered Defendants' violations by that date (there is no such evidence). Instead, Defendants picked this otherwise arbitrary date because it is three years before the Bureau commenced this action. Defendants have cited no evidence establishing that the Bureau discovered – or that a reasonably diligent plaintiff would have discovered – Defendants' violations more than three years prior to commencing this action. For that reason, Defendants' motion should be denied.

**a. <u>A reasonably diligent plaintiff would not have "discovered" Defendants' violations before May 11, 2012, based on a single consumer complaint</u>**

As discussed above, Defendants' argument that the single consumer complaint constituted discovery of the violations is without merit. Defendants' alternate argument – that a hypothetical "reasonably diligent plaintiff" would have launched an investigation immediately after receiving that single complaint on March 3, 2012 and "discovered" all the necessary elements of Defendants' violations in 69 days – is equally flawed.

As previously discussed, a single complaint cannot – as a legal or practical matter – obligate a government agency to choose between launching a full-blown investigation or risk losing its enforcement authority under a statute of limitation.

The Bureau is not a defrauded individual victim harmed by Nationwide's conduct, and the Court should consider the scope of the Bureau's consumer complaint and other operations when determining what a "reasonably diligent" plaintiff would do. *See Gabelli*, 133 S.Ct. at 1223. The single transaction recounted in the March 2012 complaint may have been "discovery" for the individual harmed consumer who submitted that complaint or enough to prompt that victim to begin an investigation. But if this

single consumer complaint about a singular consumer harm did not immediately prompt the Bureau to begin a full-blown enforcement investigation, that decision is completely consistent with the actions of a "reasonably diligent plaintiff" in the Bureau's situation. Instead of expending resources investigating every one of the more than one million complaints the Bureau has handled, the Bureau uses a variety of approaches to analyze consumer complaints including, for example, cohort and text analytics to identify trends and possible consumer harm. Dorsey Decl. ¶ 9. This analysis may prompt investigation of individual complaints or groups of complaints and possible referral to colleagues in the Bureau's Division of Supervision, Enforcement, and Fair Lending & Equal Opportunity for further consideration. Dorsey Decl. ¶ 10.[8] This approach is eminently reasonable and is also consistent with the Bureau's statutory obligations to perform other functions.

Even if the single complaint had been the trigger for a Bureau investigation, Defendants have failed to identify how a reasonably diligent plaintiff could have discovered all the elements of the violations within the 69-day period on which their argument relies. Defendants have not offered what date they believe a reasonably diligent plaintiff would have discovered the violations. Instead, they make the baseless assertion that the date occurred sometime between March 3, 2012, and May 11, 2012.

Instead of identifying when a reasonably diligent plaintiff would have discovered the violations, Defendants suggest only that the receipt of responses to a CID would be an improper discovery point, citing *United States v. Gavilan Joint Cmty. Coll. Dist.*, 849 F.2d 1246 (9th Cir. 1988). Defs.' Mot. Summ. J. at 8, 9. But *Gavilan* does not support the proposition that "discovery" of a violation always occurs before a governmental plaintiff has obtained documents from the subject of an investigation.

[8] Defendants suggest that because the Bureau's Office of Consumer Response determines whether consumer complaints fall within the Bureau's primary enforcement authority, a Bureau employee reviewing the March 2012 consumer complaint, acting with reasonable diligence, would have "discovered" the facts that provided the basis for this action. Defendants misstate the role of the Bureau's Consumer Response team's screening process. Before forwarding a consumer complaint to the company about which a consumer is complaining, the Consumer Response team first screens the complaint based on several criteria, including whether the complaint falls within the Bureau's authority and whether the complaint is complete. Dorsey Decl. ¶¶ 6, 7. In some cases, Consumer Response refers or sends a complaint to another regulator, for example, if a particular complaint does not involve a product or market that is within the Bureau's jurisdiction or one that is not currently being handled by the Bureau. Dorsey Decl. ¶ 6.

Interpreting a statute of limitations not applicable here,[9] the Ninth Circuit held that "it is not necessary that relevant officials have all details of a claim before the statutory period begins to run." *Gavilan Joint Cmty. Coll. Dist.*, 849 F.2d at 1250 (internal citation omitted). But in *Gavilan*, the statute of limitations question was "not a close one" and defendants had "supplied overwhelming evidence indicating that the Government knew or reasonably should have known of the alleged" conduct as of a specific point. *Id.* at 1249-1250. The court concluded that "what is important is when the Government first discovered that it had a claim against Gavilan." *Id.* at 1250. Here, Defendants do not have that evidence and have not established that the Bureau discovered Defendants' violations more than three years before this action was commenced.[10]

Defendants have offered no evidence establishing that a reasonably diligent plaintiff would have launched an investigation based on a single March 2012 consumer complaint, and then conducted an entire investigation in less than 69 days in order to "discover" Defendants' violations.

