ANTHONY ALEXIS (DC Bar #384545)
DEBORAH MORRIS (Admitted to the NY Bar)
MICHAEL G. SALEMI (IL Bar #6279741)
PATRICK GUSHUE (PA Bar #306966)
JONATHAN URBAN (CO Bar #44190)
STEPHEN JACQUES (DC Bar # 464413)
THOMAS MCCRAY-WORRALL (Admitted to the MD Bar)
Patrick.Gushue@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-9671
Fax: 202-435-7329
Attorneys for Plaintiff
Consumer Financial Protection Bureau

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

v.

NATIONWIDE BIWEEKLY ADMINISTRATION, INC., LOAN PAYMENT ADMINISTRATION LLC, AND DANIEL S. LIPSKY,

Defendants.

---------------------------------------------

NATIONWIDE BIWEEKLY ADMINISTRATION, INC.,

Counter-claimant,

v.

CONSUMER FINANCIAL PROTECTION BUREAU,

Counter-defendant.

Case No. 3:15-cv-02106-RS (EDL)

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS II – IV OF PLAINTIFF'S COMPLAINT**

| | |
|---|---|
| Hearing Date: | February 9, 2017<br>1:30 p.m. |
| Judge: | Hon. Richard Seeborg |
| Courtroom: | Courtroom 3, 17th Floor<br>450 Golden Gate Ave.<br>San Francisco, CA 94102 |

## Table of Contents

**INTRODUCTION** ........ 1

**ARGUMENT** ........ 2

1. Defendants misstate the standard of review on summary judgment ........ 2
2. The Bureau has presented uncontroverted evidence that Defendants engaged in deceptive acts or practices regarding the setup fee ........ 3
3. Defendants do not rebut the Bureau's evidence of multiple false representations concerning various aspects of the IM program ........ 6
4. Defendants misrepresent an affiliation with the lender ........ 8
5. Defendants have not put forward evidence to rebut the Bureau's calculation of damages ........ 10
6. The Court should overrule Defendants' evidentiary objections to the Bureau's declarations ........ 11
7. The Court should disregard Defendants' declarations and other immaterial facts cited in the Response ........ 12

**CONCLUSION** ........ 15

**Table of Authorities**

**Cases**


*AMG Servs., Inc.*, 29 F. Supp. 3d 1338 (D. Nev. 2014) ........ 9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........ 10

*Beneficial Corp. v. FTC*, 542 F.2d 611 (3d Cir. 1976) ........ 4

*Burch v. Regents of the University of California*, 433 F.Supp.2d 1110 (E.D. Cal. 2006) ........ 9

*Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004) ........ 6

*Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179 (9th Cir. 2016) ........ 2, 3

*Consumer Fin. Prot. Bureau v. IrvineWebWorks, Inc.*, 2016 WL 1056662 (C.D. Cal. Feb. 5, 2016) ........ 2

*Feil v. FTC*, 285 F.2d 879 (9th Cir. 1960) ........ 9, 14

*FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564 (7th Cir. 1989) ........ 15

*FTC v. Commerce Planet, Inc.*, 815 F.3d 593 (9th Cir. 2016); ........ 10

*FTC v. Cyberspace.Com LLC*, 453 F.3d 1196 (9th Cir. 2006) ........ 2, 4, 5

*FTC v. Dinamica Financiera LLC*, 2010 WL 9488821 (C.D. Cal. Aug. 19, 2010) ........ 5

*FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611 (6th Cir. 2014) ........ 3, 4

*FTC v. Febre*, 128 F.3d 530 (7th Cir. 1997) ........ 10

*FTC v. Figgie Int'l, Inc.*, 994 F.2d 595 (9th Cir. 1993) ........ 5

*FTC v. Gill*, 71 F.Supp.2d 1030 (E.D. Cal. 1999), *aff'd*, 265 F.3d 944 (9th Cir. 2001) ........ 1, 4

*FTC v. Health Formulas, LLC*, 2015 WL 2130504 (D. Nev. May 6, 2015) ........ 4

*FTC v. Inc21.com Corp.*, 475 F. App'x 106 (9th Cir. 2012) ........ 10

*FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052 (C.D. Cal. 2012), *aff'd*, 644 Fed. Appx. 709 (9th Cir. 2016) ........ 6, 14

*FTC v. Medicor LLC.*, 217 F. Supp. 2d 1048 (C.D. Cal. 2002) ........ 11

*FTC v. Mortg. Relief Advocates LLC*, 2015 WL 11257575 (C.D. Cal. July 1, 2015) ........ 7

*FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167 (N.D. Ga. 2008), *aff'd*, 356 F. App'x 358 (11th Cir. 2009) ........ 5

*FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168 (9th Cir. 1997) ........ 10

