ANTHONY ALEXIS (DC Bar #384545)
DEBORAH MORRIS (Admitted to the NY Bar)
MICHAEL G. SALEMI (IL Bar #6279741)
PATRICK GUSHUE (PA Bar #306966)
JONATHAN URBAN (CO Bar #44190)
STEPHEN JACQUES (DC Bar #464413)
THOMAS MCCRAY-WORRALL (Admitted to the MD Bar)
ELIZABETH FRANCE (DC Bar #999851)
elizabeth.france@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-7694
Fax: 202-435-7024
Attorneys for Counter-Defendant
Consumer Financial Protection Bureau

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

v.

NATIONWIDE BIWEEKLY ADMINISTRATION, INC., LOAN PAYMENT ADMINISTRATION LLC, AND DANIEL S. LIPSKY,

Defendants.

----------------------------------------------

NATIONWIDE BIWEEKLY ADMINISTRATION, INC.,

Counter-claimant,

v.

CONSUMER FINANCIAL PROTECTION BUREAU,

Counter-defendant.

Case No. 3:15-cv-02106-RS

**COUNTER-DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIMS**

| | |
|---|---|
| Hearing Date: | February 9, 2017<br>1:30 p.m. |
| Judge: | Hon. Richard Seeborg |
| Courtroom: | Courtroom 3, 17th Floor<br>450 Golden Gate Ave.<br>San Francisco, CA 94102 |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

SUMMARY OF ARGUMENT ........ 1

ARGUMENT ........ 1

I. Nationwide Primarily Relies on Immaterial Purported Facts. ........ 2

A. Nationwide's Evidence Regarding Alleged Extrajudicial Tactics Focuses Exclusively on Actions by Agencies Other Than the Bureau. ........ 2

B. Nationwide's Evidence Regarding Bureau Conduct Does Not Relate to Nationwide or Its Banks. ........ 3

C. Nationwide's Evidence Related to Bureau Conduct Affecting Nationwide or Its Banks Does Not Relate to "Backroom" Pressure Tactics. ........ 5

D. The Kelley Report Introduces No Genuine Issues of Material Fact. ........ 6

II. Defendants Have Failed to Offer Material Facts Necessary to Survive Summary Judgment. ........ 7

A. Defendants Have Not Offered Facts Necessary to Maintain This Court's Jurisdiction. ........ 8

1. Defendants Have Not Offered Facts Supporting Redressability. ........ 8

2. Defendants Have Not Offered Facts Supporting Causation. ........ 9

B. Nationwide Has Not Offered Facts Showing the Bureau Restrained Protected Speech. ........ 12

C. Nationwide Has Not Offered Facts Showing Violation of a Due Process Right. ........ 13

D. Nationwide Has Not Offered Facts Supporting Its Administrative Procedures Act Claims. ........ 15

CONCLUSION ........ 15

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .... 2, 7

*Backpage.com LLC v. Dart*,
807 F.3d 229 (7th Cir. 2015) .... 12

*Bantam Books, Inc. v. Sullivan*,
372 U.S. 58 (1963) .... 12

*Bd. of Trustees of State Univ. of N.Y. v. Fox*,
492 U.S. 469 (1989) .... 13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .... 1, 7, 8, 10

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
447 U.S. 557 (1980) .... 13

*Cmty. Fin. Serv. Ass'n of Am., Ltd. v. FDIC*,
132 F. Supp. 3d 98 (D.D.C. 2015) .... 14

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Bd.*,
527 U.S. 666 (1999) .... 15

*Groos Nat'l Bank v. Comptroller of Currency*,
573 F.2d 889 (5th Cir. 1978) .... 14

*Guidroz-Brault v. Mo. Pac. R.R. Co.*,
254 F.3d 825 (9th Cir. 2001) .... 7

*Guzman v. Shewry*,
552 F.3d 941 (9th Cir. 2008) .... 14

*Heckler v. Chaney*,
470 U.S. 821 (1985) .... 15

*Humphries v. City of L.A.*,
554 F.3d 1170 (9th Cir. 2009) .... 14

*In re Rezulin Products Liab. Litig.*,
309 F. Supp.2d 531 (S.D.N.Y 2004) .... 7

*Kennedy v. Applause, Inc.*,
90 F.3d 1477 (9th Cir. 1996) .......... 2

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 8, 9

*Mosier v. Stonefield Josephson, Inc.*,
815 F.3d 1161 (9th Cir. 2016) .......... 2

*Nat'l Council of Resistance Iran v. Dep't of State*,
251 F.3d 192 (D.C. Cir. 2001) .......... 14

*O'Bannon v. Town Court Nursing Ctr.*,
447 U.S. 773 (1980) .......... 13

*Paul v Davis*,
424 U.S. 693 (1976) .......... 14

*Primavera Familienstifung v. Askin*,
130 F.Supp.2d 450 (S.D.N.Y. 2001) .......... 7

*Sorrell v. IMS Health, Inc.*,
564 U.S. 552 (2011) .......... 13

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......... 9

*Taylor v. Resolution Tr. Corp.*,
56 F.3d 1497 (D.C. Cir. 1995) .......... 15

*Trifax Corp v. District of Columbia*,
314 F.3d 641 (D.C. Cir. 2003) .......... 14

