SEAN E. PONIST (SBN 204712)
sponist@ponistlaw.com
GEORGIA Z. SCHNEIDER (SBN 251358)
gschneider@ponistlaw.com
**LAW OFFICES OF SEAN PONIST, P.C.**
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 798-2222
Fax: (888) 350-5442

JOHN D. SMITH (admitted *pro hac vice*)
**JOHN D. SMITH CO., LPA**
jsmith@johndsmith.com
140 N. Main Street, Suite B
Springboro, Ohio 45066
Telephone: (937) 748-2522
Fax: (937) 748-2712

***Attorneys for Defendants and Counter-Claimants Nationwide Biweekly Administration, Inc., Loan Payment Administration, LLC, and Daniel S. Lipsky***

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

vs.

NATIONWIDE BIWEEKLY ADMINISTRATION, INC., LOAN PAYMENT ADMINISTRATION LLC, and DANIEL S. LIPSKY,

Defendants.

_

NATIONWIDE BIWEEKLY ADMINISTRATION, INC.,

Counter-claimant,

vs.

CONSUMER FINANCIAL PROTECTION BUREAU,

Counter-defendant.

Case No. 3:15-cv-02106-RS

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS DEFENSE BARRING PLAINTIFF'S CLAIM**

| | |
|---|---|
| Date: | February 9, 2017 |
| Time: | 1:00 P.M. |
| Courtroom: | Courtroom 3, 17th floor |
| Judge: | Honorable Richard Seeborg |

TABLE OF CONTENTS

INTRODUCTION …………………..……………………………………………………………..1

FACTS…………………………...……………………..……………………………………..1

ARGUMENT……………....…………………………………………………………………….2

I. CFPB'S ARGUMENTS ABOUT §5564 IGNORE THE UNAMBIGUOUS PLAIN MEANING OF THE STATUTORY LANGUAGE AND WOULD LEAD TO ABSURD AND ARBITRARY RESULTS……………………………………………….2

A. UDAAP VIOLATIONS ARE DEFINED IN §5536, NOT IN §5531 ………………3

B. CFPB COMPLETELY IGNORES THE FACT THAT §5564 CONTAINS THE PHRASE "TO WHICH AN ACTION RELATES"…………………..………..4

C. CFPB'S ARGUMENTS IGNORE THE PLAIN MEANING, CASE LAW, AND CONTEXT SURROUNDING THE TERM "DISCOVERY" IN §5564…….4

1. IN THE STATUTE OF LIMITATIONS CONTEXT, THE TERM "DISCOVERY" MEANS NOT ONLY THE FACTS THE PLAINTIFF ACTUALLY KNEW, BUT ALSO THE FACTS A REASONABLY DILIGENT PLAINTIFF WOULD HAVE KNOWN…….5

2. "DISCOVERY" UNDER §5564 OCCURS AT THE POINT IN TIME WHEN CFPB INITIALLY KNOWS, OR SHOULD KNOW, FACTS SUGGESTING A PRESENT CAUSE OF ACTION……………………….5

3. "DISCOVERY" REFERS TO DISCOVERY OF FACTS-NOT SOME INTERNAL CFPB PROCESS WHERE CFPB CHOOSES WHAT IT HAS OR HAS NOT LEARNED…………………………………8

II. CFPB FAILS TO CONTRADICT THE FACTS THAT SHOW THAT CFPB KNEW, OR SHOULD HAVE KNOWN, PRIOR TO MAY 11, 2012, OF FACTS SUGGESTING THE CAUSES OF ACTION CFPB HAS PURSUED IN THIS CASE………………………………………………………………12

A. CFPB DIRECTOR RICHARD CORDRAY KNEW PRIOR TO MAY 11, 2012 OF FACTS SUGGESTING THE CAUSES OF ACTIONS CFPB HAS PURSUED IN THIS CASE ……………………………………………………12

B. THE CONSUMER COMPLAINT SUBMITTED TO CFPB ON MARCH 3, 2012, ESTABLISHES THAT CFPB KNEW, OR SHOULD HAVE KNOWN, PRIOR TO MAY 11, 2012, OF FACTS SUGGESTING THE CAUSES OF ACTIONS CFPB PURSUED IN THIS CASE……………………………………………13

CONCLUSION ……………………………………………………………………………14

CERTIFICATE OF SERVICE....................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Consumer Fin. Prot. Bureau v. Gordon,* 819 F.3d 1179, 1192 (9th Cir. 2016) …………………14

*CFPB v. Intercept Corp.,* No. 3:16-cv-00144-ARS (D.N.D. 2016) ……………………………. 9, 12

