ANTHONY ALEXIS (DC Bar #384545)
DEBORAH MORRIS (Admitted to the NY Bar)
MICHAEL G. SALEMI (IL Bar #6279741)
PATRICK GUSHUE (PA Bar #306966)
JONATHAN URBAN (CO Bar #44190)
STEPHEN JACQUES (DC Bar # 464413)
THOMAS MCCRAY-WORRALL (Admitted to the MD Bar)
ELIZABETH FRANCE (DC Bar #999851)
Patrick.Gushue@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-9671
Fax: 202-435-7329
Attorneys for Plaintiff
Consumer Financial Protection Bureau

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | Case No. 3:15-cv-02106-RS |
| Plaintiff, | **COUNTER-DEFENDANT'S NOTICE OF MOTION AND MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATED TO ACTIVITIES OF NON-BUREAU REGULATORS** |
| v. | |
| NATIONWIDE BIWEEKLY ADMINISTRATION, INC., LOAN PAYMENT ADMINISTRATION LLC, AND DANIEL S. LIPSKY, | Judge: Hon. Richard Seeborg |
| Defendants. | Courtroom: Courtroom 3, 17th Floor 450 Golden Gate Ave. San Francisco, CA 94102 |
| ---------------------------------------------- | |
| NATIONWIDE BIWEEKLY ADMINISTRATION, INC., | |
| Counter-claimant, | |
| v. | |
| CONSUMER FINANCIAL PROTECTION BUREAU, | |
| Counter-defendant. | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………………………………...ii

STATEMENT OF ISSUES TO BE DECIDED…………………………………………………..2

STATEMENT OF RELEVANT FACTS………………………………………………………….2

ARGUMENT……………………………………………………………………………………...7

I.   The Court Should Exclude Nationwide's Evidence Regarding "Operation Choke Point" Activities at Other Agencies or Involving Companies Unrelated to Nationwide, Because This Evidence is Irrelevant to the Present Case……………………………...…….7

II.  The Court Should Exclude Nationwide's Evidence Regarding "Operation Choke Point" Activities at Other Agencies or Involving Companies Unrelated to Nationwide, Because the Risk It Presents of Undue Prejudice, Wasting Time, Confusing the Issues, or Misleading the Finder of Fact Substantially Outweighs its Probative Value…………………...10

CONCLUSION……………………………………………………………………………...…...12

# TABLE OF AUTHORITIES

**Cases**

*Beachy v. Boise Cascade Corp.*,
  191 F.3d 1010 (9th Cir. 1999) ................................................................................................ 8

*Blakeslee v. Shaw Industries, Inc.*, 3:09-cv-00214 JWS,
  2011 WL 13069502 (D. Alaska Sept. 13, 2011) ................................................................ 8, 10

*Cohn v. Papke,*
  655 F.2d 191 (9th Cir. 1981) .................................................................................................. 10

*Hooper v. Lockheed Martin Corp.,*
  640 F. App'x. 633 (9th Cir. 2016) .......................................................................................... 10

*Jinro America, Inc. v. Secure Investments, Inc.,*
  266 F.3d 993 (9th Cir. 2001) .................................................................................................. 10

*Manning v. Buchan,*
  357 F. Supp. 2d 1036 (N.D. Ill. 2004) ..................................................................................... 7

*Paralyzed Veterans of America v. McPherson,*
  2008 WL 4183981 (N.D. Cal. Sept. 9, 2008) .......................................................................... 9

*United States v. Espinoza-Baza,*
  647 F.3d 1182 (9th Cir. 2011) ......................................................................................... 10, 12

*United States v. Hitt,*
  981 F.2d 422 (9th Cir. 2010) .................................................................................................. 12

*United States v. Polasek,*
  162 F.3d 878 (5th Cir. 1998) .............................................................................................. 8, 11

*United States v. Roark,*
  924 F.2d 1426 (8th Cir. 1991) ................................................................................................ 11

*United States v. Westmoreland,*
  841 F.2d 572 (5th Cir. 1998) .................................................................................................. 11

**Statutes**

12 U.S.C. §§ 553, 5536, 5536 .................................................................................................... 2

15 U.S.C. § 6105(d) .................................................................................................................... 2

**Rules**

Fed. R. Evid. 401 .................................................................................................................. 1, 7, 8, 12

Fed. R. Evid. 402 ..................................................................................................................... 1,7,8,9

Fed. R. Evid. 403 .................................................................................................................. 1,2, 8, 10, 12

**Regulations**

16 C.F.R. §§ 310.1-9 (2010) .............................................................................................................. 2

