ANTHONY ALEXIS (DC Bar #384545)
DEBORAH MORRIS (Admitted to the NY Bar)
MICHAEL G. SALEMI (IL Bar #6279741)
PATRICK GUSHUE (PA Bar #306966)
JONATHAN URBAN (CO Bar #44190)
STEPHEN JACQUES (DC Bar # 464413)
THOMAS MCCRAY-WORRALL (Admitted to the MD Bar)
ELIZABETH FRANCE (DC Bar #999851)
thomas.mccray-worrall@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-9671
Fax: 202-435-7329
Attorneys for Counter-defendant
Consumer Financial Protection Bureau

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | Case No. 3:15-cv-02106-RS |
| Plaintiff, | **COUNTER-DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING COUNTERCLAIMS** |
| v. | |
| NATIONWIDE BIWEEKLY ADMINISTRATION, INC., LOAN PAYMENT ADMINISTRATION LLC, AND DANIEL S. LIPSKY, | Judge: Hon. Richard Seeborg<br>Courtroom: Courtroom 3, 17th Floor<br>450 Golden Gate Ave.<br>San Francisco, CA 94102 |
| Defendants. | |
| -------------------------------------------- | |
| NATIONWIDE BIWEEKLY ADMINISTRATION, INC., | |
| Counter-claimant, | |
| v. | |
| CONSUMER FINANCIAL PROTECTION BUREAU, | |
| Counter-defendant. | |

## COUNTER-DEFENDANT'S PROPOSED FINDINGS OF FACT
## AND CONCLUSIONS OF LAW REGARDING COUNTERCLAIMS

Pursuant to section D.4 of the Court's Guidelines for Final Pretrial Conference in Bench Trials, the Bureau submits these Proposed Findings of Fact and Conclusions of Law Regarding Counterclaims of Counter-claimant Nationwide Biweekly, Inc. ("Nationwide").[1]

### I. Proposed Findings of Fact

#### A. The Parties

1. Counter-claimant Nationwide Biweekly Administration, Inc. ("Nationwide") is an Ohio corporation based in Xenia, Ohio.

2. Counter-defendant the Consumer Financial Protection Bureau ("Bureau") is an independent agency of the United States charged with regulating the offering and provision of consumer financial products and services under federal consumer financial law.

#### B. The Action

3. On May 11, 2015, the Bureau filed a civil complaint against Nationwide alleging violation of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a), 5536(a), 5564(a), and 5565, and violation of the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6105(d), and its implementing regulation, the Telemarketing Sales Rule, 16 C.F.R. §§ 310.1-9 (2010).

4. On June 2, 2015, the Bureau filed its Memorandum in Opposition to Motion to Transfer Venue, Dkt. 29. An exhibit to this brief contained a list of four banks that Nationwide contracted with for banking services. *See* Dkt. 29-1. The Bureau's use of this information was appropriate in this context, as section 1054(f) of the CFPA states that a civil action brought under the Act may be brought in a forum "in which the defendant is located or resides or is doing business." 12 U.S.C. § 5564(f). In demonstrating that under this provision this Court is an appropriate forum for this action, the Bureau appropriately relied on information showing that Nationwide and its co-defendants "hold funds in a bank

---

[1] The Bureau has filed contemporaneously with this filing Proposed Findings of Fact and Conclusions of Law Regarding Affirmative Claims of the Bureau.

account dedicated to their numerous California customers." Order Denying Defendants' Motion for Transfer, Dkt. 35 at 8.

5. Nationwide engaged in fraudulent, illegal, or otherwise improper conduct in connection with the conduct at issue in the Bureau's complaint and in Nationwide's counterclaims, as this Court found in the Bureau's affirmative case in this matter.

**C. Nationwide's Banking Relationships**

6. Nationwide has failed to establish that any actions by the Bureau, with the possible exception of those noted above in Findings 3 and 4, influenced any bank's decision to terminate, or refuse to establish, a contractual relationship with Nationwide.

7. Nationwide has not established that its former banking partners are likely to reestablish their banking relationships with Nationwide if it obtains the relief it seeks through its counterclaims.

