UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NATIONWIDE BIWEEKLY ADMINISTRATION, INC., et al.,<br><br>　　　　　Defendants. | Case No. 15-cv-02106-RS<br><br>**ORDER GRANTING IN PART, AND DENYING IN PART MOTIONS *IN LIMINE*** |

　　　Plaintiff's motions *in limine* were filed at a juncture before it was determined this matter would not be tried to a jury. As this case will now proceed as a bench trial, the arguments regarding potential prejudice and/or jury confusion underlying most or all of the motions *in limine* are moot. Additionally, given the order setting trial time allotments, and the dialogue at the pretrial conference, it may be the case that the parties have already re-evaluated what witnesses they intend to present at trial and/or the scope of the testimony those witnesses will proffer. The motions *in limine* are resolved as follow.

　　　1. *Dr. Michael Motley*

　　　Plaintiff moves to exclude the testimony of Doctor Michael Motley as an expert witness. Motley is offered as an expert in communications, who intends to offer an opinion at trial as to "whether reasonable consumers or customers who enrolled in NBA's biweekly mortgage program were likely to have been misled or deceived when electing to enroll." Plaintiff contends Dr.

Motely applied no "reliable methodologies" in support of his opinions and essentially is offering legal conclusions that invade the province of the fact finder.  Defendants insist Dr. Motley is highly qualified in his field and his testimony will assist the Court "in understanding the meaning and clarity of the communications at issue in this case and how consumers understand them." Defendants contend Dr. Motley "cites to reliable sources and identifies and describes relevant theories, including the Elaboration Likelihood Theory, Social Utility Theory, and WIIFM." Defendants state Dr. Motley also will testify regarding the "National Communications Association's 'Credo for Ethical Communication,' which, *inter alia*, advocates for 'truthfulness, accuracy, honesty, and reason as essential to the integrity of communication' while condemning distortion."

At this juncture, an order completely precluding Dr. Motley from testifying is not warranted.  Defendants are advised, however, that presenting argument in the form of expert testimony regarding issues that are for the Court to decide likely is an inefficient use of trial time. Additionally, this ruling is without prejudice to a determination at the conclusion of expert *voir dire*, or during the course of any testimony, that the opinions proffered are not admissible.

2. *Dr. Larry Chiagouris*

Plaintiff moves to limit the testimony of Dr. Larry Chiagouris, who is presented  as an expert in marketing.  Dr. Chiagouris intends to offer five opinions at trial, of which plaintiff challenges four.  Plaintiff seeks to exclude Chiagouris from testifying that (a) the terms and conditions of Defendants' Interest Minimizer Program (IM Program) were "knowable" and "understandable;" (b) the IM Program's terms and conditions were not likely to mislead reasonable consumers; (c) the Bureau's complaint did not cite to empirical research and fails to account for differences among consumers; and (d) the number of complaints consumers filed against the Defendants was negligible.

At deposition, Dr. Chiagouris allegedly admitted he did not conduct any scientific tests or empirical research in forming his opinions, and instead merely read defendants' marketing

materials. ("Q. How did you reach that conclusion? A. I looked at the material."). Plaintiff does not move to exclude Dr. Chiagouris from testifying completely. As in the case of Dr. Motley, defendants are cautioned that opinions on ultimate issues are not an efficient use of time, and are subject to exclusion upon expert voir dire or in the course of testimony. The motion is denied, without prejudice to such future determinations.

3. *Dr. Harvey Rosen*

Defendants move to exclude Dr. Harvey Rosen from testifying as an expert witness. Defendants offer Dr. Rosen for his (1) "expert opinions in response and rebuttal to the testimony of experts designated by plaintiffs;" (2) "economic issues including, but not limited to, savings analysis and projections;" and (3) "calculations regarding damages, if any, and the effect of defendants' program on consumers." To the extent plaintiff seeks to preclude Rosen from testifying based on inadequacies in his disclosures, it has not shown prejudice that would support precluding the testimony entirely. Defendants have not shown, however, that Dr. Rosen has any basis to testify regarding damages, and that portion of the motion is granted. Defendants are also advised that it is presently unclear whether the balance of Dr. Rosen's proposed testimony will materially assist the Court in understanding their contentions regarding the economic effects of making bi-weekly payments under the program they offered.

4. *Consumer complaints*

Plaintiff moves to admit certain records of consumer complaints. The parties are directed to continue their meet and confer negotiations regarding possible stipulations as to the admissibility of documents. The motion is denied, without prejudice to rulings at trial as to whether any or all documents reflecting such consumer complaints are admissible, and if so, for what purposes.

5. *Counterclaim issues*

Plaintiff moves to exclude, during trial of plaintiff's case, testimony or other evidence relating to the counterclaims that plaintiff used "Operation Choke Point and extrajudicial tactics," and that such tactics allegedly led to the closure of bank accounts held by defendants. In light of the fact that this matter will not be tried to a jury, there is no basis remaining for the motion, and it is denied. That said, the trial and time limits have been structured to address plaintiff's claims and the counterclaims separately, and defendants should bear that in mind.

