HELEN M. MAC MURRAY
(OH Bar #0038782 - admitted *pro hac vice*)
hmacmurray@mslawgroup.com
LISA A. MESSNER
(OH Bar #0074034  - admitted *pro hac vice*)
lmessner@mslawgroup.com
MAC MURRAY & SHUSTER, LLP
6530 West Campus Oval, Suite 210
New Albany, Ohio  43054
Telephone:     (614) 939-9955
Facsimile:      (614) 939-9954

HANSON BRIDGETT LLP
KIMON MANOLIUS, SBN 154971
kmanolius@hansonbridgett.com
SAMANTHA D. WOLFF, SBN 240280
swolff@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:     (415) 777-3200
Facsimile:      (415) 541-9366

Attorneys for Defendants
Nationwide Biweekly Administration, Inc., Loan
Payment Administration, LLC, and Daniel S.
Lipsky and Counterclaimant Nationwide
Biweekly Administration, Inc.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>             Plaintiff,<br><br>     v.<br><br>NATIONWIDE BIWEEKLY ADMINISTRATION, INC., LOAN PAYMENT ADMINISTRATION LLC, and DANIEL S. LIPSKY,<br><br>             Defendants. | Case No. 3:15-cv-02106-RS<br><br>Judge:         Hon. Richard Seeborg<br><br>Trial Date:    April 24, 2017<br><br>**NOTICE OF MOTION UNDER RULES 59 AND 60 ON BEHALF OF NATIONWIDE BIWEEKLY ADMINISTRATION, INC. TO ALTER OR AMEND JUDGMENT ON COUNTERCLAIM**<br><br>**ORAL ARGUMENT REQUESTED** |

NATIONWIDE BIWEEKLY
ADMINISTRATION, INC.,

        Counter-Complainant,

    v.

CONSUMER FINANCIAL PROTECTION
BUREAU,

        Counter-Defendant.

## I.    INTRODUCTION

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Counter-Complainant Nationwide Biweekly Administration, Inc. ("Nationwide") hereby moves to alter or amend the judgment against Nationwide on its Counterclaim on the grounds that there are clear errors of both fact and of law and that the judgment is manifestly unjust.

## II.    ARGUMENT

### A.    LEGAL STANDARD

#### 1.    Rule 59(e)

Nationwide moves the Court to alter or amend the judgment pursuant to Rule 59(e). Courts have interpreted Rule 59(e) to require the movant to meet one or more of the following four grounds: (1) to correct clear error in the conclusions of law or in the findings of fact upon which the judgment is based; (2) to consider newly discovered evidence or previously unavailable evidence; or (3) to prevent manifest injustice; and (4) to consider an intervening change in controlling law. *McDowell v. Calderon,* 197 F. 3d 1253, 1255 n.1 (9th Cir. 1999) (quoting Wright, *Federal Practice and Procedure* § 2810.1 (2d ed. 1995)).

District courts have "considerable discretion" in ruling on a motion to amend or alter a judgment under Rule 59(e). *McDowell*, 197 F.3d at 1255 n. 1 (9th Cir. 1999). However, a failure to correct a clear error of law constitutes an abuse of discretion. *Perez v. State Farm Mut. Auto. Ins. Co.*, 291 F.R.D. 425, 430 (N.D. Cal. 2013). *See also Yniques v. Cabral*, 985 F. 2d 1031, 1034 (9th Cir. 1993). If the underlying judgment is clearly erroneous, then it is an abuse of discretion

-2-
*Motion under Rules 59 and 60 to Alter or Amend Judgment on Counterclaim*
Case No. 3:15-cv-02106-RS

1  not to grant the motion. *McDowell* 197 F. 3d at n. 4.

