KRISTEN DONOGHUE (DC Bar #456707)
DEBORAH MORRIS (Admitted to the NY Bar)
MICHAEL G. SALEMI (IL Bar #6279741)
PATRICK GUSHUE (PA Bar #306966)
JONATHAN URBAN (CO Bar #44190)
STEPHEN JACQUES (DC Bar # 464413)
THOMAS MCCRAY-WORRALL (Admitted to the MD Bar)
ADRIENNE WARRELL (Admitted to the NY Bar)
Patrick.Gushue@cfpb.gov
1700 G Street NW
Washington, DC 20552
Phone: 202-435-9671
Fax: 202-435-7329
Attorneys for Plaintiff
Consumer Financial Protection Bureau

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | Case No. 3:15-cv-02106-RS |
| Plaintiff, | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' POST-TRIAL MOTIONS UNDER RULES 59 AND 60 (DKT. NO. 341)** |
| v. | |
| NATIONWIDE BIWEEKLY ADMINISTRATION, INC., LOAN PAYMENT ADMINISTRATION LLC, AND DANIEL S. LIPSKY, | Hon. Richard Seeborg |
| Defendants. | |
| ---------------------------------------------- | |
| NATIONWIDE BIWEEKLY ADMINISTRATION, INC., | |
| Counter-claimant, | |
| v. | |
| CONSUMER FINANCIAL PROTECTION BUREAU, | |
| Counter-defendant. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

I.      INTRODUCTION..................................................................................... 1

II.     LEGAL STANDARD................................................................................ 1

    1.  Standard for a motion to alter or amend the judgment under Rule 59(e).................... 1

    2.  Standard for a motion for relief from judgment under Rule 60(b)........................... 2

III.    ARGUMENT.......................................................................................... 3

    1.  The Court did not commit manifest errors of fact or law by imposing $7.93 million civil money penalty on Defendants based on their violations of Federal consumer financial law....................................................................................... 5

        a.  The civil penalty provisions of the FTC Act do not apply in this action................ 5

        b.  The CFPA does not require the Bureau to engage in rulemaking prior to commencing a public enforcement action challenging deceptive or abusive acts or practices...................................................................................... 8

        c.  The "deception" standard is not unconstitutionally vague............................... 9

        d.  Defendants' purported inability to pay the civil money penalty imposed by the Court does not provide a basis to alter, amend, or vacate a judgment…................ 12

    2.  The Court did not commit manifest error of fact or law by ordering a permanent injunction to govern Defendants' future telemarketing activities........................... 15

        a.  Defendants never raised any of the current arguments against the permanent injunction earlier in the course of litigation.............................................. 16

        b.  There is no manifest error of fact within or underlying the terms of the permanent injunction for failure to consider an FTC Statement of Policy..................…...17

        c.  The permanent injunction provides specific terms in reasonable detail to guide Defendants' compliance efforts.............................................................. 19

        d.  The Court's authority to grant equitable relief under 12 U.S.C. § 5565(a)(1) does not violate the nondelegation doctrine………………………..……..…………….... 21

IV.    CONCLUSION……………………………………………....…………………….… 22

Plaintiff's Response in Opposition to Defendants' Post-Trial Motions Under Rules 59 and 60 (Dkt. No. 341), Case No. 3:15-cv-02106-RS

1

## TABLE OF AUTHORITIES

2

<u>Cases</u>

3

*389 Orange St. Partners v. Arnold*, 179 F.3d 656 (9th Cir. 1999) ........................................ 2

4

*City and County of San Francisco v. U.S. Postal Serv.*, No. C09-01964, 2012 WL 12920186

5

   (N.D. Cal. Jan. 6, 2012) ................................................................................................. 1

6

*Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., Inc.*, 833 F.2d 208 (9th Cir. 1987)...................... 13

7

*Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179 (9th Cir. 2016) ........................................ 7, 11

8

*Consumer Fin. Prot. Bureau v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878 (S.D. Ind. 2015),

9

   *appeal dismissed*, No. 15-1761, 2016 WL 9447163, (7th Cir. Apr. 20, 2016)................... 11

10

*Consumer Fin. Prot. Bureau v. Navient Corp.*, No. 3:17-CV-101, 2017 WL 3380530

11

   (M.D. Pa. Aug. 4, 2017)................................................................................................. 9

12

*Consumer Fin. Prot. Bureau v. Siringoringo*, SACV14-01155, 2016 WL 102435

13

   (C.D. Cal. Jan. 7, 2016) ................................................................................................. 11

14

*Curiel v. Allison*, No. SACV10-0301, 2012 WL 12957445 (C.D. Cal. Mar. 7, 2012)............................. 3

15

*E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280 (9th Cir. 1992) ................................ 20

16

*Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008)................................................................... 2, 5

17

*FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012)....................................................... 10

18

*Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075 (9th Cir. 2004) ........................................ 20

19

*Garcia v. Biter*, 195 F.Supp.3d 1131 (E.D. Cal. 2016) ........................................................ 14

20

*Garlock v. Thomas*, 575 B.R. 913 (N.D. Cal. 2017)................................................................. 2

21

*GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000) ........................................ 20

22

*Illinois v. Alta Colleges, Inc.*, No. 14C3786, 2014 WL 4377579 (N.D. Ill. Sept. 4, 2014)..................... 11

23

*In re Oak Park Calabasas Condo. Ass'n*, 302 B.R. 682 (Bankr. C.D. Cal. 2003) .......................... 2

24

*In re Wahlin*, No. 10-20479, 2011 WL 1063196 (Bankr. D. Idaho Mar. 21, 2011)............................... 2

25

*Indep. Towers of Wash. v. Washington*, 350 F.3d 925 (9th Cir. 2003)..................................... 12

26

*Kona Enters. v. Estate of Bishop*, 229 F.3d 877 (9th Cir. 2000) ........................................ 2, 16

27

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970 (9th Cir. 1991) ................................ 18

28

*Louisville Bedding Co. v. Pillowtex Corp.*, 455 F.3d 1377 (Fed. Cir. 2006)............................ 15

*Mathews v. Eldridge*, 424 U.S. 319 (1976)......................................................................... 15

Plaintiff's Response in Opposition to Defendants' Post-Trial Motions Under Rules 59 and 60
(Dkt. No. 341), Case No. 3:15-cv-02106-RS

*Mistretta v. United States*, 488 U.S. 361 (1989) ........................................................... 22

*Morris v. McHugh*, 997 F.Supp.2d 1144 (D. Hawaii 2014) ........................................... 13

*Oto v. Metro. Life Ins. Co.*, 224 F.3d 601 (7th Cir. 2000) ............................................. 14

*Ou-Young v. Vasquez*, No. 12-CV-02789, 2013 WL 2558102 (N.D. Cal. June 10, 2013) ..................... 3

*Pete v. City of Oakland*, No. C 09-06097 WHA, 2011 WL 863550 (N.D. Cal. Mar. 10, 2011) .............. 15

*Rupert v. Bond*, No. 12-CV-05292, 2015 WL 78739 (N.D. Cal. Jan. 6, 2015),

    *appeal filed*, No. 15-15831 (9th Cir. Apr. 24, 2015) ................................................ 2

*Schlicht v. United States*, No. CIV03-1606, 2006 WL 229551 (D. Ariz. Jan. 30, 2006) ................. 13

