UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NATIONWIDE BIWEEKLY ADMINISTRATION, INC., et al.,<br><br>　　　　　Defendants. | Case No.  15-cv-02106-RS<br><br>**ORDER DENYING POST-TRIAL MOTIONS** |

## I. INTRODUCTION

This is a civil enforcement action brought by the Consumer Financial Protection Bureau ("CFPB") against Nationwide Biweekly Administration, Inc. ("Nationwide"), its wholly-owned subsidiary Loan Payment Administration ("LPA"), and Daniel Lipsky, the founder, president, sole officer, and sole owner of Nationwide. LPA functions essentially as a second name under which Nationwide markets its services.  After a seven day bench trial and post-trial briefing, judgment was entered in favor of CFPB.  The judgment imposed a statutory penalty of $7,930,000 against all defendants, jointly and severally, and provided for certain injunctive relief.  The judgment also denied defendants any relief on their counterclaims.

Defendants now bring two motions under Rules 59 and 60 of the Federal Rules of Civil Procedure—one challenging the imposition of the monetary penalty, and one seeking reversal of the decision denying relief on the counterclaims.  Pursuant to Civil Local Rule 7-1(b) both

motions are suitable for disposition without oral argument.  The motions will be denied.

## II.  LEGAL STANDARDS

Under Rule 59(e) of the Federal Rules of Civil Procedure a party may move to have the court amend its judgment within twenty-eight days after entry of the judgment. "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." *McDowell v. Calderon*, 197 F.3d 1253, 1255 n. 1 (9th Cir.1999) (en banc) (per curiam) (internal quotation marks omitted). Nevertheless, amending a judgment after its entry remains "an extraordinary remedy which should be used sparingly." *Id*. (internal quotation marks omitted).  Generally, relief under Rule 59(e) is available for any of four basic reasons: (1) to correct manifest errors of law or fact upon which the judgment rests; (2) to address newly discovered or previously unavailable evidence; (3) to prevent manifest injustice; or (4) to address an intervening change in controlling law.  *Id*; *see also Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011).

Defendants also assert they seek relief under the prong of Rule 60(b) that permits a court to set aside a judgment based on "newly discovered evidence."  As the text of the rule explains, however, such evidence must be that which "with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."  See Rule 60(b)(2).  As the deadline for new trial motions under Rule 59(b) is the same 28 day time period defendants were operating under for their Rule 59(e) motions, they have made no showing that they lacked time to bring a new trial motion based on any "newly discovered evidence," and their requests for relief under Rule 60(b) must fail for that reason alone.  Arguably, however, the Rule 60(b) motions more broadly invoke purported "manifest errors" of fact and or law.  As such, they potentially are cognizable under the prongs of Rule 60(b) permitting relief for "mistake" and/or the catch-all "any other reason that justifies relief."  See Rule 60(b)(1) and (6).

## III.  DISCUSSION

A.  Civil Penalty

Defendants seek relief from the civil penalty imposed by the judgment.  They first contend there is "new evidence" demonstrating their inability to pay the penalty and "the severe and inequitable hardship resulting from the judgment."  As noted above, seeking relief under Rule 60(b) based on purported "new evidence" is not tenable where a timely new trial motion could have been brought.  Even if that were not so, defendants simply have not shown that the claimed "new evidence" provides a sufficient legal or equitable basis to eliminate the civil penalty.  Some of defendants' contentions regarding their financial resources were previously addressed.  See Dkt. No. 330.  The remaining claims regarding their present resources, and the effect of the penalty, do not warrant excusing them from the obligation to pay.

Defendants' further contentions that the Opinion and Order includes manifest errors of fact and/or law all are premised on their previously-advanced arguments that the CFPA does not adequately define "deceptive" and that it was error to apply the definitions of that term found in case law under the FTC Act.  Defendants expand their prior points to insist now that if the definitional standards of the FTC Act apply, so too should certain procedural steps for imposing penalties under that act.[1]  None of these arguments rise to a basis for relief under Rule 59 or 60.  As reflected in the Opinion and Order, defendants' suggestion that the statutory meaning of deceptiveness required further or different explication is not tenable. See Opinion and Order at 4:22-6:3.  Indeed, the definition defendants proposed was not materially different from that applied. *Id.*  Moreover, the mere fact that case law under the FTC was considered as persuasive guidance on the meaning of a term does not somehow require that all other aspects of the FTC law must apply.

---

[1] Defendants also contend penalties under the FTC act are not available absent a showing of public injury.  That likely is true, as is defendants' further contention that showing injury to the public should be a requirement for penalties under the CFPA.  Defendants' claim that no such public injury was shown here is not correct however.  Although the Opinion and Order declined to impose restitution, it identified multiple elements of harm to the public resulting from defendants' practices, as supporting both the imposition of the penalty and injunctive relief.

