UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NATIONWIDE BIWEEKLY ADMINISTRATION, INC., et al.,<br><br>　　　　　Defendants. | Case No. 15-cv-02106-RS<br><br>**JUDGMENT AND PERMANENT INJUNCTION FOLLOWING REMAND** |

Plaintiff in this action is Consumer Financial Protection Bureau. Defendants are Nationwide Biweekly Administration, Inc. ("Nationwide"), its wholly-owned subsidiary Loan Payment Administration ("LPA"), and Daniel Lipsky, the founder, president, sole officer, and sole owner of Nationwide. LPA functions essentially as a second name under which Nationwide markets its services.

For the purposes of this judgment and permanent injunction, the following definitions apply:

　　1. "Clear and conspicuous" means

　　　　a. In textual communications (e.g., printed publications or words displayed on the screen of an electronic device), the disclosure must be of a type size and location sufficiently prominent for an ordinary consumer to read and comprehend it, in print that contrasts with the background on which it appears;

　　　　b. In communications disseminated orally or through audible means (e.g., radio or streaming audio), the disclosure must be delivered at a volume and cadence sufficient for an ordinary consumer to hear and comprehend it;

      c. In communications disseminated through video means (e.g., television or streaming video), the disclosure must be in writing in a form consistent with subsection (a), and must appear on the screen for a duration sufficient for an ordinary consumer to read and comprehend it;

      d. In communications made through interactive media such as the internet, online services, and software, the disclosure must be presented in a form consistent with subsection (a), and that cannot be bypassed;

      e. In communications that contain both audio and visual portions, the disclosure must be presented simultaneously in both the audio and visual portions of the communication; and,

      f. In all instances, the disclosure must be presented before the consumer incurs any financial obligation, in an understandable language and syntax, and with nothing contrary to, inconsistent with, or in mitigation of the disclosures used in any communication with the consumer.

2. "IM Program" means defendants' Interest Minimizer Program, or any other substantially-similar program, including any program that involves defendants transmitting or exchanging funds or otherwise acting as a custodian of funds or any financial instrument for use by or on behalf of a consumer.

3. "Promotional Materials" means all print advertisements (including direct-mail marketing letters, inserts, and envelopes), savings analysis templates and documents, online enrollment forms and contracts, defendants' websites (including defendants' audiovisual presentations and videos made available on any proprietary or third-party websites), digital or social media platforms, and any other promotional and marketing materials that consumers receive from defendants and that are used to promote, telemarket, advertise, sell, offer, or provide the IM Program.

4. "Scripts" means all telemarketing call scripts, talking points, question-and-answer documents, and any other guidance or aids used by defendants on telemarketing calls to promote, advertise, telemarket, sell, offer, or provide the IM Program to consumers.

Following a bench trial, pursuant to the Opinion and Order filed on September 8, 2017, upon due consideration of the parties' respective proposals as to the terms of injunctive relief, and pursuant to the Order Supplementing, Modifying, and Reaffirming Prior Findings of Fact and Conclusions of Law Following Remand, and Reaffirming Judgment filed August 28, 2024,

judgment is entered in favor of plaintiff and against defendants as follows:

1. Pursuant to 12 U.S.C. § 5565(c)(1), a civil penalty in the amount of $7,930,000 is imposed against Nationwide, LPA, and Lipsky jointly and severally.

2. Defendants, and their officers, agents, servants, employees, and attorneys, who have actual notice of this Order, are enjoined as follows:

    a. Defendants are enjoined from making false or misleading statements, directly or by implication, that they (i) are affiliated with, related to, sponsored by, or in partnership with the consumer's bank, mortgage lender, mortgage servicer, or any other financial entity in any way already associated with the consumer's loan or finances; (ii) are administering a feature of the consumer's loan on behalf of the consumer's bank, mortgage lender, mortgage servicer, or any other financial entity in any way already associated with the consumer's loan or finances; (iii) are an arm, department, or unit of the consumer's bank, mortgage lender, mortgage servicer, or any other financial entity in any way already associated with the consumer's loan or finances; or, (iv) have a working or business relationship with the consumer's bank, mortgage lender, mortgage servicer, or any other financial entity in any way already associated with the consumer's loan or finances.

    b. Defendants are enjoined from operating under the name "Loan Payment Administration" or any other trade name that suggests or misrepresents that the entity is an arm or department of the consumer's bank, mortgage lender, or mortgage servicer.

    c. Defendants are enjoined from making false or misleading statements, directly or by implication, that consumers have a preexisting obligation because of their mortgage loan or for any other reason to respond to the Promotional Materials, including by (i) labeling the direct-mail marketing letters as a "Notice" (e.g., "first," "second," "third," or "final" and the like); (ii) using terminology that connotes an obligation for the consumer to contact defendants to "waive" or "decline" the IM Program (or similar language implying an obligation or need to contact the Defendants); or (iii) using statements such as "mortgage payment information enclosed" (or similar language

implying that a bill or invoice is enclosed) or any phrasing that suggests the consumer has an obligation to respond to the direct-mail marketing letters by virtue of the consumer's loan.