**b. <u>The fact that the Bureau had investigatory tools available to it prior to May 11, 2012, does not mean that the Bureau "discovered" the violations here prior to that date</u>**

Defendants' remaining arguments are even thinner on evidence and do not warrant summary judgment in their favor. Defendants argue the Bureau "discovered" the violations because it is an "immensely powerful federal agency" that began operations in July 2011 and had investigatory and

---

[9] The statute of limitations analyzed by the *Gavilan* court provided that contract actions brought by the United States "shall be barred unless the complaint is filed within six years after the right of action accrues." 28 U.S.C. § 2415(a). *Gavilan Joint Cmty. Coll. Dist.*, 849 F.2d at 1249. In determining the limitations period under section 2415, another provision required the court to exclude periods during which "facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances." 28 U.S.C. § 2416(c); *Gavilan Joint Cmty. Coll. Dist.*, 849 F.2d at 1249.

[10] Defendants' citation to *Phillips Petroleum Co. v. Lujan*, 4 F.3d 858 (10th Cir. 1993), likewise does not support their position. Defs.' Mot. Summ. J. at 8. Citing *Phillips*, Defendants argue that "courts should not view a failure to exercise reasonable diligence, inconvenience, and even some hardship on the part of the government as ground for tolling the limitations period." *Phillips Petroleum Co.*, 4 F.3d at 863. This holding does not apply here. The Tenth Circuit in *Phillips Petroleum* interpreted the same statute of limitations regime at issue in *Gavilan*. *See Phillips Petroleum*, 4 F.3d at 860-864 (interpreting 28 U.S.C. §§ 2415(a), 2416(c)). The Bureau is not arguing that any portion of the CFPA's statute of limitations should be "tolled" here because of hardship or anything else. Rather, Defendants have failed to establish that the Bureau discovered Defendants' violation before May 11, 2012, such that any portion of this action is time-barred.

other tools at its disposal that it could have used to identify the facts that provide the basis for this action before May 11, 2012. Defs.' Mot. Summ. J. at 5-6. Defendants cite no case in which a court has endorsed this novel "powerful agency" discovery theory, nor do Defendants cite any evidence suggesting the Bureau actually discovered Defendants' violations by May 11, 2012. Defendants just argue that, after July 2011, the Bureau had the tools at its disposal to do so.

Defendants' argument assumes – with no citation to evidence or law – that once the Bureau's doors opened on July 21, 2011, it was on notice of Defendants' conduct, that it should have begun investigating Defendants, and that a reasonably diligent plaintiff would have discovered Defendants' violations by May 11, 2012, a date with no connection to any investigatory steps that the Bureau could have taken or Defendants' conduct. But having investigatory tools available is not the same as discovering Defendants' violations. Nor have Defendants established that the Bureau was not reasonably diligent in investigating and discovering Defendants' violations – a test which, as set forth above, should not apply to government agencies.

Defendants' argument would also lead to absurd results contrary to the CFPA's text and the rule that statutes of limitations be strictly construed in favor of the government. *Badaracco*, 464 U.S. at 391-392. In essence, Defendants contend that the Bureau is a powerful agency and therefore has "discovered" all violations once they have accrued. This result is exactly what a statute of limitations starting the running of the statute upon the "discovery" of the violation was designed to avoid. No plaintiff, regardless of how ostensibly "powerful," can bring an action based on a violation that it cannot reasonably be expected to have discovered.

Defendants appear to be asking the Court to stretch the "discovery" rule codified in the CFPA statute of limitation and the "reasonable diligence" test beyond all reason. The Bureau must enforce the CFPA and 18 other Federal consumer financial laws (in addition to other rules and regulations) that, prior to July 21, 2011, had been enforced by seven different Federal government agencies, and is tasked with overseeing through its enforcement, supervision, and rulemaking functions an enormous consumer financial marketplace including everything from mortgages, credit cards, and credit reporting, to debt collection, payday lending, and debt relief. And, despite Defendants' suggestion to the contrary, it must do so on a statutorily-restricted budget and with limited resources. 12 U.S.C. § 5497(a)(2) (establishing

funding caps for the Bureau). Defendants are asking this court to adopt a "discovery" rule that subverts the text and purpose of the CFPA and imposes on the Bureau a "reasonable diligence" standard that ignores the breadth of the Bureau's mandate and responsibilities and that would essentially impute to the Bureau knowledge of all violations by all entities at all times.

**c. <u>The Bureau's ability to access the FTC's Consumer Sentinel complaint database after January 2012 does not mean that the Bureau "discovered" Defendants' violations before May 11, 2012</u>**

Finally, Defendants argue that the Bureau "discovered" these violations prior to May 11, 2012, because, since at least January 2012, the Bureau has had access to the FTC's Consumer Sentinel Network database. According to Defendants, "a handful of Nationwide's customers" submitted complaints with entities that contribute to the Consumer Sentinel database and that these complaints were uploaded into that database. Defs.' Mot. Summ. J. at 6-7. As Defendants point out, the FTC's Consumer Sentinel database collects consumer complaints regarding consumer products, including consumer financial products, from numerous sources. *Id.* Defendants argue that because the Bureau had access to the database after at least January 2012, it discovered or should have discovered the violations to which this action relates by May 11, 2012. *Id.* Defendants again point to no legal authority or record cites in support of this assertion. Instead, Defendants offer an unsupported assertion that unidentified complaints in that database "detail the same facts that provide the basis for this action," and suggest that the Bureau therefore would have discovered those facts if it had "acted with reasonable diligence prior to May 11, 2012." *Id.* at 7.