*FTC v. Stefanchik*, 2007 WL 4570879 (W.D. Wash. Feb. 15, 2007) ........ 9, 11

*FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009) .......... 2, 11
*FTC v. USA Financial, LLC*, 415 Fed. Appx. 970, 974 (11th Cir. 2011) .......... 14
*FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020 (7th Cir. 1988) .......... 5
*Gutowitz v. Transamerica Life Ins. Co.*, 126 F. Supp. 3d 1128 (C.D. Cal. 2015) .......... 1
*Hansen v. United States*, 7 F.3d 137 (9th Cir. 1993) .......... 12
*In re Kaypro*, 218 F.3d 1070 (9th Cir. 2000) .......... 11
*In re Thompson Med. Co., Inc.*, 104 FTC 648 (1984) .......... 6
*Intel Corp v. VIA Tech., Inc.*, 204 F.R.D. 450 (N.D. Cal. 2001) .......... 11
*Kraft, Inc. v. FTC*, 970 F.2d 311 (7th Cir. 1992) .......... 5
*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574 (1986) .......... 10
*Matter of Cliffdale Assocs., Inc.*, 103 FTC 110 (1984) .......... 9
*Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254 (9th Cir. 1984) .......... 12
*Resort Car Rental Sys., Inc. v. FTC*, 518 F.2d 962 (9th Cir. 1975) .......... 3
*Rey v. Lafferty*, 990 F. 2d 1379 (1st Cir. 1993) .......... 5
*Rubio v. Capital One Bank*, 613 F.3d 1195 (9th Cir. 2010) .......... 6
*SEC v. First Pac. Bancorp*, 142 F.3d 1186 (9th Cir. 1998) .......... 10
*Simeon Management Corp. v. FTC*, 579 F.2d 1137 (9th Cir. 1978) .......... 5
*Smith v. Mack Trucks, Inc.*, 505 F.2d 1248 (9th Cir. 1974) .......... 3
*Spicer Accounting, Inc. v. United States*, 918 F.2d 90 (9th Cir. 1990) .......... 15
*Sterling Drug, Inc. v. FTC*, 741 F.2d 1146 (9th Cir. 1984) .......... 4
*United States v. Bennett*, 363 F.3d 647 (9th Cir. 2004) .......... 12

**Rules & Regulations**

16 C.F.R. § 310.3(a)(1)(i) .......... 5
Telemarketing Sales Rule, 75 Fed Reg. 48458-01 .......... 5

On December 8, 2016, the Bureau moved for summary judgment on Counts II, III, and IV against Defendants Nationwide Biweekly Administration, Inc. (Nationwide), Loan Payment Administration LLC (LPA), and Daniel S. Lipsky (Lipsky). Dkt. 124 (Mot.). On January 5, 2017, Defendants filed a response in opposition to the Bureau's motion. Dkt. 168 (Opp.). The Bureau submits this Reply in support of its motion for partial summary judgment.

**Introduction**

In the Response, Defendants maintain there are triable issues of fact with respect to the Bureau's claims that they engaged in deceptive acts or practices in violation of the CFPA.[1] However, Defendants misstate the Bureau's burden of proof, do not engage in any meaningful legal analysis of relevant case law, and fail to identify any material issues of fact beyond conclusory and self-serving declarations from Lipsky and Nationwide's vice president in an effort to convince the Court that summary judgment is not appropriate at this stage. Defendants' legal arguments are flawed, Defendants' declarations submitted with the Response do not raise material issues of fact, and Defendants' various vague objections to the Bureau's evidence lack merit.

[1] In the Response, Defendants do not rebut many facts cited by the Bureau that consumers purchased the IM program based on a telemarketing and advertising operation widely disseminated to consumers nationwide. In this regard, Defendants concede that the operative facts are "substantially undisputed." *See* Opp. at 6. Therefore, the issues on summary judgment – whether Defendants engaged in deceptive acts or practices in violation of the CFPA and TSR – are ripe for the Court. *See FTC v. Gill*, 71 F.Supp.2d 1030, 1035 (E.D. Cal. 1999), *aff'd*, 265 F.3d 944 (9th Cir. 2001) ("Where the operative facts are substantially undisputed, and the heart of the controversy is the legal effect of such facts, such a dispute effectively becomes a question of law that can, quite properly, be decided on summary judgment."). At the same time, Defendants failed to respond to the Bureau's Motion with respect to Nationwide's and Lipsky's status as sellers/telemarketers under the TSR and as covered persons under the CFPA (Mot. at 16), Nationwide's and Lipsky's 'liability under the TSR (Mot. at 21), Lipsky's individual liability (Mot. at 22), and the Bureau's request for civil money penalties (Mot. at 25). Therefore, Defendants are deemed to have abandoned these issues. *See Gutowitz v. Transamerica Life Ins. Co.*, 126 F. Supp. 3d 1128, 1154 (C.D. Cal. 2015) (failure to respond to arguments on summary judgment deems issue "abandoned").

## Argument

### 1. Defendants misstate the standard of review on summary judgment

At the beginning of the Response, Defendants cite to an unreported decision in *Consumer Fin. Prot. Bureau v. IrvineWebWorks, Inc.*, 2016 WL 1056662, at *1 (C.D. Cal. Feb. 5, 2016), for the proposition that summary judgment is premature because (1) the Bureau cannot prove Defendants' statements are "objectively false" and (2) the case requires a weighing of evidence that is more appropriate for the factfinder. Opp. at 7. The Court should reject this argument for several reasons.

First, Defendants' oversimplified summary judgment standard is not the law and does not apply in this case. In the Ninth Circuit, an act or practice is deceptive if: (1) "there is a representation, omission, or practice that," (2) "is likely to mislead consumers acting reasonably under the circumstances," and (3) "the representation, omission, or practice is material."[2] There is no prohibition against summary judgment on a deception claim grounded on "net impression" analysis – which is at issue here – and courts grant summary judgment when supported by the evidence.[3]

Second, the *IrvineWebWorks* case is not binding on this Court and nevertheless is distinguishable. The language Defendants quote relates to a stand-alone deception claim based on an implied affiliation with the U.S. government. The court determined there was not sufficient evidence to enter summary judgment on that claim before ruling in the Bureau's favor on a different count. In contrast, the deception claim against Defendants is based on several distinct and pervasive misrepresentations and false statements about the overall nature, features, and cost of the IM program, and therefore is much broader in scope than the narrower affiliation-only claim in *IrvineWebWorks*. In addition, the undisputed record here – consisting of Defendants' own marketing materials and other documents, as well as 23 consumer declarations (Exs. 15-38), other consumer complaints (Ex. 51), and declarations from 11 former employees (Exs. 39-49)[4] – confirms widespread deceptive practices about

[2] *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1192 (9th Cir. 2016) (citation omitted). Deception may be found based on the "net impression" created by a representation. *Id.*

[3] *See, e.g.*, *FTC v. Cyberspace.Com LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006); *FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009).