*United States v. Various Slot Machines on Guam*,
658 F.2d 697 (9th Cir. 1981) .......... 7

*Villiarimo v. Aloha Island Air, Inc.*,
281 F.3d 1054 (9th Cir. 2002) .......... 2

*Walnut Properties, Inc. v. City of Whittier*,
861 F.2d 1102 (9th. Cir. 1988) .......... 12

**Statutes**

5 U.S.C. § 701(a) .......... 15

5 U.S.C. § 706(2)(b) .......... 15

**Other Authorities**

Hon. Richard Cordray, Prepared Remarks of CFPB Director Richard Cordray at The Clearing House (Nov. 20, 2014) .......... 4

U.S. House of Representatives, Comm. on Oversight and Gov't Reform, *Federal Deposit Insurance Corporation's Involvement in "Operation Choke Point"* (Dec. 8, 2014) .......... 3

U.S. House of Representatives, Comm. on Oversight and Gov't Reform, *The Department of Justice's "Operation Choke Point": Illegally Choking Off Legitimate Businesses?* (May 29, 2014) .......... 3

**Rules**

ADR Local Rule 6-12 .......... 6

Fed. R. Civ. P. 56(a) .......... 1

On December 8, 2016, the Counter-defendant Consumer Financial Protection Bureau ("Bureau") moved for summary judgment on the Counterclaims of Counter-claimant Nationwide Biweekly Administration, Inc. ("Nationwide"). Dkt. 123. On January 5, 2017, Defendants filed an opposition to the Bureau's motion ("Opp'n"), Dkt. 166. The Bureau submits this Reply in support of its motion for summary judgment on the Counterclaims.

## SUMMARY OF ARGUMENT

Nationwide has packed its opposition with irrelevant, immaterial, unsupported "facts," while failing to offer evidence for the issues essential to its claims: any "extrajudicial" Bureau action and any nexus between such action and a constitutionally cognizable injury to Nationwide. The scant evidence Nationwide has obtained or introduced offers no corroboration of these claims but instead supports the obvious inference that this lawsuit (and preexisting issues in Nationwide's banking relationships unrelated to the Bureau) led to closure of Nationwide's accounts. Lacking any evidence to the contrary, Nationwide has identified no genuine issues of material fact involving any of its counterclaims, and the Bureau is entitled to summary judgment on those claims.[1]

## ARGUMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party can satisfy this burden by "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or by "demonstrat[ing] to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* at 331.

The non-moving party may offer circumstantial evidence, but such evidence requires "proof of

[1] Nationwide practically concedes its lack of material facts early in its opposition, summarizing its "evidence" in a litany of bald assertions while largely citing no support. Opp'n at 2.

one or more facts from which you could find another fact." *Mosier v. Stonefield Josephson, Inc.*, 815 F.3d 1161, 1171 (9th Cir. 2016) (quoting Ninth Circuit Model Civil Jury Instructions 1.9 (2015)). Its "probative value . . . depends entirely upon the strength of the inferences that can be drawn from the proven circumstances." *Id.* Although the court must draw inferences in the light most favorable to Nationwide, "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact") (emphasis in original). *Id.*at 247-48. There is no "'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)). The remaining disputed facts must provide "evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252.

## I. NATIONWIDE PRIMARILY RELIES ON IMMATERIAL PURPORTED FACTS.

Nationwide argues that the Bureau's motion ignores a "mountain of evidence" supporting its counterclaims, Opp'n at 2, but the bulk of these purported facts are irrelevant and immaterial to Nationwide's central allegation that the Bureau used extrajudicial tactics to pressure Nationwide's banks to terminate their relationships with Nationwide. *See, e.g.*, Counterclaims ("CC"), Dkt. 82 ¶¶ 95-97, 102-103, 110-111, 115-116. Indeed, most of the evidence Nationwide offers in opposition to summary judgment does not relate to Bureau activity or involves Bureau activity unrelated to Nationwide, its banks, or its line of business, and none of it creates an issue of fact precluding summary judgment.

### A. Nationwide's Evidence Regarding Alleged Extrajudicial Tactics Focuses Exclusively on Actions by Agencies Other Than the Bureau.

Nationwide relies heavily on two public reports from the Oversight and Government Reform Committee of the U.S. House of Representatives as circumstantial evidence for the Bureau's alleged use of extrajudicial tactics. Opp'n at 4-5. Tellingly, neither of these reports includes any congressional finding regarding the Bureau or indeed *any* reference to the Bureau at all, and the excerpts Nationwide

quotes from their exhibits do not show that the Bureau participated in the so-called "Operation Choke Point."[2] For example, Nationwide asserts that the Bureau was a "founding partner of Operation Choke Point" (Opp'n at 5) based solely on a Department of Justice memorandum stating that "[p]artner agencies ***should*** include the FTC, FDIC, OCC, FinCEN (Treasury), Federal Reserve Banks, NAAG, CFPB, FBI, and USPIS . . . ."[3] Similarly, Nationwide offers memorandum excerpts stating that DOJ "offered to work with CFPB to identify appropriate targets and to pursue a joint investigation" and that the Bureau's Enforcement Director approved a "proposal for a joint approach" without noting that these passages are, on their face, limited to a nascent agreement regarding payday lending that, even if pursued, would plainly be unrelated to Nationwide. These reports do not supply facts to create a nexus between the Bureau and so-called "Operation Choke Point" activities essential to Nationwide's claim.[4]