*Consumer Fin. Prot. Bureau v. Morgan Drexen,* 60 F. Supp 3d 1082, 1090 (C.D. Cal. 2014)…14

*Fallini v. United States,* 56 F.3d 1378, 1380 (Fed. Cir. 1995) ……………………………..11

*Gabelli v. SEC,* 133 S. Ct. 1216, 1223 (2013) ………………………………………………...10, 12

*In the Matter of Integrity Advance LLC*, CFPB No. 2015-0029 (Dec. 5, 2016) …………………4, 9

*Ma v. Ashcroft,* 361 F3d 553, 559 (9th Cir. 2004) …………………………………………..6

*Merck & Co. v. Reynolds*, 559 U.S. 633, 644-48 (2010) ……………………………………5, 7, 8, 15 16

*Robinson v. Shell Oil Co.,* 519 U.S. 337, 340 (1997)…………………………………………3

*Rotella v. Wood,* 528 U.S. 549, 556, 120 S. Ct. 1075, 1081 (2000) ………………………………11

*United States v. Espino*, 555 F. App'x 649, 650-51 (9th Cir. 2014) ………………………………15

*United States v. Gavilan Joint Cmty. Coll. Dist.*, 849 F2d 1246, 1250 (9th Cir. 1988) ……………7, 9, 10 11

**Codes**

*12 U.S.C. §5511* ……………………………………………………………………………..6

*12 U.S.C.§5531* ………………………………………………………………………………3

*12 U.S.C. §5531(a)* …………………………………………………………………………..3

*12 U.S.C. §5536* ……………………………………………………………………………3, 4

*12 U.S.C.§5536(a)* ……………………………………………………………………………3

*12 U.S.C. §5536(a)(1)(B)* ……………………………………………………………..3, 4, 13

*12 U.S.C. §5564* …………………………………………………………………………....4, 5, 6 7, 8, 9 10, 11, 14

*12 U.S.C. §5564(g)(1)* ……………………………………………………………………..3, 4 5, 6, 9, 10

*12 U.S.C. §5565* ……………………………………………………………………………7, 9

*12 U.S.C. §5565(c)(2)* ..........6
*28 U.S.C.§2416(c)* ..........8
*42 U.S.C. §3613* ..........7

**Other Authorities**

*Consumer Response Annual Report* ..........14

*President Obama Announces Recess Appointments to Key Administration Posts* ..........2

*The CFPB strategic Plan, budget, and performance plan and report* ..........11

*Treasury Department Announces Senior Leadership Hires for CFPB Implementation Team* ......2

## INTRODUCTION

The Consumer Financial Protection Bureau ("CFPB" or "Plaintiff") argues that because it is the government, the statutory language and case law interpreting statutes of limitations do not apply. Plaintiff's position disregards the plain meaning of the statute of limitations and merely states, "the statute does not begin to run until we say it does if and when we have concluded an investigation." Although Plaintiff spends a lot of time and effort to escape from the mandates of the law in this regard, it fails to address the fact that its Director Richard Cordray ("Director Cordray"), the man who approved the filing of the complaint herein, had actual knowledge of the Defendants' Biweekly Interest Minimizer product, how it operated, the representations of savings that were made by the Defendants with regard to that product, and the mode and manner in which lenders' names were used on its mailings since 2010. Director Cordray carried that actual knowledge to his first job as Chief of Enforcement at the CFPB and, ultimately, as the Director of the CFPB, holding both positions prior to May of 2012—more than three years prior to the initiation of the instant litigation.

## FACTS

In February 2010, Director Cordray—then Ohio Attorney General—"APPROVED AND AGREED TO" an Agreed Entry in the Common Pleas Court of Greene County, Ohio with Nationwide Biweekly Administration, Inc. Dkt. No. 131-11. This Agreed Entry was the culmination of two years of litigation regarding Defendants' "business of advertising, soliciting, offering for sale and/or selling its mortgage payment program services to consumers." *Id*. In the Agreed Entry, Nationwide maintained that "it was in compliance with all laws, at all times"; that it "accurately represents the services that it sells"; that it "does not make false and misleading statements"; and that "its advertising and promotional materials are true and accurate and are not deceptive in any manner." *Id*.

Director Cordray was Chief of Enforcement at CFPB's inception in 2011—a job in which he

oversaw "the exercise of enforcement powers."[1] Beginning in January of 2012, Mr. Cordray began acting as Director of CFPB.[2] Director Cordray had actual knowledge of (1) the interest minimizer biweekly product of Defendants, (2) its representations of interest savings, and (3) the issues surrounding the allegation of an improper affiliation with the lender from the February 10, 2010 Agreed Entry that he approved. The Complaint herein (Dkt. No. 1) in comparison to the 2010 Agreed Entry demonstrate that the current allegations are for the same product and practices. That actual knowledge became the knowledge of the CFPB when Director Cordray became Chief of Enforcement and also as Director of the CFPB. Accordingly, this actual knowledge bars the Plaintiff from taking any action on those specific issues.