## MOTION TO EXCLUDE EVIDENCE REGARDING "OPERATION CHOKE POINT" ACTIVITIES UNRELATED TO THE BUREAU OR NATIONWIDE

Counter-defendant Consumer Financial Protection Bureau (Bureau or CFPB) moves this Court, pursuant to this Court's Standing Order Guidelines for Final Pretrial Conference ¶ D(2),[1] to exclude from trial on Nationwide Biweekly Administration, Inc.'s (Nationwide) counterclaims evidence related to activities of federal regulators independent of the Bureau and evidence related to alleged "targets of Operation Choke Point" independent of Defendants Nationwide, Loan Payment Administration LLC (LPA), and Daniel S. Lipsky (Lipsky).

In lieu of direct evidence that the Bureau engaged in "extrajudicial" or "backroom pressure" tactics against its banks, Nationwide has offered purported "circumstantial" evidence that different federal regulators participated in "Operation Choke Point," which Defendants allege intended to cut off certain companies' or industries' access to the banking system. Nationwide has not provided evidence supporting its assertions that the Bureau was a partner in this so-called "Operation Choke Point" or that "Operation Choke Point" had anything to do with the banks' decisions to terminate their relationships with Nationwide. Without any nexus between the alleged "Operation Choke Point" activities of non-Bureau regulators and any Bureau actions pertinent to Nationwide or its banks, evidence regarding "Operation Choke Point" is not relevant to this case, and the risk of undue prejudice, wasting time, confusing the issues, and misleading the finder of fact substantially outweighs any minimal probative value such evidence could offer. For these reasons, the Court should grant the Bureau's motion in limine and bar Defendants from introducing evidence related to so-called "Operation Choke Point" activities by other federal regulators under Federal Rules of Evidence 401, 402, and 403.

### STATEMENT OF ISSUES TO BE DECIDED

Whether, pursuant to Federal Rules of Evidence 401 and 402, the Court should exclude evidence relating to "Operation Choke Point" activities by other federal regulators from trial on Nationwide's counterclaims, because they are not relevant to Nationwide's counterclaims.

---

[1] While the Bureau's Motion to Strike Defendants' Jury Demand remains pending, it is unclear whether the parties should follow this Court's Guidelines for Final Pretrial Conference in Bench Trials or Guidelines for Final Pretrial Conference. However, the same requirements for filing motions in limine apply under what is ¶ D(2) in each set of Guidelines.

Whether, pursuant to Federal Rule of Evidence 403, the Court should exclude evidence relating to alleged "Operation Choke Point" activities by other federal regulators from trial on Nationwide's counterclaims, because the risk of unfair prejudice, wasting time, confusing the issues, or misleading the finder of fact substantially outweighs any probative value such evidence offers.

**STATEMENT OF RELEVANT FACTS**

On May 11, 2015, the Bureau commenced this action, alleging that Defendants engaged in deceptive and abusive acts or practices in violation of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 553, 5536, and the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6105(d), and its implementing regulation, the Telemarketing Sales Rule (TSR), 16 C.F.R. §§ 310.1-9 (2010). Dkt. No. 1.

On February 2, 2016, Nationwide filed its Second Amended Answer to Complaint and Counterclaim, in which it first made allegations regarding "Operation Choke Point." Counterclaims ("CC"), Dkt. 67. Nationwide described "Operation Choke Point" as an "initiative of the United States Department of Justice." *Id*. ¶ 11. The irrelevance of these "Operation Choke Point" allegations was immediately clear:  Nationwide's ten-paragraph description of "Operation Choke Point" cited extensively to documents with no connection to the Bureau, such as a Congressional staff report that does not mention the Bureau (*id*. ¶ 12),[2] guidance from the Federal Deposit Insurance Corporation (FDIC) (*id*. ¶ 13), a congressional committee letter to the Chair of the Board of Governors of the Federal Reserve System (*id*. ¶ 14), and a letter from members of Congress to the Department of Justice (DOJ) and the FDIC. *Id*. ¶ 16.[3]

On June 13, 2016, Nationwide filed its Third Amended Answer and Counterclaims, again alleging that "CFPB pressure" and "CFPB's use of Operation Choke Point" caused Nationwide's banks to terminate its accounts. Dkt. 82 ¶¶ 37-41 ("TAA/CC"). To support this premise, Nationwide alleged

---

[2] U.S. House of Representatives, Comm. on Oversight and Gov't Reform, *The Department of Justice's "Operation Choke Point": Illegally Choking Off Legitimate Businesses?* (May 29, 2014), *available at* https://oversight.house.gov/release/report-dojs-operation-choke-point-secretly-pressured-banks-cut-ties-legal-business/. ("DOJ Report")