8. Nationwide has not established that actions by the Bureau effectively cut Nationwide off from the banking system.

9. Nationwide's alleged injuries were caused by nonparties, including Nationwide's former banking partners.

10. Before U.S. Bank terminated its relationship with Nationwide, Nationwide failed to meet revenue targets set by U.S. Bank, N.A. ("U.S. Bank").

11. Nationwide's failure to meet revenue targets set by U.S. Bank caused or contributed to the bank's decision to terminate its relationship with Nationwide.

12. Before TD Bank terminated its relationship with Nationwide, Nationwide failed to meet revenue targets set by TD Bank.

13. Nationwide's failure to meet revenue targets set by TD Bank caused or contributed to TD Bank's decision to terminate its relationship with Nationwide.

14. Nationwide's relationship with TD Bank had deteriorated prior to the filing of the Bureau's lawsuit.

15. Nationwide's failed attempt to establish a joint marketing campaign with TD Bank contributed to the deterioration of Nationwide's relationship with TD Bank.

16. The deterioration of Nationwide's relationship with TD Bank caused and/or contributed to the bank's decision to terminate its relationship with Nationwide.

17. Nationwide failed to maintain a cooperative working relationship with TD Bank prior to the termination of the bank's relationship with Nationwide.

18. Nationwide's failure to maintain a cooperative working relationship with TD Bank caused and/or contributed to the bank's decision to terminate its relationship with Nationwide.

## II. Proposed Conclusions of Law

### A. This Court Lacks Jurisdiction Over Nationwide's Counterclaims

1. Nationwide lacks standing necessary to maintain this Court's jurisdiction. To establish standing sufficient for the "case" or "controversy" requirement of Article III, a party must establish (1) that it has "suffered an injury in fact"; (2) a "causal connection between the injury and the conduct complained of," such that the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) that it is "likely," not "merely speculative," that a favorable decision will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The requirements for standing apply with equal force to parties asserting counterclaims. *See Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1384 (9th Cir. 1984). At this stage of the litigation, Nationwide must prove by a preponderance of the evidence the elements of standing. *Lujan*, 504 U.S. at 561. Nationwide has failed to establish both causation and redressability prongs necessary for Article III standing. Neither the Bureau's conduct nor the definition of "risk to consumers" in its Supervision and Examination Manual ("Exam Manual") caused the bank to terminate Nationwide's accounts. Nationwide has not established that a favorable outcome in this case is likely to cause its former banking partners to reestablish their banking relationships with Nationwide. Because Nationwide lacks standing, this Court lacks jurisdiction over Nationwide's counterclaims. Accordingly, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citing *Ex parte McCardle*, 7 Wall. 506, 514, 19 L. Ed. 264 (1868)).

2. The Court further lacks subject matter jurisdiction over Nationwide's APA counterclaims because the Bureau has not waived its sovereign immunity. It is a foundational legal principle that "the

United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The government's waiver of sovereign immunity "must be unequivocally expressed in statutory text." *Jachetta v. United States*, 653 F.3d 898, 903 (9th Cir. 2011) (citing *Lane v. Pena*, 518 U.S. 187, 192 (1996)). The APA provides a limited waiver of an agency's sovereign immunity solely with respect to an action "seeking relief other than money damages," 5 U.S.C. § 702, but this waiver does not apply to Nationwide's APA counterclaims concerning the definition of "risk to consumers" in the Bureau's Exam Manual, for two reasons:

   a.   *The definition of "risk to consumers" is committed to agency discretion:*  Before a party may seek federal court review of federal agency activity under the APA, "a party must first clear the hurdle of [Section] 701(a)," which provides that the APA's chapter on judicial review – including the provision waiving sovereign immunity – applies "except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." *Heckler v. Chaney*, 470 U.S. 821, 828 (1985) (citing 5 U.S.C. § 701(a)(2)); *E.J. Friedman Co. v. United States*, 6 F.3d 1355, 1359-60 (9th Cir. 1993) (the APA does not waive sovereign immunity to challenge actions committed to agency discretion by law). If a statute "is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," the statute "can be taken to have committed the decisionmaking to the agency's judgment absolutely." *Chaney*, 470 U.S. at 830. Here, Congress committed the definition of "risk to consumers" to the Bureau's discretion when it granted the Bureau exclusive authority to examine financial institutions with assets over $10 billion to assess compliance with Federal consumer financial laws and "detec[t] and asses[s] associated *risks to consumers* and to markets for consumer financial products and services," 12 U.S.C. § 5515(b)(1)(A),(C) (emphasis added). The CFPA does not define "risk to consumers" or provide a standard against which to judge the Bureau's discretion. When Congress invents an ambiguous term "and then declin[es] to define it, Congress intend[s] to provide agencies with discretion" in how to define the term. *Modesto Irrigation Dist. v. Gutierrez*, 619 F.3d 1024, 1033 (9th Cir. 2010).