6. *"Irrelevant matters"*

Plaintiff moves to exclude testimony or other evidence relating to what it believes are "irrelevant matters." Plaintiff contends defendants have suggested they may offer at trial evidence relating to the following: (1) defendants' reliance on attorney advice; (2) defendants' purported good faith and lack of intent to deceive; (3) defendants' quality assurance program and disciplinary efforts; and (4) defendants' contention that certain of their customers were satisfied. Plaintiff contends none of those matters, even if proven, give rise to a defense, and therefore are legally irrelevant. The motion is denied, without prejudice to rulings at trial regarding admissibility of any specific testimony or documents.

7. *Undisclosed communications and witnesses*

Plaintiff moves to exclude "previously undisclosed communications and testimony of previously undisclosed witnesses." Specifically, plaintiff seeks to exclude "previously undisclosed" communications with the Ohio Attorney General's Office, testimony of Sonia Himmelberg provided in her individual capacity, and testimony of Glenn V. Whitaker, Helen Mac Murray, and any previously unnamed or undetermined individuals at T.D. Bank, N.A.; Bank of America, N.A.; BMO Harris Bank, N.A.; Charles Schwab; or JP Morgan Chase Bank.

Plaintiff contends these witnesses were not disclosed except in two supplemental disclosures, one filed on the very last day of fact discovery, and one more than a month later.

From defendants' opposition, it is unclear how much, if any, of the objected-to evidence they still intend to proffer. The motion is denied without prejudice. Defendants are advised they will have a heavy burden to show why they should be permitted to present witnesses or documents that were not timely disclosed.

8. *"Federal regulators independent of the Bureau"*

Plaintiff moves to exclude evidence related "to activities of federal regulators independent of the Bureau and evidence related to alleged 'targets of Operation Choke Point' independent of defendants Nationwide, Loan Payment Administration LLC, and Daniel S. Lipsky." This motion echoes arguments presented both at the motion to dismiss stage and on summary judgment. It is denied, without prejudice to specific evidentiary rulings at trial. Defendants are advised that although they may be permitted certain latitude—through the admission of evidence on a conditional basis or otherwise—to present their theories, ultimately they will be required to show a sufficient, non-speculative, nexus between "Operation Choke Point" and similar matters to render such evidence admissible.

9. *Paul Courtemanche*

Plaintiff moves to exclude the testimony of Paul Courtemanche as an expert witness. Plaintiff contends defendants never served a written report containing Courtemanche's purported expert opinions and did not disclose the subject matter of any expert testimony he might offer. Defendants argue Courtemanche was deposed at length and that any "technical" failure to provide expert disclosures is harmless. Courtemanche is offered primarily as a percipient witness, and will be permitted to testify in that capacity. Defendants have not shown Courtemanche has relevant and admissible expert testimony to offer, even apart from any disclosure issues. Accordingly, the motion to exclude Courtemanche as an expert witness is granted, with the understanding that not every statement from a lay witness couched in opinion form is subject to reasonable objection, particularly in the absence of a jury.

10. *Brian Kelley*

Plaintiff moves to exclude the testimony of Brian Kelley as an expert witness. Kelley has prior experience as a bank president and CEO, a position which he left in 2011, before plaintiff obtained its supervisory or enforcement authority. For the last six years, Kelley has worked as a consultant and as an expert witness. His report offers two opinions related to defendants' counterclaims, regarding (1) whether defendant should have received notice of potential violations and an opportunity to cure them before plaintiff filed its lawsuit and, (2) whether plaintiff's actions apart from filing its lawsuit caused defendants' banks to terminate their accounts.

Kelley also offers four opinions related to the plaintiff's affirmative claims: (1) factors allegedly motivating consumers to buy defendants' product, (2) whether defendants clearly disclosed that they were not affiliated with mortgage lenders or servicers, (3) whether defendants' statements are consistent with those made by other financial services providers, and (4) whether mortgage lenders will process biweekly payments made directly by consumers.

Plaintiff contends the "Opinions" portion of Kelley's report cites pleadings in this case and news articles but includes no citations to academic or technical papers, learned treatises, or other independent and reliable sources of specialized or technical knowledge, and that it discloses no "reliable principles or methodologies" underlying his opinions.

Defendants have not made a sufficient showing that any of Kelley's proffered opinions are appropriate subjects for expert testimony and/or that there is an adequate foundation for such testimony under the standards applicable to expert testimony. Accordingly, the motion to exclude Kelley is granted.

Finally, on a separate issue, the Court has received an inquiry as to whether the parties' joint pre-trial statements will be adopted in order form, as arguably contemplated by the "Guidelines for Final Pretrial Conference in Bench Trials." At this point, the issues implicated by the final pretrial conference have been addressed by rulings from the bench at the conference, by a subsequent Clerk's notice regarding scheduling, and by this order. No further pretrial order will

issue.

**IT IS SO ORDERED**.

Dated:  April 18, 2017

_____
RICHARD SEEBORG
United States District Judge