2      **2.**    **Rule 60(b)**

3      Nationwide also move the Court to grant them relief from the counterclaim judgment based on newly submitted evidence. Relief from judgment on the basis of newly discovered evidence is warranted if (1) the moving party can show the evidence relied on in fact constitutes "newly discovered evidence" within the meaning of Rule 60(b); (2) the moving party exercised due diligence to discover this evidence; and (3) the newly discovered evidence must be of "such magnitude that production of it earlier would have been likely to change the disposition of the case." *Future Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003). Similar to Rule 59(e), Rule 60(b) must be used to correct manifest errors of law. *Faile v Upjohn Co.*, 988 F. 2d 985 (9th Cir. 1993) (reversing denial of a Rule 60(b) motion to vacate dismissal, where the district court had failed to apply provision of Fed. R. Civ. P 5 (b) that service is complete upon mailing.) As discussed below, after the conclusion of the trial, briefing and oral arguments, the federal government acknowledged the existence of Operation Choke Point during the relevant time period, and now has said that the Choke Point Operation should be and has been ended.

    **B.**    **MANIFEST ERRORS OF LAW AND FACT SUPPORT MOTION REGARDING JUDGMENT AGAINST NATIONWIDE ON COUNTERCLAIM**

    **1.**    **Manifest Error of Fact: CFPB's Press Release Was Made Public on May 11, 2015, the Same Day as the Complaint was Filed.**

In its Press Release, made public on Mary 11, 2015 – the day of the filing of the lawsuit, CFPB published several quotes from Director Richard Cordray:

> "These companies and their owner, Daniel Lipsky, took advantage of consumers with false promises of savings on their mortgage," said CFPB Director Richard Cordray. "Homeowners deserve accurate information in the financial marketplace. Today we are taking action to end these illegal and deceptive practices, and to hold these companies accountable for their actions."[1]

---

[1] See Trial Exhibit 927. See also Request for Judicial Notice, Exhibit G, CFPB Press Release, dated May 11, 2017 available at https://www.consumerfinance.gov/about-us/newsroom/cfpb-files-suit-against-nationwide-biweekly-for-luring-consumers-with-false-promises-of-mortgage-savings/

-3-
*Motion under Rules 59 and 60 to Alter or Amend Judgment on Counterclaim*
Case No. 3:15-cv-02106-RS

In this press release, Director Cordray—the highest-ranking officer of CFPB—personally labeled Nationwide and Mr. Lipsky as having "[taken] advantage of consumers," made "false promises," and carried out "illegal and deceptive practices." [2]  Following this same theme, the headline on the Press Release used the word "Luring" – a word that was never used in the Complaint and which is incendiary and reflects intentional and malicious behavior: "**CFPB Files Suit Against Nationwide Biweekly for Luring Consumers with False Promises of Mortgage Savings**".  CFPB could have conspicuously provided a disclaimer informing CFPB-regulated financial intuitions (like Nationwide's banking partners) that: "This press release is based on allegations which have not been proven in a court of law and should not be construed as an indication that CFPB-regulated financial intuitions should take or not take any action regarding the subject this press release." CFPB did not, however, provide such a disclaimer. Instead, after stating multiple times in conclusory language that Nationwide's conduct violated the law, in the last sentence of the press release, CFPB provided a dull, one-line disclaimer that: "The Bureau's complaint is not a finding or ruling that the defendants have actually violated the law."

### 2.  Manifest Error of Law:  CFPB's Press Release Was Inconsistent with the Department of Justice Standards for Press Releases

The Department of Justice has issued press release standards that govern many government attorneys:

> Attorneys regarding Press Releases in civil cases: 1-7-600 – Release of Information in …Civil…Matters – Non-Disclosure
>
> DOJ personnel shall not make any statement or disclose any information that reasonably could have a substantial likelihood of material prejudicing an adjudicative proceeding.[3]

Additionally, the DOJ Manual also precludes an opinion as to a person's guilt:

---

[2] *Id*.