*Trans Union Corp. v. FTC*, 245 F.3d 809 (D.C. Cir. 2001) ........................................... 11

*United States v. Melot*, No. 17-2052, 2017 WL 4511356 (10th Cir. Oct. 10, 2017) ..................... 15

*W. Reserve Oil & Gas Co. v. New*, 765 F.2d 1428 (9th Cir. 1985) ..................................... 15

*Williams v. United States*, 577 F.2d 930 (5th Cir. 1978) ........................................... 15

*Zimmerman v. City of Oakland*, 255 F.3d 734 (9th Cir. 2001) ........................................ 16

Constitutional Provisions

U.S. Const. art. III, § 2 ........................................................................... 20

Statutes & Public Laws

12 U.S.C. § 5564 .................................................................................... 6

12 U.S.C. § 5565(a)(1) ........................................................................ 6, 18, 21

12 U.S.C. § 5565(a)(2) ........................................................................... 6, 18

12 U.S.C. § 5565(c)(1) .............................................................................. 6

12 U.S.C. § 5565(c)(2) .............................................................................. 6

12 U.S.C. § 5565(c)(3) ....................................................................... 6, 7, 13

15 U.S.C. § 45(m) ................................................................................... 6

15 U.S.C. § 45(m)(1)(C) ............................................................................ 13

15 U.S.C. § 6105(d) ................................................................................. 7

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, §§ 1061(b),

    1100C, 1100H, 124 Stat. 2036, 2110, 2113 (2010) ................................................ 10

Rules

Fed. R. Civ. P. 65(d)(B), (C) ..................................................................... 20

Plaintiff's Response in Opposition to Defendants' Post-Trial Motions Under Rules 59 and 60
(Dkt. No. 341), Case No. 3:15-cv-02106-RS

Regulations

Designated Transfer Date, 75 Fed. Reg. 57,252 (Sept. 20, 2010) ........................................................... 10

Secondary Sources

2 Steven S. Gensler, *Federal Rules of Civil Procedure*, Rules and Commentary Rule 65 (2017) .......... 20

11 C.Wright & A. Miller, *Federal Practice and Procedure* § 2810.1 (3d ed. 2017) ............................. 16

Plaintiff's Response in Opposition to Defendants' Post-Trial Motions Under Rules 59 and 60 (Dkt. No. 341), Case No. 3:15-cv-02106-RS

I.      Introduction

Defendants have not shown that the Court should set aside, alter, or amend its judgment ordering payment of a civil money penalty of $7.93 million and permanently enjoining Defendants based on their violations of the Consumer Financial Protection Act of 2010 (CFPA) and the Telemarketing Sales Rule (TSR). Distilled to their essence, Defendants' motions amount to nothing more than a disagreement with the Court's decision and represent one last attempt to relitigate many of the issues the Court already addressed on the merits after a seven-day bench trial and, more recently, in the parties' motions on the proposed judgments and Defendants' motion for leave to seek reconsideration. Defendants' present motions under Rules 59(e) and 60(b) are based entirely on arguments that were or could have been presented to the Court prior to the entry of judgment. These latest challenges, however, are not sufficient for the Court to take the highly unusual and extraordinary remedy of vacating or amending the judgment. As explained in this response, the Court did not commit any manifest errors of fact or law by imposing a civil money penalty and enjoining Defendants from engaging in deceptive and abusive telemarketing practices. Defendants thus have not established any basis for the Court to alter, amend, or vacate the judgment. Accordingly, the Court should deny Defendants' motions.

II.     Legal Standard

Defendants ask the Court to alter, amend, or vacate the money judgment and permanent injunction under Rules 59(e) and 60(b).

1.      Standard for a motion to alter or amend the judgment under Rule 59(e).

Rule 59(e) provides an "extraordinary remedy," permitting courts to use their discretion to alter or amend a judgment under "highly unusual circumstances." *City and County of San Francisco v. U.S. Postal Serv.*, No. C09-01964, 2012 WL 12920186, at *1 (N.D. Cal. Jan. 6, 2012) (citing *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (emphasizing the importance of "interests of finality and conservation of judicial resources")). In *McDowell v. Calderon*, the Ninth Circuit set forth four independent grounds upon which a motion to amend a

1

Plaintiff's Response in Opposition to Defendants' Post-Trial Motions Under Rules 59 and 60 (Dkt. No. 341), Case No. 3:15-cv-02106-RS

judgment under Rule 59(e) may be granted: (1) the motion is necessary to "correct manifest errors of law or fact upon which the judgment is based"; (2) the Court is presented with "newly discovered or previously unavailable" evidence; (3) the motion is necessary to prevent "manifest injustice"; or (4) there has been "an intervening change in controlling law." *Garlock v. Thomas*, 575 B.R. 913, 923 (N.D. Cal. 2017) (citing *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999)).

Rule 59(e) is a remedy "to be used sparingly." *See Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted). A Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2810.1, pp. 127–128 (2d ed. 1995)). Raising a claim for the first time on a Rule 59(e) motion is "simply too little, too late." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).

Under Rule 59(e), a manifest error of law is not merely one in which the party disagrees with the Court, but instead is the "wholesale disregard, misapplication, or failure to recognize controlling precedent on the part of the court." *Rupert v. Bond*, No. 12-CV-05292, 2015 WL 78739, at *2 (N.D. Cal. Jan. 6, 2015) (quoting *Oto v. Metro. Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) ("A manifest error is not demonstrated by the disappointment of the losing party.")), *appeal filed*, No. 15-15831 (9th Cir. Apr. 24, 2015). A manifest error of fact might include, for example, a court's decision that materially relied on an exhibit that was never offered or admitted into evidence. *See In re Wahlin*, No. 10-20479, 2011 WL 1063196, at *3 (Bankr. D. Idaho Mar. 21, 2011); *see also In re Oak Park Calabasas Condo. Ass'n*, 302 B.R. 682, 683 (Bankr. C.D. Cal. 2003) (manifest error is one that is "plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record.") (citing Black's Law Dictionary).

2.  Standard for a motion for relief from judgment under Rule 60(b).

2

1    "Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional

2    circumstances." *Curiel v. Allison*, No. SACV10-0301, 2012 WL 12957445, at *2 (C.D. Cal. Mar.

3    7, 2012) (citation omitted). That rule "provides for reconsideration only upon a showing of (1)

4    mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void

5    judgment; (5) a satisfied or discharged judgment; or (6) 'extraordinary circumstances' which

6    would justify relief." *Ou-Young v. Vasquez*, No. 12-CV-02789, 2013 WL 2558102, at *3 (N.D.

7    Cal. June 10, 2013) (quoting *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5

8    F.3d 1255, 1263 (9th Cir. 1993)).

9    III.    Argument

10           Here, Defendants contend the Court should grant their Rule 59(e) motion to correct

11   manifest errors of law or fact upon which the judgment for civil money penalties is based. Dkt.