B. Injunction

Defendants argue that the terms of the permanent injunction entered against them—which to a large degree adopted the narrower, less detailed and demanded provisions they proposed rather than those submitted by the CFPB—improperly impede their ability to engage in comparative advertising. Defendants contend the FTC actually "encourages the naming of, or reference to competitors," and that provisions in the injunction do not adequately reflect that policy. The FTC policy language quoted by defendants, however, goes on to caution that comparative advertising "requires clarity, and, if necessary, disclosure to avoid deception of the consumer." Particularly in light of the evidence of defendants prior practices and the conclusions of the Opinion and Order regarding those practices, the limitations of the injunction reflect appropriate safeguards "to avoid deception of the consumer." Defendants certainly have not shown a basis under Rule 59 or 60 to revisit the language of the injunction now.

Finally, defendants suggest that by pursuing a lawsuit under all the circumstances here, CFPB has improperly delegated its rulemaking and regulatory function to the courts. This argument again rests on defendants' unpersuasive claims that the definition of the statutory term "deceptive" is a particularly troublesome issue, so problematic in fact, that it should not be left to a court to decide. This argument is not tenable, and does not support relief under Rule 59 or 60 in any event. The motion under Rules 59 and 60 seeking relief from the judgment on the CFPB's affirmative case is denied.

C. Counterclaims

The intended basis of the motion addressed to the counterclaims is less than completely clear.[2] The moving papers suggest there is "new evidence" because "after the conclusion of the

---

[2] As described in a prior order (Dkt. No. 347), defendants were given leave to file corrected motion papers (Dkt. No. 348) because it was clear from the face of the original filing (Dkt. No. 342) that some form of document-processing error had occurred. Leave to file the corrected motion, however, was without prejudice to a conclusion that prong of the motion brought under Rule 59 was untimely. While there is no basis to grant the motion under Rule 59 in any event, the untimeliness provides an additional ground for denying it.

trial, briefing and oral arguments, the federal government acknowledged the existence of Operation Choke Point during the relevant time period, and now has said that the Choke Point Operation should be and has been ended." The bulk of the argument advanced, however, relates to the press release issued by CFPB when the complaint was filed, and contentions that it was wrongful and caused harm to defendants. The motion then asserts a mandatory injunction, the terms of which are not specified, should issue "to remedy CFPB's violation of Nationwide's right to due process."

On reply, defendants concede that the existing findings of fact and conclusions of law adequately address the allegations regarding Operation Chokepoint and that there is no basis to revisit that issue, regardless of any "admissions" the federal government may have recently made regarding the general subject. See Reply at 5:18-19 ("We understand that the Court has ruled on those allegations.") Defendants insist, however, that their allegations, evidence, and contentions regarding the press release have not been addressed or adjudicated.

Defendants are mistaken. Although the Opinion and Order did not expressly refer to the "press release" by that term, as defendants point out their contentions regarding the press release were unambiguously presented and submitted for decision.

With the question of whether the press release was wrongful or had caused harm among the issues squarely-presented, the Opinion and Order concluded:

> Sitting now as a trier of fact, the Court concludes the evidence at trial—no more robust than that previously presented—does not warrant drawing an inference in this case that CFPB engaged in any "back-room pressure tactics" as part of "Operation Chokehold" <u>or otherwise</u>, or that the banks terminated their relationships with defendants based <u>on any such wrongful conduct by CFPB</u>. Rather, the evidence supports a conclusion that while the filing of this action itself—a privileged and non-actionable act—may have contributed to the termination of the banking relationships, those relationships were already strained for reasons unrelated to any conduct by CFPB. Lipsky's testimony on the point demonstrates that defendants lack any facts to support the claim of wrongful extra-judicial pressure. Rather, <u>Lipsky testified he has drawn his own conclusion that the banks terminated the relationships because of CFPB's mere identity as the plaintiff in this action.</u> Defendants submitted no evidence from the banks sufficient to establish the factual predicates for their counterclaims, even assuming "extra-judicial" pressure

might, in some circumstances, support a claim under the legal theories advanced. Accordingly, the counterclaims <u>fail for lack of proof</u>.

Opinion and Order at 23:15-24:4 (emphasis added). While defendants may believe that *different* conclusions should have been drawn regarding the press release, its form, content, and effects, it simply is not the case that defendants' evidence and arguments regarding the press release was previously overlooked. While not catalogued in detail, that evidence and argument was found insufficient to support the counterclaims. The motion under Rules 59 and 60 seeking relief from the judgment on the counterclaims is denied.

**IT IS SO ORDERED**.

Dated:  March 12, 2018

_____
RICHARD SEEBORG
United States District Judge