d.  During any telemarketing call, if a consumer inquires as to whether defendants have any relationship, affiliation, or connection to the consumer's bank, mortgage lender, or mortgage servicer, defendants must clearly and conspicuously first inform the consumer that no such relationship exists (*i.e*., by using the word "no") prior to providing any further explanation.

e. In Promotional Materials and Scripts, defendants are enjoined from representing consumer savings calculated by estimating savings achieved over the life of the full loan term and then dividing that amount by the number of months in the loan, including using the terms "monthly," "average," or "yearly" interest savings, as well as any statements that purport to convey the amount of savings annually achieved by consumers at the end of any number of month(s) or year(s) in the IM Program.

f. In Promotional Materials and Scripts, defendants are enjoined from representing, directly or by implication, that consumers will achieve "immediate" interest savings or any similar suggestion of near term interest savings at any time prior to the point that an "extra" payment is applied to principal.

g. In Promotional Materials and telemarketing Scripts, defendants are enjoined from representing, directly or by implication, that all or "100%" of the "extra" debits or payments are applied to the loan principal, or any similar representation. If defendants' Promotional Materials state that any "extra" debits or payments are applied to the loan principal, defendants must also clearly and conspicuously disclose in equal prominence and close proximity to the statement that defendants do not apply the first "extra" debit to the loan principal but rather retain one-half (1/2) a monthly payment as the non-refundable setup fee for the IM Program.

h. If the Promotional Materials include an estimated interest savings "guarantee"

over the life of the loan, the Promotional Materials must include a clear and conspicuous explanation that interest savings will not result until the second "extra" payment is made and applied to the loan principal, and therefore, any interest savings are only guaranteed if the consumer remains enrolled in the IM Program at least until the time that second "extra" payment is made.

    i.  Defendants are further enjoined from representing, directly or by implication, that consumers will save a specific dollar amount or achieve a savings benefit of a specific dollar amount at any particular point during the consumer's participation in the IM Program if that amount is derived from average or total savings over the life of the loan. This does not preclude defendants from stating the total amount of savings the consumer will realize over the life of the loan as long as it is clearly and conspicuously disclosed that the stated dollar amount of the savings is based on the consumer participating in the IM program for the entire remaining term of the loan.

    j.  Defendants are enjoined from making false or misleading statements, directly or by implication, regarding the existence or non-existence of alternatives to the IM program. If defendants elect to raise the point, or if a consumer asks whether he or she can achieve savings on his or her own, defendants must clearly and conspicuously disclose that some lenders may directly accept biweekly payments and may administer their own programs at no cost, and that the consumer should check with his or her own servicer to verify whether such a program exists.  This does not preclude defendants from making truthful statements regarding any features of the IM program that may distinguish it from other programs.

    k. In Scripts defendants must disclose in a clear and conspicuous manner all fees for the IM Program (e.g., non-refundable setup fee and ongoing debiting fees) including the specific dollar amount of such fees.  While defendants may state that the non-refundable set up fee equals one biweekly debit, they must also state the dollar amount whenever they do so. This disclosure must occur prior to requesting payment information from the consumer during telemarketing calls.

1  l. Anytime a consumer asks defendants about any fees or costs before defendants have conducted the "savings analysis" or at a time when the exact dollar amount of the setup fee (or biweekly debit) is not yet known to defendants during the telemarketing call, defendants must respond by disclosing and describing all fees for the program (e.g., a non-refundable setup fee and ongoing debiting fees). Defendants must clearly and conspicuously state that the consumer must pay a non-refundable setup fee equivalent to one-half (1/2) of the consumer's monthly payment and that defendants will collect the fee from consumers the first time there are three debits in a month , instead of forwarding that first "extra" payment to the consumer's servicer to be applied to the consumer's mortgage.

m. Anytime a consumer asks defendants about any fees or costs after defendants have conducted the "savings analysis" or at any point during the telemarketing call when defendants are aware of the consumer's biweekly debit amount, defendants must clearly and conspicuously state and provide the consumer with the exact dollar amount of the nonrefundable setup fee, as well as the ongoing debiting fees.

n. Defendants must provide clear and conspicuous written disclosures of all fees (e.g., a non-refundable setup fee and ongoing debiting fees), including the exact dollar amount of all fees, on savings analysis documents, the payment agreement and electronic debit authorization, the online contract, the executed contract, and any other documents sent to consumers during the telemarketing call or enrollment process.

o. If defendants charge a setup fee or upfront fee that is not set with reference to the consumer's weekly, biweekly, or semi-monthly debit amount, or if defendants charge consumers any other fees for the IM Program, defendants must provide clear and conspicuous disclosures of all such fees, including a description and exact dollar amount of such fees.

p. Before a consumer consents to pay for goods and services offered during a telemarketing call, which occurs when a consumer provides her bank account information, defendants must disclose truthfully and in a clear and conspicuous manner the total cost to

purchase the IM Program, including the specific dollar amount of all fees (e.g., non-refundable setup fee and ongoing debiting fees).

3. Judgment is entered in favor of plaintiff and against defendants on the counterclaims.

**IT IS SO ORDERED**.

Dated: August 29, 2024

_____
RICHARD SEEBORG
United States District Judge