Defendants' "Consumer Sentinel" argument rests on a theory similar to their "powerful agency" theory: that the Bureau must file a complaint within three years of any violation of the CFPA, by any person or entity, anywhere in the United States, regardless of whether that violation was made evident to the Bureau, so long as a complaint was housed in the FTC's Consumer Sentinel database. If the Court accepts this theory, once a complaint is submitted to or forwarded to the FTC, the Bureau is charged with knowledge of that complaint and must start investigating that conduct immediately or risk having any subsequent action against a defendant be deemed time-barred. For the reasons stated above, the Court should reject this theory.

Further, even if the Court were inclined to agree with Defendants' unsupported and novel argument that a complaint logged in the FTC's Consumer Sentinel database triggers the statute of limitations for agencies with access to that database – and thus that the Bureau here "discovered" violations relating to complaints regarding Nationwide housed in that database before May 11, 2012 – Defendants' argument fails here because it is premised on the unsupported claim that the complaints in that database "detail the same facts that provide the basis for this action." Defs.' Mot. Summ. J. at 7. Again, however, Defendants present no evidence regarding the complaints in that database. They do not point to any complaints, present any evidence on the content of those complaints, detail when those complaints were submitted, or explain to the Court how the contents of those complaints would have enabled the Bureau to "discover" Defendants' violations. At the summary judgment stage, this is not enough. *See C.A.R. Transp. Brokerage Co.*, 213 F.3d 474, 480 (9th Cir. 2000) ("When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.") (citation and quotation omitted).

**5. <u>Even if the Bureau discovered violations by May 11, 2012, only those violations that occurred as of that date – those that the Bureau could have discovered – are time-barred</u>**

Finally, even if this Court holds that the Bureau "discovered" Defendants' violations as of May 11, 2012 – and for the reasons articulated above, it should not so hold – that would only mean that the violations Defendants committed before May 11, 2012, are time-barred. Put simply, the Bureau cannot have "discovered" prior to May 11, 2012, violations that Defendants committed after that date.

Under the CFPA, a "violation" is "any act or omission that, if proved, would constitute a violation of any provision of Federal consumer financial law." 12 U.S.C. § 5561(5). A violation of the CFPA's prohibition on unfair, deceptive, or abusive acts or practices is defined as an "act" committed in connection with a "transaction" for the "offering of" a consumer financial product or service. 12 U.S.C. § 5531(a). In other words, this prohibition speaks in terms of individual transactions and offers. Thus, each time Defendants engaged in deceptive or abusive conduct in connection with transactions after May 11, 2012, in connection with the offering or sale of the Interest Minimizer program, Defendants engaged in a separate, new violation. Each transaction was a separate "act" and a separate violation. So,

here, Defendants' acts or omissions that had not yet occurred – i.e., those acts or omissions occurring after Defendants' proposed and unsupported May 11, 2012 discovery date – necessarily were discovered after that date and thus fall within the limitations period.

## **CONCLUSION**

Defendants have not met their burden of proving that the Bureau discovered the violations identified in its Complaint more than three years before the Complaint was filed. Plaintiff the Consumer Financial Protection Bureau therefore respectfully requests that this Court deny Defendants' motion for summary judgment.

Dated: January 5, 2017

ANTHONY ALEXIS
Enforcement Director

DEBORAH MORRIS
Deputy Enforcement Director

MICHAEL G. SALEMI
Assistant Litigation Deputy

*/s/ Stephen Jacques*

Stephen Jacques
stephen.jacques@cfpb.gov
202-435-7368
Patrick Gushue
patrick.gushue@cfpb.gov
202-435-9671
Jonathan Urban
jonathan.urban@cfpb.gov
202-435-7371
*Enforcement Attorneys*

Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on January 5, 2017, via ECF upon counsel of record in this action:

John D. Smith
140 North Main Street, Suite B
Springboro, Ohio 45066

Sean Ponist
Georgia Schneider
Law Office of Sean Ponist, P.C.
12626 High Bluff Drive, Suite 440
San Diego, CA 92130

Allyson Baker
Venable LLP
575 7th Street, NW
Washington, DC 20004

Christopher Stock
119 East Court Street
Suite 530
Cincinnati, OH 45202

*/s/ Stephen Jacques*
Stephen Jacques
stephen.jacques@cfpb.gov
202-435-7368
*Enforcement Attorney*

Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552