[4] All references to exhibits relate to exhibits attached to the Bureau's Motion, Dkt. 124, except as otherwise noted.

the IM program, details specific false and misleading statements, and describes the various techniques and tactics Defendants employed to obscure elements of the program during the sales pitch. It is clear that Defendants made a variety of misleading material misrepresentations and false statements that prevent consumers from understanding critical aspects of the IM program, including the amount they will save, when they will save it, the program's cost, and the company's relationship with their mortgage servicers or lenders. For these reasons, summary judgment is appropriate.

**2. The Bureau has presented uncontroverted evidence that Defendants engaged in deceptive acts or practices regarding the setup fee**

In the Response, Defendants summarily conclude that consumers were not misled or deceived because the setup fee is disclosed in the "sales script, enrollment contract, online enrollment form, and related documents." Opp. at 9. This, of course, is not the test to determine whether Defendants engaged in deceptive acts or practices under the CFPA and TSR. The question, thus, is not whether Defendants "hid" the setup fee, but whether Defendants' advertisements, sales techniques, and other materials have the capacity to deceive the consumer.[5]

First, Defendants conspicuously overlook a variety of marketing materials, including mailers, the website, savings analysis documents, and videos – none of which explains the existence or amount of the significant setup fee – but rather entice consumers to call Nationwide with promises of immediate savings and make misleading and false statements that "extra funds" are directed "100% to the principal of the loan" (Mot. at 7).[6] As explained in the Bureau's Motion, these statements are false because "extra funds" are not directed "100%" to principal. Defendants keep the consumer's first additional payment as a fee rather than directing that payment to principal. Defendants similarly ignore the Bureau's evidence

---

[5] The Response is also replete with self-serving and bald assertions that consumers are "aware of" and "fully understand" the setup fee and that Defendants' practices are not "deceptive." However, these statements are not evidence and not sufficient to create a triable issue of fact. *See Gordon*, 819 F.3d at 1193 (citing *Stefanchik*); *Smith v. Mack Trucks, Inc.*, 505 F.2d 1248, 1249 (9th Cir. 1974).

[6] *See Resort Car Rental Sys., Inc. v. FTC*, 518 F.2d 962, 964 (9th Cir. 1975) ("The [FTCA] is violated if [the seller] induces the first contact through deception, even if the buyer later becomes fully informed before entering the contract."); *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 632 (6th Cir. 2014) (A court need not look past the first contact with a consumer to determine the net impression from that contact, and a court may consider individual advertisements or messages to determine the net impression).

of various sales techniques, false rebuttals, and misleading guidance – evidenced in Defendants' written materials and confirmed by 11 former employees – to sidestep direct questions from consumers and obscure or minimize the substantial fee (Mot. 7-9).[7] The tendency of a particular representation to deceive is determined by the net impression that it is likely to make, not its constituent parts.[8] Here, Defendants cannot avoid liability by pointing to isolated words ("No Upfront Fee") that appeared in some mailers and that did not change the overall net impression,[9] or hiding behind fine print legalese in a contract provided to the consumer *after* enrollment is completed that contains text noticeably smaller than the rest of the agreement, and a receipt and welcome letters (Ex. 35 ¶ 6) that do not mention a setup fee.[10] In fact, as set forth in the Bureau's Motion, Defendants do not even alert consumers that they collected the setup fee six months after enrollment, except for a generic debiting notification like every other "biweekly debit." Mot. at 10. Consumers and former employees alike confirm that, after enrollment, many consumers did not know about the setup fee until attempting to cancel the program or

---

[7] To be clear, the Bureau concedes that Defendants directed enrollment specialists to follow the script language quoted in the Bureau's Motion at page 7. However, Defendants' script is misleading – and when coupled with Defendants' marketing materials, advertisements, and evidence from former employees who were told to minimize the setup fee and avoid answering questions about it – contributes to a deceptive net impression regarding the setup fee and violates the TSR's requirement for clear and conspicuous disclosures.

[8] *See, e.g.*, *Cyberspace.com*, 453 F.3d at 1200; *Sterling Drug, Inc. v. FTC*, 741 F.2d 1146, 1154 (9th Cir. 1984).

[9] The words, "No Upfront Fee," are false or misleading in their own right because Defendants contend the fee is due seven days after enrollment, even though Defendants do not collect the fee for several months. *See* Exs. 117, 119-121. *See e. g.*, *Beneficial Corp. v. FTC*, 542 F.2d 611, 617 (3d Cir. 1976) ("[T]he tendency of the advertising to deceive must be judged by viewing it as a whole, without emphasizing isolated words or phrases apart from their context.") (citation omitted).