### B. Nationwide's Evidence Regarding Bureau Conduct Does Not Relate to Nationwide or Its Banks.

To the extent Nationwide offers facts showing Bureau conduct, that conduct (like the payday lending meetings described above) is irrelevant to Nationwide, its line of business, and its

---

[2] U.S. House of Representatives, Comm. on Oversight and Gov't Reform, *The Department of Justice's "Operation Choke Point": Illegally Choking Off Legitimate Businesses?* (May 29, 2014), *available at* https://oversight.house.gov/release/report-dojs-operation-choke-point-secretly-pressured-banks-cut-ties-legal-business/ ["DOJ Report"]; U.S. House of Representatives, Comm. on Oversight and Gov't Reform, *Federal Deposit Insurance Corporation's Involvement in "Operation Choke Point"* (Dec. 8, 2014), *available at* https://oversight.house.gov/wp-content/uploads/2014/12/Staff-Report-FDIC-and-Operation-Choke-Point-12-8-2014.pdf.

[3] DOJ Report, Appendix 1 at HOGR-3PPP000019 (emphasis added).

[4] Nationwide's misleading presentation disguises both the tentative nature of these discussions and their limitation to the Bureau's oversight of payday lending. The excerpt describing an offer to work with CFPB (Opp'n at 5) summarized a specific meeting "to discuss payday lending," and the memorandum containing it notes that CFPB had "not responded to [DOJ's] proposal" and that "recent communications . . . have received no response." DOJ Report, Appendix 1 at HOGR-3PPP000050. Nationwide's further assertion that a DOJ employee "thereafter . . . verified: 'CFPB's Director of Enforcement has approved [DOJ's] proposal for a joint approach'" obscures that this statement appears in a separate memorandum and was limited to internet payday lending. *Id.* at HOGR-3PPP000169. A fuller quotation clarifies the immateriality of this evidence: "We have tentatively agreed with CFPB to determine whether there are payday lenders that would make good targets of federal investigation, and a structure for joint analysis of evidence. Despite past inconsistency with respect to CFPB's offers to work with us on this effort, CFPB's Director of Enforcement has approved our proposal for a joint approach." *Id*.

counterclaims. Nationwide quotes at length from remarks that the Bureau's director gave in 2014 as evidence that the Bureau "issued a clear warning to banks" that it would "hold the banks responsible should any ACH customer, such as Nationwide, violate the law." Opp'n at 8-9. But these remarks relate to discrete and irrelevant issues such as "unscrupulous lenders," "protections afforded consumers under the Electronic Fund Transfer Act," and failure to "honor consumers' stop payment and revocation orders."[5] They provide no facts material to Nationwide's business practices or any "warning" to Nationwide's banks regarding ACH transactions across the board or regarding Nationwide's conduct at issue in this litigation: the Bureau's claims against Nationwide do not involve lending or stop payment orders, nor do they arise under the Electronic Fund Transfer Act.

Likewise, Nationwide's general description of the Bureau's supervisory and enforcement structure, its summary of the Bureau's risk assessment process, and its observation that the Bureau supervises Nationwide's former banks—which Nationwide asserts show opportunity to "implement Operation Choke Point and other extrajudicial tactics," Opp'n at 6—are immaterial absent facts showing that the Bureau actually engaged in such tactics or that these structures or processes were relevant to the banks' termination decisions. Nationwide has not offered such facts.

Nationwide also notes that it had been subject to several unrelated lawsuits, allegedly involving issues similar to this litigation, but that its banks maintained their relationships with it despite those suits. Opp'n at 14-15. Nationwide offers no factual nexus between these lawsuits and its counterclaims, relying instead on inferences that the existence of prior lawsuits without termination of Nationwide's

---

[5] Nationwide's selective quotation omits key sentences clarifying the remarks' irrelevance to its business or claims: "While there are undoubtedly great benefits to the current system of electronic payment networks—financial transactions today would not be the same without them—at the Consumer Bureau we also have some concerns. **We have concerns about consumers who are exposed to loss or theft or are otherwise mistreated. We have concerns about a general lack of transparency. And we have concerns about hidden and exclusionary effects on some consumers.** Let me describe these issues in more detail as a means of sparking more consideration and discussion about them." Hon. Richard Cordray, Prepared Remarks of CFPB Director Richard Cordray at The Clearing House (Nov. 20, 2014), *available at* http://www.consumerfinance.gov/about-us/newsroom/prepared-remarks-of-cfpb-director-richard-cordray-at-the-clearing-house/ (emphasis added to material omitted by Nationwide).

banking relationships precludes the conclusion that the present lawsuit (rather than hypothetical extrajudicial conduct) triggered the end of these relationships. This inference conflicts with Nationwide's own evidence, namely a former U.S. Bank employee identifying this lawsuit as the reason for the termination. Nationwide's belief about unrelated lawsuits against it—which is speculative and unsupported by available evidence—does not render those lawsuits material to its counterclaims.