In addition to the actual knowledge of its Director and Chief of Enforcement, Plaintiff, as an agency, also was on notice on March 3, 2012, when CFPB received a complaint through its consumer complaint web portal. *See* Dkt. No. 132-1 at ¶ 5. Among other things, the complainant alleged that she was confused about the terms and details of the Interest Minimizer program; that Nationwide had "misrepresented itself" and "was deceptive in its business practice"; and that Nationwide had caused her to "[b]eliev[e] that Nationwide was affiliated with [her] mortgage company" when it is not. *Id.* The complainant also referenced phone calls and correspondence with Nationwide. *Id.*

## ARGUMENT

### I. CFPB'S ARGUMENTS ABOUT § 5564 IGNORE THE UNAMBIGUOUS PLAIN MEANING OF THE STATUTORY LANGUAGE AND WOULD LEAD TO ABSURD AND ARBITRARY RESULTS

The arguments CFPB presents in its response brief (Dkt. No. 165) ("Opp. Br.") do not straightforwardly address the plain meaning of the statutory language or the case law in the limitations

[1] *Treasury Department Announces Senior Leadership Hires for CFPB Implementation Team*, CFPB (Dec. 15, 2010), https://www.treasury.gov/press-center/press-releases/Pages/tg1005.aspx. *Supra*, Fn. 1

[2] *President Obama Announces Recess Appointments to Key Administration Posts*, THE WHITE HOUSE (Jan. 4, 2012), https://www.whitehouse.gov/the-press-office/2012/01/04/president-obama-announces-recess-appointments-key-administration-posts. *Supra*, Fn. 2.

context. Instead, CFPB encourages this court to base its construction of the statute on vague policy arguments that would lead to absurd and arbitrary results. The statute of limitations at issue in this case states:

> "Except as otherwise permitted by law or equity, no action may be brought under this title more than 3 years after the date of **discovery** of the **violation** **to which an action relates**."

12 U.S.C. § 5564(g)(1) (emphasis added). The initial step in statutory construction is to consider the plain meaning of the statutory language. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). If the meaning of the statutory language is unambiguous within the context of the statutory scheme, that meaning governs. *Id.* The meaning of § 5564(g)(1) turns on the meaning of three words: (1) "violation," (2) "action," and (3) "discovery." CFPB's arguments regarding the interpretation of each of these words (or lack thereof) are flawed.

### A. UDAAP VIOLATIONS ARE DEFINED IN § 5536, NOT IN § 5531

Section 5536 creates and defines liability for an "unfair, deceptive, or abusive act or practice" ("UDAAP") violation. *See* 12 U.S.C. § 5536(a)(1)(B). CFPB argues that UDAAP violations are "defined" in § 5531(a). Opp. Br. at 17. This is inaccurate; CFPB takes contradictory positions. In one part of its brief, CFPB suggests that the "prohibition against deceptive and abusive acts or practices" violates **both** § 5531(a) and 5536(a). *Id.* at 3, n. 4. In another, CFPB claims UDAAPs are "defined" in § 5531. *Id.* at 17. Regardless, § 5536 is titled "Prohibited acts"—a clear indicator that information concerning acts that are prohibited can be found in that section. Second, § 5536 unmistakably pronounces to covered persons what is unlawful, whereas § 5531 defines what "[t]he Bureau" may or may not do. *Compare* § 5536(a) ("**It shall be unlawful** for . . . any **covered person** . . . .") (emphasis added) *with* § 5531 ("**The Bureau** may prescribe . . . . **The Bureau** shall have no authority . . . .") (emphasis added). In fact, just last month, CFPB embraced this point in a filing in a different case, where CFPB wrote: "A covered person can be held liable for an

unfair or deceptive act or practice when he 'engages' in that practice. *See* 12 U.S.C. § 5536(a)(1)(B)." [3]

If § 5536 creates and defines liability for a UDAAP violation, then it is that section that defines the statute of limitations inquiry. All of the alleged violations in this case are alleged UDAAP violations. Compl. at 9–13. Thus, the "violation[s]" to which this action relates are alleged violations of § 5536(a)(1)(B), which states: "**It shall be unlawful for** . . . any covered person or service provider . . . **to engage in** any unfair, deceptive, or abusive act or practice." (emphasis added). Accordingly, to determine when the statute of limitations began to run for the UDAAP claims in this case, the relevant question is: When did CFPB first "discover" facts that suggested Nationwide was "engage[d] in" the alleged UDAAP's "to which [this] action relates." The answer to that question determines the date on which the statute of limitations begins to run in this case.