[3] Recognizing that "the face of the pleading gives rise to an inference that the banks ended their relationships with Nationwide not as the result of any extra-judicial conduct under 'Operation Choke Point,' but in light of this action," the Court granted the Bureau's Motion to Dismiss the Counterclaims on May 23, 2016, with leave to amend. Dkt. 80 at 8.

that DOJ and other federal agencies (including FDIC) engaged in this operation, which involved the concept of "reputational risk" in the context of banking agencies' authority to regulate bank safety and soundness, *see id.* ¶¶ 11-22, 27-39, 55-56. Again, nearly all of Nationwide's evidence about "Operation Choke Point" related to activities by other agencies, such as internal DOJ memoranda (*id*. ¶¶ 27-39) and the alleged promulgation of a "hit list" by FDIC. *Id*. ¶ 55. Indeed, about one quarter of the paragraphs in the TAA/CC describe "Operation Choke Point" activities of other agencies, and either do not mention the Bureau or mention it in only a conclusory fashion divorced from any specific allegations of Bureau conduct (e.g., using the phrase "CFPB and other federal agencies" in conjunction with descriptions of activities at other agencies). *Id*. ¶¶ 11-22, 25-29, 32, 34-38, 40, 55-56, 59-61.

An additional quarter of the paragraphs in the TAA/CC attempt to connect the Bureau to "Operation Choke Point" activities against Nationwide and its banks, through unsupported inference and evidence that plainly has no bearing on this case. *Id*. ¶¶ 23-24, 30-31, 33, 39, 49-54, 57-58, 62, 66, 72, 74, 76-78, 82, 95, 96, 102-103 109-110, 115-116. For example, Nationwide identified a letter from a congressional committee to the Bureau asking the Bureau to "disclaim" participation in "Operation Choke Point," but failed to note that the letter itself offers no indication that the Bureau had any participation to disclaim and described only FDIC—not CFPB—activities. *Id*. ¶¶ 23-24, 57.[4] It similarly noted that members of Congress asked the Bureau at a hearing whether it participated in Operation Choke Point, without providing any indication that these members offered a reason to believe that the Bureau had. *Id*. ¶ 54.[5] Nationwide also cited internal DOJ memoranda mentioning a meeting between

---

[4] The subject of the letter is, by its own terms, "Operation Choke Point as implemented by the FDIC." Letter from Hon. Jeb Hensarling, Chair, Financial Services Committee, U.S. House of Representatives to Hon. Richard Cordray, Director, Consumer Financial Protection Bureau 1 (Apr. 8, 2015), *available at* http://financialservices.house.gov/uploadedfiles/04815_fsc_chairs_to_cfpb_cordray__re_operation_choke_point.pdf.

[5] Nationwide also discusses the Bureau's public attempts to clarify that "Operation Choke Point" related to prudential concerns, such as safety and soundness, that fall outside the Bureau's mission and supervisory/enforcement priorities. *Id*. ¶¶ 49,54. Nationwide mischaracterizes these statements as evasions, based on nothing but its unfounded assumption that the Bureau participated in "Operation Choke Point." *Id*. This spurious notion that the Bureau explaining why "Operation Choke Point" did not align with Bureau objectives (and presumably would have been an unattractive use of Bureau resources) proves that the Bureau both did participate and attempted to obfuscate that participation provides no actual nexus between "Operation Choke Point" and any Bureau conduct related to Nationwide or its banks.

the Bureau and DOJ "to discuss payday lending" and to consider "pursu[ing] a joint investigation in that area," without stating whether that investigation ultimately occurred or whether it had any factual basis to believe that any meetings occurred on topics other than payday lending. *Id*. ¶¶ 31, 51. Nationwide spent considerable time on this and other memoranda internal to DOJ, which reflect, at most, DOJ's preliminary interest in having CFPB and several other agencies participate in "Operation Choke Point" and a couple CFPB-DOJ discussions related to joint investigation and enforcement related to payday lenders. *Id*. ¶¶ 30-31, 33, 50, 51. Nationwide also observed that FDIC took steps and issued guidance to end its purported participation in "Operation Choke Point"—such as deleting its alleged "hit list" and replacing prior guidance—and faulted the Bureau for not doing the same, even though the Bureau had neither published a list nor issued guidance related to "Operation Choke Point." *Id*. ¶¶ 56-57.