   b.   *The Exam Manual does not constitute final agency action:*  "The APA applies to waive sovereign immunity only after final agency action" has occurred, *Rattlesnake Coalition*, 509 F.3d at

4
Counter-Defendant's Proposed Findings of Fact and Conclusions of Law Regarding Counterclaims
Case No. 3:15-cv-02106-RS

1104-05 (citing 5 U.S.C. § 704), and the Exam Manual about which Nationwide complains is neither "final" nor an "agency action" at all. To begin, the APA defines "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act," 5 U.S.C. §§ 551(13), 701(b)(2); none of these definitions applies to the Exam Manual. In addition, the Exam Manual includes a disclaimer that it is intended purely to "provid[e] internal guidance to supervisory staff of the CFPB. It does not bind the CFPB and does not create any rights, benefits, or defenses, substantive or procedural, that are enforceable by any party in any matter. While every effort has been made to ensure accuracy, examination procedures should not be relied on as a legal reference." Exam Manual at 1, *available at* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

The Exam Manual's section on "risk to consumers" further notes that "risk assessments are not used to reach conclusions about whether an entity has violated a particular law or regulation." *Id.* at 21. Additionally, for an agency action to be "final," it must meet two conditions: (1) it "mark[s] the consummation of the agency's decisionmaking process," rather than being "of a merely tentative or interlocutory nature," and (2) "the action must be one by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citations and quotation marks omitted). The Supreme Court recently concluded that an agency action marks the consummation of the agency's decisionmaking when it is made "after extensive factfinding" and "is typically not revisited." *Army Corps of Eng'rs v. Hawkes*, --- U.S. ----, 136 S. Ct. 1807, 1813-14 (2016). In *Hawkes*, on the second prong of this analysis the action had "legal consequences" because it bound the government and created a safe harbor from liability. *Id.* at 1814. The Bureau's Exam Manual meets neither of these prongs; the document is explicit that it serves as internal guidance only, does not bind the Bureau, and is subject to revision. As such, no legal consequences can flow from its interpretation of "risk to consumers."

**B. The Bureau Did Not Violate Nationwide's First Amendment Rights**

3.     The Bureau did not impermissibly infringe upon speech protected by the First Amendment. To prevail on its First Amendment claim, Nationwide had to prove both that it engaged in activity protected by the First Amendment and that the Bureau impermissibly infringed on its right to

engage in that activity. *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985). Nationwide established neither of these elements.

4. Nationwide failed to establish that any action by the Bureau limited its ability to engage in First Amendment activity, including any commercial speech.

5. Even assuming *arguendo* that Nationwide's speech was somehow inhibited, it is at most commercial speech. When determining whether speech is commercial, courts consider whether the speech is an advertisement, the speech refers to a specific product, and the speaker has an economic motivation. *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983). Commercial speech may still receive full First Amendment protection, however, if "commercial aspects of the speech are 'inextricably intertwined' with otherwise fully protected speech, such that the publication sheds its commercial character." *Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 958 (9th Cir. 2012) (citation omitted). The purported educational function of advertising or marketing materials does not grant such materials full First Amendment protection. As the Supreme Court has concluded, the inclusion of information about "how to be financially responsible and how to run an efficient home" in a sales pitch for home products "no more convert[s the] presentations into educational speech, than opening sales presentations with a prayer or a Pledge of Allegiance would convert them into religious or political speech." *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 474-75 (1989). The same is true about any arguably educational material in Nationwide's advertising.