[3] See Request for Judicial Notice, Exhibit H, U. S. Attorneys' Manual available at https://www.justice.gov/usam/usam-1-7000-media-relations

-4-

*Motion under Rules 59 and 60 to Alter or Amend Judgment on Counterclaim*
Case No. 3:15-cv-02106-RS

> 1-7-610 – Concerns of Prejudice
>
> Because the release of certain types of information could prejudice an adjudicative proceeding, DOJ personal should refrain from disclosing the following, except as appropriate in the proceeding or in an announcement after a finding of guilt.
>
> \*     \*     \*
>
> F.  Any opinion as to the defendant's guilt....[4]

The DOJ Manual appropriately limits the public release of information to the basics:

> In civil and administrative cases, subject to limitations imposed by law or court rule or order, and consistent with the provision of this Policy, DOJ personnel may release similar identification material [substance of the charge as contained in the complaint] regarding parties and the concerned government agency or program, along with a summary of the claim and explanation of the government's interest.[5]

The CFPB Press Release made public on the day of the filing of the Complaint went well beyond these limitations.

### 3. Manifest Error of Fact: CFPB Press Release Caused Unconstitutional Stigma

A press release can certainly inflict an unconstitutional stigma. *See Colaizzi v. Walker*, 542 F.2d 969, 974, n.1 (7th Cir. 1976) (finding statements made in a press release by the Governor of Illinois implying that two state employees were "bad apples" were stigmatizing); *DiBlasio v. Novello*, 344 F.3d 292, 295-304 (2d Cir. 2003) (finding statements made in press releases by a government official claiming plaintiff-doctor was incompetent were stigmatizing). Overall, the statements were *not* presented in a way that made clear to readers they were merely allegations that have never been proven.

It is "unquestionably stigmatizing" for a business-like Nationwide to be labeled as having

---

[4] *Id*.

[5] *Id*.

taken advantage of consumers, made false promises, and acted illegally and deceptively. *Humphries*, 554 F.3d at 1186 (labels can be "unquestionably stigmatizing"). In fact, the Supreme Court has found stigma on the basis of less hostile labels. *See, e.g.*, *Constantineau*, 400 U.S. at 435-37 (finding stigma where the government labeled a person as an excessive drinker); *Paul*, 424 U.S. at 697, 701 (finding stigma where the government labeled a person as a shoplifter).

The stigma imposed on Nationwide by Director Cordray was amplified by numerous other statements in the press release. After spending eight hundred and nineteen (819) words disparaging Nationwide and Mr. Lipsky, a one sentence disclaimer cannot undo the stigma that attached as a result. CFPB knew, or should have known, that Nationwide would be stigmatized by its press release, particularly to its CFPB-regulated banking partners.

### 4.   Manifest Error of Law:  This Stigma deprived Nationwide of its Right to Pursue Its Chosen Line of Business and To Hold a Bank Account.

CFPB's actions have affected Nationwide's protected interest in: (1) engaging in a chosen line of business and (2) holding a bank account. After considering whether the government stigmatized an individual, courts consider whether "a right or status previously recognized by state law was distinctly altered or extinguished." *Humphries*, 554 F.3d at 1186 (citing *Paul*, 424 U.S. at 711). The Ninth Circuit has held that this occurs when there is "a tangible burden on an individual's ability to obtain a right or status recognized by state law." *Humphries*, 554 F.3d at 1188. For the reasons stated below, CFPB has tangibly burdened Nationwide's right to pursue its chosen line of business and to hold a bank account.