12   No. 341, at 3-20. Defendants also argue the Court should vacate the judgment for civil money

13   penalties pursuant to Rule 60(b), relying on "newly submitted" evidence of their purported

14   financial condition. Dkt. No. 341, at 3. Taking each argument in turn, the Court should deny

15   Defendants' motions.

16           First, Defendants lodge a variety of new challenges to the civil money penalty imposed

17   under the CFPA. Defendants suggest, without any legal support, that an entirely different

18   statutory scheme under the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 41 *et seq.*,

19   applies and that the judgment is void because the Bureau did not engage in rulemaking with

20   respect to Defendants' product line or provide advance warning to Defendants before filing this

21   lawsuit. Defendants similarly maintain, as they previously argued throughout this litigation, that

22   the deception standard the Ninth Circuit has held applies to the CFPA and that has been applied

23   in decades of case law is "unconstitutionally vague." None of Defendants' legal theories,

24   however, constitutes "manifest errors of law or fact" that warrant any amendments to the

25   judgment. Contrary to Defendants' unfounded contentions, the FTC Act civil money penalty

26   provisions have no applicability to this case, the Ninth Circuit's "deceptive" legal standard is not

27                                                          3

28   Plaintiff's Response in Opposition to Defendants' Post-Trial Motions Under Rules 59 and 60
     (Dkt. No. 341), Case No. 3:15-cv-02106-RS

unconstitutionally vague, and the CFPA does not require the Bureau to engage in rulemaking before bringing an action alleging that Defendants' telemarketing activities were deceptive or abusive under the CFPA.

Second, Defendants argue that the Court should vacate the judgment for civil money penalties under Rule 60(b) based upon Defendants' purported current financial condition. Defendants assert, based on what they call "newly submitted" evidence, that the Court should vacate the judgment because Lipsky says he cannot afford to pay the penalty. On this point, however, Defendants cannot plausibly argue that Lipsky's statements concerning his own financial condition are "newly discovered evidence" that might warrant relief under Rule 60(b). Moreover, Defendants' claimed inability to satisfy the judgment has no bearing on the Court's decision to impose a civil money penalty based on the undisputed evidence presented at trial establishing Defendants' financial resources at the time of the violations. The Court previously addressed, and rejected, this argument in Defendants' motion seeking leave for reconsideration. Defendants' present effort to make the same argument under Rule 60(b) likewise fails. Here, the evidence showed that, since July 21, 2011, Defendants collected nearly $74 million in revenue from setup fees associated with the product at issue here and that Lipsky took over $33 million in shareholder distributions during that same period.

Finally, Defendants contend that various provisions of the permanent injunction, including the Court's underlying authority to grant such relief, constitute errors of law and fact that the Court must correct to prevent manifest injustice. Though it is not clear, the crux of Defendants' argument seems to be that, when fashioning the injunctive relief, the Court improperly ignored advertising guidance issued by another agency (the Federal Trade Commission) and, in the process, adopted a set of impossibly vague provisions for Defendants to understand and follow. Relying on cases long overturned by almost a century of jurisprudence, Defendants also argue that the CFPA violates the nondelegation doctrine. These arguments have

Plaintiff's Response in Opposition to Defendants' Post-Trial Motions Under Rules 59 and 60 (Dkt. No. 341), Case No. 3:15-cv-02106-RS

no merit and do not establish any manifest errors of fact or law warranting relief under Rule 59(e).

1.   <u>The Court did not commit manifest errors of fact or law by imposing a $7.93 million civil money penalty on Defendants based on their violations of Federal consumer financial law.</u>

Defendants argue under Rule 59(e) that the Court committed various errors of law or fact in determining the amount of the civil money penalty and must therefore amend the judgment to prevent manifest injustice. However, Defendants' latest attempts to relitigate issues concerning the penalty, raising new questions about the amount imposed by the Court, are not permitted under Rule 59. *See Exxon Shipping Co.*, 554 U.S. at 485 n.5. For this procedural reason alone, the Court should deny the motions. As explained next, Defendants' arguments similarly fail as a matter of law.

a.   <u>The civil penalty provisions of the FTC Act do not apply in this action.</u>

Defendants devote considerable attention to various procedures, rules, and policies they argue apply to enforcement actions the FTC many bring under the FTC Act. Dkt. No. 341, at 4-7. Though Defendants' reasoning is unclear, they appear to suggest that, because courts have borrowed jurisprudence concerning the standard for deception under the FTC Act in determining the appropriate standard for deception under the CFPA, the Court here committed a manifest error of law by not applying the FTC Act's civil money penalty provisions in this action. Dkt. No. 341, at 4-6. Defendants relatedly argue, without acknowledging the governing civil money penalty provisions under the CFPA (12 U.S.C. § 5565(c)), that the penalty imposed here must be vacated because: (1) the Bureau purportedly failed to prove consumer harm at trial; and (2) Defendants say they cannot presently pay the penalty ordered. Dkt. No. 341, at 6-7. According to Defendants, these factors must be established for civil money penalties imposed under the FTC Act, 15 U.S.C. § 45(m)(1)(C), and the Court's failure to apply these factors here constitutes

Plaintiff's Response in Opposition to Defendants' Post-Trial Motions Under Rules 59 and 60 (Dkt. No. 341), Case No. 3:15-cv-02106-RS

manifest errors of fact and law under Rule 59(e). Dkt. No. 341, at 6-7. This argument fails for a number of reasons.

As an initial matter, it is indisputable that the Bureau did not seek, and the Court did not order, civil money penalties under the FTC Act. Rather, the Bureau commenced this action under the TSR and the CFPA, which authorizes the Court to order any appropriate equitable relief, including, *inter alia*, disgorgement, restitution, limits on the activities or functions of the person, and civil money penalties. 12 U.S.C. § 5564 (granting the Bureau with independent litigating authority); 12 U.S.C. §§ 5565(a)(1), (2). *Cf*. Dkt. No. 1, ¶ 1. The CFPA provides that "[a]ny person that violates, through any act or omission, any provision of Federal consumer financial law shall forfeit and pay a civil penalty . . . ." 12 U.S.C. § 5565(c)(1).

The CFPA's civil money penalty provision details the method and factors by which a court determines the appropriate penalty for violations of the CFPA, including escalating penalties for reckless or knowing violations and mitigating factors by which a court may limit the extent of penalties. *See* 12 U.S.C. § 5565(c)(2), (3). In determining the amount of any penalty, the CFPA provides that the Bureau or the court shall take into account the size of financial resources and good faith of the person charged, the gravity of the violation or failure to pay, the severity of the risks to or losses of the consumer, which may take into account the number of products or services sold or provided, the history of previous violations, and other matters as justice may require. 12 U.S.C. § 5565(c)(3). And the CFPA's civil money penalty provision is distinct from the penalty provision of the FTC Act. The FTC Act does not have a tiered penalty system like the CFPA and requires consideration of different factors in assessing penalties under the FTC Act. *Compare* 12 U.S.C. § 5565(c)(2), (3), *with* 15 U.S.C. § 45(m) (describing that the Commission may commence an action for civil money penalties only for knowing violations and including a different list of factors to use in determining the amount of penalty). Put simply, whatever procedures govern the FTC when it seeks civil money penalties under the FTC Act have no application here and there is no indication that Congress sought to

6

import FTC civil money penalty procedures into the CFPA's penalty regime. In short, the Court did not commit manifest error when it did not apply provisions from the FTC Act to this action, which the Bureau brought under the CFPA.