[10] *See E.M.A. Nationwide, Inc.*, 767 F.3d at 634 (affirming the district court's decision granting the FTC's motion for summary judgment where telemarketers made deceptive representations regarding the fees that consumers would be charged, and declining to hold that this deception was cured by the contracts signed by consumers); *Gill*, 71 F.Supp.2d at 1044 (granting the FTC's motion for summary judgment and noting that a disclaimer excluded from the initial representation but found "on the contract that consumers eventually sign" insufficiently dispels initial deception); *FTC v. Health Formulas, LLC*, 2015 WL 2130504, at *12 (D. Nev. May 6, 2015) ("Even if customers read and fully understand the fine print, they are not given the full cost of the product or told how much they will be billed, as there is no price listed next to the dollar sign in the fine print.").

upon trying to reconcile the amounts paid in the biweekly program with amounts paid on the mortgage. Others did not know about the setup fee until Nationwide stopped servicing accounts in November 2015.

Second, Defendants misstate the Bureau's burden of proof by asserting that the Bureau's case fails because it "collapses" into only anecdotal declarations by consumers. Opp. at 11. It is well established, however, that the Bureau need not provide a survey or even consumer testimony to establish deception.[11] Although proof of actual deception is unnecessary to establish deception, such proof – as presented through consumer and former employee declarations (Exs. 15-49) – is highly probative to show that a practice is likely to mislead consumers acting reasonably under the circumstances.[12]

Lastly, Defendants do not even address or attempt to explain how their practices comply with the TSR (Counts III and IV), which requires, *inter alia*, that the total cost *must* be disclosed "truthfully" and "in a clear and conspicuous manner."[13] Based on the undisputed record consisting of scripts, other

---

[11] *See, e.g.*, *Kraft, Inc. v. FTC*, 970 F.2d 311, 319 (7th Cir. 1992) ("Courts, including the Supreme Court, have uniformly rejected imposing ... a requirement [to present consumer survey evidence] on the FTC, [citation] and we decline to do so as well."); *Simeon Management Corp. v. FTC*, 579 F.2d 1137, 1146 n. 11 (9th Cir. 1978) ("Consumer testimony, although sometimes helpful, is not essential" to determining if advertisements have the capacity to mislead); *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605–06 (9th Cir. 1993) ("Requiring proof of subjective reliance by each individual consumer would thwart effective prosecutions of large consumer redress actions and frustrate the statutory goals of [the FTC Act ].'"); *FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167, 1189 (N.D. Ga. 2008), *aff'd*, 356 F. App'x 358 (11th Cir. 2009) ("[T]he court is well-equipped to discern express claims or clear and conspicuous implied claims from the face of the advertisement…[evidence of consumer perceptions] is only necessary when the asserted claims fall on the "barely discernable" side of the continuum….").

[12] *See Cyberspace.Com LLC*, 453 F.3d at 1201; *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029–30 (7th Cir. 1988) ("[E]vidence that some customers actually misunderstood the thrust of the message is significant support for the finding of a tendency to mislead.") (citation omitted); *FTC v. Dinamica Financiera LLC*, 2010 WL 9488821, at *7 (C.D. Cal. Aug. 19, 2010) (granting summary judgment for FTC based on declarations demonstrating consumers believed the misrepresentations).

[13] 16 C.F.R. § 310.3(a)(1)(i) (requiring clear and conspicuous disclosure of the total cost of a service *before* the consumer consents to pay).; *see* Telemarketing Sales Rule, 75 Fed Reg. 48458-01 ("disclosures must be made *before* any act or communication that signifies the consumer's consent to pay, such as sending full or partial payment; providing credit card, *bank account* or other billing information…) (emphasis added). This provision requires clear and conspicuous disclosures *before* the consumer consents to pay. Thus, Defendants' lengthy discussion of the contract that consumers eventually receive *after* consenting to payment cannot cure their violations of the TSR. In analogous contexts involving contract interpretation and Truth In Lending Act (TILA) disclosures, courts have determined that terms are not "clear" when they are "inconsistent on their face or where the phraseology can support reasonable difference of opinion as to the meaning of the words employed." *Rey v. Lafferty*, 990 F. 2d 1379, 1384-85 (1st Cir. 1993) (internal citation omitted). Terms are not "conspicuous" when

guidance, and declarations, Defendants do not clearly or conspicuously disclose the total cost of the setup fee, but rather repeatedly use vague words toward the end of the sales pitch (so-called "extra biweekly debits"), resort to evasive and misleading answers to questions about the fees, and only refer to the specific amount of the debiting fee ($3.50) when discussing any fees with consumers (even though Defendants in fact know the precise amount of the setup fee)[14] – all of which violates the TSR.[15]

### 3. <u>Defendants do not rebut the Bureau's evidence of multiple false representations concerning various aspects of the IM program</u>

The evidence establishes that Defendants made several false statements about the IM program's cost, its benefits, and how it works to create a deceptive net impression that consumers can enroll for little or no cost, that consumers are guaranteed to save money, and that consumers must use Nationwide to pay their mortgage on a biweekly basis. Defendants concede that the various claims were indeed made, but now attempt to recast and re-characterize multiple deceptive statements as literally "true," while ignoring the overall net impression analysis.

First, contrary to Defendants' assertions, it is undisputed that Defendants make multiple false statements that consumers "do not increase" their monthly payment on the IM program.[16] Defendants misunderstand the Bureau's position and cite to one consumer declaration for the blanket assertion that consumers "were aware of the thirteenth payment and transaction fee." Opp. at 15. This argument misses the mark. There is no dispute that consumers make a 13th annual mortgage payment on the IM program. However, multiple statements in mailers, videos, and rebuttal scripts that consumers "**do <u>not</u>**

---

they are not presented in a way "that the consumer's attention will be drawn to it." *Cole v. U.S.* Capital, Inc., 389 F.3d 719, 729 (7th Cir. 2004). It is precisely because reasonable consumers can interpret an ambiguous disclosure in more than one way that such a disclosure cannot be clear and conspicuous. *Rubio v. Capital One Bank*, 613 F.3d 1195, 1202 (9th Cir. 2010).