### C. Nationwide's Evidence Related to Bureau Conduct Affecting Nationwide or Its Banks Does Not Relate to "Backroom" Pressure Tactics.

Nationwide asserts that Bureau actions incidental to this litigation—rather than commencement of this litigation itself—led to termination of its banking relationships. To that end, it describes a Bureau press release (issued concurrently with the initiation of this lawsuit) and an exhibit (naming Nationwide's banks) to the Bureau's Opposition to a Motion to Transfer Venue, but it fails to establish any relationship between these documents and either "backroom-pressure tactics," CC at ¶ 10,[6] or any bank's decision to terminate its relationship with Nationwide. Despite deposing witnesses from two of these banks and offering a transcript of a call between representatives of one bank and Nationwide, Nationwide offers no evidence that the banks were aware of the press release or the exhibit to the venue filing, let alone that either played a role in any bank's decision to terminate its relationship with Nationwide.[7] Instead, the deposition of a former U.S. Bank employee identifies the filing of this litigation as the trigger for that bank's decision, showing that the key internal conference call that employee attended regarding the relationship with Nationwide focused on "what was going on with the lawsuit, why they were being sued," and concerns about U.S. Bank revenues from the relationship, which were less than anticipated. Schneider Decl., Dkt. 166-3, Ex. 1 at 33:13-24. That employee further described the conclusion of the call: "We were to contact the company and tell them that because of this lawsuit we have made a decision to exit the relationship." *Id.* at 40:2-4. When asked whether the

---

[6] Indeed, Nationwide's key complaint about these actions—their publicity—contradicts the hypothetical use of "backroom" tactics at the heart of Nationwide's counterclaims

[7] Nationwide deposed a representative of TD Bank on January 6, after submitting its opposition.

"decision to exit the relationship, to terminate the relationship with [Nationwide], was because of the lawsuit that the CFPB had filed," he replied, "No doubt about it. That was the reason." *Id.* at 40:13-16.

Nationwide's allegations regarding its requests for a "comfort letter" are also immaterial. Opp'n at 10-11. As an initial matter, the evidence Nationwide relies on is inadmissible confidential mediation information. *See* ADR Local Rule 6-12 ("anything that was said, any position taken, and any view of the merits of the case expressed by any participant in connection with any mediation" is "confidential information" and shall not be disclosed to the assigned judge or used for any purpose in any proceeding in this court). Even if the Court does consider Nationwide's arguments, those allegations do not create an issue of fact precluding summary judgment. Nationwide cannot substitute irrelevant allegations that the Bureau did not intervene to prevent independent, third-party termination decisions—which Nationwide does not assert the Bureau had any duty to do—for necessary facts showing the Bureau engaged in extrajudicial conduct *causing* those decisions.

**D. The Kelley Report Introduces No Genuine Issues of Material Fact.**

The testimony of Nationwide's purported expert, Brian H. Kelley, simply recapitulates Nationwide's own inadequate allegations, including that the Bureau supervised Nationwide's banks, that it did not provide a so-called "comfort letter," that its director gave public remarks regarding ACH services (which Mr. Kelley opines constituted a "clear message to banks" regarding responsibility for ACH customer violations of the law), and that the banks also terminated services to Mr. Lipsky and affiliated entities. Opp'n at 16-17. Mr. Kelley also adopts Nationwide's own speculative assertions that the Bureau's participation in "Operation Choke Point" is "undeniable" and purports to have knowledge of "Operation Choke Point's" intent—based only on the public congressional reports discussed above and identifying no applicable technical knowledge relevant to interpreting those reports. This is only one example of Mr. Kelley's method of citing Nationwide's allegations and irrelevant facts, then simply opining—based on his personal and subjective views without basis in a relevant body of technical knowledge or expertise—that Nationwide's speculations are accurate.

Rule 702 requires that expert "evidence 'assist the trier of fact'" and that "expert testimony relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation

and subjective beliefs." *Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001). "In the context of a motion for summary judgment, an expert must back up his opinion with specific facts." *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981). He "should not be permitted to 'supplant the role of counsel in making argument at trial, and the role of the jury in interpreting the evidence.'" *In re Rezulin Products Liab. Litig.*, 309 F. Supp.2d 531, 541 (S.D.N.Y 2004) (quoting *Primavera Familienstifung v. Askin*, 130 F.Supp.2d 450, 527, *amended on reconsideration on other grounds*, 137 F.Supp.2d 438 (S.D.N.Y. 2001)). By offering nothing more than simple "factual narratives and interpretations of conduct or views as to the motivation of parties," Mr. Kelley does exactly that. *Id*. Restating immaterial facts in the guise of expert testimony cannot manufacture genuine issues of material fact.[8]