### B. CFPB COMPLETELY IGNORES THE FACT THAT § 5564 CONTAINS THE PHRASE "TO WHICH AN ACTION RELATES"

CFPB's arguments completely ignore the fact that the term "discovery" in § 5564(g)(1) is not in isolation—it is next to the words "to which an **action** relates." (Emphasis added). The statute could have been written to apply to the "discovery of a violation"—full stop. But it was not. Instead, § 5564(g)(1) applies to the "discovery of the violation **to which an action relates**." Thus, there is an analytical focus in § 5564(g)(1) on the "**action**." The term "action" can be understood to mean "civil action," which is used on numerous occasions in § 5564. *See* 12 U.S.C. § 5564. The focus of the term "action" is the **point in time** where the facts suggest a person has the ability to apply to a court for relief.[4]

### C. CFPB'S ARGUMENTS IGNORE THE PLAIN MEANING, CASE LAW, AND CONTEXT SURROUNDING THE TERM "DISCOVERY" IN § 5564

---

[3] *See* Enforcement Counsel's Answering Br. at 18–19, *In the Matter of Integrity Advance LLC*, CFPB No. 2015-0029 (Dec. 5, 2016) (citation and quotation marks in original).

[4] Nationwide uses the term "suggest" because courts, not individuals, determine whether individuals **have** a valid cause of action.

### 1. IN THE STATUTE OF LIMITATIONS CONTEXT, THE TERM "DISCOVERY" MEANS NOT ONLY THE FACTS THE PLAINTIFF ACTUALLY KNEW, BUT ALSO THE FACTS A REASONABLY DILIGENT PLAINTIFF WOULD HAVE KNOWN

In the limitations context, the term "discovery" means not only the facts the plaintiff actually knew, but also the facts a reasonably diligent plaintiff would have known. This fact was methodically established by the Supreme Court in *Merck*, where the court reached that conclusion after providing an immense amount of legal and historical precedent establishing the meaning of the word "'discovery' **<u>in the limitations context generally</u>**." *Merck & Co. v. Reynolds*, 559 U.S. 633, 644-48 (2010) (emphasis added). Instead of addressing this overwhelming precedent regarding the use of the term "discovery" in the limitations context, CFPB simply asserts that "[t]he 'reasonably diligent plaintiff' test should not apply to government agencies such as the Bureau." Opp. Br. at 8. This argument lacks a basis in the statutory text as well as the case law in the limitations context generally. It should therefore be rejected. Courts "normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent." *Merck*, 559 U.S. at 648. While the **<u>holding</u>** of *Merck* is necessarily limited to the statutory controversy in that case, the court's **<u>analysis</u>** of the historical and legal meaning of the word "discovery" in the limitations context is not. *See Merck*, 559 U.S. at 644–48. Lastly, even though the legal and historical precedent shows that the term "discovery" has a clear meaning in the limitations context, it would be inexplicable to conclude that Congress intended for CFPB to act **<u>without</u>** reasonable diligence in carrying out its duties. Accordingly, the term "discovery" in 12 U.S.C. § 5564(g)(1) means not only the facts CFPB actually knew, but also the facts CFPB would have known had it acted with reasonable diligence.

### 2. "DISCOVERY" UNDER § 5564 OCCURS AT THE POINT IN TIME WHEN CFPB INITIALLY KNOWS, OR SHOULD KNOW, FACTS SUGGESTING A PRESENT CAUSE OF ACTION

The plain meaning of "discovery" in § 5564 is the point at which CFPB initially knows, or should know, of facts suggesting a present cause of action. CFPB argues that "the Bureau cannot have 'discovered' prior to May 11, 2012, violations that Defendants committed after that date." Opp. Br at 17. CFPB's

argument on this point is flawed in a number of ways. First, the plain meaning of the term "discovery" does not support CFPB's arguments. The Director already had discovered the facts. The fact that he elected not to act until later is beside the point. Accordingly, it is the **initial** discovery by CFPB of facts suggesting a UDAAP violation that matters under § 5564.