Despite its lack of evidence that the Bureau participated in "Operation Choke Point" generally or with respect to Nationwide, Nationwide's Counterclaims attempt to bring several milquetoast observations about the Bureau's supervision and enforcement functions under its conspiratorial shadow. For example, the TAA/CC noted that the Bureau's supervision program covers certain banks, monitors "risk to consumers," and coordinates with the Bureau's Enforcement office *id*. ¶¶ 41-48; that the Bureau had sued a payment processor (unrelated to Nationwide or this suit against Nationwide) for facilitating fraud, *see id.* ¶¶ 52-53; and that the Bureau had settled an unrelated matter with another company that provided a biweekly mortgage payment program. *See id*. ¶ 62. By placing these facts in close proximity to its lengthy description of supposed "Operation Choke Point" activities at DOJ, FDIC, or other agencies, Nationwide presumably hoped to suggest some logical connection between them. But as explained above, Nationwide has offered no evidence of a link between "Operation Choke Point" and any Bureau supervisory or enforcement procedures, let alone any procedures employed in CFPB's case against Nationwide.[6]

On December 18, 2016, the Bureau filed a Motion for Summary Judgment on the Counterclaims. Dkt. 123. Nationwide filed its opposition on January 5, 2017, laying out its evidence regarding

---

[6] The Bureau moved to dismiss the TAA/CC on July 5, 2016 (Dkt. 86), and the Court denied that motion on December 13, 2016, finding that Nationwide had met the low pleading standard required at that stage. Dkt. 139.

"Operation Choke Point." Dkt. 166 at 4-12 ("Opp'n"). Nationwide again relied on evidence of actions at agencies distinct from the Bureau, including congressional staff reports that lack *any* reference to the Bureau and the same House Financial Services letter asking the Bureau "to disclaim CFPB's participation in Operation Choke Point" (but again, not providing any evidence that CFPB, in fact, had any such participation to disclaim). *Id*. at 4-5. Even after discovery, Nationwide could offer only the same speculative links between "Operation Choke Point" and the Bureau derived from the same handful of references to the Bureau in materials focused on other agencies, such as partisan congressional staff reports and internal DOJ memoranda attached as exhibits to them. *Id*.  For example:

- Nationwide made an unsupported assertion that the Bureau was a "founding member of Operation Choke Point" (Opp'n at 5), citing no evidence other than an internal DOJ memorandum asserting that "[p]artner agencies *should* include" CFPB and eight other agencies.[7] It has not offered any further evidence that CFPB did, in fact, become a "partner agency."
- Nationwide again cited to internal DOJ memoranda related to Operation Choke Point describing conversations and tentative agreements between the Bureau and DOJ regarding *payday loan* investigation and enforcement, without any further evidence suggesting the Bureau engaged in any similar discussions or agreements with DOJ or any other agency with respect to any industry apart from payday lending. Opp'n  at 5. Perhaps recognizing that these memoranda have no connection with this case, Nationwide omitted the references to payday lending from the quotations it cited from these memoranda, leaving more broadly suggestive, though deceptive, references to DOJ "offer[ing] to work with CFPB to identify appropriate targets and to pursue a joint investigation" and to the Bureau's Director of Enforcement approving DOJ's "approval for a joint approach."  *Id*. The full text of the DOJ memoranda, however, make clear that these excerpts relate solely to discussions about payday lending.[8]

---

[7] DOJ Report, Appendix 1 at HOGR-3PPP000019 (emphasis added).

[8] DOJ Report, Appendix 1 at HOGR-3PPP000050 ("***Although we have differing thoughts as to an appropriate legal theory to pursue, we agreed with CFPB that the payment system (payment processors and banks) deserves closer scrutiny. We*** offered to work with CFPB to identify appropriate

From its general allegations about "Operation Choke Point," Nationwide leapt to the conclusion that various Bureau actions, including issuing a press release and naming Nationwide's banks in a public filing, must constitute "backroom pressure tactics" under "Operation Choke Point." Opp'n at 9-12. Nationwide's speculations swept so broadly that it even assumed Bureau *inaction* to be part of "Operation Choke Point," asserting without any evidence that the Bureau declined to issue Nationwide's banks so-called "comfort letters" because it "wish[ed] to drive Nationwide out of business" through "directly and indirectly threatened extrajudicial tactics." *Id*. at 11. Nationwide further suggested that evidence regarding alleged "Operation Choke Point" activities at other agencies was an apt substitute for actual evidence that Bureau "pressure" occurred or that such pressure explain independent decisions made by Nationwide's banks—including terminating Nationwide's accounts and denying services to Daniel Lipsky and companies he owns. *Id*. at 12-14.