6. The Supreme Court has reiterated that "there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980). Governments may regulate commercial speech even where it "is not provably false, or even wholly false, but only deceptive or misleading." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976). In its affirmative case, the Bureau established that Nationwide's commercial speech is false, deceptive, and misleading; such speech not entitled to constitutional protection. *See Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 563 (1980); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. at 771-72. Nationwide disagrees with the Bureau's characterization of its advertising, but that dispute was properly evaluated via the adjudication of the

Bureau's lawsuit and Defendants' affirmative defenses, and is not appropriate for resolution as a counterclaim. *See Stickrath v. Globalstar, Inc.*, No. C07-1941-TEH, 2008 WL 2050990, at *3 (N.D. Cal. May 13, 2008) ("The label 'counterclaim' has no magic. What is really an answer or defense to a suit does not become an independent piece of litigation because of its label.") (quoting *Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1379 (7th Cir. 1985)).

7.     Even if Nationwide had established that its advertising is constitutionally protected, it could not establish a First Amendment violation because it could not establish any government restriction on that advertising other than the Bureau's request for an injunction in its affirmative case. This injunctive relief is an appropriate remedy for speech determined to be misleading. *See United States v. Philip Morris Inc.*, 304 F. Supp. 2d 60, 71 (D.D.C. 2004) ("If the Government successfully establishes that the Defendants disseminated their advertising in furtherance of an overall scheme to defraud, the First Amendment will not present an obstacle to appropriate injunctive and equitable relief to remedy the fraud."). Furthermore, Nationwide at most could establish only economic harm, which is not sufficient "to prevail on a First Amendment claim of constitutional harm." *Outdoor Media Grp., Inc. v. City of Beaumont*, 702 F. Supp. 2d 1147, 1162 (C.D. Cal. 2010), *aff'd*, 464 F. App'x 611 (9th Cir. 2011) (citing cases). Nationwide did not establish, for example, that it can no longer advertise because the Bureau shut down its websites or confiscated its direct mailers. Nationwide's First Amendment claim therefore fails.

**C.  The Bureau Did Not Violate Nationwide's Fifth Amendment Rights**

8.     Nationwide failed to identify a constitutionally protected liberty or property interest that it has been deprived of by the Bureau. To state a claim for a violation of procedural due process, a party must allege: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). The Fifth Amendment prohibits government deprivation of "life, liberty, or property, without due process of law," U.S. Const. amend. V, but "the range of interests protected by procedural due process is not infinite." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570

(1972).[2]  As the Supreme Court has explained, a constitutionally protected property interest arises when a person has "more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  *Id.* at 577.  That entitlement must be based on "the acts of the sovereign, state or federal, manifested in legislation, rules, or customs."  *Moore v. Johnson*, 582 F.2d 1228, 1233 (9th Cir. 1978).[3]

9.   With respect to liberty interests, the Constitution does not protect "reputation alone," because that would amount to no more than a state-law defamation claim.  *WMX Techs., Inc. v. Miller*, 197 F.3d 367, 376 (9th Cir. 1999) (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)).  Reputational harm is not an unconstitutional deprivation of a liberty or property interest unless accompanied by "alteration or extinguishment" of "a right or status previously recognized by law."  *Humphries v. City of L.A.*, 554 F.3d 1170, 1185 (9th Cir. 2009) (quoting *Paul v. Davis*, 424 U.S. 693, 711 (1976)), *rev'd in part on other grounds*, 562 U.S. 29 (2010).  Similarly, allegations of serious impairment to "future employment opportunities" are inadequate without facts showing a change in legal status, "such as loss of tax exemption or loss of government employment."  *Paul*, 424 U.S. at 697, 705.  Instead, a due process claim based on stigma requires a "stigma-plus" allegation that the government action harming reputation also "deprived the plaintiff of a protected liberty or property interest or a status recognized by the state."  *WMX Techs.*, 197 F. 3d at 376 (citing *Paul*, 424 U.S. at 712).

10.   Courts also have held that "persons cannot claim a constitutionally protected right to do business with a particular bank."  *Groos Nat'l Bank v. Comptroller of Currency*, 573 F.2d 889, 897 (5th Cir. 1978).  Even where courts have concluded that a person has a right to hold a bank account, they have noted that "it is insufficient for [parties] to show that they have merely had *some* bank accounts terminated."  *Advance America Cash Advance Centers, Inc., et al. v. FDIC et al.*, Civ. No. 1:14-953, 2017 U.S. Dist. LEXIS 27887, at *9 (D.D.C. Feb. 23, 2017) (quoting *Kartseva v. Department of State*,

---

[2] While *Roth* concerned the Fourteenth Amendment, the same principles apply under the Fifth Amendment.  *Raditch v. United States*, 929 F.2d 478, 481 (9th Cir. 1991).