#### a)   CFPB Has Deprived Nationwide of its Right to Pursue a Chosen Line of Business

As a result of CFPB's actions, Nationwide has been tangibly burdened in pursuing its chosen line of business. The government violates the Due Process Clause when it stigmatizes an individual or corporation in a way that broadly precludes the individual or corporation from

-6-
*Motion under Rules 59 and 60 to Alter or Amend Judgment on Counterclaim*
Case No. 3:15-cv-02106-RS

pursuing a chosen trade or business. *Trifax Corp. v. District of Columbia*, 314 F.3d 641, 644 (D.C. Cir. 2003) (explaining that "government stigmatization that broadly precludes individuals or corporations from a chosen trade or business deprives them of liberty in violation of the Due Process Clause.") Here, CFPB has tangibly burdened Nationwide in pursuing its chosen line of business by stigmatizing Nationwide so severely that it caused Nationwide to lose, and be unable to reestablish, banking relationships. As described above, this stigmatization occurred through statements and claims made in CFPB's Press Release. Under these circumstances, the wrongful but natural response was for Nationwide's banking partners to feel pressure, coercion, or intimidation from CFPB to cease conducting business with Nationwide. Accordingly, CFPB has tangibly burdened Nationwide in pursuing its chosen line of business.

Notably, the press release in this case is fundamentally like the notices issued in *Constantineau* (liquor stores) and *Chemicals for Research & Industry* (chemical suppliers), which instructed private businesses not to conduct business with a targeted individual. *Constantineau,* 400 U.S. at 435; *Chemicals for Research & Industry,* 762 F. Supp. at 1399. Here, the stigmatizing statements in CFPB's press release had the natural consequence of causing CFPB-regulated financial institutions to cease doing business with Nationwide.

### b) CFPB Has Deprived Nationwide of its Interest in Holding a Bank Account

As a result of CFPB's stigmatization of Nationwide, CFPB has also tangibly burdened Nationwide's right to hold a bank account. The government may not through stigmatization cause a person to be deprived of their right to hold a bank account. *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 204 (D.C. Cir. 2001) (holding that a colorable allegation of a property interest in a bank account is sufficient to support a due process claim). Thus, like in *Constantineau*, where the government deprived an individual of their right "to purchase or obtain liquor in common with the rest of the citizens," *Paul*, 424 U.S. at 708, Nationwide has been

deprived by CFPB of its right to hold a bank account in common with other businesses. Accordingly, CFPB's actions tangibly burdened Nationwide's right to hold a bank account.

### C. NATIONWIDE WILL CONTINUE TO SUFFER IRREPARABLE HARM IN THE ABSENCE OF RELIEF

Nationwide will continue to suffer irreparable harm. Irreparable harm is "traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). In the absence of relief, Nationwide will be irreparably harmed in many ways.

Because CFPB is a federal agency, Nationwide cannot possibly be compensated for constitutional injuries caused by CFPB. The federal government is not obligated to pay money damages for violations of the Due Process Clause. *Nelson v. NASA*, 530 F.3d 865, 882 (9th Cir. 2008); *Cosma-Nelms v. United States*, 72 Fed. Cl. 170, 172 (2006). Accordingly, because Nationwide cannot be compensated for its constitutional injuries with money damages, preliminary relief is appropriate. Moreover, some of Nationwide's injuries—such as the loss of its business reputation and customer goodwill—are incalculable or immeasurable. Monetary or other losses that are deemed to be incalculable or immeasurable usually will be found to constitute irreparable injury. *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (finding irreparable injury where damages were intangible and difficult to value).

### III. THE INJUNCTION IS IN THE PUBLIC INTEREST (AND THE BALANCE OF EQUITIES TIP TOWARD NATIONWIDE) BECAUSE IT IS ALWAYS IN THE PUBLIC INTEREST TO PREVENT A CONSTITUTIONAL VIOLATION

Nationwide has established the propriety of an injunction against CFPB from unreasonably interfering with Nationwide's banking relationships.[6]  The requested injunction is in the public

---

[6] See Defendants' Proposed Findings of Fact and Conclusions of Law on Counterclaim, ECF Doc. 297, p. 12.