Setting aside whatever may be required to assess penalties under the FTC Act, the Court here correctly found that Defendants made various misrepresentations and omissions in violation of the CFPA and TSR and imposed a civil money penalty of $7.93 million consistent with 12 U.S.C. § 5565(c)(1).[1] The Court appropriately considered the mitigating factors set forth in the CFPA, 12 U.S.C. § 5565(c)(3), and found the undisputed evidence presented at trial "sufficient to support inferences leading to the conclusion that a reduction in the penalty calculation on the basis of financial resources was not warranted." Dkt. No. 330, at 2. Thus, there is no manifest error of fact or law based upon the Court's failure to apply the FTC Act's penalty provision, which has nothing to do with this case.

Finally, Defendants' entire argument hinges on their erroneous contention that the Bureau took a "litigation position" that "FTC rules" are "applicable" to this case. *See* Dkt. No. 341, at 8-10, 13. However, the Bureau never argued that "FTC rules" (other than the TSR, which Congress gave the Bureau the authority to enforce under 15 U.S.C. § 6105(d)) were applicable. Rather, the Bureau correctly pointed out that the Ninth Circuit has adopted the FTC Act's standards for deception and the FTC Act's test for holding an individual liable for a corporation's actions as the applicable standards under the CFPA. *See*, *e.g.*, *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1193 nn.7, 8 (9th Cir. 2016). In *Gordon,* the Ninth Circuit reasoned that the term "deceptive act or practice" had "an established meaning in the context of the Federal Trade

---

[1] Contrary to Defendants' assertions, the fact that the Court did not order consumer redress does not mean that consumers were not harmed by Defendants' conduct. Dkt. No. 341, at 7. Further, Defendants' argument does not alter the conclusion that the Court appropriately ordered civil money penalties. The CFPA does not require proof of consumer harm to establish that an act or practice is deceptive. *See*, *e.g.*, *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1192-93 (9th Cir. 2016).

7

Plaintiff's Response in Opposition to Defendants' Post-Trial Motions Under Rules 59 and 60 (Dkt. No. 341), Case No. 3:15-cv-02106-RS

Commission Act" and that "Congress used very similar phrasing" in the section of the CFPA that prohibits deceptive acts and practices. *Id.* at 1193 n.7 (citing *United States v. Novak*, 476 F.3d 1041, 1051 (9th Cir. 2007) ("[C]ourts generally interpret similar language in different statutes in a like manner when the two statutes address a similar subject matter.")). Further, because there is a longstanding body of precedent applying the FTC Act's prohibition on deceptive acts or practices and in light of *Gordon*, the Bureau also cited case law interpreting and applying the FTC Act to other aspects of the claims here. By contrast, the CFPA mandates its own penalty regime that is distinct from the FTC Act and there is no reason for this Court to import the FTC Act's standards and processes to civil money penalties imposed under the CFPA. The Bureau's citation to *Gordon* and to analogous precedent does not make the Court's decision to impose civil money penalties following the CFPA's requirements rather than the FTC Act's requirements "manifest error."

       b.  <u>The CFPA does not require the Bureau to engage in rulemaking prior to commencing a public enforcement action challenging deceptive or abusive acts or practices.</u>

Defendants next generally claim the Court committed manifest error based on Defendants' challenge to the Bureau's authority and the constitutionality of the CFPA. Dkt. No. 341, at 7-16. Specifically, Defendants argue the Court should vacate its judgment because they say that, in 2012, the Bureau issued "multiple pages" of guidance "detailing" the definition of "deceptive" under the CFPA (drawing on the FTC's interpretation), but in that same document stated that the CFPB was not bound by that document. Dkt. No. 341, at 9. Defendants label this an "error of fact," *id.*, but they do not explain how what the Bureau did or did not do in 2012 amounts to an error of fact the Court committed that should be remedied under Rules 59 or 60. Defendants also claim that the Bureau should have provided advance warning or notice to Defendants prior to filing the lawsuit. Dkt. No. 341, at 5. In essence, Defendants complain that the Bureau did not specify any "rules of the road" regarding biweekly mortgage payment

Plaintiff's Response in Opposition to Defendants' Post-Trial Motions Under Rules 59 and 60 (Dkt. No. 341), Case No. 3:15-cv-02106-RS

services and the failure to do so amounts to a manifest error of fact because Defendants claim

they lacked notice that their conduct violated the law. *See* Dkt No. 341, at 14-16.

Putting aside that neither argument presents a cognizable error of fact or law under Rules

59 or 60, there is no authority, rule, or statute requiring the Bureau to establish general rules

interpreting "deceptive" or "regulatory rules specifically applicable to biweekly interest savings

programs" (Dkt. No. 341, at 14) prior to bringing a public enforcement action. Indeed, nothing in

the CFPA mandates that the Bureau engage in rulemaking prior to commencing a lawsuit against

entities engaged in violations of Federal consumer financial law. *See, e.g.*, *Consumer Fin. Prot.*

*Bureau v. Navient Corp.*, No. 3:17-CV-101, 2017 WL 3380530, at *8 (M.D. Pa. Aug. 4, 2017)

("[T]the plain language of the CFP Act does not impose a requirement on the Bureau to engage

in rulemaking before bringing an enforcement action."). The fact that the Bureau did not issue

specific rules prohibiting providers of biweekly payment products from engaging in deceptive or

misleading telemarketing regarding the terms and conditions of those products is inapposite.

Defendants had a full and fair opportunity to defend the Bureau's allegations and present their

arguments and evidence at trial. Based upon the fully-developed record, the Court found

Defendants liable under the CFPA and TSR, imposed a penalty, and enjoined their future

deceptive or abusive telemarketing activities based on various misrepresentations and omissions

regarding the Interest Minimizer Program (IM Program). Defendants are unable to point to any

language that requires the Bureau to engage in pre-lawsuit rulemaking prior to bringing an

enforcement action. Therefore, the Court should reject this argument.

c.   The "deception" standard is not unconstitutionally vague.

Defendants relatedly assert, as previously argued in their pretrial statement (Dkt. No. 236,

at 37), that the Court committed an error of law because the CFPA's prohibition against

"deceptive" acts or practices is unconstitutionally vague. Dkt. No. 341, at 9-13. Defendants

appear to suggest that, because the "deception" standard is unconstitutionally vague, any civil

money penalty the Court imposed as a result of deceptive conduct is similarly unconstitutional

9

Plaintiff's Response in Opposition to Defendants' Post-Trial Motions Under Rules 59 and 60
(Dkt. No. 341), Case No. 3:15-cv-02106-RS

and constitutes a deprivation of their Due Process rights. Thus, the argument goes, the Court's imposition of a civil money penalty based upon deceptive conduct constitutes a manifest error of fact or law.[2]

In support of their position, Defendants cite *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012). That case, however, is inapplicable here, since it addressed Due Process concerns related to the imposition of a penalty based on indecency guidelines that the FCC imposed retroactively to broadcasts that pre-dated the new guidelines. *See FCC v. Fox Television*, 567 U.S. at 254. Unlike the agency-imposed penalty at issue in the *FCC* case, the Bureau did not levy any administrative penalties on Defendants as a result of their violations of Federal consumer financial law. Instead, the Bureau filed this action seeking statutory penalties that the Court ultimately imposed based upon the evidence and arguments presented at trial. More fundamentally, there are no retroactivity concerns here. The CFPA was passed in July 2010 and became effective July 21, 2011. *See* Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, §§ 1061(b), 1100C, 1100H, 124 Stat. 2036, 2110, 2113 (2010); Designated Transfer Date, 75 Fed. Reg. 57,252 (Sept. 20, 2010) (designating transfer date of July 21, 2011). By that point, Defendants cannot credibly argue that they were not on notice that the CFPA prohibited deceptive and abusive acts or practices in connection with the sale or offering of consumer financial products or services like their IM Program. Here, the Bureau only sought, and the Court only imposed, civil money penalties based on Defendants' acts and practices starting July 21, 2011. Dkt. No. 315, at 21-22.