[14] Even after running the "savings analysis," Nationwide directs reps to answer questions about the fee by reading the setup fee paragraph instead of providing the actual amount. *See, e.g.*, Ex. 71 at 62.

[15] *FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052 (C.D. Cal. 2012), *aff'd*, 644 Fed. Appx. 709 (9th Cir. 2016) (ordering summary judgment under TSR based on a facial review of script).

[16] That Defendants now appear to argue that the correct wording should be "The monthly payment *paid by the customer to the lender* does not change" (Opp. at 14) is inapposite because it is different from what is communicated to the consumer. *See In re Thompson Med. Co., Inc.*, 104 FTC 648, 311–12 (1984) (noting that when an advertisement unequivocally states a claim, "it is reasonable to interpret the ads as intending to make [it]").

**increase** [their] **monthly payment**" and pay "the exact same amount [they] pay now" – which Defendants do not even address in response – are false and misleading because consumers indisputably increase the amount they pay. These deceptive statements further obscure the existence and amount of the substantial setup fee and monthly fees and thus contribute to the overall deceptive net impression regarding the cost of the IM program. Mot. at 9-11.[17]

Second, Defendants rely on a report by Harvey Rosen to purportedly demonstrate that a consumer starts saving "when the first extra payment is made to the principal" – which occurs twelve months after a consumer enrolls in the IM program after accounting for Nationwide collecting the setup fee at month six.[18] Dr. Rosen paradoxically opines that a "consumer achieves an *immediate* savings of *projected* interest charges" (emphasis added). Aside from the illogical inconsistency behind his conclusion, this statement does not address the statements Defendants made to consumers that tout "immediate" benefits and a "100% savings guarantee." Defendants now appear to suggest that the savings amount is actually a "reduction in total payment liability over the course of the loan" – which, at bottom, is neither immediate nor guaranteed based on the unrebutted evidence that (1) only 25% of Nationwide's customers have been enrolled for longer than four years and (2) the average consumer stays in a mortgage for only 4.5 years.[19] Because it takes many years to recoup the fees paid to participate in the IM program, Defendants' express guarantee of immediate savings is false. For the same reasons, Nationwide's touted millions of dollars in interest *saved* for consumers is false since it represents *hypothetical* savings (or, in Dr. Rosen's words, "projected interest charges") over the course

[17] Courts have declined to require reasonable consumers to doubt the veracity of express, objective product claims. *FTC v. Mortg. Relief Advocates LLC*, 2015 WL 11257575, at *2 (C.D. Cal. July 1, 2015) (citation omitted). Thus, statements about what something "implies" to the reasonable consumer and what is "common sense" or may be "common knowledge" according to Defendants' counsel are immaterial to defeat summary judgment and do not shield Defendants from making false claims.

[18] Defendants served four expert reports on December 29, 2016, and designated eight witnesses in their expert disclosures. Gushue Decl. ¶ 8. Expert discovery closes on March 2, 2017. Dkt. 105. The Bureau anticipates conducting expert discovery in accordance with scheduling order and after the parties have exchanged and disclosed rebuttal experts (January 30). Gushue Decl. ¶ 10. The Bureau maintains that Defendants' expert reports do not raise material issues of fact and expressly reserves the right to raise any applicable challenges to Defendants' experts at the appropriate time.

[19] The "savings" are also not "immediate" because the consumer does not make any extra payments to principal until twelve months into the program.

of the loan. These false representations contribute to an overall net impression that the IM program guaranteed immediate savings, when – in reality – consumers will not save money or achieve any savings until several years of participation.

Finally, Defendants deny making any false statements regarding a consumer's ability to achieve savings on her own or through her lender and claim that consumers are actually told that they can achieve savings without Nationwide. In this regard, Defendants maintain that the statements "lenders require mortgages to be remitted monthly" and "most lenders require biweekly programs to be set up through [a third party]" are true.[20] Defendants double-down on these claims in marketing videos which state: "The few lenders who do offer a bi-weekly program require you to set it up through an administrator like us." Ex. 124, at 0:15; Ex. 128; Ex. 130. However, not all lenders require mortgages to be remitted monthly, nor do they require the use of a third-party administrator to participate in a biweekly program, as evidenced by Defendants' own listing of "competitor" lender programs at Ex. 133 (an internal document which is never actually shared with consumers) and the declarations of several large financial institutions submitted with the Bureau's Motion (Exs. 154-160). These statements – together with Defendants' false claim that "99% of consumers" will fail without Nationwide – create a deceptive net impression that only Nationwide can offer this service and thus discourage consumers from making extra payments on their own or through their lender.

**4. <u>Defendants misrepresent an affiliation with the lender</u>**

In the Response, Defendants cite to the same evidence submitted with the Bureau's Motion, but nevertheless come to the opposite conclusion that Defendants did not misrepresent, directly or by implication, an affiliation with the lender. Opp. at 20-23. To support this argument, Defendants assert – without any evidence beyond conclusory expert reports – that disclaimers on envelopes and mailers sent to consumers are clear and do not mislead consumers and thus do not constitute deception.[21]

---

[20] Defendants cite to a self-serving statement from Lipsky that a mortgage can only be remitted monthly and may not be paid on a biweekly basis. This statement is contradicted by the evidence (*see* Ex. 133), contains hearsay, and therefore should be disregarded by the Court.