## II. DEFENDANTS HAVE FAILED TO OFFER MATERIAL FACTS NECESSARY TO SURVIVE SUMMARY JUDGMENT.

Without the immaterial facts described above, Nationwide has offered no evidence to establish a genuine issue of material fact with respect to its counterclaims or identified sources able to do so. Nationwide's remaining facts establish only that its banks terminated its accounts after—and most likely because—the Bureau filed this lawsuit,[9] and the proffered evidence provides no factual support for Nationwide's unsubstantiated core claim that the Bureau engaged in "backroom" pressure tactics toward the banks. Without evidence for that critical claim and other essential facts detailed below, Nationwide cannot establish standing or prevail on its counterclaims as a matter of law, and the Bureau is entitled to summary judgment on them. *Celotex*, 477 U.S. at 325 (movant satisfies its burden by showing "that there is an absence of evidence to support the nonmoving party's case"); *Liberty Lobby*, 477 U.S. at 252

---

[8] Expert discovery is ongoing, and the Bureau may have cause to challenge Mr. Kelley's expert designation. If discovery reveals additional facts relevant to the Bureau's Motion for Summary Judgment, the Bureau requests an opportunity to submit supplemental briefing.

[9] As the Court observed in its order dismissing Nationwide's counterclaims, "[t]he face of the pleading gives rise to an inference that the banks ended their relationships with Nationwide not as the result of any extra-judicial conduct under 'Operation Choke Point,' but in light of this action." ("Order"), Dkt. 80 at 8. Since that time, Nationwide has only offered evidence strengthening that inference.

("[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

**A. Defendants Have Not Offered Facts Necessary to Maintain This Court's Jurisdiction.**

Standing to sue the government is "substantially more difficult to establish" when a party "is not himself the object of the government action he challenges," because "[t]he existence of one or more of the essential elements depends on the unfettered choices made by independent actors not before the courts." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) (internal quotations omitted). Here, Nationwide has offered no facts that support either a causal nexus between any Bureau conduct and independent bank decisions to terminate Nationwide's accounts or a likelihood that its requested relief would change those independent decisions. Therefore, Nationwide has failed to meet its burden of establishing Article III standing.

**1. Defendants Have Not Offered Facts Supporting Redressability.**

As noted in the Bureau's Motion—and as this Court stated more than seven months ago—Nationwide's claim to this Court's jurisdiction depends on its allegation that "the banks are looking for a resolution of this litigation in Nationwide's favor as a condition to resuming the business relationship." Order at 6. Without it, Nationwide could not have satisfied the redressability prong necessary to establish standing. *See Lujan*, 504 U.S. at 560-61. At the summary judgment stage, however, Nationwide "can no longer rest on such 'mere allegations,'" and must set forth facts establishing standing. *Id.*; *see also Celotex*, 477 U.S. at 325 (moving party satisfies burden by "pointing out" to the court an "absence of evidence to support the nonmoving party's case.").

Although it makes the conclusory statement that "the facts in the record" support the inference that the banks were "looking for assurance" from the Bureau, Opp'n at 22, Nationwide cites no such evidence, nor any supporting its speculation that the banks would reestablish relationships with Nationwide upon receiving such "assurance." Nationwide has also failed to obtain any document or testimony from any of the banks in this matter showing that they regarded Nationwide's success on its counterclaims "as a condition to resuming the business relationship." Order at 6. Instead, Nationwide

asks this Court to rely on its unsupported speculation regarding what these banks might do if this Court grants the relief it seeks. Although this Court found such speculation sufficient to survive a motion to dismiss, it is wholly inadequate for purposes of summary judgment. *See Lujan*, 504 U.S. at 560-61. Nationwide has offered no fact indicating that its former banking partners have any intention of reestablishing their banking relationships;[10] its only proffered evidence is testimony of a former low-level bank employee who gave no opinion on whether the bank sought to resume a relationship with Nationwide.[11] Nationwide cannot establish the redressability prong necessary for this Court's jurisdiction, so "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

**2. Defendants Have Not Offered Facts Supporting Causation.**

To establish standing, Nationwide must also show the "causal connection between the injury and the conduct complained of" such that the injury is "fairly … traceable to the challenged action of the defendant, and not … the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560. Yet Nationwide has not offered facts supporting a nexus between any alleged Bureau conduct and independent bank decisions, such as any communication between the Bureau and any of Nationwide's banks regarding Nationwide, its business model, or its business practices[12] or facts

---

[10] Nationwide's reliance on the so-called "comfort letter" it sought is unavailing. Not only is the failure to provide such a letter not at issue in their counterclaims, but Nationwide offers no facts indicating that such a letter would cause the banks to reestablish their banking relationships.

[11] Even if he had opined on such a subject, as a former employee (testifying, no less, in his personal capacity) he has no authority to speculate—and claimed no knowledge—regarding the bank's willingness to reestablish a relationship with Nationwide.