Second, CFPB's interpretation would turn the consumer protection purpose of Consumer Financial Protection Act ("Act") on its head. CFPB's position is that it "discover[s] . . . the violation to which an action relates" **again** every day the allegedly violative practice continues. Opp. Br. at 17–18. For example, CFPB's argument is that when a business is engaged in the exact same business practices on Monday as it is on Friday, CFPB "discovers" those business practices on Monday and also "discovers" those business practices **again** on Friday, even though the business practices have not changed. Thus, CFPB asks this court to accept the argument that Congress instructed CFPB to protect consumers from UDAAPs; that Congress gave CFPB immensely powerful tools to protect consumers from UDAAPs; but that Congress nevertheless **did not** intend for CFPB to take action to protect consumers from UDAAPs after it discovers facts suggesting UDAAPs are presently occurring. That conclusion is absurd and must be rejected. *Ma v. Ashcroft*, 361 F.3d 553, 559 (9th Cir. 2004) (rejecting and affording no deference to a legal interpretation by the Board of Immigration Appeals that "contravenes the statute and leads to absurd and wholly unacceptable results"). CFPB's interpretation would permit CFPB to **know** of facts that suggest a UDAAP is occurring, yet do nothing to stop it for 5 years, or 10 years, or 20 years, or even 100 years, during which time more and more consumers would potentially be harmed by the alleged UDAAP. That cannot be what Congress intended.

Even more concerning is that interpreting "discovery" in the manner CFPB suggests would provide CFPB the perverse incentive to wait as long as possible to bring claims in order to achieve larger civil penalties. *See* § 5565(c)(2) (civil penalty amounts between $5,000 and $1,000,000 for **each day** a violation "continues").

Third, in the statute of limitations context generally, the relevant issue is when a plaintiff knows, or should know—*i.e.*, "discovers"—facts that suggest a present **cause of action**, not when a plaintiff knows every single fact related to that cause of action. *United States v. Gavilan Joint Cmty. Coll. Dist.*, 849 F.2d 1246, 1250 (9th Cir. 1988) (finding that government discovers a violation once the facts making up the essence of the right of action are reasonably knowable to the government). In *Gavilan*, the government sought to recover overpayments made under a statute with a 6-year discovery-rule limitations period. *Id.* at 1249. The court found that the statute of limitations began to run when the government became aware of the fact that overpayments were allegedly made, not when the government discovered the exact amount of the alleged overpayments. *Id.* at 1247-48, 1249. Put differently, a discovery-rule statute of limitations begins to run "once the facts making up the 'very essence of the right of action' are reasonably knowable.'" *Id.* at 1250 (citation omitted).

Likewise, in *Merck*, the court examined a claim of fraud, which requires a scienter element. *Id.* at 648. Accordingly, the court was called on to articulate when a plaintiff could be said to have discovered the element of scienter. *Id.* at 648-49. The court affirmed that a plaintiff could be said to have "discovered" the scienter element of a fraud claim if the plaintiff had discovered "facts **suggesting** scienter." *Id.* at 649. Thus, in the limitations context, "it is not necessary that [CFPB] have all details of a claim before the statutory period begins to run." *Gavilan*, 849 F.2d at 1250 (citation omitted). Instead, the limitations period begins to run when CFPB learns of facts suggesting a present cause of action.

Fourth, Congress is not unaware of how to write a statute to focus on when conduct begins **and** ends. Unlike § 5564, in § 5565, Congress uses words that clearly focus on when conduct begins and ends: "[A] civil penalty may not exceed $ 5,000 for **each day during which such violation or failure to pay continues**." 12 U.S.C. § 5565 (emphasis added); *see also* 42 U.S.C. § 3613 (requiring a civil action be brought "not later than 2 years after the **occurrence or the termination of** an alleged discriminatory housing practice") (emphasis added). Similar language could have been employed in § 5564 to describe

when the statute of limitations runs. However, it was not. Thus, plain meaning and context of the word "discovery" in § 5564 indicates that it refers to CFPB's **<u>initial</u>** discovery of facts suggesting a present cause of action.

When the term "action" is read in context with the words "discovery" and "violation," a clear meaning arises: that the statute of limitations begins to run at the point in time when CFPB initially learns of facts suggesting a present cause of action. Accordingly, for all these reasons, the term "discovery" should be interpreted according to its plain meaning—it refers to the initial discovery of facts suggesting a present cause of action.

### 3. "DISCOVERY" REFERS TO DISCOVERY OF FACTS—NOT SOME INTERNAL CFPB PROCESS WHERE CFPB CHOOSES WHAT IT HAS OR HAS NOT LEARNED

CFPB encourages this court to accept an interpretation of the term "discovery" that will lead to arbitrary results. CFPB makes the vague argument that it "conducts an investigation and either discovers a violation or does not discover a violation." Opp. Br. at 8. What is noticeably absent from this statement is any indication of how this so-called discovery occurs. Who within CFPB gets to decide whether a violation has been "discovered"? The director of the CFPB? An attorney within CFPB? Or is the "discovery" made when CFPB files a complaint in court? With even a brief consideration of these questions, numerous problems with CFPB's reasoning appear.