Again, Nationwide offered no facts or evidence to establish a factual nexus between the alleged "Operation Choke Point" activities of DOJ or FDIC (or the Bureau's limited discussions about payday lending with DOJ) and any Bureau or bank action or inaction in this case. For example, after conducting discovery and deposing witnesses from two of the four banks, Nationwide did not offer a single piece of evidence that the Bureau communicated directly with any of Nationwide's banks regarding Nationwide or its accounts (let alone that such communications took the form of "backroom pressure"), that the banks perceived pressure from the Bureau to close Nationwide's accounts, that the banks were even aware of "Operation Choke Point," that the banks believed that the Bureau was a partner in "Operation Choke Point," or that concern about a perceived connection between the Bureau's suit against Nationwide and "Operation Choke Point" influenced any bank's termination decision. Instead, Nationwide relied solely on hearsay statements of a former U.S. Bank employee to the effect that the Bureau is a powerful agency, without any indication that that "power" took the form of "backroom"

---

targets and to pursue a joint investigation*. We suggested factors that would best support a civil case involving DOJ, including for example payday lenders targeting military families. CFPB has not responded to our proposal for a joint investigation.*"); *id.* at HOGR-3PPP000169 ("***We have tentatively agreed with CFPB to determine whether there are payday lenders that would make good targets of federal investigation, and a structure for joint analysis of evidence. Despite past inconsistency with respect to CFPB's offers to work with us on this effort,*** CFPB's Director of Enforcement has approved our proposal for a joint approach.") (emphasis added where Nationwide's opposition omitted text).

conversations or extrajudicial tactics. *Id*. at 12-13. In fact, Nationwide has not offered a single piece of evidence suggesting that the Bureau engaged in any "backroom" tactics or conversations of the type purportedly involved in "Operation Choke Point," with regard to Nationwide or any other company, but has identified as triggers for the bank terminations only ordinary public enforcement activities such as filing lawsuits and related documents and issuing press releases. *Id*. at 4-13.[9]

On February 6, 2017, the Court denied the Bureau's motion because Nationwide had "pointed to enough inferences potentially arising from all the circumstances under which their banking partners terminated the relationships, that it would be premature to conclude as a matter of law no reasonable fact finder could find in their favor." Dkt. 186 at 5. The Court noted, however, that "direct evidence tying the CFPB to any actionable wrongs remains thin" and did not comment specifically either on the lack of evidence supporting a connection between "Operation Choke Point" and this case or on the admissibility of evidence solely relating to other regulators. *Id*.

## ARGUMENT

**I.    The Court Should Exclude Nationwide's Alleged Evidence Regarding "Operation Choke Point" Activities at Other Agencies or Involving Companies Unrelated to Nationwide, Because This Evidence is Irrelevant to the Present Case.**

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is not admissible. Fed. R. Evid. 402.

Without any factual nexus between "Operation Choke Point" and any Bureau conduct toward Nationwide or its banks, Nationwide's "Operation Choke Point" evidence concerning other federal agencies is irrelevant to this case. *See*, *e.g.*, *Manning v. Buchan,* 357 F. Supp. 2d 1036 (N.D. Ill. 2004) (holding that evidence related to prior acts would be excluded under Rule 402 unless defendants could provide evidence to establish a nexus between that evidence and some action taken by defendants). Under Rules 401 and 402, Courts regularly exclude evidence regarding conduct similar to but

---

[9] Nationwide also relies on the opinion of its expert, Brian Kelley, that "extrajudicial actions" led the banks to terminate Nationwide's accounts. As described in the Bureau's Motion in Limine to Exclude the Testimony of Brian Kelley, Kelley is not qualified to offer this opinion. He also relied on the same irrelevant evidence that Nationwide has offered and failed to apply reliable methods or principles in forming his opinion. Therefore, Kelley's opinion does not cure Nationwide's failure to establish any factual nexus between its "Operation Choke Point" evidence and this case.

independent from the conduct that the plaintiff sought to prove. For example, testimony about hostility toward individual witnesses but not "toward a well-defined and protected group such as persons of a particular race, persons of a particular gender, or persons who are disabled" is properly excluded as irrelevant. *Beachy v. Boise Cascade Corp.*, 191 F.3d 1010, 1014 (9th Cir. 1999). *See also Blakeslee v. Shaw Industries, Inc.*, 3:09-cv-00214 JWS, 2011 WL 13069502, at *2 (D. Alaska Sept. 13, 2011) (excluding evidence related to treatment of employees other than the plaintiff, because those situations were "irrelevant" to several employment-related claims).