[3] Courts have identified constitutionally protected property interests in, for example, continuing to receive government benefits, *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970), obtaining a government license where the criteria for the license are non-discretionary, *Groten v. Cal.*, 251 F.3d 844, 850 (9th Cir. 2001), and receiving a salary guaranteed by law or contract.  *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

37 F.3d 1524, 1527-28 (D.C. Cir. 1994)) (emphasis in original).  A party instead must show that "it has had so many bank accounts and banking relationships terminated it has effectively been cut off from the banking system." *Id*.  Nationwide has failed to demonstrate that it was effectively cut off from the banking system.  It has not shown that the Bureau's actions caused all banks the Bureau supervises to reject relationships with Nationwide.  Furthermore, the Bureau has supervisory authority over only a segment of the banking system, *see* 12 U.S.C. §§ 5515, 5516, and Nationwide has made no attempt to show how the Bureau's actions did or could interfere with relationships with financial institutions not supervised by the Bureau.

11. Nor is a purely economic interest a constitutionally protected property right.  *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) ("[B]usiness in the sense of *the activity of doing business*, or the activity *of making a profit* is not property in the ordinary sense.") (emphasis in original); *W. Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1432 (9th Cir. 1985) (rejecting that "the right to continue the operation of a business is a cognizable property interest").  Violation of the right to choose a line of business requires "a *complete prohibition* on the right to engage in a calling, and not a sort of brief interruption."  *Guzman v. Shewry*, 552 F.3d 941, 954 (9th Cir. 2008) (emphasis in original) (citing *Conn v. Gabbert*, 526 U.S. 286, 292 (1999)) (noting that such interests have been limited to challenges to "regulations on entry into a particular profession" and states seeking "permanently to bar an individual from public employment") (citations omitted).  *See also Trifax Corp v. District of Columbia*, 314 F.3d 641, 644 (D.C. Cir. 2003) (requiring that "the government has seriously affected, if not destroyed" the ability to obtain employment or contracts in a field) (quoting *Taylor v. Resolution Tr. Corp.*, 56 F.3d 1497, 1506 (D.C. Cir. 1995)).

12. Nationwide has not satisfied the "stigma-plus" standard; it has not established a cognizable "plus," *i.e.*, that it was deprived of access to banking services or that it was prevented from pursuing its lawful, chosen line of business.

13. Even if Nationwide had demonstrated the existence of a constitutionally protected right, its due process claim would still fail because it could not establish that the Bureau deprived it of that right. The law is clear that "the due process provision of the Fifth Amendment does not apply to the indirect adverse effects of governmental action." *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773,

9
Counter-Defendant's Proposed Findings of Fact and Conclusions of Law Regarding Counterclaims
Case No. 3:15-cv-02106-RS

789 (1980). Put another way, the fact that governmental action leads to substantial harm "does not turn the [action] into a governmental decision to impose that harm." *Id.* at 789. Nationwide could establish no more than an indirect adverse effect of governmental action, which does not suffice to state a due process claim.

**D. Nationwide's Own Misconduct Caused Its Injuries, and Its Unclean Hands Preclude Relief**

14. Even if Nationwide had proven by a preponderance of the evidence any of its claims for equitable relief, the doctrine of unclean hands would bar judgment in its favor. A party seeking "equitable relief 'must come with clean hands,'" *see Northbay Wellness Group, Inc. v. Beyries*, 789 F.3d 956, 959 (9th Cir. 2015) (quoting *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944)), and the substantial injury to consumers established in the Bureau's affirmative case against Nationwide precludes this Court's granting Nationwide the equitable remedies requested. When determining whether the doctrine of unclean hands stands in the way of a particular plaintiff, the Court must weigh the wrongdoing of the party seeking relief against that alleged to have been committed by the opposing party. *Id.* at 960 (citing *Republic Molding Corp. v. B.W. Photo Utils.*, 319 F.2d 347, 350 (9th Cir. 1963)). Here, Nationwide's deceptive and abusive marketing scheme robbed hundreds of thousands of consumers of funds they believed were being used to generate savings on their mortgage payments. In fact, Nationwide's activities served to enrich Counter-claimant at the expense of its customers, resulting in $76 million in consumer harm. This substantial wrongdoing far outweighs any injury that may have befallen Nationwide as a result of the Bureau's filing an action to vindicate that consumer harm and its announcement of the action against Nationwide in a public press release. Nationwide's own misconduct – not the Bureau's enforcement of the law – led to the alleged injuries that are the subject of Nationwide's counterclaim. As a result, Nationwide's claims in equity must fail.