-8-
*Motion under Rules 59 and 60 to Alter or Amend Judgment on Counterclaim*
Case No. 3:15-cv-02106-RS

interest because it is always in the public interest to prevent a violation of constitutional rights. Where the government is the opposing party, the balance of the equities and public interest factors merge. *See Leiva- Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011). Where the government will continue to deprive a party of its constitutional rights, this factor weighs in favor of granting a preliminary injunction. It is axiomatic that "upholding constitutional rights serves the public interest." *See, e.g., Am. Humanist Ass'n v. City of Lake Elsinore*, 2013 U.S. Dist. LEXIS 188202 (C.D. Cal. July 16, 2013). Accordingly, it is in the public interest to stop CFPB from continuing to deprive Nationwide of its right to due process.

### IV. A MANDATORY INJUNCTION IS NEEDED TO REMEDY THE HARMS CFPB HAS CAUSED, AND WILL CONTINUE TO CAUSE, TO NATIONWIDE

A mandatory injunction is needed. An injunction can take two forms—prohibitory or mandatory. *Ariz. Dream Act Coal.*, 757 F.3d at 1060-61. "A mandatory injunction orders a responsible party to take action, while a prohibitory injunction prohibits a party from taking action." *Id.* (internal quotation marks and alterations omitted). Courts are especially empowered to grant mandatory injunctions when prohibitory orders may be inadequate. *Franco-Gonzales v. Holder*, 767 F. Supp. 2d 1034, 1061 (C.D. Cal. 2010). Moreover, where the government has already violated the Constitution, a mandatory injunction is often needed to remedy the past violation. For example, in *Backpage.com, LLC v. Dart*, 807 F.3d 229, 238 (7th Cir. 2015), the Cook County Sherriff's attempted to choke off Backpage's ability to run its business by pressuring Visa and Mastercard to cease allowing payments to Backpage. Accordingly, in fashioning a remedy, the court recognized that a mandatory injunction was needed to undo the constitutional violations that had occurred. *Id.* at 238-39 (ordering the Sheriff of Cook County to transmit to Visa and Mastercard a copy of the court's order).

Like in *Backpage*, here, a prohibitory injunction would be ineffective because the damage has already been done by CFPB. A mandatory injunction is therefore needed to remedy the

-9-
*Motion under Rules 59 and 60 to Alter or Amend Judgment on Counterclaim*
Case No. 3:15-cv-02106-RS

specific harms that CFPB has already caused to Nationwide. *See id.* at 238-39; *Chems. for Research & Industry,* 762 F. Supp. at 1399 (granting a mandatory injunction ordering the government to rescind certain notices). Moreover, where, as here, the facts and the law clearly favor Nationwide, a mandatory injunction is appropriate in this case. *See Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993). Accordingly, a mandatory injunction is needed to remedy CFPB's violation of Nationwide's right to due process.

## V.  CONCLUSION

For all the reasons as stated herein, Nationwide respectfully requests that the Court grant its motion. CFPB has deprived Nationwide of its right to conduct its lawful, chosen line of business and to hold a bank account. This deprivation should not be allowed to continue. Nationwide therefore moves the Court to amend or alter its judgment, to grant the relief sought in Nationwide's counterclaim, including a injunction against the ongoing violation of its constitutional rights.

December 8, 2017

**MAC MURRAY & SHUSTER, LLP**

*/s/ Helen Mac Murray*
HELEN MAC MURRAY
    (OH Bar #0038782 - admitted *pro hac vice*)
6530 West Campus Oval, Suite 210
New Albany, Ohio  43054
Phone: 614-939-9955
hmacmurray@mslawgroup.com

Attorney for Counter-Claimant
Nationwide Biweekly Administration, Inc.

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that the foregoing was served on all counsel of record on this 8th day of December, 2017 through the Court's electronic filing system.

*/s/ Helen Mac Murray*
HELEN MAC MURRAY
(OH Bar #0038782 - admitted *pro hac vice*)
hmacmurray@mslawgroup.com
**MAC MURRAY & SHUSTER, LLP**

*Motion under Rules 59 and 60 to Alter or Amend Judgment on Counterclaim*
Case No. 3:15-cv-02106-RS