---

[2] Notably, the civil money penalty imposed by the Court also stemmed from Defendants' violations of the TSR, as well as the abusive prong of the CFPA. Dkt. No. 315, at n.24. Even if the Court were to find the deception standard unconstitutionally vague (which it should not), the Court also found Defendants' conduct to violate the TSR and the CFPA's prohibition against abusive acts or practices, which Defendants do not challenge as unconstitutionally vague other than stating that the analysis is "derivative[.]" Dkt. No. 341, at 16.

10

Plaintiff's Response in Opposition to Defendants' Post-Trial Motions Under Rules 59 and 60 (Dkt. No. 341), Case No. 3:15-cv-02106-RS

Further, the Court did not commit any manifest error based on Defendants' notice or fairness concerns. Contrary to Defendants' contentions, this case did not involve some new and heretofore unknown deception standard governing their conduct. Courts have looked to FTC Act case law on deception to inform their analysis of the CFPA's prohibition on deceptive conduct. *See, e.g.*, *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1193 n.7 (9th Cir. 2016). Thus, the standard the Court applied here has been around for decades and has withstood constitutional scrutiny. *See Consumer Fin. Prot. Bureau v. Siringoringo*, SACV14-01155, 2016 WL 102435, at *4 (C.D. Cal. Jan. 7, 2016) ("[T]he standard for a CFPA deception claim is the same as the standard under section 5(a) of the Federal Trade Commission Act."); *Consumer Fin. Prot. Bureau v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878, 903-04  (S.D. Ind. 2015) (CFPA's prohibition on "unfair" practices is not unconstitutionally vague because longstanding interpretations of the FTC Act should inform interpretation of the CFPA), *appeal dismissed*, No. 15-1761, 2016 WL 9447163, (7th Cir. Apr. 20, 2016).

Moreover, even if the Court were inclined to permit Defendants to relitigate their constitutional challenges to the CFPA on motions under Rules 59 or 60, that challenge should still fail. Statutes that regulate economic conduct, such as the CFPA and TSR in this case, are held to a lower standard of constitutional scrutiny and a more lenient vagueness test. *See, e.g.*, *Trans Union Corp. v. FTC*, 245 F.3d 809, 817 (D.C. Cir. 2001) ("[E]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action.") (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982)); *Illinois v. Alta Colleges*, Inc., No. 14C3786, 2014 WL 4377579, at *4 (N.D. Ill. Sept. 4, 2014) (holding that the CFPA is an economic regulation that is subject to a lenient vagueness test). The prohibition on deceptive acts or practices is clear, has abundant precedent in this circuit and across the country, and thus is not unconstitutionally vague. The Bureau did not attempt to retroactively apply a new principle to

Plaintiff's Response in Opposition to Defendants' Post-Trial Motions Under Rules 59 and 60 (Dkt. No. 341), Case No. 3:15-cv-02106-RS

Defendants' conduct; rather, the Court applied long-standing precedent in holding Defendants liable for practices the CFPA prohibits. For these reasons, Defendants' fair notice and vagueness challenges similarly fail.

Finally, though the Court properly found that Defendants' conduct also violated the TSR and the CFPA's prohibition against abusive acts or practices (Dkt. No. 315, at n.24), Defendants argue, without any analysis, that their constitutional challenge to the deception standard is equally applicable to the abusive prong of the CFPA and the TSR. Dkt. No. 341, at 16. However, this throwaway assertion is not sufficient to establish manifest error warranting modifying this Court's judgment. *Cf. Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929-30 (9th Cir. 2003) (holding that a party's argument was waived because "[i]nstead of making legal arguments," the party simply made a "bold assertion" of error, with "little if any analysis to assist the court in evaluating its legal challenge").

> d. Defendants' purported inability to pay the civil money penalty imposed by the Court does not provide a basis to alter, amend, or vacate the judgment.

Defendants argue that their claimed inability to pay the civil money penalty means that the Court committed manifest errors of fact that warrant reversal under Rule 59(e). Dkt. No. 341, at 16-19.[3] The Court, however, previously considered – and rejected – this argument in its Order denying Defendants' motion for leave to seek reconsideration. Dkt. No. 330. In particular, the Court noted that the Bureau presented uncontroverted evidence regarding Defendants' revenues and that "Defendants have not shown … that the Court lacked discretion to impose a penalty commensurate with the size of the business as it was during the wrongful conduct, merely because they contend subsequent events have depleted their resources." *Id*. at 2 n.1. To the extent

---

[3] Defendants speculate that consumers would be harmed if the Court does not alter or amend the judgment. Dkt. No. 341, at 17-18. However, there is no certainty that Nationwide can resume the IM Program or even obtain the banking relationships necessary to administer the program. In any event, this argument of purported "consumer harm" does not constitute a manifest error of law or fact that would permit any amendment of the judgment under Rule 59.

12

Plaintiff's Response in Opposition to Defendants' Post-Trial Motions Under Rules 59 and 60 (Dkt. No. 341), Case No. 3:15-cv-02106-RS

Defendants raise arguments not raised in their motion for leave to seek reconsideration, it appears to be their complaint that the Court did not apply the FTC Act's civil money penalty regime here. *See* Dkt. No. 341, at 6-7. However, as we explained above, *supra* at 5-8, the FTC Act's penalty regime has no application here. The Court properly considered the mitigating factors under the CFPA, 12 U.S.C. § 5565(c)(3), including the size of Defendants' financial resources, and ordered an appropriate civil penalty. Dkt. No. 315, at 21 (noting that the "penalty figure is appropriate" in light of CFPA's statutory factors). The Court did not commit manifest error when it did not import other factors enumerated under the FTC Act. *Cf.* 15 U.S.C. § 45(m)(1)(C) (requiring consideration of "ability to pay" and "effect on ability to continue to do business" in assessing penalties).

Defendants similarly contend, without any legal analysis or argument, that the Court should vacate its judgment under Rule 60(b) based on "newly *submitted* evidence" – not "newly *discovered* evidence" as the Rule requires. Dkt. No. 341, at 3. Relief from judgment on the basis of newly discovered evidence is warranted if: (1) the moving party can show the evidence relied on in fact constitutes "newly discovered evidence" within the meaning of Rule 60(b); (2) the moving party exercised due diligence to discover this evidence; and (3) the newly discovered evidence must be of "such magnitude that production of it earlier would have been likely to change the disposition of the case." *See Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., Inc.*, 833 F.2d 208, 211 (9th Cir. 1987). "Evidence is not 'newly discovered' under the Federal Rules if it was in the moving party's possession at the time of trial or could have been discovered with reasonable diligence." *Id.* at 212.