[21] The Court should disregard the expert reports cited in this part of the Response. Setting aside broader objections to the experts' qualifications, competency, and findings that will be developed through expert discovery (which closes on March 2, 2017), the expert reports – which simply conclude that Defendants'

In contrast to Defendants' bald statements that its practices were not misleading, the Bureau has put forward evidence from consumers and former employees confirming widespread confusion over affiliation as a result of Defendants' practices. Lipsky testified that the lender name is included to "draw attention to" the consumer (Ex. 4, 89:9-20), who is then given several convoluted responses on the enrollment call to straightforward questions such as, "Are you my lender?" In fact, enrollment specialists are directed to employ a variety of misleading and deceptive phrases (e.g., Nationwide has a special "working relationship" with the lender, the program "is administered" to the lender) and not to respond "no" when asked whether Nationwide is affiliated with the lender. Defendants rely solely on the envelope and mailer; however, these words do not cure the deception created by placing the lender's name and loan amount on the letter, along with other statements that give a false sense of legitimacy that the communication is from the lender. At best, the inadequate disclaimers send contradictory messages that further compound confusion and suggest to the consumer that Nationwide either is the lender, or has some special exclusive relationship with the lender. When viewed with other deceptive messages that the program "does not increase" a consumer's monthly mortgage payment, that consumers cannot achieve savings on their own (or most assuredly will fail if they try), and that lenders do not offer these programs, consumers (many of whom are targeted by Defendants as new homeowners)[22] are likely to be misled, and in fact are misled, into signing up with Nationwide.

---

materials are not "likely to deceive" and that it is "unlikely" consumers were "misled, confused, or deceived" – are speculative, conclusory, and constitute improper legal conclusions. *See Burch v. Regents of the University of California*, 433 F.Supp.2d 1110, 1119 (E.D. Cal. 2006) ("[S]tatements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not *facts* and likewise will not be considered on a motion for summary judgment. Objections on any of these grounds are simply superfluous in this context.") (emphasis in original); *FTC v. Stefanchik*, 2007 WL 4570879, at *1 (W.D. Wash. Feb. 15, 2007) (expert's opinion that defendant's materials are not unfair, false, misleading or deceptive was an impermissible legal conclusion); *FTC v. AMG Servs., Inc.*, 29 F. Supp. 3d 1338, 1374 (D. Nev. 2014) (finding expert testimony about consumer confusion and deception immaterial because "proof that consumers actually were deceived is not required" under section 5 of the FTC Act); *Feil v. FTC*, 285 F.2d 879 n. 18 (9th Cir. 1960) ("The law is not made for experts but to protect the public…[who] do not stop to analyze but too often are governed by appearances and general impression."). The Court should disregard the reports on summary judgment.

[22] *See Matter of Cliffdale Assocs., Inc.*, 103 F.T.C. 110, 179 (1984) (when assessing the net impression of claims targeted to a specific audience, the court must determine the effect on a reasonable member of that group).

**5. <u>Defendants have not put forward evidence to rebut the Bureau's calculation of damages</u>**

Defendants lodge vague objections to the Bureau's calculation of the disgorgement and restitution figures, but they ignore relevant case law on damages, fail to address the Bureau's request for civil money penalties, and ultimately failed to establish that there is a disputed issue of fact precluding summary judgment on the Bureau's request for relief. Here, the Bureau has shown that Defendants engaged in systematic deceptive acts or practices in violation of the CFPA or TSR, and consumers purchased the IM program. The Bureau has established the appropriate measure of consumer harm through the declaration of Mr. Heidari who examined Defendants' business records to arrive at an amount of consumers' net losses (setup fees less refunds to consumers), as well as distributions to Lipsky.[23] The burden now shifts to Defendants to show that the Bureau's figures are inaccurate.[24]

Defendants have failed to present any evidence to rebut the Bureau's damages calculations, aside from conclusory statements that the numbers are wrong. However, general denials without evidence are insufficient to defeat summary judgment.[25] Defendants also maintain – without any legal support – that the Bureau's request for disgorgement and restitution is improper and that operating expenses should be accounted for in the Bureau's figures. The CFPA is clear, however, that restitution and disgorgement are appropriate remedies.[26] Moreover, courts exclude operating expenses in calculating an award for

---

[23] On December 6, 2016, Defendants deposed Mr. Heidari on his calculations of damages derived from Defendants' own business records. Gushue Decl. ¶ 11.

[24] *See FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 603 (9th Cir. 2016); *FTC v. Febre*, 128 F.3d 530, 535 (7th Cir. 1997).

[25] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment…"); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986) (The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."); *Stefanchik*, 559 F.3d at 931 (affirming summary judgment since defendants offered no affirmative evidence to controvert the amount of damages); *FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1997) ("Once the FTC has made a prima facie case for summary judgment, the defendant cannot rely on general denials; she must produce significant probative evidence that demonstrates that there is a genuine issue of material fact for trial."); *FTC v. Inc21.com Corp.*, 475 F. App'x 106, 110 (9th Cir. 2012) (affirming district court grant of summary judgment on damages based on defendants' failure to rebut).

[26] 12 U.S.C. § 5565(a)(2); *see SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1193 (9th Cir. 1998) (ordering restitution and disgorgement).

damages.[27] Indeed, limiting recovery to the Defendants' profits, as suggested by Defendants, would vitiate the restitutionary remedy.[28] For this reason, the Bureau is entitled to an award of restitution, disgorgement, and civil money penalties against Defendants.