[12] In its Motion, the Bureau observed that Nationwide issued subpoenas in *Krogstad v. Nationwide Biweekly Admin., Inc. and Loan Payment Admin., LLC*, Civil Case No. 2:16-cv-00465-APG-CWH (D. Nev. filed Mar. 3, 2016) seeking communications identical to those it sought here, and Nationwide acknowledged in that case that each bank "represented that it had no documents or information responsive to any of these requests." ("Mot."), Dkt.123 at 5 n.5. In response, Nationwide simply asserts that the banks have produced material in response to those subpoenas, which Nationwide admits included, "*among other items*," requests for "communications between the banks and the CFPB regarding [Nationwide]." Opp'n at 20-21 (emphasis added). In any event, Nationwide has not identified a document showing any such communication.

showing that the banks perceived extrajudicial "backroom" pressure from the Bureau. As noted in the Bureau's Motion, Nationwide propounded interrogatories and requests for production of documents regarding communications between the Bureau and Nationwide's banks, and the Bureau responded that it found no responsive information. Mot. at 4. Nationwide attempts to sidestep this evidence from the Bureau's discovery responses by asserting that the Bureau has not "propounded comprehensive discovery" on the counterclaims. Opp'n at 18. Specifically, Nationwide faults the Bureau for not deposing two Nationwide employees and one U.S. Bank employee regarding communications between Nationwide and the banks. *Id*. This deflection is misleading and irrelevant. Nationwide's initial discovery responses did not identify these witnesses as sources for information regarding Nationwide's banking relationships or the termination of those relationships, and Nationwide did not submit its second supplemental disclosures identifying them for those purposes until December 19—the day fact discovery closed. McCray-Worrall Decl., Dkt. 123-1, Ex. 9; Schneider Decl., Dkt. 166-3, Ex.3.[13] But more importantly, the Bureau does not bear the burden of proving that no such communications existed; it need only show that Nationwide has failed to introduce facts showing that they did. *See Celotex*, 477 U.S. at 331. The Court need not consider the Bureau's discovery responses to reach that obvious conclusion.

Nationwide has failed not only to offer evidence of communications between the Bureau and any of its banks regarding Nationwide, but also to offer facts related to three of its four banks' general interactions with the Bureau, relationships with Nationwide, and reasons for terminating Nationwide's accounts.[14] Instead, it relies exclusively on two sources related to the fourth bank. First, it offers a

---

[13] Nationwide also observes that the Bureau did depose two of these witnesses, plus an additional Nationwide employee, and argues that the occurrence of these depositions proves Nationwide has identified witnesses relevant to its counterclaims. Opp'n at 20. Nationwide did not identify any of these three witnesses as having information material to its counterclaims in its initial disclosures and submitted supplemental disclosures on the last day of fact discovery, long after the Bureau deposed the witnesses regarding the Bureau's own claims (not Nationwide's counterclaims). In any event, Nationwide has offered no corroborated facts from these three witnesses to support its counterclaims.

[14] For two of the four banks—Bank of American and BMO Harris—Nationwide has not even obtained evidence to show that it had longstanding banking relationships or that those relationships were

transcript of a call between a Nationwide employee and U.S. Bank representatives, emphasizing statements showing that individual bank employees who were not responsible for the termination decision were told that the CFPB had "long arms" and "unlimited resources" and that U.S. Bank previously had bad experiences with the Bureau. Opp'n at 13, 22. Nationwide relies on similar statements from the deposition of a former U.S. Bank employee, specifically that a senior vice president provided him with a "crash course" on the Bureau, including suggestions that the Bureau had "deep pockets," was "virtually unregulated," and was "very powerful." Opp'n at 14, 22.[15] But Nationwide does not identify, in either of these transcripts or any other source, any Bureau action toward Nationwide's banks in connection with Nationwide or any fact suggesting that the banks experienced or acted on backroom pressure.

Instead, it ignores statements within the same documents showing that the perceptions of the Bureau these bank employees described related to past litigation, not backroom tactics. Schneider Decl., Dkt.166-3, Ex. 1 at 36:7-16 (explaining that the bank's previous experience with the Bureau involved "a lawsuit prior to" this litigation). Nationwide also omits deposition testimony showing that U.S. Bank's decision hinged on existing relationship concerns combined with the filing of this litigation. Despite Nationwide's claims of "exemplary standing" prior to the Bureau's suit, Opp'n at 1, the former U.S. bank employee reported that the relationship with Nationwide entailed "high risk transactions" and that U.S. Bank received less revenue than anticipated from Nationwide. Schneider Decl., Dkt.166-3, Ex. 1 at

---

terminated shortly after the Bureau filed suit, let alone to substantiate the banks' motivations. Nationwide did not conduct depositions of representatives for those banks or identify ones who would have relevant information. Nationwide also does not offer evidence substantiating the length/nature of its relationship with TD Bank, that the bank terminated that relationship, or when or why that termination occurred. Nationwide deposed a representative of a TD Bank on January 6, the day after filing its opposition brief.

[15] It is also clear from the transcript that the deponent did not have firsthand knowledge of the Bureau or any Bureau action and that his statements about Bureau conduct are based on inadmissible hearsay. *See*, *e.g.*, Schneider Decl., Dkt.166-3, Ex. 1 at 28:19-20 (at the time he learned of the lawsuit, before the "crash course," the former employee "didn't know what CFPB was").