First, CFPB's argument would rewrite the statute, adding that a "discovery" must be made by a particular CFPB employee or a particular internal CFPB process.[5] Because the statute contains no such requirement, this argument must be rejected. Congress could have drafted the statute to require discovery by a particular person within CFPB. *See e.g.*, 28 U.S.C. § 2416(c) (requiring discovery "by an official of the United States charged with the responsibility to act in the circumstances"). But § 5564 has no such

[5] Interestingly, CFPB does not offer to the Court when it did "discovery" the facts in this case, knowing full well its Director had actual knowledge in 2010.

requirement.

Second, CFPB's argument is entirely at odds with case law interpreting the term "discovery" in the statute of limitations context. In the statute of limitations context, "discovery" refers to **the discovery of certain facts** by the relevant party. *See, e.g.*, *Gavilan*, 849 F.2d at 1247-48, 1249 (finding that the statute of limitations began to run when the government became aware of the **fact** that overpayments were allegedly made, not when the government discovered the exact amount of the alleged overpayments). It does **not** refer to some internal process wherein a party gets to decide whether they have or have not discovered something. *Id.* at 1249-50 (rejecting the government's argument that the statute of limitations did not begin to run until it decided to conduct and complete an audit).

Third, CFPB continues to take fluctuating positions on when it "discovers" a violation. In January of 2016, CFPB suggested that "discovery" under § 5564(g)(1) occurs when one of the following happens: (1) the Bureau receives the last production of documents from an entity under investigation, (2) the entity under investigation certifies that its production is complete; or (3) the entity provides a response to the Bureau's Notice and Opportunity to Respond and Advise ("NORA") process.[6] Next, in August of 2016, in *CFPB v. Intercept Corp.*, CFPB represented to Intercept's counsel that "a violation of the CFPA is 'discovered' when Bureau Director Richard Cordray personally concludes as much."[7] Then, just last month, CFPB still refused to take a specific position in that case on when it "discovers" a violation under § 5564.[8] Instead, CFPB simply stated events that occurred in that case within the three years prior to when it filed the Notice of Charges, refusing to identify which event constituted "discovery" under § 5564.[9]

[6] Bureau's Opposition to Respondent's Motion to Dismiss at 12 n.10, *In the Matter of Integrity Advance LLC*, CFPB No. 2015-0029 (Jan. 15, 2016).

[7] Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint, *CFPB v. Intercept Corp.*, 2016 WL 4425369 (D.N.D.) (August 8, 2016).

[8] Enforcement Counsel's Answering Brief at 18–19, *In the Matter of Integrity Advance LLC*, CFPB No. 2015-0029 (Dec. 5, 2016).

[9] *Id.*

The arbitrariness of CFPB's vague and shifting positions on when "discovery" under § 5564 occurs illustrates the fundamental problem with permitting the "discovery" question to be answered through some internal CFPB procedure. *See, e.g.*, *Gavilan*, 849 F.2d at 1249–50 ("[T]he Government here essentially asserts that it may postpone litigation indefinitely through delay in conducting its own audit."). And this may explain why, noticeably, CFPB did not put forth any specific position in its response brief about (1) when it actually "discovered" any facts suggesting a present cause of action against Nationwide or (2) when, as a general matter, CFPB "discovers" violations under § 5564. Instead, CFPB just vaguely stated that it "discovers" a violation after it "conduct[s] an entire investigation." *See* Opp. Br. at 14.

The Supreme Court contemplated in *Gabelli* that determining what the government knew at a particular time "presents particular challenges for the courts." *Gabelli v. SEC*, 133 S. Ct. 1216, 1223 (2013). The government can be expected to claim various privileges,[10] thereby harming the ability of defendants to determine what the government knew, and when. In fact, CFPB has claimed numerous privileges in this case.[11] Thus, permitting some internal CFPB process to determine when "discovery" under § 5564 occurs would prejudice defendants, who will find it difficult, if not impossible, to determine what CFPB knew and when, or to know when CFPB's internal process has run afoul of another rule of law. These serious problems do not arise when, as here, the court can look to the public record—such as the actual knowledge of the Director or a consumer complaint submitted directly to CFPB—to determine what CFPB has, or should have, "discovered."

CFPB ignores these important concerns and instead presents the irrationally extreme argument that interpreting the phrase "discovery" in accordance with the reason and authority discussed here will force

[10] *Gabelli v. SEC*, 133 S. Ct. 1216, 1223 (2013) ("[I]n the midst of any inquiry as to what it knew when, the Government can be expected to assert various privileges, such as law enforcement, attorney-client, work product, or deliberative process, further complicating judicial attempts to apply the discovery rule.").