Evidence that DOJ, FDIC, or any other agency exerted "backroom" pressure on banks providing services to companies like Nationwide could be relevant to claims against those agencies, in that such evidence could make it more likely that those agencies exerted similar pressure against Nationwide's banks. But those agencies are not a part of this litigation, and Nationwide offers a far more attenuated theory here. Instead of relying solely on evidence of actual Bureau actions, Nationwide seeks to introduce substantial extraneous evidence about the purported activities of DOJ, FDIC, and other agencies, apparently to suggest that if some federal agencies engaged in "backroom pressure," then the Bureau likely did, too.[10] Such "guilt by association" evidence is inadmissible under Rules 401 and 402. *United States v. Polasek*, 162 F.3d 878, 884 n.2 (5th Cir. 1998) (observing that "[m]any of our sister circuits . . . have concluded that such evidence is irrelevant under Federal Rules of Evidence 401 and 402 or unduly prejudicial under Rule 403").

To disguise this "guilt by association" theory, Nationwide uses strained reasoning in its attempt to create a veneer of relevance. It first provides evidence that DOJ, FDIC, and other agencies may have participated in "Operation Choke Point." Next, based only on the fact that the Bureau explored joint payday lending enforcement with DOJ, Nationwide speculates that the Bureau must have been a partner in "Operation Choke Point," from which it further presumes that the Bureau sought the termination banking relationships for companies in some lines of business. Nationwide further assumes that biweekly mortgage payment administrators were such a disfavored line of business. Then, because

---

[10] Nationwide makes a separate logical leap from the premise that "Operation Choke Point" applied pressure toward discrete industries—such as payday lenders—to the conclusion that it must also have targeted biweekly mortgage payment administrators.

Nationwide is a biweekly mortgage payment administrator and it claims its banking relationships ended, Nationwide leaps to the conclusion that any Bureau activity with even an indirect effect on those relationships must have been intended to damage those relationships—even regardless of whether such activity was part of the purported "Operation Choke Point" playbook at other agencies—and characterizes the timing of the bank terminations as *per se* evidence that the Bureau must have been involved in "extrajudicial" or "backroom pressure" tactics. This long chain of tenuous, unsubstantiated links is all that connects "Operation Choke Point" to the harms Nationwide alleges.

Even assuming that some agencies were involved in "Operation Choke Point" and that Nationwide's bank accounts were terminated after the Bureau filed its lawsuit, Nationwide has offered no evidence to bridge the logical chasm needed to connect these alleged facts. It has not, for example, offered evidence that the Bureau had any connection to DOJ's alleged initiative apart from isolated and tentative conversations about payday lending investigation and enforcement. It has not offered evidence of any secret or "backroom" Bureau communication with *any* bank in *any* context. It has not even produced evidence of any Bureau communications with Nationwide's banks regarding Nationwide or its accounts, let alone any that could plausibly constitute the "pressure" or "extrajudicial" tactics it claims characterized "Operation Choke Point." Nor has it offered evidence that the public Bureau activity it cites in Nationwide's case—such as issuing press releases, making public remarks about the ACH system, or filing public documents in litigation—is consistent with alleged tactics of "Operation Choke Point."[11] Nationwide has thus not offered *any* evidence of a nexus between the alleged "Operation Choke Point" activities of DOJ, FDIC, or other agencies and *any* fact consequential to Nationwide's counterclaims; evidence regarding these other agencies' alleged activities is, accordingly, irrelevant and inadmissible. *See, e.g., Paralyzed Veterans of America v. McPherson*, No. C 06-4670 SBA, 2008 WL 4183981, *8 (N.D. Cal. Sept. 9, 2008) (excluding under Rule 402 evidence about a search of county website absent clear relevance to claims).

### II. The Court Should Exclude Nationwide's Evidence Regarding "Operation Choke Point" Activities at Other Agencies or Involving Companies Unrelated to Nationwide, Because the Risk it Presents of Undue Prejudice, Wasting Time, Confusing the Issues, or Misleading the Finder of Fact Substantially Outweighs its Probative Value.

---

[11] The Bureau described these deficiencies, which are also described in this motion's Statement of Facts, in its Reply in Support of its Motion for Summary Judgment. Dkt. 179 at 2-6.