Date: March 31, 2017                               Respectfully submitted,

    MARY MCLEOD                                    ANTHONY ALEXIS
    General Counsel                                 Enforcement Director

    JOHN R. COLEMAN                                 DEBORAH MORRIS
    Deputy General Counsel                          Deputy Enforcement Director

| | |
|---|---|
| ANNE H. TINDALL<br>Assistant General Counsel | MICHAEL G. SALEMI<br>Assistant Litigation Deputy |

/s/ Thomas McCray-Worrall
Thomas McCray-Worrall
thomas.mccray-worrall@cfpb.gov
202-435-9683
Elizabeth France
elizabeth.france@cfpb.gov
202-435-7694
*Litigation Attorneys*

Patrick Gushue
patrick.gushue@cfpb.gov
202-435-9671
Jonathan Urban
jonathan.urban@cfpb.gov
202-435-7371
Stephen Jacques
Stephen.jacques@cfpb.gov
202-435-7368
*Enforcement Attorneys*

Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552

---

11

Counter-Defendant's Proposed Findings of Fact and Conclusions of Law Regarding Counterclaims
Case No. 3:15-cv-02106-RS

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on March 31, 2017, via ECF upon counsel of record in this action.

                                              /s/ Thomas McCray-Worrall
                                              Thomas McCray-Worrall

Counter-Defendant's Proposed Findings of Fact and Conclusions of Law Regarding Counterclaims
Case No. 3:15-cv-02106-RS

ANTHONY ALEXIS (DC Bar #384545)
DEBORAH MORRIS (Admitted to the NY Bar)
MICHAEL G. SALEMI (IL Bar #6279741)
PATRICK GUSHUE (PA Bar #306966)
JONATHAN URBAN (CO Bar #44190)
STEPHEN JACQUES (DC Bar # 464413)
THOMAS MCCRAY-WORRALL (Admitted to the MD Bar)
ELIZABETH FRANCE (DC Bar #999851)
thomas.mccray-worral@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-9671
Fax: 202-435-7329
Attorneys for Counter-defendant
Consumer Financial Protection Bureau

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | Case No. 3:15-cv-02106-RS |
| Plaintiff, | **[PROPOSED] ORDER REGARDING COUNTER-DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING COUNTERCLAIMS** |
| v. | |
| NATIONWIDE BIWEEKLY ADMINISTRATION, INC., LOAN PAYMENT ADMINISTRATION LLC, AND DANIEL S. LIPSKY, | Judge: Hon. Richard Seeborg<br>Courtroom: Courtroom 3, 17th Floor<br>450 Golden Gate Ave.<br>San Francisco, CA 94102 |
| Defendants. | |
| ---------------------------------------------- | |
| NATIONWIDE BIWEEKLY ADMINISTRATION, INC., | |
| Counter-claimant, | |
| v. | |
| CONSUMER FINANCIAL PROTECTION BUREAU, | |
| Counter-defendant. | |

---

[Proposed] Order Regarding Counter-Defendant's Proposed Findings of Fact and Conclusions of Law Regarding Counterclaims
Case No. 3:15-cv-02106-RS

## [PROPOSED] ORDER

The Court adopts the findings of fact and conclusions of law set forth above in Counter-Defendant's Proposed Findings of Fact and Conclusions of Law Regarding Counterclaims.

**IT IS SO ORDERED**.

Dated: _____     _____
                                                                    RICHARD SEEBORG
                                                                    UNITED STATES DISTRICT JUDGE

2

[Proposed] Order Regarding Counter-Defendant's Proposed Findings of Fact and Conclusions of Law Regarding Counterclaims
Case No. 3:15-cv-02106-RS