Defendants cannot make that showing here. Lipsky's own statements about his company's current financial condition do not constitute "newly discovered evidence" under Rule 60(b). *See, e.g.*, *Morris v. McHugh*, 997 F.Supp.2d 1144, 1176-77 (D. Hawaii 2014) (holding that plaintiff's declaration does not constitute "newly discovered evidence" under Rule 60(b)); *Schlicht v. United States*, No. CIV03-1606, 2006 WL 229551, at *2 (D. Ariz. Jan. 30, 2006)

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(noting a party's willingness to characterize his own testimony as newly discovered testimony as "simply astounding."). Lipsky testified at trial and had every opportunity to present evidence regarding his finances. Defendants chose not to present that evidence. Even if Lipsky's declaration about his finances were "newly discovered evidence," documents that purportedly describe Defendants' *current* financial situation would not change the outcome of the case, since the Court appropriately imposed a $7.93 million penalty commensurate with the size of the business as it was during the wrongful conduct. *See* Dkt. No. 330, at 2 ("[The uncontroverted evidence presented at trial] was sufficient to support inferences leading to the conclusion that a reduction in the penalty calculation on the basis of financial resources was not warranted.").

Defendants similarly contend certain "grave consequences" – including the loss of "liberty" and "property" – may flow from the imposition of penalties and the finding that Defendants engaged in illegal acts. Dkt. No. 341, at 16-19. While it is self-evident that engaging in illegal activity can have "grave consequences," Defendants have not shown that the Court committed "manifest errors of law" by entering the judgment against them based on their violations of Federal consumer financial law. *Cf. Garcia v. Biter*, 195 F.Supp.3d 1131, 1133 (E.D. Cal. 2016) (movant must demonstrate "a wholesale disregard, misapplication, or failure to recognize controlling precedent on the part of the court.") (citations omitted); *Oto v. Metro. Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) ("A 'manifest error' is not demonstrated by the disappointment of the losing party."). Relatedly, Defendants appear to assert, without citing any authority, that the Court's entry of judgment constitutes a deprivation of their due process rights to operate their business free from the Court's findings of liability and imposition of penalties. Dkt. No. 341, at 18-19. On this issue, nothing in the Court's judgment prevents Defendants from offering the IM Program. Indeed, the injunction expressly permits Defendants to resume operation provided they comply with its terms prohibiting certain misrepresentations and omissions. Further, the fact that Defendants must necessarily lose property (i.e., money) to pay the civil money penalty judgment is, of course, not improper because Defendants had a full and

Plaintiff's Response in Opposition to Defendants' Post-Trial Motions Under Rules 59 and 60 (Dkt. No. 341), Case No. 3:15-cv-02106-RS

fair opportunity to gather evidence and present evidence in defense of the Bureau's claims at trial.[4]

    Finally, to the extent the motion to vacate can be construed under the catchall provision of Rule 60(b)(6), Defendants' claimed current financial hardship is not a reason to mandate relief from a final judgment. *See, e.g.*, *United States v. Melot*, No. 17-2052, 2017 WL 4511356, at *3 (10th Cir. Oct. 10, 2017) (affirming district court's denial of Rule 60(b)(6) motion based on inability to pay the judgment and noting that "there's nothing unusual about being unable to pay [a] judgment"); *Williams v. United States*, 577 F.2d 930, 931 (5th Cir. 1978) ("Pressures of insolvency ... do not represent the exceptional inequity necessary for granting relief under Rule 60(b)."); *see also Louisville Bedding Co. v. Pillowtex Corp.*, 455 F.3d 1377, 1380 (Fed. Cir. 2006) (refusing to grant Rule 60(b)(6) motion due to the failure of a competitor business because "businesses fail every day").

    2.  <u>The Court did not commit manifest error of fact or law by ordering a permanent injunction to govern Defendants' future telemarketing activities.</u>

    Defendants have not shown any manifest error of law or fact in the permanent injunction worthy of granting a Rule 59(e) motion. The three new arguments that Defendants now present regarding the permanent injunction plainly do not constitute grounds to amend or alter the judgment. Defendants failed to make any of these arguments against the permanent injunction earlier in the course of the litigation, despite ample opportunity to do so. For this reason alone, the court should deny Defendants' motion. Nevertheless, each of the arguments also fails on the merits.

---

[4] Defendants cannot credibly contend they have been denied due process after being afforded a full and fair trial on the merits. *See, e.g.*, *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) ("The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'") (citation omitted). Moreover, the Ninth Circuit has rejected the contention that "the right to continue the operation of a business is a cognizable property interest." *W. Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1432 (9th Cir. 1985); *see also Pete v. City of Oakland*, No. C 09-06097 WHA, 2011 WL 863550, at *7 (N.D. Cal. Mar. 10, 2011) (loss of business relationship "is not actionable as a due process violation[.]").

Plaintiff's Response in Opposition to Defendants' Post-Trial Motions Under Rules 59 and 60 (Dkt. No. 341), Case No. 3:15-cv-02106-RS

a. Defendants never raised any of the current arguments against the permanent injunction earlier in the course of litigation.

Defendants now present three new arguments for vacating the permanent injunction. However, Defendants raised none of these arguments earlier in the course of litigation, including during the October 2017 briefing the Court ordered dedicated solely to the parties' proposed judgments and proposed injunctive relief. *See* Dkt. Nos. 323, 324, 325.  A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation. *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *accord* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2810.1 (3d ed. 2017). Similarly, a party cannot introduce new facts as "newly discovered evidence" in a motion to amend or alter a judgment unless they were previously unavailable. *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001).

Defendants now argue that the Court should vacate the permanent injunction because it (1) ignores principles of an FTC Policy Statement from 1979; (2) does not provide sufficient detail; and (3) was issued in violation of the nondelegation doctrine. None of these current challenges to the permanent injunction is based upon evidence that was previously unavailable. As a result, all of Defendants' new arguments could reasonably have been raised earlier in the litigation, including when Defendants briefed the merits of the permanent injunction.

In their brief on the merits of the injunction, Defendants previously argued that certain provisions of the Bureau's proposed injunction lacked sufficient specificity. *See* Dkt. No. 325, at 8-9. But Defendants notably did not raise this argument with regard to all provisions of the proposed injunction, but rather with select provisions that they described as "obey the law" commands. *Id.* Now, by contrast, Defendants argue that *all* provisions of the permanent injunction lack sufficient detail. *See* Dkt. No. 341, at 23:23-24. However, the permanent injunction the Court entered does not include most of the provisions in the Bureau's proposed order that Defendants previously contended were improperly vague; in fact, Defendants did not

16

previously challenge most of the provisions that the Court adopted from the Bureau's proposed order.