**6. <u>The Court should overrule Defendants' evidentiary objections to the Bureau's declarations</u>**

Defendants assert various vague and boilerplate objections regarding the Bureau's consumer and former employee declarations. Opp. at n. 11 and 15. First, the consumer declarations are not hearsay because they are not being introduced for the truth of the matter asserted, but rather to show that the statements were made. The consumer and former employee declarations also contain admissions of a party opponent and statements as to the declarant's state of mind. In addition, the consumer declarations are based on personal knowledge, as well as the consumer's understanding of – and common experience enrolling in – the IM program and thus do not lack foundation.[29] Finally, former employees with personal knowledge from working at Nationwide and handling hundreds – if not thousands – of enrollment and customer service calls are competent to testify on their experiences and interactions with consumers.[30]

---

[27] *FTC v. Medicor LLC.*, 217 F. Supp. 2d 1048, 1057 (C.D. Cal. 2002) (overruling defendants' objection to damages figure that did not include operating expenses because calculation reasonably approximated consumer losses).

[28] *See Stefanchik*, 559 F.3d at 931-32 ("Because the FTC Act is designed to protect consumers from economic injuries, courts have often awarded the full amount lost by consumers rather than limiting damages to a defendant's profits.").

[29] *See Stefanchik*, 2007 WL 1058579, at *4 (W.D. Wash. Apr. 3, 2007) *aff'd*, 559 F.3d 924 (9th Cir. 2009) (denying motion to strike consumer declarations because they are not being offered for the truth of the matter asserted). Though Defendants also complain that the declarations were not provided in discovery, the Bureau identified the documents and communications with third parties identified on its disclosures on its privilege log as protected from disclosure. Gushue Decl. ¶ 6; *see Intel Corp v. VIA Tech., Inc.*, 204 F.R.D. 450, 452 (N.D. Cal. 2001) (finding declaration of non-party was "clearly work product right up until the moment it was filed."). Defendants did not file any motion to compel the production of the declarations nor attempt to depose any of the consumers, former employees, or the financial institutions listed in the Bureau's disclosures. Gushue Decl. ¶ 7.

[30] *See, e.g., In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000) ("Personal knowledge may be inferred from a declarant's position.") (citation omitted).

### 7. <u>The Court should disregard Defendants' declarations and other immaterial facts cited in the Response</u>

In an effort to rebut the Bureau's probative declarations evidencing widespread consumer confusion and deceptive sales practices, Defendants put forward conclusory, uncorroborated, and self-serving declarations from Nationwide's executives that do not raise material issues of fact.

The Court should disregard the Lipsky declaration because it largely consists of conclusory, self-serving statements lacking detailed facts and any supporting evidence, and thus is insufficient to preclude the entry of partial summary judgment.[31]

The Court should also disregard the declarations of Nationwide's vice president, Sherry Ann Scott (Dkt. 169, 170), who attempts to undermine the credibility of the Bureau's 23 consumer declarants – all of whom report common confusion over the IM program and similar misleading practices by Defendants. Each consumer states that he or she never would have enrolled in the IM program had they been made aware of the significant setup fee. Scott also attempts to rebut the former employee declarants, who similarly confirm that consumer confusion was commonplace and detail specific tactics, directives, and instructions on how to handle straightforward questions and obscure and hide the setup fee. The Scott declarations are largely based on inadmissible evidence, comprised of irrelevant and conclusory statements of opinion, appear to be incomplete (as shown by missing documents, text, and blanks throughout the charts), and contain ambiguous, vague, and confusing statements.[32]

For example, the chart attached to Scott's consumer declaration contains hearsay documenting purported communications between someone at Nationwide and the consumer.[33] The chart also makes several superfluous comments about Nationwide's suspension of service, whether a specific consumer

---

[31] *See Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) ("[W]hen the nonmoving party relies only on its own declarations to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.").

[32] Scott's declarations, which are not summary exhibits, *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1259 (9th Cir. 1984), also violate the best evidence rule insofar as Defendants have failed to produce documents upon which her testimony is based. *See United States v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004). To the extent the Court relies on Defendants' biased presentation of evidence and vague references to documents and call recordings, such evidence is hearsay, and the Court should therefore exclude it.

[33] *See, e.g.*, Dkt. 169-2, Colly letter; D'Errico letter; Kasparov letter.

terminated enrollment, and whether consumers resolved their complaints with Nationwide. These statements, however, are irrelevant to the question of whether Defendants violated the CFPA and TSR and do not create an issue of fact precluding summary judgment. In addition, Scott's declaration cites to documents that actually support the Bureau's case.[34] Finally, the chart selectively and inaccurately references some of Nationwide's audio recordings and responses to complaints (which, again, contain hearsay), while ignoring other evidence.

In this regard, Defendants provide 229 audio recordings in an effort to convince the Court that Defendants "disclosed" the setup fee by citing to isolated parts of the calls that include the setup fee paragraph, which is vague and confusing because it does not explicitly indicate the amount collected to enroll in the program even though Defendants have such information during the call. A closer examination of the calls, however, reveals deceptive sales techniques and pervasive consumer confusion, further substantiates the statements in the Bureau's consumer and former employee declarations, and thus supports the Bureau's case.[35] For example, consumers who directly asked about the fees were only told of the smaller ($3.50) biweekly debiting fee, or falsely informed that Nationwide does not charge anything "extra" or "out of pocket" or that the fee is nothing "additional" and "occurs naturally." *See* Ex. A to Gushue Declaration, ¶ 1. Other calls show Defendants' resistance to discussing the fees and the use of meandering and obscure responses to direct questions about the fee. *Id.* ¶ 2. Still other calls evidence consumer confusion about Nationwide's affiliation and Defendants failure to correct that confusion. *Id.* ¶ 3. Finally, there are examples of enrollment specialists rushing through the confusing setup fee paragraph and deceptively telling consumers they cannot achieve results on their own (when they can). *Id.* ¶ 4.