29:23-31:5, 31:16-19. He further expressed his strong belief that the bank terminated its relationship with Nationwide because the Bureau filed this lawsuit. *Id.* at 40:16 ("No doubt about it. That was the reason."). Likewise, despite Nationwide's repeated assertions that the banks feared "reprisal," e.g., Opp'n at 18, Nationwide identifies no facts establishing that fear, in these transcripts or elsewhere.[16]

### B. Nationwide Has Not Offered Facts Showing the Bureau Restrained Protected Speech.

Nationwide alleges that "through the use of extrajudicial Operation Choke Point tactics, CFPB has infringed Nationwide's speech prior to any establishment of wrongdoing or adjudication of CFPB's claims." Opp'n at 23. As with the claims addressed above, Nationwide fails to identify any facts supporting the existence of an extrajudicial action that could plausibly reflect a prior restraint on speech. For example, Nationwide has not obtained evidence that the Bureau was involved in any "actual or threatened imposition of government power or sanction," such as sending threatening letters. *Backpage.com LLC v. Dart*, 807 F.3d 229, 230 (7th Cir. 2015) (finding First Amendment harm where a sheriff sent a letter coercing credit card companies to prohibit use of their cards to purchase ads) (citation omitted); *see also Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) (commission infringed publisher speech by sending distributors "thinly veiled threats to institute criminal proceedings").

Nationwide has also offered no facts to show it has suffered a restraint on protected speech. Unlike *Walnut Properties, Inc. v. City of Whittier*, 861 F.2d 1102 (9th. Cir. 1988), cited by Nationwide, where a zoning ordinance prohibited an adult theater from operating and so from engaging in speech by screening films, Nationwide has not shown any direct restraint on speech itself (such as a pre-adjudication order not to distribute material describing the biweekly method of paying a mortgage or threat if material is distributed).[17] Nationwide has merely alleged that contraction of the company following the Bureau's lawsuit has indirectly caused "its marketing activities, and dissemination of

---

[16] Instead, Nationwide asserts that unexplained termination of banking relationships is a "hallmark" of "Operation Choke Point," Opp'n at 1, but it provides no facts in support this assertion.

[17] This omission also distinguishes the present case from *Backpage* and *Bantam*, in which coercive conduct targeted speech: purchase of advertisements and distribution of books and magazines.

accurate information regarding its Interest Minimizer Program" to be "restricted."[18] Nationwide's theory would convert any government action that reduced funds available for marketing into a First Amendment violation.[19] This is not the law. *See, e.g.*, *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 567 (2011) (observing that "the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech" and distinguishing regulations that do "not simply have an effect on speech, but [are] directed at certain content and [are] aimed at particular speakers"). The Bureau is therefore entitled to summary judgment on Nationwide's First Amendment counterclaim.

### C. Nationwide Has Not Offered Facts Showing Violation of a Due Process Right.

Although it asserts that the Bureau's alleged "use of extrajudicial tactics," its issuance of a press release, and its naming of Nationwide's banks in its venue-related filing violated its due process rights, Opp'n at 24, Nationwide has not offered facts showing the Bureau engaged in any "extrajudicial" tactics, nor has it offered evidence that the press release or the identification of the banks in the venue filing—as distinct from the filing of the Bureau's complaint commencing this litigation—influenced the banks' decisions. Instead, as previously discussed, the Nationwide's evidence supports no inference other than that the terminations of its banking relationships were "indirect adverse effects of governmental action" (the filing of this lawsuit), which is not sufficient for a due process claim. *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 789 (1980).

---

[18] Its only support for these allegations—which are insufficient in any event—come from two self-serving declarations regarding layoffs and suspension of certain business activities. Opp'n at 23.

[19] In addition, even if Nationwide had shown that Bureau activity restricted its speech, it has not shown that affected advertisements (which the Bureau asserts are false and misleading) are anything but commercial speech. Although Nationwide has asserted that its advertisements "educate" consumers, CC at ¶ 93, its Opposition Brief does not identify any facts showing that any incidental educational material changes their status. *See Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 475-76 (1989) (stating that inclusion of educational material in a sales pitch does not "convert . . . presentations into educational speech"). The Supreme Court has been clear that "there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980).

Even if Nationwide had offered such facts, reputational harm is not an unconstitutional deprivation of a liberty or property interest unless accompanied by "alteration or extinguishment" of "a right or status previously recognized by law." *Humphries v. City of L.A.*, 554 F.3d 1170, 1185 (9th Cir. 2009) (quoting *Paul v Davis*, 424 U.S. 693, 711 (1976)).[20] Similarly, allegations of serious impairment to "future employment opportunities" are inadequate without facts showing a change in legal status, "such as loss of tax exemption or loss of government employment." *Paul*, 424 U.S. at 697, 705.