[11] *See*, e.g., Dkt. No. 116 ("Bureau objecting to Defendants' request for a Rule 30(b)(6) deposition and accompanying document request under privilege).

CFPB to have to "investigat[e] every consumer complaint in order to ensure the applicable statute of limitations would not run." Opp. Br. at 10–11. This argument is a non-sequitur, is belied by the facts, and is irrelevant. In this case, CFPB first sent a civil investigative demand (CID) to Nationwide in June of 2014 and filed its complaint in May of 2015—a time period of **<u>less than one year</u>**.[12] *Id.* at 2–3. Thus, CFPB's own description of the "pre-complaint investigation" in this case contradicts its exaggerated argument. *See id.* Furthermore, in 2016, CFPB's budget was $605.9 million dollars.[13] If CFPB is suggesting its budget is not sufficient for it to carry out its statutory mandate, that is a matter for Congress, not this court. Likewise, if CFPB is suggesting that the three years contained in § 5564 is not enough time to review the information in its possession (such as consumer complaints), investigate (or not), and file an action in court (or not), that, too, is a matter for Congress, not this court.

CFPB also proposes that the results of an unspecified internal CFPB process called "cohort and text analytics" should determine when "discovery" occurs. Opp. Br. at 12–13. Putting aside the fact that CFPB again fails to take a position as to the specific point "discovery" occurs, any complexity that exists in CFPB carrying out its statutory responsibly is not a basis to alter the statute of limitations analysis. *See Rotella v. Wood*, 528 U.S. 549, 556, 120 S. Ct. 1075, 1081 (2000) (the amount of effort required to determine the viability of a claim does not determine the statute of limitations timing); *see also Fallini v. United States*, 56 F.3d 1378, 1380 (Fed. Cir. 1995) (statutes of limitations must start to run at an objectively-determined time).

Thus the term "discovery" must be read in accordance with its plain meaning and context—to refer to the time at which CFPB initially knows, or should know, of facts suggesting a present cause of action.

[12] Though CFPB completely fails to mention it in their brief, CFPB also signed a common interest agreement with the Ohio Attorney General's office on February 4, 2014. Decl. John D. Smith at ¶2.

[13] *The CFPB strategic plan, budget, and performance plan and report*, CFPB 11 (Feb. 2016), http://files.consumerfinance.gov/f/201602_cfpb_report_strategic-plan-budget-and-performance-plan_FY2016.pdf.

## II. CFPB FAILS TO CONTRADICT THE FACTS THAT SHOW THAT CFPB KNEW, OR SHOULD HAVE KNOWN, PRIOR TO MAY 11, 2012 OF FACTS SUGGESTING THE CAUSES OF ACTION CFPB HAS PURSUED IN THIS CASE

### A. CFPB DIRECTOR RICHARD CORDRAY KNEW PRIOR TO MAY 11, 2012 OF FACTS SUGGESTING THE CAUSES OF ACTIONS CFPB HAS PURSUED IN THIS CASE

Director Cordray has known of the facts pertinent to this claim since February 2012. Dkt. No. 131-11. Director Cordray "APPROVED AND AGREED TO" an Agreed Entry with Nationwide in 2010 regarding substantially similar claims that have been pursued in this case. No finding of liability was made therein. But it is not the similarity of claims that matters for purposes of this motion. What matters is that, in reaching this agreement, Director Cordray knew of the facts in 2012 that the CFPB now alleges are deceptive. Dkt. No. 131-11. The Agreed Entry shows that the following facts about Nationwide's business practices were known by Director Cordray when he "APPROVED AND AGREED TO" it: (1) fees for services; (2) communications related to fees for services; (3) marketing materials; (4) telephone communication with consumers; (5) frequency of remittances to lenders and servicers; (6) the enrollment process; (7) the enrollment contract; (8) affiliation with mortgage lenders or servicers; (9) interest savings; and (10) communications related to interest savings. Dkt. No. 131-11. CFPB does not dispute that Nationwide's business practices have remained virtually unchanged since 2002, except for a non-material point regarding Nationwide's fees.[14] *See* Opp. Br. at 4–5; Dkt. No. 132 at 2.

Director Cordray was Chief of Enforcement at CFPB's inception in 2011—a job in which he oversaw "the exercise of enforcement powers."[15] Beginning in January of 2012, Director Cordray began

[14] CFPB cites a deposition of Mr. Lipsky to support its statement that: "In 2010, Lipsky changed Nationwide's fee structure away from an upfront flat fee of $245 to a 'deferred setup fee' that varied depending on the monthly mortgage amount." Opp. Br. at 3 (citing Dkt. No. 124-8 at 53:8-54:5); Opp. Br. at 5.