Even where evidence is otherwise relevant, the Court may exclude it "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. In the context of the rule, "unfair prejudice" means "an undue tendency to suggest decision on an improper basis." Fed. R. Evid. 403 cmt. *See also Cohn v. Papke*, 655 F.2d 191, 194 (9th Cir. 1981) (finding reversible error where evidence of plaintiff's sexual history was admitted). Evidence that is only tenuously connected to material facts poses a risk of confusing issues and leading to such a decision on an improper basis. *See United States v. Espinoza-Baza*, 647 F.3d 1182,1190 (9th Cir. 2011) (citation omitted) (holding that admission of information about grandfather's citizenship—without evidentiary link to defendant's citizenship though his mother—"would have created a substantial risk of confusion" that risked a verdict based "on highly speculative evidence" rather than on the defendant's guilt or innocence with respect to alien reentry law); *Hooper v. Lockheed Martin Corp.*, 640 F. App'x. 633, 637 (9th Cir. 2016) (upholding conditional exclusion under Rule 403 of evidence of poor quality of software, which was not "directly probative" that company had "cut corners to deliver a product for the original bid price" but was unfairly prejudicial).

As noted above, Nationwide has provided no factual nexus connecting alleged "Operation Choke Point" activities at other agencies to the Bureau's interactions with Nationwide or the Bureau's interactions with Nationwide's banks. Even if the Court disagrees with the Bureau that this evidence is thus irrelevant, without such a nexus, this evidence merely clouds Nationwide's lack of evidence of any Bureau activity that supports its claims by introducing distracting, unfounded generalizations about the conduct of other government agencies. Such generalizations are, at best, minimally probative and run substantial risk of introducing unfair prejudice, wasting time, confusing issues, and misleading the finder of fact. *See*, *e.g.*, *Jinro America, Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1008 (9th Cir. 2001) (holding that "expert testimony" comprising generalizations about Korean business practices should have been excluded under Rule 403 because of substantial risk of ethnic stereotyping "appealing to bias, guilt by association and even xenophobia"). *See also Blakeslee v. Shaw Industries, Inc.*, 3:09-cv-00214 JWS, 2011 WL 13069502, at *2 (D. Alaska Sept. 13, 2011) (evidence related to treatment of employees other than the plaintiff posed "significant" risks of confusing the finder of fact, prejudicing the

defendant, and wasting time.)  Similarly, Courts "repeatedly have characterized guilt by association evidence as 'highly prejudicial' and 'damaging,'" which supports exclusion of evidence that would tend to hold the Bureau accountable for alleged conduct of other agencies. *Polasek*, 162 F.3d at 887 (citing *United States v. Westmoreland*, 841 F.2d 572, 579 (5th Cir. 1998)) ("One relevant consideration, of course, is the amount of time spent on the guilt by association evidence."). *See also United States v. Roark*, 924 F.2d 1426, 1434 (8th Cir. 1991) (finding reversible error where a "guilty by association" theory based on defendant's association with Hells Angels motorcycle club became "the entire theme of the trial").

Nationwide's "Operation Choke Point" evidence also threatens to consume substantial time, far out of proportion to any probative value at trial. Despite Nationwide's failure to establish basic factual links between "Operation Choke Point" and any Bureau conduct involving Nationwide or its banks, Nationwide devoted a substantial portion of its Counterclaims—about half of the paragraphs—to allegations about supposed "Operation Choke Point" activities of other agencies, congressional inquiries about whether CFPB had any involvement in that operation,[12] and unsupported implications that any Bureau activity with the potential to affect Nationwide's bank accounts must be a part of "Operation Choke Point." Nationwide's Opposition to the Bureau's Motion for Summary Judgment on the Counterclaims continued this outsize focus on "Operation Choke Point," dedicating multiple pages to evidence about activities of other agencies (Opp'n. 4-6), to baseless speculations that routine Bureau conduct like issuing a press release or filing public documents in litigation are "Operation Choke Point" tactics (*id*. at 8-9, 15-16), and that even Bureau *inaction* and independent third-party decisions bear some phantom connection to "Operation Choke Point." *Id*. at 10-12. The core issue in Nationwide's Counterclaims is whether the Bureau engaged in any inappropriate "extrajudicial" or "backroom pressure" tactics toward Nationwide's banks. Nationwide's extensive reliance on evidence about what other agencies may have done will only confuse that issue and, by tainting ordinary Bureau actions with unrelated allegations of improper conduct, invite a decision on an improper basis.[13] In addition,

---

[12] Again, these inquiries did not include predicate facts suggesting the Bureau had been involved.
[13] There is also substantial risk of misleading a jury or advisory jury. For example, average jurors are unlikely to understand the relationships among government agencies and the nature and limits of inter-agency coordination. Moreover, there is significant risk that a jury would conflate evidence related to

dwelling at such length on matters with minimal, if any, probative value would unduly extend the length of trial and waste the Court's time. These risks far exceed any value this evidence offers.