Similarly, Defendants have never raised the issues of the FTC Policy Statement or nondelegation and do not explain this failure. If it was manifest error for the Court to not consider principles articulated in the 1979 FTC Policy Statement, Defendants offer no explanation as to why they did not inform the Court about this while briefing the proposed injunctive relief just a few months ago. These new arguments are not grounds for granting Defendants' motion to amend or alter the judgment since they could reasonably have been raised earlier in the litigation.

      b.  <u>There is no manifest error of fact within or underlying the terms of the permanent injunction for failure to consider an FTC Statement of Policy.</u>

Defendants argue that the permanent injunction includes manifest errors of fact because the Court ignored various principles of the FTC's Statement of Policy Regarding Comparative Advertising of August 13, 1979 (FTC Policy), which they contend encourages the naming of or reference to competitors in advertising. Dkt. No. 341, at 21-23. Defendants argue that the Court should not have enjoined Defendants from making false or misleading statements about: (1) affiliation with a consumer's financial institution, mortgage lender, or mortgage servicer; or (2) the existence of alternatives to the IM Program at one of those institutions. Dkt. No. 341, at 22-23 (quoting Dkt. No. 331, at ¶¶ 2a, 2j). Defendants posit that these prohibitions are incompatible with the FTC Policy and therefore constitute manifest errors under Rule 59(e). Dkt. No. 341, at 23. This argument fails for two reasons.

First, the Court had no obligation to consider the FTC Policy prior to proposing any of the injunctive provisions, and the Court committed no error in not considering that FTC Policy in adopting the permanent injunction. As discussed above, while precedent applying the FTC Act's prohibition against deceptive acts or practices can be instructive when considering the CFPA's prohibition on deceptive acts or practices, FTC policy statements do not control claims the

Plaintiff's Response in Opposition to Defendants' Post-Trial Motions Under Rules 59 and 60 (Dkt. No. 341), Case No. 3:15-cv-02106-RS

1   Bureau brings pursuant to its authority under the CFPA. And Defendants cannot cite to any

2   authority establishing that the Bureau or the Court *must* consider this policy statement before

3   enjoining conduct illegal under the CFPA. In considering appropriate terms for injunctive relief,

4   the Bureau proposed various provisions to squarely address the misrepresentations and omissions

5   identified by the Court as violations of the law.

6         Even if the Court should have considered the FTC Policy, this would not be grounds to

7   vacate the permanent injunction because the FTC Policy clearly prohibits statements that could

8   deceive consumers and is perfectly consistent with the injunctive relief ordered. *See* Dkt. No.

9   340-6, Exhibit F, *FTC Statement of Policy Regarding Comparative Advertising*. In particular,

10   that FTC Policy states that comparative advertising can assist consumers "when truthful and non-

11   deceptive," but notes that doing so "requires clarity, and, if necessary, disclosure to avoid

12   deception." *Id*. Here, the Court found that Defendants made false or misleading statements about

13   consumers' ability to save using programs other than the IM Program and their affiliation with

14   the consumer's lender and ordered Defendants to refrain from making misleading statements and

15   to make additional disclosures to avoid such deception. Dkt. No. 331, at ¶ 2.

16         Second, there is no manifest error of fact because the Court indisputably has discretion

17   under the CFPA to order injunctive terms that it finds appropriate based on the evidence

18   presented at trial. *See* 12 U.S.C. § 5565(a)(1), (2) (granting the court jurisdiction to provide

19   equitable relief including "limits on the activities or functions of the person"); *see also* Dkt. No.

20   325, at 5:19-21 (Defendants stated that they "freely acknowledge the Court's broad powers to

21   'grant any appropriate legal or equitable relief with respect to a violation of Federal consumer

22   financial law.'"). Indeed, courts enjoy broad discretion to fashion suitable relief and define the

23   terms of an injunction, so long as the relief is tailored to remedy the specific harm alleged. *See*

24   *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991) (citation omitted).

25         Here, the Court appropriately ordered narrowly-tailored terms to address the specific

26   violations in its Opinion and Order. For example, the Court specifically found that Defendants'

27

28

18

Plaintiff's Response in Opposition to Defendants' Post-Trial Motions Under Rules 59 and 60
(Dkt. No. 341), Case No. 3:15-cv-02106-RS

representations that a consumer must use the IM Program, or a similar third party administrator, were materially misleading. Dkt. No. 315, at 16. As a result, the permanent injunction requires Defendants to clearly and conspicuously disclose that there might be free competitors to the IM Program and that "the consumer should check with his or her own servicer to verify whether such a program exists." Dkt. No. 331, at ¶ 2j. This injunctive provision was not designed to undermine Defendants' ability to engage in comparative advertising. Rather, it was specifically crafted to remedy consumer harm that the Court identified flowing from Defendants' false representations that the IM Program was the only way consumers could achieve savings. Simply put, it is appropriate to require Defendants to make mandatory disclosures to avoid consumer deception when engaging in comparative advertising in these circumstances. The Court also found that reasonable consumers were likely to be misled by the net impression of many mailers about Defendants' affiliation with a consumer's lender. Dkt. No. 315, at 10. The provision enjoining Defendants from making false or misleading statements that they are affiliated with a consumer's lender is similarly tailored to correct consumers' misimpressions. Dkt. No. 331, at ¶ 2a. Thus, enjoining Defendants with these provisions was entirely within the Court's discretion based on its findings of deception. In the end, Defendants can point to no rule or statute requiring the Court to adhere to a policy document from the FTC when fashioning terms of injunctive relief ordered under the CFPA. The Court should not vacate its injunction.

   c.   The permanent injunction provides specific terms in reasonable detail to guide Defendants' compliance efforts.

Defendants further argue that the Court should vacate the entire injunction arguing that none of its terms provides an "intelligible principle" upon which to determine compliance. Dkt. No. 341, at 23. This argument blindly ignores the explicit level of detail found in the language of the permanent injunction – which includes sixteen subparagraphs of specific terms and provides clear guidance as to which acts are prohibited and mandatory for Defendants. *See* Dkt. No. 331, ¶¶ 2a-2p.

Plaintiff's Response in Opposition to Defendants' Post-Trial Motions Under Rules 59 and 60 (Dkt. No. 341), Case No. 3:15-cv-02106-RS

Though Defendants do not cite to it at all, Rule 65(d) makes clear that the Court's injunction is appropriate and should not be vacated. That rule sets forth the requirements for the contents of an injunction and requires only that an injunction must "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document— the act or acts restrained or required." Fed. R. Civ. P. 65(d)(B), (C). Injunctions are not set aside under Rule 65(d) unless they are so vague that they have no reasonably specific meaning. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1297 (9th Cir. 1992) (citation omitted). While an injunction must include reasonable detail, it is not required to specify every potential scenario that is enjoined in order to provide adequate notice to an enjoined party. *See* 2 Steven S. Gensler, *Federal Rules of Civil Procedure*, Rules and Commentary Rule 65 (2017) ("[T]he court should not be expected or required to anticipate and catalog every conceivable way the enjoined party might imagine for violating the order."); *see also GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210-11 (9th Cir. 2000) (abrogated on other grounds). Rule 65(d) also does not require the court to instruct an enjoined party precisely how to comply with the terms. *See Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1087 (9th Cir. 2004).