---

[34] *See, e.g.*, Dkt. 169-2, complaints from Casalino and Vivona (indicating they asked about fees and were told only of the $3.50 debiting fee); Park (indicating she believed Nationwide to be affiliated with her lender); Arredondo (indicating he discovered he paid a setup fee to Nationwide after noticing that his lender received less than what he had paid).

[35] To assist the Court in its review of this evidence, the Bureau submits Exhibit A to the Gushue Declaration that provides pinpoint citations to time intervals found in the various audio recordings as further evidence in support of partial summary judgment.

Scott's declaration that attempts to rebut the declarations of former employees is similarly deficient.[36] Even though none of the former employees was fired for misconduct, Defendants attempt to discredit the declarants by discussing unrelated personnel issues and quality assurance worksheets that have no bearing on the issues before the Court.[37] Indeed, Scott's chart cites no evidence creating an issue of fact, cites to evidence in the record (sales scripts and guidance) but that does not create an issue of fact, and consists of questions seemingly posed to the declarants themselves that are more properly reserved for deposition. In sum, Scott's declarations do not raise issues of material fact and should be disregarded.

Finally, Defendants' statements about quality assurance programs, efforts to discipline staff, intent behind creating the marketing materials, the number of refunds issued to consumers who complained, and Nationwide's alleged lawful state licensing are not relevant to whether Defendants violated the CFPA and TSR.[38] Moreover, Defendants' unsupported assertion that consumers must have known all of the terms and conditions of the program since the number of complaints to third parties was "statistically insignificant" (Opp. at 23) is not supported by the evidence, does not account for the untold numbers of consumers who complained directly to Nationwide, and ignores countless other consumers who likely never discovered that Nationwide even collected the setup fee – routinely and just like any other regular debit – six months after enrollment. In any event, the existence of satisfied consumers is

[36] The Court should also ignore the Scott declaration because Defendants have not established that Scott is competent and has personal knowledge to testify about training and instructional matters. Scott previously testified that she does not attend the training (Ex. 5, 54:17-21; Ex. 13, 282:2-283:7), was only in charge of "orientation and [] howdy doody stuff" (Ex. 5, 44:1-13), and that someone else is more knowledgeable about training for enrollment specialists (*Id.*, 201:15-202:23).

[37] Documents actually supporting the Bureau's case here include Dkt. 170-2 at 24, "Discovery Call" (encouraging sales representative to "Minimize fees Maximize [sic] value."); and Dkt. 170-2 at 65 "On-Going Training Notes" (cautioning sales representative to "[b]e careful not to oversimplify the program to the point when the customer thinks they [sic] can do it themselves.").

[38] *See John Beck Amazing Profits, LLC*, 865 F. Supp. 2d at 1075-76 (quality assurance, refund policies, and efforts to discipline staff are not relevant to whether deception occurred); *Feil*, 285 F.2d at 896 (whether individual acts in good or bad faith is immaterial under FTCA); *FTC v. USA Financial, LLC*, 415 Fed. Appx. 970, 974 (11th Cir. 2011) (that defendant operated under a state-issued license has no bearing on whether the defendant engaged in "deceptive acts").

irrelevant.[39] Similarly, Lipsky's statements about Nationwide's prior lawsuit with the State of Ohio (Opp. at 4-5) are self-serving, inadmissible hearsay, and irrelevant to this case. Defendants do not explain how such facts are material or cite to any pertinent legal authority, but simply intimate that the procedural history from an unrelated case with a state regulator should bar the Bureau from enforcing Federal consumer financial law here. The Court previously considered – and rejected – Defendants' position on this point noting that the argument "does not pass the laugh test…" and is "pretty ridiculous." Transcript of Oral Argument, May 12, 2016, Dkt. 79; Tr. 15:25-18:22. Thus, the Court should not consider any allegations related to Nationwide's prior lawsuit by another entity for violations of state law since that is not at issue in this case.[40]

## CONCLUSION

For the reasons stated this Reply and in the Bureau's Motion, the Court should grant partial summary judgment in favor of the Bureau.

Date: January 19, 2017.

ANTHONY ALEXIS
Enforcement Director

DEBORAH MORRIS
Deputy Enforcement Director

MICHAEL G. SALEMI
Assistant Litigation Deputy

*/s/ Patrick Gushue*
Patrick Gushue
patrick.gushue@cfpb.gov
202-435-9671
Jonathan Urban
jonathan.urban@cfpb.gov
202-435-7371
Stephen Jacques
Stephen.jacques@cfpb.gov
202-435-7368
*Enforcement Attorneys*

Consumer Financial Protection Bureau

[39] *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 572 (7th Cir. 1989).
[40] *See Spicer Accounting, Inc. v. United States*, 918 F.2d 90, 94 (9th Cir. 1990).

1700 G Street NW
Washington, DC 20552

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on January 19, 2017, via ECF upon counsel of record in this action:

John D. Smith
140 North Main Street, Suite B
Springboro, Ohio 45066

Sean Ponist
Georgia Schneider
Law Office of Sean Ponist, P.C.
100 Pine Street, Suite 1250
San Francisco, CA 94111

Allyson Baker
Venable LLP
575 7th Street, NW
Washington, DC 20004

*/s/ Patrick Gushue*
Patrick Gushue
patrick.gushue@cfpb.gov
202-435-9671
*Enforcement Attorney*

Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552