Nationwide theorizes that its "ability to pursue its chosen line of business" and to "hold a bank account" provide sufficient rights "entitled to constitutional protection," Opp'n at 24 (citing *Trifax Corp v. District of Columbia*, 314 F.3d 641, 544 (D.C. Cir. 2003). Notably, *Trifax* does not reference a right to hold a bank account, and Nationwide has provided no authority to support such a constitutional right or any facts showing that Bureau actions have precluded it from obtaining a bank account.[21] Nationwide also has not established deprivation of a right to "pursue its chosen line of business." Opp'n at 24. The only evidence Nationwide offers to support this claim comes from two self-serving declarations stating that Nationwide has laid off employees and suspended its biweekly mortgage payment program. *Id.* These purported facts do not come close to meeting the requirement for a "complete prohibition on the right to engage in a calling, and not [a] sort of brief interruption." *Guzman v. Shewry*, 552 F.3d 941, 954 (9th Cir. 2008) (noting that such interests have been limited to challenges to "regulations on entry into a particular profession" and states seeking "permanently to bar an individual from public employment") (citations omitted). *See also Trifax*, 314 F.3d at 644 (requiring that "the government has seriously affected, if not destroyed" the ability to obtain employment or

---

[20] In *Humphries*, listing a person on a child abuse index was insufficient; the constitutional harm arose because state statutes conditioned various benefits on agency review of the index. *Id*. at 1188-89.

[21] Although the District Court for the District of Columbia concluded that "many people" would consider holding a bank account an "important right," *Cmty. Fin. Serv. Ass'n of Am., Ltd. v. FDIC*, 132 F. Supp. 3d 98, 124 (D.D.C. 2015), it directly quoted as support a case that involved not only holding an account but accessing the funds in that account. *Nat'l Council of Resistance Iran v. Dep't of State*, 251 F.3d 192, 204 (D.C. Cir. 2001). In contrast, other courts have held that "persons cannot claim a constitutionally protected right to do business with a particular bank." *Groos Nat'l Bank v. Comptroller of Currency*, 573 F.2d 889, 897 (5th Cir. 1978).

contracts in a field) (quoting *Taylor v. Resolution Tr. Corp.*, 56 F.3d 1497, 1506 (D.C. Cir. 1995)).[22] Therefore, Nationwide has failed to identify either fact essential to survive summary judgment on its due process claim: a constitutionally protected right or a Bureau action violating that right.

**D. Nationwide Has Not Offered Facts Supporting Its Administrative Procedures Act Claims.**

Nationwide has not established any "agency action, findings, [or] conclusions" that are "contrary to constitutional right, power, privilege, or immunity," Opp'n at 25 (citing 5 U.S.C. § 706(2)(b)), or exceed the Bureau's statutory authority. Rather than identify a single specific fact supporting this claim in its Opposition Brief, Nationwide broadly references its entire Statement of Facts. *Id*. As described at length above, these purported facts are irrelevant and immaterial, in that they either relate to purportedly extrajudicial activity by agencies other than the Bureau or involve only activities clearly within the Bureau's statutory authority, such as initiating a lawsuit, making public filings in that suit, and issuing a press release regarding that suit.

Finally, because Nationwide has not offered facts sufficient to show that sovereign immunity has been waived, the Court lacks jurisdiction to review Nationwide's APA counterclaims. As detailed in the Bureau's Motion to Dismiss, Dkt. 86 at 14, the APA's waiver excludes agency action "committed to agency discretion by law." *Heckler v. Chaney*, 470 U.S. 821, 828 (1985) (citing 5 U.S.C. § 701(a)). Nationwide has presented no facts showing any relevant Bureau action—including defining "risk" and issuing its examinations manual—not committed to agency discretion by law.

**CONCLUSION**

For the reasons stated above, the Court should grant summary judgment in favor of the Bureau on Nationwide's counterclaims.

---

[22] Nationwide's assertion that "business is a property right," Opp'n at 24, fails to distinguish between "the assets of a business" which are "unquestionably a property right," and "the activity of doing business, or the activity of making a profit," which are not. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Bd.*, 527 U.S. 666, 675 (1999). Nationwide offers no evidence of loss of business assets—such as funds previously held in its accounts—rather than disruption of business activity.

Dated: January 19, 2017

Respectfully submitted,

MARY MCLEOD
General Counsel

JOHN R. COLEMAN
Deputy General Counsel

ANNE H. TINDALL
Assistant General Counsel

ANTHONY ALEXIS
Enforcement Director

DEBORAH MORRIS
Deputy Enforcement Director

MICHAEL G. SALEMI
Assistant Litigation Deputy

/s/ Elizabeth France
Elizabeth France
elizabeth.france@cfpb.gov
202-435-7694
Thomas McCray-Worrall
thomas.mccray-worrall@cfpb.gov
202-435-9683
*Litigation Attorneys*

Patrick Gushue
patrick.gushue@cfpb.gov
202-435-9671
Jonathan Urban
jonathan.urban@cfpb.gov
202-435-7371
Stephen Jacques
Stephen.jacques@cfpb.gov
202-435-7368
*Enforcement Attorneys*

Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Counter-Defendant's Reply in Support of Motion for Summary Judgment on Counterclaims was served on January 19, 2017, via ECF upon counsel of record in this action:

John D. Smith
140 North Main Street, Suite B
Springboro, Ohio 45066

Sean Ponist
Georgia Schneider
Law Office of Sean Ponist, P.C.
100 Pine Street, Suite 1250
San Francisco, CA 94111

Allyson Baker
Venable LLP
575 7th Street, NW
Washington, DC 20004

Christopher Stock
119 East Court Street
Suite 530
Cincinnati, OH 45202

/s/ Elizabeth France
Elizabeth France
elizabeth.france@cfpb.gov
202-435-7694
*Litigation Attorney*

Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552