[15] *See* Fn. 1; *see also* Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint, *CFPB v. Intercept Corp.*, 2016 WL 4425369 (D.N.D.) (August 8, 2016) (describing how CFPB represented to Intercept's counsel that a violation of the CFPA is "discovered" when Richard Cordray personally concludes as much).

acting as Director of CFPB.[16] Accordingly, because the Agreed Entry establishes that Director Cordray knew more than five years prior to the filing of the complaint of the facts CFPB now alleges as the basis of its claims in this case, CFPB's claims in this case are barred by the statute of limitations.

### B. THE CONSUMER COMPLAINT SUBMITTED TO CFPB ON MARCH 3, 2012, ESTABLISHES THAT CFPB KNEW, OR SHOULD HAVE KNOWN, PRIOR TO MAY 11, 2012, OF FACTS SUGGESTING THE CAUSES OF ACTIONS CFPB PURSUED IN THIS CASE

CFPB's arguments fail because the facts show that the consumer complaint submitted to CFPB on March 3, 2012, conveyed to CFPB facts suggesting the causes of action it has pursued in this case. This action involves allegations of deceptiveness and abusiveness. Compl. at 9–13. The consumer complaint specifically alleged the same claim that CFPB now alleges in Counts II, III, and IV in this case—"deceptive[ness]." *See* Dkt. No. 132-1 at Ex. A. Not only that, but the complaint alleged Nationwide "was deceptive **<u>in its business practice.</u>**" *Id.* (emphasis added). Thus, the parallel between what the consumer complaint alleged and the claims alleged in the Complaint could not be more direct. *See* 12 U.S.C. § 5536(a)(1)(B) (making it unlawful "to engage in any . . . **<u>deceptive</u>** . . . **<u>practice</u>**") (emphasis added); *see also* Compl. at 10–13.

And the consumer complaint went even further. The complaint referenced phone calls to Nationwide. Dkt. No. 132-1 at Ex. A. To even the least scrutinizing CFPB eye, the indication that the consumer spoke over the phone to a company selling a financial product suggests a potential violation of the Telemarketing Sales Rule. Compl. at 11–13; *see also id.* Furthermore, the complainant specifically alleged having been misled by Nationwide as to an affiliation with her mortgage company—the same allegation CFPB repeats in its complaint. Compl. at 9–13; *see also id.* This, too, is an allegation that CFPB has made in this case. The complainant also indicated that she was misled, and that a disagreement existed, about the fees Nationwide charges for its services. Thus, this complaint provided to CFPB facts suggesting

[16] *See* Fn. 2

the causes of action it has pursued in this case.[17] Accordingly, because this complaint suggested the causes of action CFPB ultimately pursued in this case, CFPB's reception of this consumer complaint constitutes "discovery" under § 5564.

CFPB's Director claims: "Every complaint the CFPB receives makes a difference."[18] For all these reasons, the court should find that the consumer complaint submitted to CFPB on March 3, 2012, conveyed to CFPB facts suggesting the causes of action that CFPB ultimately pursued in this case and, accordingly, that the claims pursued in this case are barred by the statute of limitations.

## CONCLUSION

For the reasons stated in this Reply and in Defendants' Motion, the Court should grant summary judgment in favor of Defendants.

Dated: January 19 , 2016

**JOHN D. SMITH CO., LPA**

__/s/ John Smith_
John D. Smith

*Attorney for Defendants and Counter-Claimants Nationwide Biweekly Administration, Inc., Loan Payment Administration, LLC, and Daniel S. Lipsky*

[17] At this summary judgment stage, Nationwide will withdraw its arguments regarding the legal significance of the consumer complaints contained in the FTC's Consumer Sentinel database, but reserves the right to present arguments regarding the legal significance of these complaints at trial.

[18] *Consumer Response Annual Report*, CFPB 2 (March 2014), http://files.consumerfinance.gov/f/201403_cfpb_consumer-response-annual-report-complaints.pdf

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on January 19, 2016, via ECF upon counsel of record in this action:

Stephen Jacques
Thomas Mccray-Worrall
Patrick Gushue
Patrick.Gushue@cfpb.gov
202-425-9671
*Enforcement Attorney*
Jonathan Urban
jonathan.urban@cfpb.gov
202-435-7371
*Enforcement Attorney*

Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 2055i

**JOHN D. SMITH CO., LPA**

*/s/ John Smith*

John D. Smith

***Attorney for Defendants Nationwide Biweekly Administration, Inc., Loan Payment Administration, LLC, and Daniel S. Lipsky***