## CONCLUSION

For the reasons stated above, the Court should bar evidence related to activities of other federal regulators and of other so-called "targets" of "Operation Choke Point" under Federal Rules of Evidence 401 and 403.

Date: March 13, 2017                                    Respectfully submitted,

MARY MCLEOD                                              ANTHONY ALEXIS
General Counsel                                          Enforcement Director

JOHN R. COLEMAN                                          DEBORAH MORRIS
Deputy General Counsel                                   Deputy Enforcement Director

ANNE H. TINDALL                                          MICHAEL G. SALEMI
Assistant General Counsel                                Assistant Litigation Deputy

/s/ Elizabeth France
Elizabeth France
elizabeth.france@cfpb.gov
202-435-7694
Thomas McCray-Worrall
thomas.mccray-worrall@cfpb.gov
202-435-9683
*Litigation Attorneys*

Patrick Gushue
patrick.gushue@cfpb.gov
202-435-9671
Jonathan Urban
jonathan.urban@cfpb.gov
202-435-7371
Stephen Jacques

---

DOJ's Consumer Protection Branch with evidence related to the Consumer Financial Protection Bureau, because of the substantial overlap in their names, and an instruction to the jury would not help jurors distinguish these entities in real time as each piece of evidence was introduced. This imbalance between probative value and risk of misleading a jury strongly counsels exclusion of the misleading evidence. *See Espinoza-Baza*, 647 F.3d at 1090 ("even a small risk of misleading the jury substantially outweighs the probative value of minimally probative evidence") (quoting *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 2010)) ("Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury.")

stephen.jacques@cfpb.gov
202-435-7368
*Enforcement Attorneys*

Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552

# **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on March 13, 2017 via ECF upon counsel of record in this action:

>John D. Smith
>140 North Main Street, Suite B
>Springboro, Ohio 45066
>
>Sean Ponist
>Georgia Schneider
>Law Office of Sean Ponist, P.C.
>100 Pine Street, Suite 1250
>San Francisco, CA 94111
>
>Allyson Baker
>Venable LLP
>575 7th Street, NW
>Washington, DC 20004

*/s/ Elizabeth France*
Elizabeth France
elizabeth.france@cfpb.gov
202-435-7694
*Litigation Attorney*

Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552

ANTHONY ALEXIS (DC Bar #384545)
DEBORAH MORRIS (Admitted to the NY Bar)
MICHAEL G. SALEMI (IL Bar #6279741)
PATRICK GUSHUE (PA Bar #306966)
JONATHAN URBAN (CO Bar #44190)
STEPHEN JACQUES (DC Bar # 464413)
THOMAS MCCRAY-WORRALL (Admitted to the MD Bar)
ELIZABETH FRANCE (DC Bar #999851)
Patrick.Gushue@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-9671
Fax: 202-435-7329
Attorneys for Plaintiff
Consumer Financial Protection Bureau

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | Case No. 3:15-cv-02106-RS |
| Plaintiff, | **[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATED TO ACTIVITIES OF NON-BUREAU REGULATORS** |
| v. | |
| NATIONWIDE BIWEEKLY ADMINISTRATION, INC., LOAN PAYMENT ADMINISTRATION LLC, AND DANIEL S. LIPSKY, | Judge: Hon. Richard Seeborg<br>Courtroom: Courtroom 3, 17th Floor<br>450 Golden Gate Ave.<br>San Francisco, CA 94102 |
| Defendants. | |
| NATIONWIDE BIWEEKLY ADMINISTRATION, INC., | |
| Counter-claimant, | |
| v. | |
| CONSUMER FINANCIAL PROTECTION BUREAU, | |
| Counter-defendant. | |

**[PROPOSED] ORDER**

The Court, having considered Plaintiff Consumer Financial Protection Bureau's motion in limine to exclude expert testimony related to federal regulators independent of the Bureau and related to alleged "targets of Operation Choke Point" independent of Defendants Nationwide Biweekly Administration, Inc., Loan Payment Administration LLC, and Daniel S. Lipsky, the papers filed in support of said motion, any papers filed in response, the parties' arguments, and all relevant authorities, hereby GRANTS Plaintiff's motion to exclude such evidence and ORDERS that Defendants are barred from introducing such evidence under Federal Rules of Evidence 401, 402, and 403.

**IT IS SO ORDERED**.

Dated: _____          _____
                                      RICHARD SEEBORG
                                      UNITED STATES DISTRICT JUDGE