Here, the permanent injunction enjoins Defendants from making specific types of false or misleading statements, directly or by implication, and requires other clear and conspicuous disclosures to consumers. *See* Dkt. No. 331, ¶¶ 2a-2p. While the Court's order does not contemplate every conceivable marketing decision Defendants could possibly make, it nevertheless meets the requirements of Rule 65 and provides Defendants sufficient detail as to what is required and prohibited. *Cf. Fortyune*, 364 F.3d at 1087 (upholding an injunction that required policies to ensure statutory compliance, "even though it decline[d] to provide [defendant] with explicit instructions on the appropriate means to accomplish this directive."); *GoTo.com*, 202 F.3d at 1210-11 (upholding a preliminary injunction as providing adequate notice in a trademark dispute, even though the Court acknowledged that the terms "certainly

20

1   d[id] not catalog the entire universe of possible uses….”). Moreover, other courts in the Ninth

2   Circuit have approved enjoining deceptive practices with similar levels of specificity.[5]

3        d.   The Court's authority to grant equitable relief under 12 U.S.C. § 5565(a)(1) does

4            not violate the nondelegation doctrine.

5        Section 1055 of the CFPA provides that, in an enforcement action brought under a

6   Federal consumer financial law, the court "shall have jurisdiction to grant any appropriate legal

7   or equitable relief." 12 U.S.C. § 5565(a)(1). Defendants contend this provision provides no

8   "intelligible principle" for the Court to fashion equitable relief. Dkt. No. 341, at 25. Therefore,

9   according to Defendants, this provision of the CFPA violates the nondelegation doctrine.[6] The

10  Court should reject Defendants' novel and unsupported argument.

11       Article III of the Constitution vests power to the federal judiciary over "all Cases, in Law

12  and Equity," arising under, *inter alia*, the laws of the United States. U.S. Const. art. III, § 2. The

13  nondelegation doctrine – which has historically policed the constitutionality of Congress's

14  delegation of legislative power – is rooted in the separation of powers argument that Article I § 1

15

16  [5] The Bureau previously provided examples of many similar injunctive provisions approved by
    courts in this Circuit, which were appended as Exhibits to Plaintiff's Brief in Support of
17  Proposed Judgment and Order of Permanent Injunction, Dkt. No. 324, Exhibits A-I. *See FTC v.
    Tracfone Wireless, Inc., et al.*, Case No. 3:15-cv-00392-EMC (N.D. Cal. Feb. 20, 2015) (Exhibit
18  A of Dkt. No 324) (Section I); *FTC v. Swish Marketing Inc., et al.*, Case No. 5:09-cv-03814-RS
    (N.D. Cal. Sept. 29, 2010) (Exhibit B of Dkt. No 324) (Section I); *FTC v. Lakhany*, Case No.
19  SACV12-0337-CJC (C.D. Cal. Feb. 28, 2013) (Exhibit C of Dkt. No 324) (Sections II-III); *FTC
    v. Consumer Advocates Group*, CV 12-04736 DDP(CWx) (C.D. Cal. Feb. 1, 2013) (Exhibit D of
20  Dkt. No 324) (Sections III-IV); *FTC v. Dinamica Financiera, et al.*, Case No. 2:09-cv-03554-
    MMM-PJW (C.D. Cal. Aug. 9, 2010) (Exhibit E of Dkt. No 324) (Sections II-III); *FTC v. Nat'l
21  Audit Defense Network, Inc.*, Case No. CV-S-02-0131 (D. Nev. June 7, 2010) (Exhibit F of Dkt.
    No 324) (Section I); *FTC v. Nat'l Prize Information Group Corp.*, Case No. 2:06-cv-03105 (D.
22  Nev. Aug. 14, 2009) (Exhibit G of Dkt. No 324) (Section I); *FTC v. Medlab, Inc.*, Case No. C-
    08-00822 (N.D. Cal. Jun. 26, 2009) (Exhibit H of Dkt. No 324) (Sections I-III); *see also FTC &
23  CFPB v. Green Tree Servicing, LLC*, Case No. 15-cv-02064-SRN-JSM (D. Minn. Apr. 23, 2015)
24  (Ex. I of Dkt. No 324) (Section IX).
    [6] Defendants' motion cites to 12 U.S.C. § 1055(a)(1), but this appears to be a typographical
25  error. Dkt. No. 341, at 25. Section 1055 of the Public Law 111-203 is codified at 12 U.S.C.
26  § 5565(a)(1).

27                                          21

28  Plaintiff's Response in Opposition to Defendants' Post-Trial Motions Under Rules 59 and 60
    (Dkt. No. 341), Case No. 3:15-cv-02106-RS

places all legislative power in Congress. *Mistretta v. United States*, 488 U.S. 361, 371-72 (1989). Section 1055(a)(1) of the CFPA, which confers jurisdiction to the court to award "legal and equitable relief" in an action, does not run afoul of the nondelegation doctrine because it is not a delegation of legislative power. Prescribing a remedy in a particular case or controversy is not an exercise of legislative power, but rather of judicial power, which Congress cannot impermissibly delegate to an Article III court. *Cf. id.* at 418-19 (Scalia, J., dissenting) (a trial judge pronouncing a criminal sentence is the "exercise of the judicial power . . . ."). In enjoining Defendants from making false or misleading statements in advertising its IM Program, this Court did not legislate from the bench. It appropriately interpreted and applied a statute to the facts before it and ordered injunctive relief – something courts have been doing since the dawn of the Republic.

Finally, Defendants did not challenge the validity of the CFPA under the nondelegation doctrine at any time earlier in the litigation. On the contrary, in an earlier reference to the Court's authority to issue an injunction under 12 U.S.C. § 5565(a)(1), Defendants stated that they "freely acknowledge the Court's broad powers to 'grant any appropriate legal or equitable relief with respect to a violation of Federal consumer financial law.'" Dkt. No. 325, at 5:19-21. Defendants plainly present a brand new legal argument about the nondelegation of the CFPA that the Court should reject at this stage of the litigation.

IV.     Conclusion

For the reasons discussed above, the Bureau respectfully requests the Court to deny Defendants' post-trial motions under Rules 59(e) and 60(b).


Date: January 8, 2018                          KRISTEN DONOGHUE
                                               Enforcement Director

                                               DEBORAH MORRIS
                                               Deputy Enforcement Director

                                               MICHAEL G. SALEMI
                                               Assistant Litigation Deputy

Plaintiff's Response in Opposition to Defendants' Post-Trial Motions Under Rules 59 and 60 (Dkt. No. 341), Case No. 3:15-cv-02106-RS

*/s/ Adrienne Warrell*
Adrienne Warrell
adrienne.warrell@cfpb.gov
202-435-7013
Jonathan Urban
jonathan.urban@cfpb.gov
202-435-7371
Patrick Gushue
patrick.gushue@cfpb.gov
202-435-9671
Stephen Jacques
stephen.jacques@cfpb.gov
202-435-7368
*Enforcement Attorneys*

Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552

Plaintiff's Response in Opposition to Defendants' Post-Trial Motions Under Rules 59 and 60
(Dkt. No. 341), Case No. 3:15-cv-02106-RS

1

### CERTIFICATE OF SERVICE

2

      I hereby certify that a true and correct copy of the foregoing was served on January 8,

3

2018, via ECF upon counsel of record in this action.

4

5
                    */s/ Adrienne Warrell*
                    Adrienne Warrell

6
                    adrienne.warrell@cfpb.gov
                    202-435-7013

7
                    *Enforcement Attorney*

8
                    Consumer Financial Protection Bureau
                    1700 G Street NW

9
                    Washington, DC 20552

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's Response in Opposition to Defendants' Post-Trial Motions Under Rules 59 and 60
(Dkt. No. 341), Case No. 3:15-cv-02106-RS